No. 19-15128

_____

**UNITED STATES COURTS OF APPEALS
FOR THE NINTH CIRCUIT**

_____

STEVE WILSON BRIGGS

Appellant/Petitioner

vs.

KEVIN SPACEY, ARI EMANUEL, MATT DAMON, BEN AFFLECK, MRC,
NEILL BLOMKAMP, NBCUNIVERSAL, ASIF SATCHU, BILL BLOCK,
SONY PICTURES ENT, MORDECAI WICZYK, DANA BRUNETTI

Appellees/Respondents

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. CV 18-4952, Hon. Judge Vince Chhabria

_____

**BRIEF OF APPELLANT STEVE WILSON BRIGGS**

**(CORRECTED)**

_____

Steve Wilson Briggs
4322 Chico Ave,
Santa Rosa, CA 95407
(510) 200 3763
snc.steve@gmail.com

*Appellant, In Propria Persona*

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**:...................................................................................1

    Consistent And Repeated Non-Action By The District Court……………....3

    Case Pleadings, Facts, Claims & History…………………………………5

        Briggs v Blomkamp et al……………………………………………..5

        Events Subsequent to *Briggs v Blomkamp*
        Catalyzing New Action………………………………………..5

        Briggs v Universal et al……………………………………………6

        Briggs v Spacey et al (This Matter)…………………………………7

**STATEMENT OF JURISDICTION**…………………………………....7

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**……………….8

**STATEMENT OF THE CASE**………………………………………...9

    Prior Case *Briggs v Blomkamp*…………………………………....9

    Briggs v Universal et al……………………………………………11

    Briggs v Spacey et al (This Matter)
        Procedural & Service of Process History…....…………………...12
        Additional Motions and Issues That Petitioner
        Brought To The Court, Which The Court Ignored……….................13

**SUMMARY OF ARGUMENT**………………………………………15

    The RESPONDENTS' three MTDs **rely on** 20 arguments:………………..15

    The PETITIONER'S Arguments…………………………………..16

i

**STANDARD OF REVIEW**…………………………………………………...17

**ARGUMENT**

I.  By Improperly Opining That (1) This Matter Is A Relitigation Of *Briggs V Blomkamp,* (2) The Cases Rely On The Same Facts And Issues, (3) Some  Claims Are Barred By Claim Preclusion, And (4) The Remaining Claims Are Barred By Issue Preclusion, The Court Abused Its Authority And Made Clear Errors Of Fact And Law………....18

    The District's Opinion On Claim Preclusion Is Mistaken……........……….20

    The District's Opinion On Issue Preclusion Is Mistaken…………………..20

II.  The Order Demonstrates A Misunderstanding Of Basic, Relevant Internet Protocols, Omits Central Contract Facts, And Omitted And Misstated Pivotal Facts Posited By The Petitioner; In Doing So, The District Abused Its Authority And Made Clear Errors Of Fact And Law…………………………………...………………………………..21

III.  The Order's Unusual Saturday Issuance Can Be Seen As (1) Timed To Assist Def Spacey's Criminal Case, And (2) A Quid Pro Quo For Future Appellate Appointment,  As Def Emanuel Is President Trump's Talent Agent; Thus, The Order May Erode Confidence In The Court….…...25

IV.  The District Made Clear Mixed Errors Of Law And Fact, By Arbitrarily Ruling The Petitioner Failed To State A Claim; And By Arbitrarily Deeming The Breach Claims "*Implausible*", The District Court Abused Its Authority…………………...………………………….27

V.  The District Abused Its Authority By Neither Acting On Multiple Motions To Default Defs, Nor Acting On Reports Of Pretrial Fraud And Misconduct By The Defs.………………...…….………………....……29

VI.  Plaintiff's Claims, Allegations, And Research From This Matter Are Currently Supporting Lateral Actions……………..…..…30

**CONCLUSION**………………………….…...…………………………....…30

## TABLE OF AUTHORITIES

**Cases:**

*Art Attacks Ink v MGA Entertainment Inc*……………………………………..…….10

Briggs v Blomkamp, 4:13-cv-04679-PJH
    (9th Cir, 2018; US 2018)…………………….…………1,5,6,7,11,15,16,18,19, 20

**Briggs v Spacey, 18-cv-04952-VC**…...………….………2,7,10,12,16,18,19,20,25,29

Briggs v Universal No: 17-cv-06552-VC ……...……...…………2,6,7,11,12, 28,29

Defend Affirmative Action Party et al v. Regents of University of California….…..3

Engebretson & Co. v. Harrison, 1981……………………………………....…….14

Franchise Tax Bd. of State of California v. Hyatt, 407 P.3d 717, 733..……….....…17

 Harry v. Marchant, 237 F.3d 1315, 1317 (11th Cir. 2001)………………………..17

Husain v. Olympic Airways, 316 F.3d 829, 835 (9th Cir. 2002)……………...…..17

IMDb.com Inc v Becerra et al, NDC 16-06535-VC………………………………..3

Jang v. United Tech. Corp., 206 F.3d 1147, 1149 (11th Cir. 2000)………….……17

L.A. Printex Industries. Inc. v Aeropostale, Inc.(9th Cir. 2012)……………...…..10

Mathews v. Chevron Corp., 362 F.3d 1172, 1180 (9th Cir. 2004)………………...17

OBOT v. City Of Oakland, N.C.D. 16-cv-07014-VC………………..…………….3

 Oregon Natural Res. Council v. Marsh, 52 F.3d 1485, 1492 (9th Cir. 1995)….....17

Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir.2001)….....20

Sadler v. Pacificare of Nev., *Inc.,* 130 Nev. 340 P.3d 1264, 1266 (2014)……........17

## FEDERAL RULES

FRCP Rule 4……………………………………………………....…1,3,4,14

FRCP Rule 4(e)(2)(C)………………………………………………..4,14

FRCP Rule 6………………………………………………….………...25

FRCP Rule 7.1(a) and (b)…………………………………………… 4,14

FRCP Rule 59(b)……………………………………………………….11

FRCP Rule 60…………………………………………………...6,11

FRCP Rule 60(b)(2)(3) & (6…………………………………………18

## FEDERAL STATUTES

28 USC § 1331……………………………………………………..7

28 USC § 1367(a)…………………………………………………..7

## CALIFORNIA CODES

California Code of Civil Procedure (CCP) 415.20(a)……………..…………4,14

### Periodicals

National Law Journal………………………………………………3

Los Angeles Times………………………………………………... 4

Los Angeles Lawyer……………………………………………… 5

# INTRODUCTION:

Unprecedented. Against a self-represented Plaintiff (Appellant/Petitioner), the Defendants (Appellees) amassed an army of **10 Defense attorneys\***,[1] representing just seven of the Defendants (**Defs**); then, dividing into three battalions, the attorneys simultaneously filed **three (3)** motions to dismiss (**MTD**), _and_ a **_vexatious litigant_** motion. Undaunted, the Petitioner defeated all of the Defense's motions, by any demonstrable analysis. Yet, Saturday, Dec 22, 2018, the District Court (**District**) issued a brief, one-and-a-half-page Order, which omitted pivotal facts and misrepresented the Petitioner's claims, in favor of the Defendants.

The troubled Order was quietly filed on a **Saturday**, December 22, 2018, three days before Christmas. These terrible optics are compounded by the fact that the Honorable Judge Vince Chhabria's Order shows a nescience of **ccTLD** protocols, and failed to explicate a basis or cite any prevailing Defense argument. Further, in the course of events, the **Plaintiff sought to default the Defs four (4) times**, including filing a **motion for default judgment** against the Defs for **refusal** of service via USPS, an automatic default under FRCP Rule 4. Yet, the Court failed

---

[1] In prior case, _Briggs v Blomkamp_ (2013, US 2018) the Defense consisted just two (**2**) attorneys, against the self represented Plaintiff. In related case _Briggs v Universal_, 2017 (dismissed for improper service of defendant), the Defense grew to five (**5**) attorneys.

1

to act on or notice these motions and requests, or even mention them in the Order.

Exacerbating all of these problems: the District's "**Saturday Order**" has the unseemly appearance of being coordinated to assist Def Kevin Spacey's criminal case (Spacey was scheduled for arraignment in Massachusetts on Jan 7, 2019). By suddenly issuing the Order, weeks ahead of schedule, the District allowed Spacey to release a notorious *victim intimidation video*, two days after the Order, on Dec 24, 2018. The video —uniformly described as **"bizarre"**— was clearly intended to discourage Spacey's sexual assault victim from pursuing criminal action.

Spacey was only able to release this video, before his arraignment, because:

1. The District, in early December, without explanation, moved the motion hearing and ICMC a month forward (from Jan 2019, to mid Dec 2018);

2. the District took the extraordinary measure of issuing its *Saturday Order*, two weeks before Spacey's criminal arraignment.*[2]

Journalists, like their readers, are less apt to follow weekend stories, or search for rare court *Saturday* Orders. Thus, such Orders are often viewed with suspicion. Thus, this Order will erode confidence in the court.

Oddly, 13 days after filing this Order, Jan 4, 2019, just back from Christmas

---

[2] Defendant Spacey went into hiding for over a year, beginning on Nov 13, 2017 —the last day Spacey was seen/photographed in public. This is the very day that the Plaintiff filed Briggs v Universal —which names Def Spacey as perhaps the most central defendant.

2

and New Year's holiday, Judge Chhabria wrote an article for the <u>National Law Journal</u>: "*Why We Should Adopt A Rooney Rule For Law Clerks*," which advocated diversity in hiring. Prior to this, **Judge Chhabria had NOT written an article <u>in over four years</u>!** More troubling, the Judge's ruling history has not promoted diversity —or minorities (see *OBOT v. City Of Oakland,* N.C.D. 16-cv-07014-VC; *IMDb.com Inc v Becerra et al*, NDC 16-06535-VC; *Defend Affirmative Action Party et al v. Regents of University of California et al*, see dkt #26 & #41, etc.).

These circumstances invite unseemly speculation (e.g., one might speculate the article was written to guard against some *news journalist watchdog* finding the *Saturday* Order, then "googling" the Petitioner and noticing he is a minority; then, should this watchdog review Judge Chhabria's conservative ruling history and wonder if the Honorable Judge Chhabria entered the Order improperly… Perhaps, writing a warm, pro-diversity article might soften the watchdog's outcry).

### Consistent And Repeated Non-Action By The District Court

The District entered an unsound Order, and prejudicially ignored Petitioner as he sought to address the following issues (<u>all of which were ignored</u>):

- Dec 4, 2018, Petitioner moved the District for a default judgement against **Spacey and Brunetti**, for returning mail service marked "refused" (<u>FRCP Rule 4 provides for default when mail service is returned marked "refused"</u>).

3

- Dec 4, 2018, Petitioner moved for default judgment against Defs Damon, Affleck and Blomkamp, for failing to timely respond to proper service.

- Petitioner made three separate requests of the Clerk to enter Spacey and Brunetti into Default for failure to respond to proper service.

- Petitioner informed the District dozens of the Defs' CA Sec State business entity statements (**BES**) were fraudulent and 10-18 years delinquent.

- Petitioner alerted the District that Def MRC's BES fraudulently identified its headquarters (**HQ**) as an office in William Morris Endeavor's (**WME**) HQ, (the office number claimed in the WME building did not even exist).

- Petitioner alerted the District that MRC submitted 2 separate falsified addresses to the District (both of which were different from MRC's BES).

- Petitioner moved to strike Def Trigger Street Prods' MTD, for violating FRCP Rule 7.1(a) & (b), requiring disclosures at corp Defs' first appearance.

- Petitioner informed the District that Def Spacey's registered agent had not been at the address claimed on Spacey's BES in 4-5 years.

*Compounding all of these matters is the Ninth Circuit's questionable relationship with the Hollywood, and its well-documented history of unfairly favoring the Hollywood film industry (see the **Los Angeles Times.** "*As trial nears,*

*9th Circuit Court accused of favoring Hollywood*,” by Savage and Dolan, 2014; and the **Los Angeles Lawyer** “*Death of Copyright*,” by Steven Lowe, 2010, etc.).

## <u>Case Pleadings, Facts, Claims & History</u>

### <u>Briggs v Blomkamp et al</u>

In 2013, the Petitioner sued Defs Blomkamp, MRC, Sony Pictures et al, in a complaint demonstrating perhaps the most extensive copyright infringement in film history. Although he lost, the Petitioner became the first self-represented plaintiff to make it to summary judgment against a major Hollywood studio.

In October 2014, the Petitioner appealed the decision to the Ninth Circuit. The case sat in appeal from October 2014 until March 2018 (3.5 years). Affirmed.

In June 2018, Plaintiff petitioned for a Writ of Certiorari to the US Supreme Court.  October 2018, the Supreme Court denied the Petitioner's petition.

### Events Subsequent to *Briggs v Blomkamp* Catalyzing New Action

During the 3.5 years that *Briggs v Blomkamp* sat in the appellate court the Petitioner made several discoveries that were catalytic to filing this action, such as:

1. February 2016, the Petitioner learned that in 2009, while speaking in Barcelona Spain, Def Spacey stated that TriggerStreet.com (**TS**) “has over 400,000 member around the world.” This was in **breach of** TS's *Terms Of Use*, which stated TS was intended solely for use in the USA.

2. Petitioner discovered a video from Oct 24, 2016, in which **Jeff Rovin**, the Defs' **expert witness** in *Briggs v Blomkamp*, appeared on FOX News' *Sean Hannity Show* to admit he worked for President Bill Clinton, as Clinton's *fixer*, during Clinton's presidency. Rovin said he orchestrated false '*smear*' reports on Clinton's detractors, then published the *smears* in tabloids. Rovin explained that an *actor* in Clinton's Administration (who Rovin worked for previously) brought Rovin to the Administration. Rahm Emanuel (Clinton's Senior Advisor and Def Ari Emanuel's brother) is likely that actor.

3. Petitioner discovered that on November 6, 2014, **six days after the Plaintiff filed Notice of Appeal of Briggs v Blomkamp**, TriggerStreet.com closed, without forewarning or reason. The Petitioner immediately suspected the Defs closed the social network to destroy incriminating *access* records, because the case was apt to be remanded back to the district court for trial.

● FRCP Rule 60 allows relief from a judgment when there is newly discovered evidence, or a party has engaged in fraud, misrepresentation, or misconduct.

<u>Briggs v Universal</u> et al

In light of these new facts (and more), after concluding that he had sufficient standing and grounds, on Nov 13, 2017, while Briggs v Blomkamp was waiting in appeals, the Petitioner filed a new complaint against ten new parties, and three

6

parties from *Briggs v Blomkamp*. The new case was titled **Briggs v Universal**.

Petitioner successfully served 11 of the Defs, but Defs Spacey and Brunetti revoked their agent's authority to accept service of process. Thus, Petitioner was not able to serve Defs Spacey and Brunetti. (Retrospectively, since Spacey's and Brunetti's registered agent had not been at the address claimed on Spacey's BES in 4-5 years, the Petitioner should have prevailed.) Case dismissed, without prejudice.

<u>Briggs v Spacey</u> et al (This Matter)

Although the Complaint in *this* matter (**Briggs v Spacey**) is more concise, it relies on, essentially, the same facts and evidentiary exhibits as *Briggs v Universal*.

A cross-examination of the Defs' MTDs and Petitioner's Oppositions shows Petitioner dispelled all MTD arguments. Yet the District sided with the Defendants.

The Petitioner seeks relief from the District's mistaken Order/Judgment.

## STATEMENT OF JURISDICTION

This case is an appeal of the District Court of the Northern District of California's (**District**) Order granting the Defs' motions to dismiss, issued Saturday, December 22, 2018. The District exercised jurisdiction per 28 USC § 1331, as the matter involves claims of Copyright Infringement, and per 28 USC § 1367(a), as it is substantially related to prior federal action, *Briggs v Blomkamp*.

Mr. Briggs timely filed Notice of Appeal on January 22, 2018.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether **10 defense attorneys** (representing just 7 Defendants) responding to a lone *pro se* Plaintiff is prima facie evidence of the claims' plausibility?

2. Whether an order that demonstrates the court was nescient of the actual technology underlying the order —concerning internet **ccTLD** protocols— can be valid?

3. Whether, when an army of attorneys responds to a complaint with <u>**three**</u> (**3**) MTDs, if electing to dismiss, do courts have a duty to explicate the basis of dismissal, or provide a direct cross-comparison of at least <u>**one**</u> Defense MTD argument that was not defeated by the Petitioner's Opposition argument?

4. Whether, if a Defendant is the talent agent of the President of the United States (as in this case), and there are 6 appellate court vacancies, should the district court forego MTDs, to avoid the appearance of impropriety?

5. Whether, when entering an order to dismiss, amid murky circumstances, the order should be entered on a traditional weekday, not a holiday **Saturday**?

6. Whether U.S. Courts have a responsibility to afford actual person/citizens the same standard and application of law and justice afforded corporations? [3]

---

[3] Without substantiation, the Order opines that (1) the Petitioner failed to state a claim, and (2) Petitioner's interpretation of TS's Terms of Use is "implausible". No US Court would offer such an out of hand dismissal to an American Corporation, with so much evidence to the contrary, without dutiful explication.

## STATEMENT OF THE CASE

Prior Case *Briggs v Blomkamp*

In 2013, Petitioner sued Defs Blomkamp, MRC, Sony Pictures et al, for copyright infringement. Petitioner lost on summary judgment, October 3, 2014.

In October 31, 2014, the Petitioner appealed the district order to the Ninth Circuit. The Ninth Circuit affirmed the district order on February 28, 2018.

In June 2018, the Petitioner petitioned for a Writ of Certiorari to the US Supreme Court. October 2018, the Supreme Court denied Petitioner's petition.

February 2016, a year and a half after filing Notice of Appeal, while the case was waiting in appeals, the Petitioner found a BBC article, in which, while speaking in Barcelona Spain, Def Spacey stated that TriggerStreet.com (**TS**) "has over 400,000 member around the world." (TS is the social network Defs Spacey and Brunetti created for screenwriters and filmmakers; this is where the Plaintiff alleges his **screenplay** was accessed by the Defendants.) Upon reading this, using an "**Errata**" filing, Petitioner informed the appellate court that Spacey claimed TS had 400,000 members (this was useful to the Petitioner's *widespread dissemination* argument, as Petitioner's opening brief stated TS only had 100,000 members).

But the Petitioner was concerned that Def Spacey stated TS had "**members around the world,**" and that he stated this <u>while speaking at a convention in</u>

9

**Barcelona, Spain**. Petitioner was concerned because the TS *Terms Of Use* stated TS was intended solely for use in the USA. This was a clear **breach of contract**.

The Petitioner then tried to return to TS website, to confirm that TS was intended solely for use in the USA, but he discovered the TS social network had inexplicably closed on November 6, 2014—**six days after the Plaintiff filed Notice of Appeal of Briggs v Blomkamp**. The Petitioner immediately suspected that Spacey —possibly at the behest of other Defendants— closed the social network to destroy incriminating *access* evidence. The website likely stored years of *access* records and the names of the elite *whitelisted*\*[4] members, who had access to all scripts submitted to the social network. At the time, since the district order made several egregious errors (particularly, upholding the Defendants use of the vacated *Art Attacks Ink v MGA Entertainment Inc*, over Plaintiff's citation of prevailing *L.A. Printex v Aeropostale*) the Petitioner was confident the case would be remanded. It is probable the Defendants also worried the case would be remanded and the Plaintiff would then move to secure all TS records.

About nine months later, circa January of 2017 (roughly two years after the

---

[4] The *Briggs v Spacey* Complaint explained (with evidentiary exhibits) that in 2007 TS began to erase access records when members removed their work. In December, 2018, Petitioner submitted to the District a copy of Spacey's and Brunetti's US Patent application for a unique email system. The patent explains how the TS email system executed such erasures, and how it "***whitelisted***", or "hid" certain elite members, allowing them to access artist's work, undetected.

district court order, and a year before the appellate decision), Petitioner discovered a video from Oct 24, 2016, in which <u>Jeff Rovin</u>, the Defendants' <u>expert witness</u> in *Briggs v Blomkamp*, appeared on FOX News' <u>*Sean Hannity Show*</u>, to admit that he was President Bill Clinton's personal *fixer* (during Clinton's presidency), admitting that he arranged "smear" reports on Clinton detractors, then published these false stories in tabloids like the National ENQUIRER.  In short, the Defendants hired an elite fixer —a professional liar— and proffered him to the court as an *expert*.

In *Briggs v Blomkamp*, in the district court, 2014, the Petitioner moved to exclude Rovin's Report, citing fraud and false claims throughout. Motion denied.


**FRCP Rule 60 allows relief from a judgment/order, in such cases**, when:
1) there is <u>newly discovered evidence</u> that could not have been discovered in time to move for a new trial under Rule 59(b); or  2) when a party has engaged in <u>fraud</u>, <u>misrepresentation</u>, or <u>misconduct</u>; 3) for any other reason that justifies relief.


<u>Briggs v Universal</u> et al

 In light of these new facts, Nov 13, 2017, with *Briggs v Blomkamp* still in appeals, Petitioner filed a new complaint against **<u>ten new parties</u>**, and three parties from *Briggs v Blomkamp*. The new case was titled *Briggs v Universal*.

As the case proceeded, Defendants Spacey and Brunetti revoked their

agent's authority to accept service of process for them. Thus, Petitioner could not serve Spacey and/or Brunetti. Thus, the case was dismissed, without prejudice.

<u>Briggs v Spacey</u> et al (This Matter)

Procedural & Service of Process History

Petitioner filed his complaint on August 15, 2018. Although the *Briggs v Spacey* complaint is more concise, it relies on, primarily, the same facts and evidence as *Briggs v Universal*, alleging **11 Causes of Action** (Civil Conspiracy, Breach of Contract, Fraud, Fraudulent Deceit, Fraudulent Conspiracy, Negligence, Gross Negligence, Willful Suppression/Spoliation, Infringing Exportation, Copyright Infringement, and An Accounting), against **13 Defendants** (later, the Petitioner voluntarily dismissed Def Sound Point Capital Management).

From the moment the Petitioner's process servers initiated service of process, the Defendants engaged in avoidant, dishonest and unsafe conduct toward the process servers. Petitioner reported these incidents to the court via service declarations and status reports. By mid October, 2018, when *googling* the words "Spacey" and "legal", these service declarations appeared higher in the results than the stories concerning either Spacey's disappearance or his sexual assault case.

Among the details the Petitioner reported, **but the District ignored**, were:

- 10/26/28, when serving MRC's alleged HQ (in the WME building), the

server reported that one or more of the MRC/WME employees attempted to intimidate the process server. An attorney came to confer with the server, but refused to accept the documents and ordered a custodian to throw them in the trash. Neither the attorney or the mailroom supervisor would give their names. The mailroom supervisor said, "Keep me out of this." The attorney said, "No. I'm not giving *them* my name. I'm not involved in this."

● Petitioner alerted the District that Def MRC's BES fraudulently reports its HQ as an office in WME's HQ, and NOT the address MRC claimsedin countless court filings. Worse, the office number MRC claimed in the WME building does not exist. This supports Petitioner's Fraud and Negligence claims. The Court took no action —<u>inviting the Defs to continue this fraud</u>.

● When the Petitioner's process server served Spacey's and Brunetti's agent (Altman, Greenfield & Selvaggi), David Altman and another executive argued about whether they still represented either Defendant. In the end, Altman claimed he was unsure.

### Additional Motions and Issues That Petitioner Brought To The Court, Which The Court Ignored:

● Dec 4, 2018, Petitioner moved the District Court for a default judgement against **Spacey and Brunetti,** for returning mail service marked "refused"

13

[<u>FRCP Rule 4 provides and advises for default judgment when Summons and Complaint are returned marked "refused"</u>, under Rule 4 ("*Legislative Statement —1983 Amendment*," and *Engebretson & Co. v. Harrison*, 1981)].

- Dec 4, 2018, Petitioner also moved the Court for a default judgment against Defendants Damon, Affleck and Blomkamp, for failing to timely respond to proper service, under Rule 4(e)(2)(C), and CCP 415.20(a), which provides 21 days, plus an additional 10 days for alternative service of a Defendant's office, and supplemental service by certified USPS mail.

- Petitioner made three separate requests of the Clerk to enter Spacey and Brunetti into default, for failing to respond to service.

- Petitioner informed the District the BES's for Defs Spacey, Brunetti, MRC, Satchu and Wiczyk were falsified and, on average, 13 years out of date.

- Petitioner moved to strike Def Trigger Street Prods' MTD, submitted without a disclosure, against Fed R Civ P Rule 7.1(a) and (b).

- Respondents improperly filed a *vexatious litigant* motion against Petitioner —who did not meet **<u>ANY</u>** criteria for such a motion. The District should have promptly dismissed motion, but waited over 6 weeks to do so.

    In the end, the District Court Order ruled in favor of the Respondents.

    Petitioner seeks from this Court, relief from this District Order.

## SUMMARY OF ARGUMENT

**The RESPONDENTS' three MTDs rely on a barrage of 20 arguments:**

1. Each and Every Claim for Relief Is Time Barred

2. The Doctrine of Collateral Estoppel Bars Each and Every Claim For Relief

3. Briggs Failed to Properly Plead His Fraud Claims

4. The Negligence Claims Fail to Allege a Valid Duty

5. Briggs Failed to Properly Plead His Infringement Claim

6. Spoliation of Evidence Is Not a Valid Cause of Action

7. Civil Conspiracy Is Not an Independent Cause of Action

8. Briggs Cannot Cure His Complaint's Defects

9. The Complaint Is Barred By The "Collateral Attack" Doctrine

10. The Complaint Is Barred By The Doctrine Of Res Judicata

11. The Complaint Fails To State A Claim For Relief Against Defendants

12. Complaint is a re-litigation of *Briggs v Blomkamp*

13. Complaint Fails To Provide Notice Of The Basis Of Claims Against NBCU

14. Complaint Is An Improper Collateral Attack On Dismissal Of Prior Action

15. The Complaint Fails To State A Claim

16. The Complaint Fails To Allege Any Negligent Conduct By NBCU

17. The Complaint Is Time-barred

18. California Law Does Not Recognize A Claim For Conspiracy

19. The Complaint Fails To State A Cause Of Action For Accounting

20. No Damages Are Cognizable Concerning The Prior Blomkamp Lawsuit

### The PETITIONER'S Arguments

1. The Order overlooked ccTLD internet protocols, misapplied law, violated convention, omitted central facts, and misstated the Petitioner's claims.

2. The District's assertion that this case (*Briggs v Spacey*) is a ***re-litigation*** of *Briggs v Blomkamp* is mistaken, as the two case's causes are **entirely** different, and rely on **entirely** different facts, and primarily different parties.

3. The District assertion that this matter was barred by Res Judicata (**Claim** Preclusion) was improper for each of the following reasons: (1) the parties in the two matters (*Briggs v Spacey* and *Briggs v Blomkamp*) are not identical; (2) there was no prior judgment on the *Briggs v Spacey* causes; (3) the two suits do not involve the same claims or causes.

4. The District assertion that this matter is barred by Collateral Estoppel (**Issue** Preclusion) was improper, because the two cases do not involve <u>the same legal issues</u> AND <u>the same defendants</u> (both are required for preclusion).

5. By failing to act on Petitioners' multiple motions for default against Defendants, the District abused it authority and acted prejudicially.

## STANDARD OF REVIEW

- Motions to dismiss for failure to state a claim are reviewed de novo. The Court accepts all complaint's allegations as true, construing the facts in a light most favorable to plaintiff. *Harry v. Marchant*, 237 F.3d 1315, 1317 (11th Cir. 2001).

- The sufficiency of a pleading is reviewed de novo. *Sadler v. Pacificare of Nev., Inc.,* 130 Nev. 340 P.3d 1264, 1266 (2014).

- All questions of law are reviewed de novo. *Franchise Tax Bd. of State of California v. Hyatt*, 407 P.3d 717, 733 (Nev. 2017)

- Findings of fact are reviewed for *clear error*. *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002).

- Conclusions of law are reviewed *de novo*. *Id*, 316 F.3d at 835.

- A court abuses its discretion when the record contains no evidence to support district court's decision. *Oregon Natural Res. Council v. Marsh*, 52 F.3d 1485, 1492 (9th Cir. 1995).

- Determinations of res judicata are reviewed de novo. *Jang v. United Tech. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000).

- Mixed questions of law and fact are generally reviewed de novo. *See Mathews v. Chevron Corp.*, 362 F.3d 1172, 1180 (9th Cir. 2004)

17

## ARGUMENT

**I.**  BY IMPROPERLY OPINING THAT (1) THIS MATTER IS A RELITIGATION OF *BRIGGS V BLOMKAMP,* (2) THE CASES RELY ON THE SAME FACTS AND ISSUES, (3) SOME CLAIMS ARE BARRED BY CLAIM PRECLUSION, AND (4) THE REMAINING CLAIMS ARE BARRED BY ISSUE PRECLUSION, THE COURT ABUSED ITS AUTHORITY AND MADE CLEAR ERRORS OF FACT AND LAW.

The District's Order misapplies law. In the first paragraph the District asserts:

"Although he has packaged them in new causes of action, most of his claims seek to relitigate issues decided by Chief Judge Hamilton in Briggs v. Blomkamp, No. 4:13-046790-PJH (Briggs I). These claims include all the allegations involving the film Elysium and evidentiary decisions made by Chief Judge Hamilton. Therefore, as it pertains to the defendants who were present in Briggs I, the claims are barred by claim preclusion (res judicata); as it pertains to the new defendants, the claims are barred by issue preclusion (collateral estoppel)."

The Order is improper, as Rule 60(b)(2)(3) & (6) allow a party relief from an order when there is <u>(2) newly discovered evidence, (3) fraud, misconduct, or (6) any other reason justifying relief</u>. Consistent with this, the Complaint alleges that there is **newly discovered evidence**, and that the Defs engaged in **misconduct** and **fraud** in *Briggs v Blomkamp.* Presenting these facts required Petitioner to mention *Briggs v Blomkamp* a precious few times. Therefore, in the Complaint's **268** paragraphs, *Briggs v Blomkamp* is mentioned in just 14 paragraphs.[5] In each of

---

[5] Specifically, *Briggs v Blomkamp* is mentioned in the Complaint on page 2, para #2; page 2, para #3, bullet 1; page 3, para #3, bullet 3; page 5, para #24; page 7, para #30; page 8, para #37; page 8, para #38; page 34, para #156; page 34, para #157; page 36, para #166; page 37, para #168; page 39, para #177; page 39, para #182; page 40, para 185.

these few instances it is only mentioned to allege <u>new facts</u> concerning the newly discovered evidence, provide <u>new evidence of fraud</u>, or establish a basis for Rule 60 relief. Yet the Order takes the mistaken view that any mention of *Briggs v Blomkamp* is a *re-litigation* and barred by *res judicata* or *collateral estoppel*. But, following this mistaken logic, how can a plaintiff show he is entitled to relief (due to newly discovered evidence or fraud) if the plaintiff is not permitted to allege the required facts? This mistake should be plain.

But the District went further, stating: "*These claims include all the allegations involving the film Elysium and evidentiary decisions made by Chief Judge Hamilton.*" This was improper. Nowhere in the Complaint is *Briggs v Blomkamp*, or the Hon Judge Hamilton's decisions, realleged. Mentioning a case, to seek relief from an order when there is new evidence, fraud or misconduct, is not a re-allegation or relitigation —it is a requirement.

*Briggs v Spacey* and *Briggs v Blomkamp* are VERY different cases, and rely on entirely different facts. *Briggs v Blomkamp* is a single issue Copyright Infringement matter that strictly compares two contested screenplays. Conversely, *Briggs v Spacey* is very complex matter, alleging **eleven (11) causes of action**, against **thirteen (13) Defendants**, requiring the Petitioner to show evidence of Conspiracy, Breach, Fraud, Negligence, Spoliation, and Copyright Infringement.

**The District's Opinion On <u>Claim</u> Preclusion Is Mistaken**

The District arbitrarily and falsely opines the Petitioner's claims are barred by claim preclusion and issue preclusion. But these assertions, too, are demonstrably false. *Owens v. Kaiser Found. Health Plan, Inc.* , 244 F.3d 708, 713 (9th Cir., 2001) confirmed claim preclusion is appropriate when <u>ALL</u> of the following conditions are satisfied: **(1) the parties are identical or in privity**; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; **(3) there was a final judgment on the merits** ; and **(4) the same claim or Cause was involved in both suits.** Therefore, this case (*Briggs v Spacey*) is not barred by claim preclusion because of **each or any** of following reasons: (1) the parties in the two matters are not identical; (2) there was no prior final judgment on the *Briggs v Spacey* causes; (3) the two suits do not involve the same claims or causes.

**The District's Opinion On <u>Issue</u> Preclusion Is Mistaken**

Issue preclusion requires that **BOTH** of the following conditions are met:

1. **the same legal issues are present in two cases;**

2. **the same defendants** are present in two cases.

But *Briggs v Spacey* and *Briggs v Blomkamp* do not present the same issues (**all causes are different**), nor do they involve the same Defs (ten Defs are new).

The necessary conditions are not satisfied. The District Order is improper.

20

**II.** THE ORDER DEMONSTRATES A MISUNDERSTANDING OF BASIC, RELEVANT INTERNET PROTOCOLS, OMITS CENTRAL CONTRACT FACTS, AND OMITTED AND MISSTATED PIVOTAL FACTS POSITED BY THE PETITIONER; IN DOING SO, THE DISTRICT ABUSED ITS AUTHORITY AND MADE CLEAR ERRORS OF FACT AND LAW.

Page one, paragraph two of the Order, the District Court falsely states:

"Briggs cites to the section titled "International Use" as a promise on the website's behalf to not make the site available to people outside the United States. See Complaint Exhibit A, Dkt. No. 1-1, at 28. No reasonable reading of that section could give rise to that obligation."

This assertion, not raised in any of the Defs' 10 attorneys' three MTDs,

reveals the District's nescience of universal **ccTLD** internet protocols (which make

it almost effortless to identify and block foreign accessors), and is verifiably false.

The Complaint shows the Petitioner did not simply take the **"***International

Use"** clause as a promise not make the site available outside the US**"**, as the

District opined. Rather, the Petitioner relied on: (1) TS's *International Use* section,

stating TS was solely for US use; (2) TS's *Security* section, which boasted TS used

secure "data <u>networks protected by industry standard</u> firewall and <u>password</u>

<u>protection systems</u>"; and (3) a basic understanding of ccTLD protocols.

The Petitioner did, properly, conclude that TS's International Use section

was, indeed, "a promise on the website's behalf to not make the site available to

people outside the United States". However, the Petitioner drew this conclusion

from the **plain language** of the *Terms* (both *International Use*, and *Security*), and

an understanding of ccTLD protocols, which made enforcing this promise *routine*.

Away from the fact that the Order reaches an improper conclusion and seems

to ignore universal **ccTLD\*[6]** protocols, the Order is premised on the false assertion

that "No reasonable reading of that section [TS's International Use section] could

give rise to that obligation [for TS to restrict international membership]."

Consider TS's actual *International Use* clause. It reads:

> **"International Use**:  Unless otherwise specified, **the materials on the
> Site and in the Services are presented <u>solely</u> for the purpose of
> promoting the entertainment, information, and community
> resources and services available in, and other uses in, the <u>United
> States of America</u>**." We control and operate the Site and the Services
> from within the **United States**. <u>We make no representation that materials
> on the Site or the Services are appropriate or available for use in
> locations outside the</u> **United States**, and accessing them from territories
> where their contents are illegal is prohibited. <u>Those who choose to
> access the Site from other locations do so on their own initiative</u>…"

A plain language reading of this clause confirms TS was intended solely for

**USA**. The clause explains that the site promotes aspects and services (<u>membership</u>)

available in the USA. Only with *membership* could a party gain access to the

various benefits. All members were made to sign the user agreement. The

*International Use* clause was intended to assure **USA** users that the site was safe,

---

[6] ccTLD is a two letter internet identifier code system, specifying what
country users and websites are based in. This code allows websites to selectively
block users, based on where they are located.

and not available outside the USA—otherwise the clause is meaningless. Why else would TS include a clause exclusively addressing USA use, and no other nation?

 Setting this insurmountable failing aside, the Court then opines: "No reasonable reading of that section could give rise to that obligation [to block foreign accessors]." This assertion reveals the District's departure from the Plain Language Rule and its nescience of universal ccTLD protocols, which make it effortless to block foreign accessors. The District then supports this false assertion with a truncated/omitted passage from TS's "Submissions" section (p 1, para 1):

> "Moreover, the agreement states that any material posted on the website **"may be used by [Trigger Street] throughout the world in perpetuity for any purpose whatsoever, including, but not limited to, reproduction, disclosure, transmission, publication, broadcast, posting and sublicensing."**" (Citing TS's *Submissions* section)

But, in fact, the <u>full</u> *Submissions* passage **makes a clear exemption for**

**screenplays** (Petitioner alleges the Defs accessed his <u>screenplay</u> on TS).  It reads:

> "Any material **(other than the <u>Material</u> [as defined and more fully addressed in the Triggerstreet <u>Screenplay Forum Participation Agreement</u>])** that you transmit to us or post anywhere on the Site or through the Services, including, without limitation, the Shorts, may be used by TSCI throughout the world in perpetuity for any purpose whatsoever, including, but not limited to, reproduction**,** disclosure..."

Thus, the Court abused its authority, by selectively omitting imperative facts

From the *Submissions* section to override the *International Use* section, to

prejudicially rule against the Petitioner. This should trouble the Appellate Court. American creators need to know US Courts will mete out justice fairly. Further, the District's anomalous approach goes against the *Plain Meaning Rule*, and begs two questions: **(1)** Does the District intend for all Ninth Circuit courts to apply its new *random cross-reference* method to all future contract disputes? Or **(2)** Did the District only intend to apply this new approach to the Petitioner's claims?

Finally, the Complaint includes news article exhibits about Spacey's travels to Spain and London to recruit TS members. Page two of the Complaint explains:

> "TS's Terms Of Use stated the site was solely for use in the USA, yet, in fact, the site operated around the world. Further, secretly and without consent from U.S. members, Defs **Spacey and Brunetti went to London** (2002), and **Spain** (2009) to recruit new members, touting TS's "400,000 *members around the world*.""

This passage presents two facts that the District's Order can never reconcile:

1. TS's *Terms* state that TS was solely for use in the United States of America.

2. Spacey (and Brunetti) travelled overseas to recruit new TS members.

These two facts constitute a willful *Breach of Contract*, as the Defs cannot **post a clause restricting international use**, then travel abroad to **recruit foreign members**. These same facts also constitute *Copyright Infringement*, as the Defs **exported** the Petitioner's work via a website alleging it was for use in the USA, then covertly travelled abroad to recruit foreign members (**accessors**).

24

**III.** THE ORDER'S UNUSUAL **SATURDAY** ISSUANCE CAN BE SEEN AS (1) TIMED TO ASSIST DEF SPACEY'S CRIMINAL CASE, AND (2) A QUID PRO QUO FOR FUTURE APPELLATE APPOINTMENT, AS DEF EMANUEL IS PRESIDENT TRUMP'S TALENT AGENT; THUS, THE ORDER MAY ERODE CONFIDENCE IN THE COURT.

    A. 12/22/2018, the Court Issued An Unprecedented "*Saturday*" Order

    B. 2 days later, 12/24/18, After A Year In Hiding, Def Spacey Emerged To Use The Order To Intimidate His Sexual Assault Victim.

    C. Spacey's Video Remarks Create The Impression The Saturday Order Was Coordinated to Benefit Spacey's Criminal Case.

    D. The Fact That Defendant Ari Emanuel is President Donald Trump's Talent Agent Undermines The Validity And Prudence Of The Order.

    E. The Order Uses No Argument Made By The Defendants' 10 Attorneys, In Their Three Motions To Dismiss

In November, 2017, Def Spacey disappeared from the public spotlight. No photographs were taken of him for over a year, and no one knew where he was —not even his closest friends. His disappearance was an international story.

But why did Defendant Spacey disappear in mid November, 2017?

Because on November 13, 2017, the Petitioner filed the first incarnation of this lawsuit, *Briggs v Universal* (dismissed in March, 2018, when the Petitioner, like the rest of the world, **could not find Def Spacey** to serve him). A few months later, the Petitioner re-filed the suit.

More than a year after Spacey disappeared, on **Saturday**, December 22, 2018, with potentially over $1 billion at stake, the District entered its Order. Beyond the questionable appearance of issuing the Order on a Saturday —when

news and legal watchdogs aren't monitoring court activity— the timing of the Order permits the unsettling suggestions that it was timed to assist Def Spacey's criminal case, AND/OR the Order was a *quid pro quo* to Defendant Emanuel (who is President Donald Trump's personal talent agent), for future appellate consideration.

Emboldened by the District Order, on Christmas Eve, December 24, 2018 (two days after the District Court issued its *Saturday* Order), after over a year in seclusion, Def Spacey emerged from hiding, releasing a now notorious Youtube video, described as "*bizarre*" around the world. Spacey concluded the infamous video by growling: "**If I didn't <u>pay the price</u> for the things we both know I did <u>do</u>, I'm certainly not going to pay the price for the things I didn't do**."

In plain sight, Spacey used this Court's Saturday Judgment to send a thuggish message to the alleged victim in his criminal sexual assault case, pending in Nantucket, Massachusetts (arraignment then set for January 7, 2019). One concludes it was an intimidation video, by considering the irrefutable case facts:

1. Spacey created the TriggerStreet (**TS**) social network in 2002;

2. November 2014, six days after the Petitioner filed Notice Of Appeal, Spacey destroyed TS (presumedly to destroy evidence against the Defendants) ;

3. TS lured members by claiming TS was "solely for use in the USA";

4. Spacey travelled to England and Spain to recruit new TS members;

5. In Spain, Spacey boasted TS had over 400,000 members *around the world*.

These facts, alone, confirm Petitioner's *Breach of Contract* and *Infringement* claims. Yet, the District Court's Order cleared Spacey of all charges. Thus, when Spacey said, "**If I didn't <u>pay the price</u> for the things we both know <u>I did do</u>, I'm certainly not going to pay the price for the things I didn't do**," the subtext of his message to his victim was: '**If the District court lacked the will to make Spacey "<u>pay the price</u>" for the irrefutable facts of *Briggs v Spacey*, then no criminal court would make him pay for murkier sexual assault charges.**'

Had the judgment come later, Spacey could not have sent his bullying video message to his victim (again, Spacey's criminal arraignment was Jan 7, 2019).

Perhaps worse, the Order may undermine faith in the Court. Specifically, Def Emanuel is President Trump's talent agent (the man who personally blocked any further viewing of Trump's salacious *Access Hollywood* tapes). Currently, there are six judicial vacancies on the Ninth Circuit—which can only be filled by Presidential appointment. Thus, if at some later date the Honorable Judge Chhabria received an appellate appointment, many will see this Order as the *quid pro quo*.

Where strong and direct connections exist between a litigant and a sitting US President, the Court should forgo pre-trial dispositive motions.

**IV.** THE DISTRICT MADE CLEAR MIXED ERRORS OF LAW AND FACT, BY ARBITRARILY RULING THE PETITIONER FAILED TO STATE A CLAIM; AND BY ARBITRARILY DEEMING THE BREACH CLAIMS "*IMPLAUSIBLE*", THE DISTRICT COURT ABUSED ITS AUTHORITY.

Paragraph 2 of the Order, the Court summarily and arbitrarily ruled:

"Briggs's interpretation of triggerstreet.com's Terms of Use, as incorporated by reference in the complaint, is implausible on the face of the agreement."

The Petitioner's interpretation of TS's *Terms of Use* was the same **plausible** interpretation as roughly 300,000 American members of TS, who joined believing the social network would restrict international (foreign) accessors. The District's opinion is neither supported by the case facts, NOR the peripheral facts. Consider:

**FACT #1**: The Defendants first responded to the Petitioner's Complaint with a huge team of **seven (7) attorneys**, a months later the Defense had grown to a seemingly unprecedented team of at least **ten (10) attorneys** —against one *pro se* Plaintiff.  Ten attorneys do not respond to implausible claims.

**FACT #2**: Oct, 2017, Petitioner filed *Briggs v Universal* (the first iteration of this action). The Complaint detailed MRC's corrupt business practices, with copious evidentiary attachments. Three months later, Feb 2018, the disgraced MRC was defunct, absorbed into a new company, *Valence Media* (also owned by Defs Satchu and Wiczyk).  Implausible complaints do not topple corporations.

28

FACT #3: From the day Plaintiff filed *Briggs v Universal* (11/13/2017), until two days after *Briggs v Spacey* was dismissed (Saturday, 12/22/2018), Defendant Spacey was not seen in public anywhere on the planet. Academy award winning actors do not hide from implausible complaints.

FACT #4: During proceedings, Petitioner submitted emails from litigation financiers (interested in financing the Petitioner's action). Legal financiers require a 60% probability of success to invest; they do not pursue implausible cases.

**V.** THE DISTRICT ABUSED ITS AUTHORITY BY NEITHER ACTING ON MULTIPLE MOTIONS TO DEFAULT DEFS, NOR ACTING ON REPORTS OF PRETRIAL FRAUD AND MISCONDUCT BY THE DEFS.

The District ignored Petitioner's multiple motions to default Defs, **and** his reports of pretrial fraud and misconduct by the Defs; ignoring such reports as: (1) Petitioner moved for a Default Judgment against Spacey for returning Petitioner's service-by-mail documents, marked "Refused"; (2) three times the Petitioner requested the Clerk enter Def Spacey into default; (3) Petitioner moved to default Def Damon, Affleck, Blomkamp and Brunetti for failure to respond; (4) the Petitioner informed the District that MRC's BES reported its HQ is an office (which does not exist) in WME's HQ building; (5) the Petitioner's process server reported that Def Spacey's registered agent's office had been closed for 4-5 years.

Ignoring these issues was a biased dereliction, and an abuse of power.

29

**VI.** PLAINTIFF'S CLAIMS, ALLEGATIONS, AND RESEARCH FROM THIS MATTER ARE CURRENTLY SUPPORTING LATERAL ACTIONS.

In this matter, the Petitioner's court filings have garnered the interest of Hollywood insiders, some of whom have co-opted the Petitioner's research in lateral action. The very week the Petitioner filed *this* Appeal, ***Variety*** and ***Hollywood Reporter*** reported the Writer's Guild of America, and writer David Simon, were taking action against Def Emanuel's company *WME*, and CAA, for conflict of interest, as the companies have become "employers of their own clients." To this point, on page 11 of the Complaint, para 48, the Petitioner wrote:

> "Defendant Ari Emanuel is a quiet partner in MRC. Thus, by casting WME-IMG actors in MRC films, Def Emanuel profits both as an agent and as a studio owner. This arrangement is a conflict of interest, in violation of CA Labor Code 1700.39."

This is but one example (of many) of Petitioner's case facts being utilized by other parties —confirming the plausibility and validity of every cause and claim.

### CONCLUSION

For the reasons stated above, the Petitioner asks this Court to **reverse** the District Order, in favor of the Plaintiff, or **remand** the matter for trial. The Petitioner also requests that the Court answer this appeal with a published decision.

Dated: April 1, 2019        Respectfully submitted

By:  /s/ Steve Wilson Briggs                .
Steve Wilson Briggs
Appellant, In Persona Propria

30