No. 19-15128

# In the United States Court of Appeal for the Ninth Circuit

STEVE WILSON BRIGGS

*Appellant/Petitioner,*

*v.*

ARI EMANUEL, MATT DAMON, BEN AFFLECK, MRC, NEILL BLOMKAMP, NBCUNIVERSAL, ASIF SATCHU, BILL BLOCK, SONY PICTURES ENT, MORDECAI WICZYK, DANA BRUNETTI

*Appellees/Respondents.*

On Appeal from the U.S. District Court for Northern District of California
CASE NO. 3:18-CV-4952-VC
THE HONORABLE VINCE CHHABRIA

**APPELLEES' JOINT SUPPLEMENTAL EXCERPTS OF RECORD**
**VOLUME 6 of 7**
**[PAGES 1020 - 1286]**

\*Stephen G. Larson (SBN 145225)
Jonathan E. Phillips (SBN 233965)
A. Alexander Lowder (SBN 269362)
**Larson O'Brien LLP**
555 S. Flower Street, 44th Floor
Los Angeles, California 90071
Telephone:     (213) 436-4888
Facsimile:     (213) 623-2000
Email: Slarson@larsonobrienlaw.com

*Counsel For Appellee* Trigger Street
Productions, Inc.

Kelli L. Sager (SBN 120162)
Rochelle L. Wilcox (SBN 197790)
Brendan N. Charney (SBN 293378)
**Davis Wright Tremaine LLP**
865 S. Figueroa Street, Suite 2400
Los Angeles, California  90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Email:  Kellisager @dwt.com

*Counsel For Appellee* NBCUniversal Media, LLC

Michael J. Kump (SBN 100983)
Gregory P. Korn (SBN 205306)
Kate Mangels (SBN 301811)
**Kinsella Weitzman Iser Kump & Aldisert LLP**
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California  90401
Telephone: (310) 566-9800
Email:  Mkump@kwikalaw.com

*Counsel For Appellee* MRC II Distribution Company,
LP, Mordecai Wiczyk, Asif Satchu, Sony Pictures
Entertainment, Inc., and Ariel Emanuel

# TABLE OF CONTENTS

| DATE | DESCRIPTION | VOL. | PAGE |
|---|---|---|---|
| 01/22/19 | [Dkt. 94] Order Denying (92) Motion for Leave to File Motion for Reconsideration, Motion to Alter Judgement filed by Plaintiff Steve Kenyatta Wilson Briggs | 1 | ER 1 |
| 12/22/18 | [Dkt. 91] Judgment Signed by Judge Vince Chhabria | 1 | ER 2 |
| 12/22/18 | [Dkt. 90] Order Granting Motions to Dismiss (Dkts. 27, 48, and 51) and Denying Motion to Declare Plaintiff a Vexatious Litigant | 1 | ER 3 |
| 01/22/19 | [Dkt. 95] Notice of Appeal to the 9th Circuit Court of Appeals filed by Plaintiff Steve Kenyatta Wilson Briggs | 2 | ER 5 |
| 01/14/19 | [Dkt. 92] Motion for Leave to File Motion for Reconsideration, Motion to Alter Judgment filed by Plaintiff Steve Kenyatta Wilson Briggs | 2 | ER 12 |
| 12/17/18 | [Dkt. 89] Errata by Plaintiff Steve Kenyatta Wilson Briggs (Certificate of Service) | 2 | ER 67 |
| 11/30/18 | [Dkt. 79] Reply re (51) Motion to Dismiss Complaint Pursuant to FRCP 12(b)(6) and/or 12(b)(1) filed by Ari Emanuel, MRC, Asif Satchu, Sony Pictures Ent. Inc., Mordecai Wiczyk | 2 | ER 71 |
| 11/30/18 | [Dkt. 78] Reply re (48) Motion to Dismiss filed by NBCUniversal Media, LLC | 2 | ER 79 |
| 11/23/18 | [Dkt. 68] Opposition/Response re (48) NBCU Motion to Dismiss filed by Plaintiff Steve Kenyatta Wilson Briggs | 2 | ER 94 |
| 11/21/18 | [Dkt. 67] Opposition/Response re (51) MRC Defendants' Motion to Dismiss Complaint Pursuant to FRCP 12(b)(6) and/or 12(b)(1) filed by Plaintiff Steve Kenyatta Wilson Briggs | 2 | ER 106 |
| 11/20/18 | [Dkt. 66] Reply re (27) Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(B)(6) and/or 9(B) filed by Trigger Street Productions | 2 | ER 118 |

## TABLE OF CONTENTS

| DATE | DESCRIPTION | VOL. | PAGE |
|------|-------------|------|------|
| 11/19/18 | [Dkt. 63] Opposition/Response re (27) Trigger Street Productions' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and/or 9(B) filed by Plaintiff Steve Kenyatta Wilson Briggs | 2 | ER 129 |
| 11/14/18 | [Dkt. 62] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Declaration of Zena Briggs, concerning the refusal of service of process by Defs. Spacey and Brunettis agency for service of process) (Altman, Greenfield & Selvaggi) | 2 | ER 159 |
| 11/14/18 | [Dkt. 61] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Proof of Service by certified mail, with return receipt and Acknowledgment of Receipt of Summons, Declaration of Cecile Lusby) | 2 | ER 162 |
| 11/13/18 | [Dkt. 60] Status Report (Addendum) regarding Service of Process developments concerning Defs. Spacey and Brunetti, and their agents final efforts to evade and refuse service by Plaintiff Steve Kenyatta Wilson Briggs | 2 | ER 165 |
| 11/12/18 | [Dkt. 59] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Proof of Service of Defs. Damon and Affleck, Declaration of Melvin Jackson) | 2 | ER 172 |
| 11/12/18 | [Dkt. 58] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Proof of Service, Declaration of Nexus Asson, Re service of Defs. MRC, Satchu, Wiczyk) | 2 | ER 175 |
| 11/09/18 | [Dkt. 53] Declaration of Gregory Korn in Support of (51) Motion to Dismiss Complaint Pursuant to FRCP 12(b)(6) and/or 12(b)(1) filed by Ari Emanuel, MRC, Asif Satchu, Sony Pictures Ent. Inc., Mordecai Wiczyk (358 pgs)  (Part 1)  ER 182-ER 256 | 2 | ER 182 |
| 11/09/18 | [Dkt. 53] Declaration of Gregory Korn in Support of (51) Motion to Dismiss Complaint Pursuant to FRCP 12(b)(6) and/or 12(b)(1) filed by Ari Emanuel, MRC, Asif Satchu, Sony Pictures Ent. Inc., Mordecai Wiczyk (358 pgs)  (Part 2) ER 257-ER 539 | 3 | ER 257 |

# TABLE OF CONTENTS

| DATE | DESCRIPTION | VOL. | PAGE |
|------|-------------|------|------|
| 11/09/18 | [Dkt. 52] Request for Judicial Notice in Support of Defendants' Motion to Dismiss First Amended Complaint Pursuant to FRCP 12(b)(6) and/or 12(b)(1) filed by Ari Emanuel, MRC, Asif Satchu, Sony Pictures Ent. Inc., Mordecai Wiczyk | 4 | ER 540 |
| 11/09/18 | [Dkt. 51] Motion to Dismiss Complaint Pursuant to FRCP 12(b)(6) and/or 12(b)(1) filed by Ari Emanuel, MRC, Asif Satchu, Sony Pictures Ent. Inc., Mordecai Wiczyk | 4 | ER 542 |
| 11/09/18 | [Dkt. 49] Request for Judicial Notice re (48) Motion to Dismiss filed by NBCUniversal Media, LLC | 4 | ER 562 |
| 11/09/18 | [Dkt. 48] Motion to Dismiss filed by NBCUniversal Media, LLC | 4 | ER 722 |
| 11/09/18 | [Dkt. 46] Order by Judge Vince Chhabria denying (39) Motion for Service by Publication, and Motion for Extension of Service Deadline | 4 | ER 749 |
| 11/08/18 | [Dkt. 45] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (temporary "illustrative" service statements) | 4 | ER 750 |
| 11/08/18 | [Dkt. 44] Second Motion for Service by Publication for Defs Spacey and Brunetti filed by Plaintiff Steve Kenyatta Wilson Briggs | 4 | ER 765 |
| 11/05/18 | [Dkt. 41] Clerk's Declination of Default as to Kevin Spacey and Dana Brunetti.  (Plaintiff has not submitted evidence satisfactory to the court establishing actual delivery to the persons to be served per CA CCP Section 417.20) | 4 | ER 785 |
| 11/05/18 | [Dkt. 40] Request for Judicial Notice filed by Plaintiff Steve Kenyatta Wilson Briggs | 5 | ER 786 |
| 11/05/18 | [Dkt. 39] Motion for Service by Publication filed by Plaintiff Steve Kenyatta Wilson Briggs | 5 | ER 886 |

## TABLE OF CONTENTS

| DATE | DESCRIPTION | VOL. | PAGE |
|------|-------------|------|------|
| 11/05/18 | [Dkt. 38] Status Report Regarding Service of Process on All Defendants by Plaintiff Steve Kenyatta Wilson Briggs | 5 | ER 893 |
| 11/05/18 | [Dkt. 37] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Service of Process of Summons and Complaint by U.S. mail, C. Lusby) | 5 | ER 903 |
| 11/05/18 | [Dkt. 36] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Service of Process of Summons and Complaint by U.S. mail 9/27/18) | 5 | ER 906 |
| 11/05/18 | [Dkt. 35] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Service of Process of Summons and Complaint by U.S. mail) | 5 | ER 909 |
| 11/05/18 | [Dkt. 34] Notice of Voluntary Dismissal of Sound Point Capital Management by Plaintiff Steve Kenyatta Wilson Briggs | 5 | ER 912 |
| 10/31/18 | [Dkt. 33] Fourth Motion for Default Judgment by the Clerk as to Request for Entry of Default filed by Plaintiff Steve Kenyatta Wilson Briggs | 5 | ER 914 |
| 10/31/18 | [Dkt. 32] Certificate of Service (correction) by Plaintiff Steve Kenyatta Wilson Briggs | 5 | ER 946 |
| 10/31/18 | [Dkt. 31] Clerk's Declination of Default | 5 | ER 949 |
| 10/31/18 | [Dkt. 29] Joinder re (27) Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(B)(6) and/or 9(B) by Sound Point Capital Management, LC | 5 | ER 950 |
| 10/29/18 | [Dkt. 28] Motion for Default Judgment by the Clerk as to Request for Entry of Default against Defs. Trigger Street Productions, and Sound Point filed by Plaintiff Steve Kenyatta Wilson Briggs | 5 | ER 953 |
| 10/29/18 | [Dkt. 27] Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(B)(6) and/or 9(B) filed by Trigger Street Productions (Part 1) ER 982- ER 1019 | 5 | ER 982 |

# TABLE OF CONTENTS

| DATE | DESCRIPTION | VOL. | PAGE |
|------|-------------|------|------|
| 10/29/18 | [Dkt. 27] Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(B)(6) and/or 9(B) filed by Trigger Street Productions (Part 2) ER 1020-ER 1190 | 6 | ER 1020 |
| 10/29/18 | [Dkt. 26] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs re (17) Certificate of Service, (16) Certificate of Service (Supplemental) proof of signed return receipts received for Defs. Trigger Street Productions, Inc. and Sound Point Capital Management, LC (09/17/18); and for Kevin Spacey, Dana Brunetti, (09/27/18) | 6 | ER 1191 |
| 10/26/18 | [Dkt. 25] Clerk's Declination of Default | 6 | ER 1212 |
| 10/25/18 | [Dkt. 24] Second Motion for Default Judgment by the Clerk as filed by Plaintiff Steve Kenyatta Wilson Briggs | 6 | ER 1213 |
| 10/22/18 | [Dkt. 23] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Declaration re service of process of Defs MRC, Satchu, and Wiczyk) | 6 | ER 1224 |
| 10/22/18 | [Dkt. 22] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Proof of Service of Def. Sony Picture Entertainment, Inc.) | 6 | ER 1227 |
| 10/22/18 | [Dkt. 21] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Proof of Service of Def. NBCUniversal) | 6 | ER 1230 |
| 10/22/18 | [Dkt. 20] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Proof of Service of Defs. Ari Emanuel, Neill Blomkamp, Matt Damon, and Ben Affleck) | 6 | ER 1232 |
| 10/22/18 | [Dkt. 19] Certificate of Service by Plaintiff Steve Kenyatta Wilson Briggs (Declaration re service of Spacey, Brunetti, and Trigger Street Productions) | 6 | ER 1235 |

# TABLE OF CONTENTS

| DATE | DESCRIPTION | VOL. | PAGE |
|------|-------------|------|------|
| 10/22/18 | [Dkt. 18] Request for Entry of Default Against Defendants Kevin Spacey, Dana Brunetti, and Trigger Street productions, Inc. filed by Plaintiff Steve Kenyatta Wilson Briggs | 6 | ER 1237 |
| 10/09/18 | [Dkt. 17] (Second) Proof of Service of Summons and Complaint; Declaration of Dr. Morgan Marchbanks by Plaintiff Steve Wilson Briggs | 6 | ER 1242 |
| 10/09/18 | [Dkt. 16] (First Proof of Service of Summons and Complaint; Declaration of Dr. Morgan Marchbanks by Steve Willson Briggs | 6 | ER 1245 |
| 10/04/18 | [Dkt. 11] Notice of Service of Process Issues by Steve Wilson Briggs | 6 | ER 1248 |
| 08/15/18 | [Dkt. 3] Summons Issued as to Ben Affleck, William Block, Neill Blomkamp, Dana Brunetti, Matt Damon, Ari Emanuel, MRC, NBCUniversal Media, LLC, Asif Satchu, Sony Pictures Ent., Inc., Sound Point Capital Management, LC, Kevin Spacey, Trigger Street Productions, Mordecai Wiczyk | 7 | ER 1287 |
| 08/15/18 | [Dkt. 1] Complaint against Ben Affleck, William Blcok, Neill Blomkamp, Dana Brunetti, Matt Damon, Ari Emanuel, MRC, NBCUniversal Media, LLC, Asif Satchu, Sony Pictures Ent., Inc., Sound Point Capital Management, LC, Kevin Spacey, Trigger Street Productions, Mordecai Wiczyk filed by Steve Wilson Briggs | 7 | ER 1288 |
| | Court Docket | 7 | ER 1528 |

# EXHIBIT 2

1   Steve Wilson Briggs

2   681 Edna Way

3   San Mateo, CA 94402

4   510 200 3763

5   snc.steve@hotmail .com

6   Pro Se **PLAINTIFF**

**FILED**

OCT 08 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8                  **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10   STEVE WILSON BRIGGS              ) CASE NO:

11   Plaintiff,                       )

12                vs.                  ) **CV  13  4679 PJH**

13   NEILL BLOMKAMP,                  )

14   SONY PICTURES ENT., INC.,        ) **COMPLAINT FOR**

15   TRISTAR PICTURES, INC.,          ) **COPYRIGHT INFRINGEMENT**

16   MEDIA RIGHTS CAPITAL,            )

17   QED INTERNATIONAL,               )

18   Defendants                       )

19                        **NATURE OF ACTION:**

20     1.  Pursuant to 17 U.S.C. § 101, et seq, this is an action for copyright infringement of the

21   Plaintiff's screenplay "Butterfly Driver" (originally "Uberopolis: City of Light") written in 2005;

22   W.G.A. reg. #1103287, 2005; U.S. Copyright Office reg. certificate # PAu 3-683-232, June 21st,

23   2013. **[See Exhibit C].** The infringement commensed on August, 9th, 2013, when The

24   Defendants distributed, and publically displayed, "Elysium"; a film infringing on the Plaintiff's

25   work, including the heart of his story, plot, characters, unusual settings, themes, conflict, catalyst,

26   crisis, climax-twist, his hero's unique "character-affliction", the hero's "keepsake necklace", and

27   more. The Plaintiff contends: 1) the Defendants' "Elysium" is substantially similar to his work; 2)

28   the Defendants had access to his work;  3) the Defendants tried to disguise their infringement.

                                          1

                                                      COMPLAINT

**JURISDICTION**

2.  **Jurisdiction.** This court has subject matter jurisdiction over this complaint pursuant to 28 U.S.C. §§ 1331 & 1338(a), as this action is for copyright infringement arising under the copyright laws of the United States. This court also has subject matter jurisdiction pursuant to 28 U.S.C. 1332(a)(2) as Defendant, Neill BlomKamp, is a Canadian resident and a citizen of Canada and South Africa; not a citizen of the United States.

3.  **Venue.** Venue is proper, and this court has personal jurisdiction, pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to this complaint occured in this district. It is also the proper venue pursuant to 28 U.S.C. § 1391(d) by virtue of defendant's business transactions with this district; and under 326 US 310, as all defendants meet minimum contact rule.

4.  **Intradistrict Assignment.** San Francisco is the proper division assignment as a substantial part of the events and omissions giving rise to this lawsuit occurred in this district.

**THE PARTIES**

5.  **The Plaintiff,** STEVE WILSON BRIGGS, is a resident of California, currently residing in San Mateo, California. He is the writer, producer and director of the feature film, "The Amazing Mr. Excellent", several short film projects, writer of several unproduced screenplays, musician, and a teacher's aide at Sequoia High School in Redwood City, California.

6.  **Defendant,** NEILL BLOMKAMP is a resident of Vancouver, Canada. He is credited with writing, directing and co-producing the screenplay in question, "Elysium".

7.  **Defendant,** SONY PICTURES ENT., INC., is the American based television and film production and distribution wing of Japanese media conglomerate, Sony. It is headquartered at 10202 West Washington Blvd., Culver City, California. Sony provided Neill Blomkamp with $115,000,000 to make "Elysium".

8.  **Defendant,** TRISTAR PICTURES, INC., is an American film production/ distribution studio (and a property of Sony Pictures). TriStar is located in Culver City California. TRISTAR PICTURES is the distributor of the film "Elysium".

9.  **Defendant,** MEDIA RIGHTS CAPITAL, is a film studio located at 1800 Century Park E, Ste 1000, Los Angeles, CA 90067. Media Rights Capital is credited as a studio that

2

COMPLAINT

1   helped create "Elysium", and helped facilitate film funding.

2       10.     **Defendant,** QED INTERNATIONAL is a motion picture production, financing

3   and sales distribution company, headquartered at1800 N Highland Ave, 5th Floor, Los Angeles,

4   CA 90028. QED INTERNATIONAL is credited as a studio responsible for making Elysium.

5                                **BACKGROUND**

6       11.     In May, 2005, the Plaintiff completed the first draft of "Uberopolis: City of light",

7   sending it via email to family and friends. **[See Exhibit D]**

8       12.     December 16th, 2005, the Plaintiff registered a revised version of "Uberopolis: City

9   of Light" with theWriter's Guild of America (West); registration ID #: 1103287. **[See Exhibit E]**

10       13.     In January, 2006, the Plaintiff began a 23 month campaign to market his script..

11   Midway through this campaign, approximately January, 2007, the Plaitiff revised his script and

12   renamed it "Butterfly Driver". During this marketing campaign, the Plaintiff sent dozens of query

13   letters and emails to literary agents, managers, and film companies. **[See Exhibit F** -a few of

14   many letters and emails]. The Plaintiff also posted loglines (short synopses) of the script on many

15   screenwriter and filmmaking websites; entered events, like the Philadelphia Logline Festival **[See**

16   **Exhibit G]**; entered the script in screenwriting competitions, such as the 2006 Slamdance

17   Screenplay Competition **[See Exhibit H];** and posted script loglines on Inktip.com; one of the

18   largest screenwriter to industry professional website in the world. **[See Exhibit I]**

19       14.     February, 2007, the Plaintiff posted the entire "Butterfly Driver"" script on Kevin

20   Spacey's and Dana Brunetti's screenwriter's website, "TriggerStreet" (triggerstreet.com). ]**See**

21   **Exhibit J]** TriggerStreet was named one of the "50 best websites of 2004" by Time Magazine;

22   designed to connect screenwriters with other industry professionals. TriggerStreet has (or had)

23   tens of thousands of users. Anyone can join, then access thousands of new screenplays

24   (anonomously, if they wish). TriggerStreet is the ONLY place the Plaintiff released a version of

25   his script with the inciting incident and the "keepsake necklace". This was the only website the

26   Plaintiff ever posted his screenplay -and the only site he ever revealed his hero's secret "character

27   affliction". **TriggerStreet is where the Defendants had access to the Plaintiff's script.**

28   Triggerstreet.com is now "Trigger Street Labs", at: http://labs.triggerstreet.com/labs/Screenplays).

<div align="center">3</div>

<div align="right">COMPLAINT</div>

1    15.    From February to August of 2007, the Plaintiff posted "Butterfly Driver" on

2    TriggerStreet three or four times. During this time the Plaintiff communicated about Butterfly

3    Driver with Triggerstreet writers, Thomas Gilman, Jason Beck, and Bob Thielke **[Exhibit K, L,**

4    **M]**, all who gave the Plaintiff great guidance, which helped make his script more marketable.

5    **16.**    Late July, to early Augus,t 2007, the Plaintiff posted the last revised version of

6    Butterfly Driver" **[See Exhibit A]** on TriggerSteet for a few days. During this time, there were

7    more script downloads than usual -and a person identifying himself as a writer or producer for

8    the TV series "The Wire" contacted the plaintiff (through the website's message board) to say he

9    enjoyed the Plaintiff's script. During this same period, a young director (whose name the Plaintiff

10   can't recall) contacted the Plaintiff (through the message board), to express appreciation for his

11   script. The Plaintiff believes this director may have been Defendant, Neill Blomkamp.

12   17.    In December, 2007, now intent to produce his own movies, the Plaintiff stopped

13   marketing his script; "Butterfly Driver", hoping to film it himself, someday.

14   18.    The Plaintiff began production of his first feature film, "The Amazing Mr. Excellent",

15   in January, 2008; which won "Best Of Fest" at the 2010, Temecula International Film Festival.

16   19.    On May 27th, 2013, the Plaintiff went to see a movie with friend, and Sequoia High

17   School teacher, Cameron Farris. Before the feature, the theater previewed a trailer for the movie,

18   "Elysium", to be released on August, 9th, 2013. The trailer featured a plot, characters and settings

19   seemingly misappropriated from the plaintiff's "Butterfly Driver".

20   20.    Later that evening, the Plaintiff, Steve Wilson Briggs, read about "Elysium" online, at

21   Wikipedia.com; and discovered *Elysium's* story structure closely conformed to his script.

22   21.    Approximately, June 6th, 2013, the Plaintiff found, and downloaded, a copy of the

23   Defendants' script, "Elysium" (probably an unauthorized posting) at the web address:

24   http://writetoreel.com/forum/showthread.php?1643-Elysium-Script-PDF . **[See Exhibit B]**

25   22.    The text of the script conformed to the trailer dialogue viewed on May 27th, 2013.

26   23.    On June 21st, 2013, the Plaintiff registered his screenplay, "Butterfly Driver", with

27   the U.S. Copyright Office, as required to file an infringement complaint (Plaintiff's official

28   copyright registration effective date: June 21st, 2013, certificate number PAu 3-683-232).

4

COMPLAINT

ER 1024

1      **STATEMENT OF FACTS COMMON TO ALL CLAIMS FOR RELIEF**

2          24.   On August 9th, 2013, the Defendants released, distributed and displayed publicly,

3      "Elysium"in The USA and 11 other countries (http://www.imdb.com/title/tt1535108/releaseinfo)

4      -marking the date of the commencement of infringement.

5          25.   On August 10th, 2013, the Plaintiff viewed the Defendants' film "Elysium" at a

6      local theater. The script the Plaintiff found online was certainly the "Elysium" script, but not

7      the final draft.

8          26.   Upon viewing the Defendants' film, the Plaintiff concluded: the film and screenplay,

9      "Elysium", infringed on the Plaintiff's copyright protected story "Butterfly Driver" -as a whole,

10     and on the parts; including the Plaintiff's five story elements (character, setting, plot, conflict,

11     theme), his four key "plot-points" (catalyst, crisis, climax, inciting incident), his peculiar

12     characters, his hero's "character affliction", his unusual "keepsake necklace" and much more.

13           **PRIMARY ACTS OF COPYRIGHT INFRINGEMENT**

14             **1)** PLOT INFRINGEMENT**:**

15         27.   The basic plot of the Defendants' "Elysium" is almost identical to the basic plot of the

16     Plaintiff's "Butterfly Driver". Compare:

17                 "Butterfly Driver" Plot :

18         28.   A poor man, living in the impoverished ruins of Earth, pays his family's emmigration

19     out of their dangerous "zone" city by doing a dangerous mission for a disabled transporter -only

20     to learn his seven year old daughter will die within seven days without medicine found on a

21     satellite world for the super-rich (Uberopolis). But the hero is poor; and getting to the satellite

22     world requires big money and special identification. Perhaps impossible, without the help of an

23     outlaw political network. But the hero suffers the affliction of sudden, short, excrutiating

24     headaches. The hero also carries secrets the World President (who has been genetically

25     reprogrammed to appear much younger than he is) will kill to suppress. The President deploys a

26     special agent to apprehend the hero. The special agent doesn't want the assignment, so he

27     negotiates for medical aid for his son. An important woman gives the hero a special "keepsake

28     necklace". In the climatic finish, as the hero battles the villain, just when it finally looks as if the

5

COMPLAINT

ER 1025

1 | hero might prevail, he falls to his knees, clutches his head and screams with a terrible headache.

2 | The hero somehow defeats the villain -but sustains a life threatenning injury. As the hero drifts

3 | off toward death, he dreams about the "keepsake necklace". The dream saves the hero. The hero's

4 | action impacts the world: allowing people to vote in an open election.

5 | <u>"Elysium" Plot</u> :

6 |     29.   A poor man, living in the impoverished ruins of Earth has five days to get to a satellite

7 | world for the super-rich (Elysium) to get medical care to save himself (and his girl-friend's sick

8 | and dying six year old daughter). But the hero is poor; and getting to the satellite world requires

9 | big money and special identification. Impossible without the help of an outlaw, disabled human

10 | trafficker -who requires that the hero do a dangerous mission in exchange for emmigration to the

11 | satellite world. While downloading information into his brain, the hero acquires the affliction of

12 | sudden, short, excrutiating headaches. The hero now carries secrets a powerful Elysium official

13 | (who has been genetically "re-atomized" to appear much younger than she is) will kill to possess.

14 | The official deploys a special agent to apprehend the hero. The special agent doesn't want the

15 | assignment, so he negotiates for restored privileges and a mansion on Elysium. The hero carries a

16 | "keepsake necklace", given to him by an important woman from his past. In the climatic finish, as

17 | the hero battles the special-agent villain, just when it looks as if the hero might finally prevail, the

18 | hero suddenly falls to his knees, clutches his head and screams with a terrible headache. But

19 | somehow the hero defeats the villain. But the hero must die to save much of the world. As he

20 | prepares to die the hero takes comfort in his "keepsake necklace", in a dream-like montage.

21 | The hero's action impacts the world: bringing medical aid, and perfect health, to the world.

22 |                   SUMMARY: Plot Infringement

23 |     31.   The Plaintiff's plot features: **1)** a giant satellite world for the super-rich; **2)** a hero

24 | prone to excrutiating headaches (which knock him to his knees); **3)** a villain who has been

25 | genetically reprogrammed to appear much younger than he/she is; **4)** advanced medicine found

26 | on the satellite world; **5)** a hero who must get to the satellite world for medicine (medical care);

27 | **6)** a "plight of immigrant" theme; **7)** a sick girl, who will die without the hero's action; **8)** a hero

28 | who is poor and needs I.D. and transport to a satellite world; **9)** an "anguish of living without

6

COMPLAINT

1  healthcare" theme; **10)** a disabled transporter who helps the hero; **11)** an agent (sent by the villain

2  to apprehend the hero) who accepts the assignment after negotiating; **12)** a keepsake necklace,

3  carried by the hero, which factors into the stories conclusion; **13)** an overpopulated, impoverished

4  Earth, ruled by a rich elite who live on the satellite world.

5      31.   The collection of unique plot features, in paragraph 30, outline a crafted expression,

6  the plot of the Plaintiff's screenplay, "Butterfly Driver"; copyright of the plaintiff.

7      32.   The Defendants' "Elysium" uses each aspect of the Plaintiff's plot, listed in paragraph

8  30, and much more; infringing on the Plaintiff's copyright protect work.

9      33.   Further, in changing minor details about their work (e.g changing the hero's

10  backstory; villain's gender) the Defendants made obvious effort to disguise their infringement.

11                    2) CHARACTER INFRINGEMENT

12      34.   Several characters from the defendants' movie, "Elysium", infringe on copyright

13  protected characters from the Plaintiff's "Butterfly Driver". Compare:

14              **THE HERO:**  Arlo vs Max

15      35.   The heroes of both movies are  tough, poor men, 35-45 years of age, who carry

16  keepsake necklaces, and suffer a unique affliction:  short, sudden, excrutiating headaches, which

17  cause the hero to stumble, grab his head and scream. Both heroes have with the same goals:

18      36.   THE HERO'S GOAL (**Butterfly Driver**): the hero has less than 5 days to get from

19  Earth to an orbiting satellite world for the rich, to get medicine to save his daughter.

20      37.   THE HERO'S GOAL, (**Elysium**): the hero has less than 5 days to get to an orbiting

21  satellite world for the rich, to get medical care to save himself (and inevitably, his girl-friend's

22  daughter, too).

23                    SUMMARY: Arlo vs Max

24      38.   The Plaintiff's hero, Arlo Grainer: 1) is a 35-45 year old male, living around 100 years

25  in the future; 2) is poor, living in the overpopulated ruins of a largely impoverished Earth; 3) has

26  less than a week to get to the satellite world for the super rich; 4) contacts underworld figures to

27  get I.D. and transport to the satellite world; 5) suffers from rare, brief, excrutiating headaches; 6)

28  suffers a headaches in the thick of battle in the climax; 7) must get medical aid (medicine) to save

7

COMPLAINT

1    his daughter; 8) carries a keepsake necklace from a special woman.

2        39.    The characteristics and conditions listed in paragraph 38 are the expression of the

3    Plaintiff's copyrighted character, Arlo Grainer; from the Plaintiff's work "Butterfly Driver".

4        40.    Alll of the characteristics and conditions, listed in paragraph 38, also apply to the

5    Defendant's character "Max". Thus, the Defendants' character "Max" infringes on the Plaintiff's

6    copyright protected character, "Arlo", and his copyright protected work, "Butterfly Driver".

7        41.    Further, the Defendants made willful, obvious efforts to disguise their infringementt

8    by changing Elysium's hero's name, job, parental status, and changing the hero's goal from

9    "needing to get to the satellite world to save his 7 year old daughter", to "needing to get to the

10   satellite world to save himself " -then attaching a female friend's 6 year old daughter to the goal.

11            **THE HERO**'S "AFFLICTION"

12       42.    The Plaintiff's hero, Arlo,  suffers rare ophthalmodynia (ice picks) headaches, so

13   excrutiating they feel as if the sufferer's brain has been stabbed by an ice-pick. Thus, Arlo

14   occasionally falls to his knees, clutching his head, crying-out in pain. In the script's climax, Arlo

15   suffers a headache while fighting the villain. **[Exhibit A pp. 23, 46, 105]**

16       43.    ELYSIUM manifests the exact symptoms of the "affliction" for it's hero; even the

17   reactions to pain. Max also suffers a headache in the climax. **[Exhibit B pp. 62, 63, 77, 112].**

18       COMPARISON of PLAINTIFF & DEFENDANTS' AFFLICTION "HEADACHES"

19       44.    Note: the script "Elysium" contains four headache, but the film shows only three.

20    The Plaintiff's "Butterfly Driver" had three events -but the early WGA reg. version "Uberopolis:

21   CIty of Light" had four. The extra event from that script [EVENT #2] was added, for comparison.

22       LEGEND:    Plaintiff's "Butterfly Driver" (BD) - **in bold print [Exhibit A];**

23                 Defendants' "Elysium" - in regular print **[Exhibit B]**

24   45.   FIRST EVENT:

25   **(BD):  Arlo suddenly falls to his knees, grabs his head, and growls in pain, "GRRRR." His**

26   **eyes roll back as he fights his way back to his feet. [Exhibit A p. 9]**

27   (ELYSIUM):    Max tries to run, but he collapses. He clasps his head in pain... Max clasps his

28   head like a migraine. The data creating an epileptic white static in his head. **[Exhibit B p. 62,]**

                                        8

                                              COMPLAINT

46.   SECOND EVENT:

**(BD):   Arlo stands up then unexpectedly drops to his knees in pain. ARLO: "GGGRRRR! Argh!" Arlo's eyes roll back behind his head, showing only the whites of his eyes for a moment. Arlo cries out. ARLO: "AAAHHHH!"** ["Uberopolis:City of Light" p. 33]

(ELYSIUM):   Suddenly another blast of static pain grates through Max's brain. He screams, holding his head. He staggers to his feet. **[Exhibit B p. 63]**

47.   THIRD EVENT:

**(BD):   He (Arlo) suddenly falls to one knee and grabs his head, stricken by an ice-pick headache. He growls. Eyes rolled back, Arlo rises to his feet, holding his temple, as if defying the pain to stop him. [Exhibit A p. 46]**

(ELYSIUM):   Suddenly he has a mini seizure. The searing white light. The migraine. His head wants to explode. He collapses to the ground... (more)  **[Exhibit B p. 77]**

48.   FOURTH EVENT:

**(BD):   Arlo releases his grip. Drexler slowly drops to his knees, blood dripping from his face. ...As Arlo reaches for his gun a jolt of pain shoots through his head, driving him to one knee. Arlo's eyes roll in their sockets as he groans and struggles to his feet. BANG! A fist smashes Arlo in the face, knocking him to the ground. Arlo looks up to find Drexler looming over him.**

**DREXLER: "Bad time for a headache." [Exhibit A p. 109].**

(ELYSIUM):   Max starts to get the upperhand when- A white hot flash of cerebral pain... He trips and stumbles over desks and terminals, holding his head.  Manual grabs Max and pulls him back toward spider...   Kruger rises, whips out a deadly throwing knife and wings it at Manuel. Max uses every ounce of strength to will himself to his feet. **[Exhibit B p. 112]**

SUMMARY: Hero's Affliction

49.   The unusual headaches (in paragraph 45-48) and the way they manifest in the Plaintiff's character, Arlo (grabbing head, stumbling, crying-out), and the surprising way a headache occurs in the story's climax, are the Plaintiff's unique expression and copyright.

50.   In adopting the symptoms and signs of the Plaintiff's hero's affliction for the hero of

9

COMPLAINT

1    their work, "Elysium", the Defendants infringed on the Plaintiff's copyright protected character,

2    Arlo Grainer, and infringed on his copyright protected script, "Butterfly Driver".

3       51.   As seen in paragraphs 45-48, the Defendants do not call these events "headaches";

4    rather, "migraines". But "migraine" is neurological disorder characterized by recurrent <u>headaches</u>.

5    The Defendants also, twice, call the events "seizures", and an "epileptic white static". Which

6    reveal the Defendants' misinformation of a serious disability -as epilepsy and epileptic seizures

7    do not cause sufferers to fall to their knees, screaming, clutching their heads. The Defendants also

8    call the event "A white hot flash of cerebral pain." "Cerebral pain" is a "headache".

9       52.   The Defendants' willful misuse of language, as illustrated in paragraph 50, reveal an

10    obvious effort to disguise their infringement (e.g. using the terms "migraines", "seizures" and

11    "epileptic white static", to avoid the word "headache" -to appear to describe a different

12    "affliction", while describing a strikingly similar, vitually identical, reaction to the pain).

13          **THE HERO'S "KEEPSAKE NECKLACE"**

14       53.   In the Plaintiff's, "Butterfly Driver", a character, "Benni", gives the hero, Arlo, a

15    keepsake necklace-pendant . As Arlo faces death, in the end of the screenplay, he has a dream in

16    which he sees the neclace-pendant Benni gave him. The dream saves Arlo's life and adds emotion

17    to the story. The pendant also has another special story behind it, too. The writer (Plaintiff) refers

18    to the necklace as a "necklance" and a "pendant". **[Exhibit A pp. 54, 55, 65, 113]**

19       54.   In the Defendants' "Elysium" screenplay, a num gives the hero, Max, a keepsake

20    necklace-pendant. As Max faces death he looks at the necklace and remembers "Frey" (in a

21    dream-like way). The pendant also has another special story behind it. The Defendants refer to

22    the pendant as a "pendant", a "necklace", and once as a "locket". **[Exhibit B pp. 29, 117, 120]**

23       55.   SUMMARY: In using a keepsake necklace, in "Elysium", just as the Plaintiff used a

24    keepsake necklace in "Butterfly Driver", the Defendants infringed on the Plaintiff's copyright.

25          **THE VILLAIN:** Drexler Vs Delacourt (Rhodes)

26       56.   The Villains of both works (Drexler Butterfly Driver; Delecourt/Rhodes, Elysium)

27    have been genetically reprogrammed (or "re-atomized") to appear much younger than they really

28    are **[Exhibit A p. 3; Exhibit B p. 18]**; both villains send agents to apprehend the hero due to

<div align="center">10</div>

<div align="right">COMPLAINT</div>

1    information he possesses; and both villains order mass killings of prisoners traveling in

2    space shuttles (a literary strategy to reveal the depth of the character's evil) **[Exhibit A p.105;**

3    **Exhibit B pp. 12, 13];** and both are seemingly evil, but committed to the belief that they are

4    defending their elite ilk, **[Exhibit A pp. 93-96; Exhibit B p. 18].** Additionally**,** The villain of

5    Butterfly Driver, Drexler, is the World President. He used his media company to cheat himself

6    into The Presidency. Again, following the Plaintiff's model, in the actual film, "Elysium", the

7    villain, Delacourt, also devises an evil plan to cheat herself into The Presidency.

8                          SUMMARY: Drexler vs Delacourt

9        57.   The plaintiff's character, "Drexler": 1) has been genetically *"reprogrammed" to appear

10   much younger than he is (*Elysium calls this medical technology "re-atomizing"); 2) is very rich;

11   3) lives on a giant satellite world for the super-rich; 4) orders the mass killings of people

12   traveling in space shuttles; 5) wants the story's hero apprehended due to information the hero

13   possesses; 6) sends a special agent to apprehend a hero; 7) is evil, but committed to the belief that

14   his deeds serve his rich, elite ilk; 8) cheats himself into the Presidency.

15       58.   The characteristics, actions, wants and conditions listed in paragraph 57 are the

16   Plaintiff's unique expression; forming his copyright protected character "Drexler", from his

17   copyright protected work, "Butterfly Driver".

18       59.   By adopting all (or substantial aspects) of each of the attributes, listed in paragraph

19   57, for their villain, "Delacourt" ("Rhodes" in the original screenplay) the Defendants infringed

20   on the Plaintiff's copyright protected character, and copyright protected work "Butterfly Driver".

21       60.   In changing minor details about their character "Deleacourt" or "Rhodes" (gender,

22   rank, making the character intent to cheat her way into the Presidency, rather than having already

23   commited the deed) the Defendants made obvious efforts to disguise their infringement.

24       **SICK CHILD:** Franny Vs Matilda

25       61.   In Elysium, Frey's sick 6 year old daughter, "MATILDA", dying from Leukemia, is an

26   infringement on the character "FRANNY", from the Plaintiff's "Butterfly Driver".  Compare:

27       62.   FRANNY. In Butterfly Driver, "Franny" is Arlo's sick 7 year old daughter. She is

28   dying of a respiratory disease. Franny's life hangs in the balance of the hero's actions; if he fails,

                                        11

                                                        COMPLAINT

1   she dies. Thus, she is central to the story. Franny is finally saved by Arlo's heroic action, and is

2   seen alive and healthy in the script's final minutes.

3       63.    MATILDA. In Elysium, 6 years old, "Matilda", is dying of Leukemia. Her life hangs

4   in the balance of the hero's actions; if he fails, she dies. Thus, she is central to the sttory. Matilda

5   is finally saved by Max's heroic action, and is seen alive and healthy in the story's final moments.

6       64.    Franny's importance to the Plaintiff's work can't be overstated. She makes Arlo's

7   journey matter. She makes his goal worthy, the future relevant and the story matter.

8                       SUMMARY: "Franny" Vs "Matilda"

9       65.    The Plaintiff's character, "Franny", has these characteristics, conditions, and literary

10  duties: 1) Franny is a very sick little girl; 2) Franny will die in less than a week without hard to

11  obtain medicine or medical aid; 3) Franny's medicine or medical aid is only available on a

12  satellite world; 4) Franny is saved by the hero's heroic deeds; 5) the writer links Franny's fate to

13  the hero'success or  failure -to make the hero's journey (and the future itself) meaningful; 6)

14  Franny is shown alive and well (for emotional appeal) in the closing moments of the screenplay

15  or film; 7) Franny lives in an overpopulated, polluted future Earth.

16      66.    The unique characteristics, listed in paragraph 65 are the Plaintiff's unique expression

17  of his copyright protected character, "Franny", from his work, "Butterfly Driver".

18      67.    The Defendant's, "Matilda", shares all attributes, conditions, and literary duties, listed

19  in paragraph 61. Thus, the Defendants' "Matilda" infringes on the Plaintiff's character, "Franny".

20      68.    In making nuanced changes to "Matilda" (e.g. her name, age, her relationship to the

21  hero) the Defendants made willful and obvious efforts to disguise their infringement.

22                       3) SETTING INFRINGEMENT:

23      69.    Perhaps the most unusual settings in film this year, the two central settings of the

24  Defendants' "Elysium" infringe on the two central settings of the Plaintiff's "Butterfly Driver".

25              SETTING 1:  GIANT SATELLITE WORLD FOR THE RICH

26      70.    The Plaintiff's satellite is 3 miles in diameter **[Exhibit A p. 26]**. The Defendants' script

27  calls for a satellite 60 miles in diameter. But the film's satellite is 1 or 2 miles in diameter.

28      71.    The plaintiff's satellite world has many unusual aspects: 1) it is an enormous satellite

                                    12

                                            COMPLAINT

1   world, with forests and large aquatic features; 2) only the super-rich live in the satellite's pristine

2   biosphere; 3) there are fantastic medical technologies available on the satellite; 4) entering the

3   satllite requires special identification; 5) it is home to the story's genetically reprogrammed

4   villain; 6) it orbits an overpopulated, impoverished Earth; 7) it is where the final battle transpires;

5   8) here, orange-jump-suited prisoners are seen boarding shuttles. **[Exhibit A pp.3, 33; Exhibit B**

6   **p. 5];** the satellite's citizen capacity is 300,000, when complete, 150,000 at the time of the story.

7   Elysium capacity: 251,200. **[Exhibit A p. 4; and SEE Elysium website:**

8   **http://www.welcometoelysium.com/ ]**

9                   SUMMARY:  Setting 1, Giant Satellite for the Rich

10      72.   The list of features, in paragraph 71, are a simplification of the Plaintiff's expression of

11   his copyright protected satellite world, Uberopolis, featured in his work, "Butterfly Driver".

12      73.   The Defendants, "Elysium" uses all of characteristics listed in paragraph 71 for their

13   satelliute world. Thus, the Defendant's "Elysium" infringes on the Plaintiff's copyright.

14      74.   Additionally, by never referring to Elysium as a "satellite" (to avoid the Plaintiff's

15   language), and in making superficial changes to their satellite world (size, shape), the Defendants

16   made obvious effort to disguise their infringementas.

17              SETTING 2:  DYSTOPIAN EARTH

18      **75.**   The other central setting of both screenplays is the impoverished overpopulated ruin

19   of Earth. On this setting, in both scripts:: 1) the poor have little access to medical care; 2) the

20   hero lives in a slum, overrun by thugs and crime; 3) police and military vehicles loom in the sky

21   and brutalize the poor **[Exhibit A pp. 7, 16, 52, 53 ; Exhibit B pp. 6, 7];** 4) Army ships, full of

22   "undesirables"are released into the slums **[Exhibit A p. 53; Exhibit B p. 5];** 5) the poor are

23   brutalized by the governement of the satellite world (who also do a few kind things for the poor,

24   such as provide supplies) **[Exhibit A p. 95; Exhibit B p. 17-18];** 6) rich businesses build

25   manufacturing plants in the slums to take advantage of the cheap labor **[Exhibit A pp. 47, 95;**

26   **Exhibit B pp.15, 16, 27, 28];** 7) people commonly travel by flying shuttles and flying cars; 8) the

27   poor live in the ruins of cities in decay. (NOTE:  Elysium's script doesn't specify "ruins", but its

28   synopsis does, and the film illustrates this state).

                              13

                                                      COMPLAINT

1          SUMMARY: Setting 2, Dystopian Earth

2          76.   The characteristics listed in paragraph 75 are the Plaintiff's expression of his dystopian

3     vision of a future Earth, and his copyright, from his copyright protected work, "Butterfly Driver".

4          77.   The Defendants','"Elysium", adopts (all, or significant aspects of) each of the

5     conditions listed in paragraph 75, infringing on the Plaintiff's copyright,

6          78.   In making superficial changes to their vision of Earth in "Elysium" (adding robots,

7     changing the year, etc.) the Defendants made obvious efforts to disguise their infringement.

8          SETTING YEAR

9          79.   Butterfly Driver is set in the year 2120.  Elysium's original script says the movie is

10    set in 2109 . But the actual film and official synopsis revise that year to 2154. However, In 2010,

11    on his website (before the Defendants had written their script) the Plaintiff changed the setting

12    year of Butterfly Driver to 2144 -ten years from Elysium's final setting. **[See Exhibit N]** .

13         80.   In placing Elysium's setting year near the Plaintiff's setting year, the Defendants adhere

14    to and expand a pattern of infringement and similarity.

15             4)  CENTRAL CONFLICT INFRINGEMENT

16         81.   The "conflict" is/are the thing(s) that stands between the hero and his goal. The heroes

17    of  both, the Plaintiff's "Butterfly Driver", and the Defendants' "Elysium", have extremely similar

18    goals. Both heroes need to get to a satellite world to access the satellite's medical technology.

19    And both heroes must overcome identical (or extremely similar) conflicts, which are: 1) the hero

20    is not a citizen of the satellite world; 2) the hero is poor; 3) the hero needs fake I.D. and help to

21    get to a satellite world; 4) a  powerful, evil, official wants the hero stopped; 5) the hero suffers

22    debiltating headaches which make reaching his goal more difficult; 6) The evil, powerful official

23    sends a special agent to apprehend the hero.

24             SUMMARY: Central Conflict

25         82.   All of the story conflicts, enumerated in paragraph 81, together, are an expression of

26    the Plaintiff's effort, from his screenplay, "Butterfly Driver", the Plaintiff's exclusive copyright.

27         83.   The Defendants infringed on the Plaintiff's copyright by adopting all of the Plaintiff's

28    central "conflicts", listed in paragraph 81, for their screenplay and film.=, "Elysium".

14

COMPLAINT

84. Further, the Plaintiff charges that in making three minor changes to the "conflicts" in "Elysium" (e.g. making the pursuing agent into an "evil" agent, and changing the gender and office of the evil Official), the Defendants made willful efforts to disguise their infringement.

### 5) THEME(S) INFRINGEMENT

85. The Plaintiff's "Butterfly Driver" has five central themes: 1) <u>Survival without adequate healthcare is inhumane</u>; 2) <u>the plight of immigrants is brutal</u>; 3) <u>wealth corrupts and divides us</u>; (literally -the poor on Earth, the rich on a satellite world);

4) <u>Heroic Sacrifice</u> (in Butterfly Driver: Arlo risks everything, taking a near fatal bullet, to save his daughter; Elysium: in the end, Max gives up his life to save Matilda and mankind.

5) <u>Redemption comes from refusing to give up hope</u> (the spiritual theme of both movies).

BUTTERFLY DRIVER: Arlo doesn't give up hope of saving his daughter. Thus, in the end, he finds redemption and liberates the world with free, fair elections. "Butterfly Driver" uses a rabbi, a cleric, a pastor and a necklace to reinforce this theme.

ELYSIUM: Max doesn't give up his dream of getting to Elysium; thus, finds redemption -and liberates the world. "Elysium" uses a nun and a necklace to reinforce this theme.

### SUMMARY: Themes

86. The five themes (listed in paragraph 85) are (in the context of his script "Butterfly Driver", or in any substantially similar story), the artful expression and copyright of the Plaintiff.

87. The Defendants adopted all five of the Plaintiff's central themes for "Elysium", and thus, further infringe on the Plaintiff's copyright.

### 6) CATALYST, CRISIS, CLIMAX (and twist) INFRINGEMENT

88. Typically a screenplay has three imparitive "plot points": 1) catalyst, 2) crisis, 3) climax. Elysium borrows all three from the Plaintiff's, "Butterfly Driver".

89. **CATALYST:** the event that pushes the hero into action, and gives him his goal.

90. BUTTERFLY DRIVER: the hero learns his daughter has only about seven days to live, unless he can get to Uberopolis to get medicine to save her. **[Exhibit A p. 35]**

91. ELYSIUM: the hero learns he has only five days to live, unless he can get to Elysium for medical care. **[Exhibit B p. 31]** *His girl-friend's dying daughter must get there, too.

15

92.   **CRISIS:**  the story's low point, when all hope seems lost.

93.   Usually the crisis occurs about halfway through the story. The Plaintiff's crisis occurs near the third act, The Defendants also place their crisis near the end.  Compare:

94.   BUTTERFLY DRIVER:  after struggling to get to Uberopolis, Arlo learns the medication his daughter needs is not on the satellite world. **[Exhibit A p. 83]**

95.   ELYSIUM:  Arriving to Elysium, Max learns he can't be treated without wiping out the data in his head, and Matilda can't be treated because she's not a citizen. **[Exhibit B pp. 105, 106]**

96.   **CLIMAX:**   where the hero confronts the villain and battles him to the end.

97.   It was imparitive to the Plaintiff to set the climax on the giant satellite: the great battle on the great satellite. Conversely, the Defendants started their climax on Earth; where the battle could have ended. But Defendant, Neill Blomkamp, moved  the dying child, her mother, the hero, and the villain, all to the satellite world, to conclude the battle; emulating the effect as the Plaintiff's script.

98.   Both works have identical CLIMAX TWISTS: The hero battles the villain on the giant satellite. They struggle. Finally the hero gains the advantage, then suddenly, the twist: the hero has a massive headache. **[Exhibit A p. 109; Exhibit B p 112]**

SUMMARY: Catalyst, Crisis, Climax (and twist)

99.   The Plaintiff's catalysts, crisis, climax (and "climax twist") are the Plaintiff's structure and expression; and are (in the Plaintiff's "Butterfly Driver" or in any similar work) the Plaintiff's copyright.

100.   As shown in paragraph 88-98, the Defendants' catalyst, crisis and climax are identical, or extremely similar to the Plaintiff's work; thus, they infringe on the Plaintiff's copyright.

7) INCITING INCIDENT INFRINGEMENT

101.  **INCITING INCIDENT:** the event that takes the hero out of his normal routine world.

102.   The Plaintiff's inciting incident occurs midway through the first act. The Defendants', "Elysium", uses the Plaintiff's inciting incident as the first event of the second act.

103.   BUTTERFLY DRIVER'S INCITING INCIDENT: Arlo learns bounty hunters are closing in on him. He realizes he has to get his wife and kids out of their dangerous "zone" city

16

COMPLAINT

1   and into the rich, safe "State". But he needs money to pay their transport and immigration

2   ("repatriation") fees. Arlo turns to his friend -a local underground transporter. <u>The transporter</u>

3   <u>has a disability: he is a missing arm</u>. The transporter arranges Arlo's wife and kids' transport and

4   immigration -BUT Arlo must do a VERY dangerous mission in exchange.

5       104.   ELYSIUM'S INCITING INCIDENT: Max learns he has radiation poisoning and has

6   only five days to live. His only hope is to get to the satellite city, Elysium, for medical care. With

7   no money to pay, Max asks his friend (a local underground transporter) to smuggle him to

8   Elysium. <u>The transporter has a disability: he has a paralyzed leg</u>. The transporter agrees to

9   transport Max -if Max does a VERY dangerous mission in exchange.

10                     SUMMARY: Inciting Incident

11       105.  The unusual structure of "paying for immigration transport by doing a very dangerous

12   mission for a disabled underworld transporter," is the Plaintiff's expression and copyright.

13       106.  As illustrated in paragraph 101-104, the Defendants "Elysium", adopts the Plaintiff's

14   inciting incident, and thus infringes on the Plaintiff's copyright.

15              8)  <u>IDIOSYNCRATIC & STYLE INFRINGEMENT</u>

16       107.  The Plaintiff uses two words, one word play, and an unusual omission that can be

17   considered idiosyncratic or style signature. The Defendants',"Elysium", uses these same (or, in

18   one case, very similar) idiosyncrasies :

19       108.  **(A)**  BUTTERFLY DRIVER uses the very uncommon word "repatriate", in lieu of

20   the word "immigrate**". [Exhibit A pp. 12, 13, 34, 41 117].**

21       109.  ELYSIUM uses the word "repatriated" on page 5. **[Exhibit B p. 5]**

22       110.  NOTE: The word 'repatriation is extremely uncommon. It's usually used in association

23   with war. The Plaintiff chose it to reference immigration in a warlike atmosphere. In "Elysium"

24   the word is an exotic departure from Blomkamp's ordinarily simple, casual story language.

25       111.  (B)  BUTTERFLY DRIVER uses the term genetic "reprogramming" for the act of

26   reversing the effects of disease, age, and physically improving a person **[Exhibit A p. 3, 36, 90)**.

27   ELYSIUM uses a similar term "reatomizing" for the act of reversing the effects of disease and

28   age, and physically improving a person. **[Exhibit B pp. 2, 4, 104)**

                  17

112.  **(C)**  BUTTERFLY DRIVER shows humans killed in space and their bodies left to fall back to Earth. The Plaintiff uses the terms "disposal" and "litter" to show the dead bodies are the new "trash" hazard. Playing with this motif, the villain, Drexler, orders a shuttle set for "disposal" -meaning: dump all aboard into space. **[Exhibit A pp. 3, 31, 107, 105, 108]**

113.  ELYSIUM: Before Rhodes orders Kruger to destroy two shuttles full of immigrants (to let their bodies to fall to Earth) she asks how many of the ships are a "debris danger" -playing on the "trash" motif. **[Exhibit B pp. 10, 11]** (the "debri danger" line was cut out of the movie).

114.  **(D)**  BUTTERFLY DRIVER omits the racial identities of the central characters, to reflect a less "racial' future. Omitting this information is unusual for a screenplay.

ELYSIUM also omits any mention of the racial identity of its central characters.

SUMMARY: Idiosyncratic and Style Infringement

115.  The Plaintiff's idiosyncratic elements, enumerated in paragraphs 107-114, are his copyright. In adopting these idiosyncrasies the Defendants infringed on the Plaintiff's copyright.

9) TECHNOLOGICAL 'VISION" INFRINGEMENT

116.  The central technologies in the Plaintiff's "Butterfly Driver" are: an advanced satellite world for the rich, and medical technologies. "Elysium" also features the central technologies of a satellite world for the rich, and medical technology (one of these medical technologies is identical to the Plaintiff's medical technology, "genetic reprogramming").

117.  SUMMARY: The Defendants' technological "vision" in "Elysium", infringes on the Plaintiff's copyright, and conforms to a pattern of similarity and infringement by the Defendants.

10) RESOLUTION SIMILARITY

118.  In both scripts, the heroes of actions have unlikely global consequences. Compare:

119.  **"BUTTERFLY DRIVER" Global Impact Resolution**: The hero's actions topple the government, bringing much of the world free, open elections -as well as a new clean energy.

120**.  "ELYSIUM" Global Impact Resolution:** because of one hero's actions, the government of Elysium is toppled, and medical aid is sent out to cure all the people of the world.

121.  SUMMARY: The Defendants' resolution mirrors the nature, style and scale of the Plaintiff's resolution, and conforms to an expanding pattern of similarity and infringement.

18

COMPLAINT

1          **SECONDARY INSTANCES OF COPYRIGHT INFRINGEMENT**

2                    1)  <u>SECONDARY SCENE INFRINGEMENT</u>

3    140.      The following scenes from the Plaintiff's work, were infringed on by "Elysium".

4    141.  **(1)**  In BUTTERFLY DRIVER, to gain access to the villain, Arlo, holds up an explosive

5    "A-cell" and threatens to detonate it if his demand is refused. Later, in an uncertain moment with

6    the villain, Arlo throws the A-cell out a window -initiating the climax. .**[Exhibit A pp. 88, 97]**

7    142.      In ELYSIUM, to get to Elysium, Max holds a grenade to his head and threatens to

8    detonate it if his demand is refused. Later, in an uncertain moment with the villain, Max suddenly

9    throws the grenade in a shuttle's cockpit -initiating the climax.  **[Exhibit B pp. 94-95]**

10   (*Note: in the actual film, Max does not throw the grenade).

11   143.  **(2)**  In BUTTERFLY DRIVER, hero, Arlo, is strap-locked in a doomed shuttle, and

12   breaks free and struggles to saves his friend from his straps.  **[Exhibit A p. 31]**

13   144.      In ELYSIUM, hero, Max, must struggle to free his friend, Frey, who is strap-locked

14   in the seat of a doomed shuttle. **[Exhibit B p. 96-99]**

15   145.  **(3)**  Butterfly Driver: Jerry negotiates with insurers for his son's life. **[Exhibit A p. 22]**

16   146.      Elysium: Frey negotiates with hospital for her daughter's life.**[Exhibit B pp. 26, 27]**

17   147.  **(4)**  In BUTTERFLY DRIVER, the villain, Drexler, is extremely strong because he

18   was reprogrammed without myostatin **[Exhibit A p. 36].** Drexler also refers to himself as

19   "immortal", suggesting he feels superior to regular humans. **[Exhibit A p. 99]**

20   148.  In ELYSIUM, the villain, Kruger possesses "immense strength" **[Exhibit B p. 20]**, from

21   re-atomizing.  Kruger calls the humans on Earth "humans" and "peasants", suggesting he thinks

22   he and Elysians are superior to regular humans.  **[Exhibit B pp. 57, 67, 91]**

23   149.  **(5)**  In BOTH screenplays tech programmers must forge documents to get the heroes

24   into Uberopolis and Elysium, respectively. **[Exhibit A pp. 57-58, Exhibit B pp. 44]**

25   150.  **(6)**  BUTTERFLY DRIVER:  Arlo has tracker cut out of his neck.**[Exhibit A p. 33]**

26   151.      ELYSIUM: Kruger cuts ID & tracking chip out of his wrist. **[Exhibit B p. 57]**

27   152.  SUMMARY: Paragraphs 140-151 are further instances and evidence of the

28   Defendants' "Elysium" infringing on the Plaintiff's copyright protected work, "Butterfly Driver".

                                    19

                                            COMPLAINT

## 2) SECONDARY CHARACTER INFRINGEMENT

### (1) Rianna & Benni Vs Frey :

122.   Elysium's character FREY is a hybrid character based on the characters RIANNA & BENNI from the Plaintiff's copyright protected work, "Butterfly Driver". Compare:

123.   BUTTERFLY DRIVER: Rianna lives in an uneducated slum, but is an educated, devoted mother; while Benni is beautiful, hopeful, but disappointed with the men around her. **[Exhibit A p. 52].**

124.   ELYSIUM: Frey lives in an uneducated slum, but is an educated, tough and devoted mother -also beautiful hopeful and disappointed with the men around her **[Exhibit B p. 75].**

125.   BUTTERFLY DRIVER: the writer hints at an attraction between Benni and Arlo, but no romance occurs, as it would undermine the story's urgency. **[Exhibit A p. 52]**

ELYSIUM: there is an attraction between Frey and Max, but no romance occurs. **[Exhibit B pp. 15, 75]**

### (2) Jerry Vs Kruger:

126.   Although Elysium's "KRUGER" is evil and Butterfly Driver's JERRY Matthiessen is basically good, they have a few important things in common:

127. **(A)** JERRY and KRUGER are both sent to apprehend the hero by a high ranking official.

128. **(B)** BUTTERFLY DRIVER: when superiors ask agent Jerry Matthiessen to find Arlo, Jerry bargains for health care for his son, before accepting the mission. **[Exhibit A pp. 25, 45]**

129.   ELYSIUM: when his superior asks special agent Kruger to apprehend Max, Kruger bargains for a mansion and more, before accepting the mission. **[Exhibit B pp. 56, 57]**

130. **(C)** BUTTERFLY DRIVER: Jerry works for government law enforcement, the OFI

131.   ELYSIUM: Kruger works for government law enforcement, the CCB.

### (3) Dylan Vs Spider:

132.   The Defendants' character "SPIDER" bears a striking resemblance to the Plaintiff's "Butterfly Driver" character, "DYLAN". Compare:

133.   In "Butterfly Driver" "Dylan" runs an underground base with flight path monitors on the walls. He sometimes transports immigrants. He is disabled: missing an arm. **[Exhibit A p. 7]**

20

COMPLAINT

134. In "Elysium" "Spider" runs an underground base, with flight path monitors on the walls. He transports immigrants. <u>He is disabled with a paralyzed leg.</u> **[Exhibit B p. 36]**

**(4) Matty Vs Matilda:**

135. Elysium's character, "Matilda" (who infringes on Plaintiff's character, "Franny") also bears striking resemblance to the Plaintiff's character "MATTY". Compare:

136. BUTTERFLY DRIVER: "Matty" is Jerry's sick 9 year old son. He is dying of a respiratory disease. He wants to be healthy and get out of his air chamber. **[Exhibit A  p. 44]**

137. ELYSIUM: "Matilda" is 6 and dying of Leukemia. She is the daughter of Frey, Max's childhood sweatheart. Matilda wants to be healthy and get out of the hospital. **[Exhibit B p. 66]**

138. The fact that "Matilda" is the feminine form of "Matty" is also a significant similarity.

139. SUMMARY: Paragraphs 122-138 are further instances of the Defendants', "Elysium", infringing on the Plaintiff's copyright.

<u>MINOR SCRIPT INFRINGEMENT</u>:

153. ·**(B)** BUTTERFLY DRIVER: A character named "VAN" reflects  some current attitudes toward immigrants, when he comments about an immigrant woman's hard work, "She just repatriated. People from the state can't work like that." **[Exhibit A p. 41]**

154. ELYSIUM: reflects some current attitudes toward immigrants when Rhodes says, "Jesus Christ. Yes, the real issue. The ungodly influx of immigrants..." **[Exhibit B p. 17]**

155. **(C)** BUTTERFLY DRIVER: the final battle and chase on Uberopolis, Arlo runs through doors that take the fight under the metal city floor. **[Exhibit A p. 101]**

156. ELYSIUM: the final battle and chase on Elysium, Max goes through a hatch that takes the fight under the metal city floor. **[Exhibit B pp. 110-112]**

157. **(D)** In BUTTERFLY DRIVER, Arlo's best friend is killed (by a state bounty hunter). **[Exhibit A p. 10]**

158. In ELYSIUM, Max's best friend is killed (by state assassin, Kruger). **[Exhibit B p. 64]**

159. **(E)** BUTTERFLY DRIVER uses Bush era, post 911 terms to reinforce points, such as: "I don't negotiate with State enemies," and tags like "embolden". **[Exhibit A pp. 51, 88]**

160. ELYSIUM borrows this stroke with "Homeland Defense" ("Homeland Security" in

21

COMPLAINT

1    the movie). **[Exhibit B p. 2, 100]**

2    161.   **(F)**   BUTTERFLY DRIVER: Drexler and leaders talk politics and P.R. **[Exhibit A p.75]**

3    162.    In ELYSIUM: Delacourt, and leaders discuss politics and P.R. **[Exhibit B pp. 17-18]**

4    163.   **(G)**   In BUTTERFLY DRIVER, the massive climax battle causes chaos among civilians,

5    and causes security officers to evacuate as alarms blare. **[Exhibit A p. 105]**

6    164.    In ELYSIUM, the massive climax battle causes chaos among civilians, and causes

7    security officers to evacuate as alarms blare. **[Exhibit B p. 110]**

8    165.   **(H)**   BUTTERFLY DRIVER: remote cameras track Arlo. **[Exhibit A pp. 98, 103, 107]**

9      In ELYSIUM: remote cameras track Max **[Exhibit B pp. 80, 90]**

10    166.   **( I )**   BUTTERFLY DRIVER: Characters refer to Arlo as a "LEGEND". **[Exhibit A**

11 **pp. 14, 48]**

12    167.    ELYSIUM: Julio tells Max "... you used to be a "LEGEND". **[Exhibit B p. 25]**

13    168.    Paragraphs 153-167 are further evidence of infringement, by the Defendants, of the

14    Plaintiff's copyrighted work, "Butterfly Driver", and expand a pattern of similarity.

15      <u>INTERNET / MULTI-MEDIA INFRINGEMENT</u>

16    169.    Through his characters, the Plaintiff, showed the science and politics history behind

17    his world, and the backstories of his primary characters. The Defendants eliminated the social

18    and political history from their screenplay and film (and most of the character's backstories). But

19    they included this information on the official Elysium website. Some on these details further

20    infringe on the Plaintiff's "Butterfly Driver" script, listed below:

21    170.   **(A)**   In BUTTERFLY DRIVER, the villain, Drexler, is directly responsible for creating

22    Uberopolis. He is the richest man in the world and owner of the most profitable company ever -

23    Drexler Industries. Drexler Industries makes it's fortunes from 3 enterprises: 1) HEALTH &

24    MEDICAL; 2) REAL ESTATE (homes on Uberopolis); 3) its media company.

25    171.    In ELYSIUM the evil character Carlyle is directly responsible for creating Elysium.

26    He is the CEO of Armadyne Corp. Armadyne is the most profitable company ever. Armadyne

27    makes its fortune from 3 enterprises: 1) HEALTH & MEDICAL COMPANY;2) REAL ESTATE

28    (Elysium); 3) his robotics products. (http://www.armadyne.net/company/leadership.php )

COMPLAINT

172.   **(B)**  BUTTERFLY DRIVER : When the second half of Uberopolis is completed it will support 200,000 to 300,000 citizens.  **[Exhibit A p. 4]**

173.      The offficial ELYSIUM website says Elysium has a maximum capacity of 251,200 citizens -approximating Uberopolis's capacity. (http://www.welcometoelysium.com/)

174.   **(C)**  In BUTTERFLY DRIVER, immigration into the state costs tens of thousands of dollars. But only citizens who pass an intelligence test can vote.  **[Exhibit A pp. 12, 84]** On the ELYSIUM official website, it is revealed that legal immigration requires an IQ test. The website includes an IQ test site visitors can take.  http://www.itsbetteruphere.com/

175.   **(D)**  In "BUTTERFLY DRIVER" the government of Uberopolis also governs Earth, from Uberopolis, and it is a corporate, business centered world government.

176.      The official ELYSIUM website establishes that the government of Elysium also governs the Earth. It is a business centered government, governed by The Elysium Corporate Authority. ( http://www.armadyne.net/#../company/about.php )

177.      Paragraphs 169-176 are further evidence of the Defendants, "Elysiun",' infringes on the Plaintiff's copyright protected work, "Butterfly Driver".

<u>MARKETING INFRINGEMENT</u>

178.      The synopsis is a filmmaker's foremost marketing tool.  In 2010, the Plaintiff updated and posted a synopsis of "Butterfly Driver" on "The Amazing Mr. Excellent" website, to attract investment for "Butterfly Driver". The Defendants synopsis is patterned after the Plaintiff's. The Plaintiff's synopsis, from Aug. 6th, 2010, can be seen, archived on the Wayback Machine, at: http://web.archive.org/web/20100807072930/http://www.mrexcellentmovie.com/future.html **[See Exhibit N].** That synopsis-logline reads:

179.      **"BUTTERFLY DRIVER:**  In 2144 Earth is grossly overpopulated, with 95% of the population living in poverty, while the elite .01% live on the giant man made luxery satellite, Uberopolis. Against this backdrop, in some anonomous slum, legendary soldier -and world's most wanted fugitive, Arlo Grainer, learns the polluted atmosphere will kill his daughter unless she receives an extremely costly drug. For that medicine Arlo will go across the globe and into the heart of Uberopolis, pursued by every bounty hunter on Earth".

23

COMPLAINT

180. **ELYSIUM** (Synopsis-Logline): "In the year 2154, two classes of people exist: the very wealthy, who live on a pristine man-made space station called Elysium, and the rest, who live on an overpopulated, ruined planet. The people of Earth are desperate to escape the crime and poverty that is now rampant throughout the land. The only man with the chance to bring equality to these worlds is Max (Matt Damon), an ordinary guy in desperate need to get to Elysium. With his life hanging in the balance, he reluctantly takes on a dangerous mission -- one that pits him against Elysium's Secretary Delacourt (Jodie Foster) and her hard-line forces -- but if he succeeds, he could save not only his own life, but millions of people on Earth as well."

181. The Defendants' synopsis only mentions aspects infringed on from the Plaintiff's work -no mention of robots, exoskeleton suits, or high-tech guns, as they are insubstantial, and added only to disguise the infringement. The Defendants' synopsis follows the Plaintiff's synopsis structure. Mention, first, the year; then the class division, then the satellite world, followed by some plot details.

182. Paragraph 178-181 establish that the Defendants' "Elysium" marketing synopsis is an infringement of the Plaintiff's copyright, and adheres to a pattern of infringement and similarity between the two works, beyond coincidence, reason or probability.

**DEFENDANTS' ATTEMPTS TO APPEAR DISSIMILAR AND HIDE INFRINGEMENT**

183. Beyond the extensive copyright infringement, detailed in paragraphs 1-182, the Defendants also attempted to hide their infringement in obious ways -as described in the preceding paragraphs. Additionally, while making their film, "Elysium", the Defendants implemented extreme measures to keep their infringement secret. This was done to keep the Plaintiff unaware that his work was misappropriated. To keep their infringement secret, the Defendants would not permit any cast member to take a script home -including legendary actress, Jody Foster. **[See Exhibit O]** The Defendants would not permit actors to see a script, to review their lines, before auditioning, and cast and crew members were not permitted to reveal any story details to the public.

184. The fact that the Defendants avoid using the word "satellite" to refer to their satellite world "Elysium" in both their film and screenplay is part of their effort to appear dissimilar to the

24

COMPLAINT

1  Plaintiff's work.; done throughout "Elysium".

2      185.      Upon learning of the impending infringement of his screenplay, on May 27th, 2013,

3  the Plaintiff began contacting attorneys about the case (about 50 attorneys), during the last days

4  of May and the first week of June -including one or more attorneys who decline because of

5  "conflicts of interests". In mid June a legal advisor advised the Plaintiff that if he had contacted

6  so many attorneys it's probable the Defendants are aware of the Plaintiff's impending legal action.

7      186.      The plaintiff believes the Defendants may have been tipped about this litigation in

8  late May or early June; which gave the Defendants 2 months to re-edit the movie. Although the

9  Defendants' hero suffers three "character affliction" headaches, the Defendants removed one of

10  the headaches and may have tried to remove the other headaches, but could not, due to

11  insufficient coverage film footage. The Defendants would do this to make their film appear

12  dissimilar from the Plaintiff's story. Defendant, Neill Blomkamp is a special effects master;

13  vitually every special effect his script is executed just as described. Yet, two of the three

14  headaches that survived, into the film, are very short. And all three of the surviving headaches are

15  are missing the special effects described for them: the "eplileptic white static" and the "blast of

16  static pain grates through Max's brain", and "The searing white light", and the "white hot flash of

17  cerebral pain..."

18  <div align="center">**DEFENDANTS' PROFITS**</div>

19      187.      As of October 8th, 2013, Elysium had earned over $272,000,000, worldwide,

20  against a cost of 115,000,000 -amounting to assumed profits of $157,000,000. The Defendants

21  may be overstating losses in anticipation of this litigation, as the budget for Elysium was listed as

22  $90,000,000, from late May to late July, 2013. Then, late July, 2013, the budget suddenly

23  skyrocketed to $115,000,000 -perhaps related to the notoriously dishonest accounting practices of

24  the film industry -often referred to as "Hollywood acounting". **[See Exhibit P]**

25  <div align="center">**PERSONAL DAMAGES AND INJURY**</div>

26      188.      The Plaintiff's "Butterfly Drivver" is a tight, thoughtful work, cultivated from the

27  American experience of a native Californian, transplanted to an immigrant community in New

28  York City (Inwood, Washington Heights) during the events of 911 (2001); forged from first-hand

<div align="center">25</div>

<div align="right">COMPLAINT</div>

1    perspective of the failures of the American healthcare system; and life-long witness experience of

2    the heart wrenching dichotomy engendered by America's immgration issues. Even "Franny", the

3    sick seven year old girl, was based of the Plaintiff's asthmatic (then) seven year old son.

4         189.    Conversely, the Defendant(s)'s "Elysium" lacked any feeling of authenticity, and

5    was marred by story flaws; such as the collision of thoughtful and absurd ideas, a lack of

6    character depth, a lack of story consistency, a lack of subtlety, and a lack of basic science

7    knowledge (such as using turbine engines for space travel, more). Adding to these failings, the

8    Defendants' film promulgated conspicuously racist views; such as their vision of a future where

9    Latinos have amassed no wealth and (in the Defendants' eyes) have no work ethic -as seemingly

10   all Latinos, in their film and script, wish to illegally enter a space world (where no jobs are

11   offered to them) so they can live in mansions, illegally, get free health care, and not work. These

12   story flaws and offensive views contribute to "Elysium" poor reviews by most respected critics.

13        190.    As a consequence of the Defendants' infringement, and their insensitive and

14   offensive social views, the Plaintiffs' reputation may be permanently damaged by the igniminious

15   association with the Defendants' infringing work. The Defendants' infringement makes it much

16   harder for the Plaintiff to approach the filmmaking establishment for support on future works, as

17   Sony Pictures Ent., Inc. also owns Columbia Pictures, and fellow Defendant, TriStar Pictures.

18        191.    The Defendant's infringement makes it impossible for the Plaintiff to market his

19   screenplay, as there is no room in the film market for two films about a poor man living in the

20   future ruins of an impoverished Earth, who needs to get to a satellite world for the super rich ,

21   etc. As affirmed by  LEWIS GALOOB TOYS, INC.v. NINTENDO OF AMERICA, INC., 964

22   F.2d 965 (9th Cir. 1992) Judge FARRIS [Cite: The Supreme Court specifically affirmed finding

23   that the motion picture adaptation "impinged on the ability to market new versions of the story."

24   Stewart, 495 U.S. at 238]

25                              **SUMMARY**

26        192.    The Defendants' "Elysium" infringes on dozens of the Plaintiff's original

27   expressions, including the Plaintiff's elaborate PLOT, his CENTRAL CHARACTERS (including

28   the Plaintiff's HERO, his VILLAIN, his essential SICK GIRL, and others); it infringing on the

                                    26

                                              COMPLAINT

1    Plaintiff's SETTINGS (including the giant orbiting satellite city for the super-rich), his HERO'S

2    AFFLICTION (terrible random headache syndrome), the Plaintiff's HERO'S GOAL(getting to

3    satellite world for medical aid), all 5 of the Plaintiff's CENTRAL THEMES, the Plaintiff's 6

4    CENTRAL CONFLICTS, his CATALYST, his CRISIS, his INCITING INCIDENT (doing a

5    dangerous mission, for a disabled illegal transporter, to pay his family's immigration fees),

6    infringing on the Plaintiff's CLIMAX TWIST, his IDIOSYNCRATIC ELEMENTS, the

7    Plaintiff's GLOBAL IMPACT RESOLUTION, the Plaintiff's FUTURE TECHNOLOGY

8    (including the technology of genetic "reprogramming"), the Plaintiff's HERO'S KEEPSAKE

9    NECKLACE (which recurs in a dreamlike way in the story's final pages ), and much more.

10        193.    The Defendant's infringement is so extensive that when the Plaintiff's infringed

11   content is extracted from Elysium there is no story left to market -all that remains are robots, two

12   exoskeletons, some high-tech guns, and the hero's new backstory; all of which are simply "add-

13   ons", added to disguise infringement -not connected to the central story.

14                                  **CLAIM ONE**

15        194.    The Plaintiff incorporates by reference all of the allegations of paragraphs 1

16   through 193, inclusive, as if fully set forth herein.

17        195.    The Plaintiff alleges that the Defendants' film (and screenplay) "Elysium", infringes

18   on the Plaintiff's copyright of his original screenplay, Butterfly Driver". The Defendant's willfully

19   infringed on his work for purposes of commercial advantage or private financial gain.

20        196.    The Plaintiff incorporates by reference all of the allegations of paragraphs 1

21   through 195, inclusive, and alleges that in making derivatives, reproducing, distributing and

22   displaying publicly their infringing "Elysium", the Defendants violated the Plaintiff's exclusive

23   rights as the copyright owner of his original work "Butterfly Driver", pursuant to 17 USC § 106 ".

24        197.    The Plaintiff incorporates by reference all of the allegations of paragraphs 1

25   through 196, inclusive, as if fully set forth herein. The Plaintiff further alleges the Defendendant

26   (s) made crude and obvious efforts to to give their infringing work, "Elysium", the appearance of

27   dissimilarity from the Plaintiff's "Butterfly Driver".

28        198.    The Plaintiff incorporates by reference all of the allegations of paragraphs 1

                                        27

                                                        COMPLAINT

1    through 197, inclusive. The Plaintiff additionally alleges the Defendants' infringing conduct has

2    caused and is causing substantial and irreparable injury and damage to Plaintiff.

3    199    On information and belief, The Plaintiff alleges that, as a direct result of the

4    Defendants' wrongful conduct, the Defendants have realized and continue to realize profits,

5    rightfully belonging to the Plaintiff. As of October 1st, 2013, Elysium had earned over

6    $272,000,000, against a cost of 115,000,000 -profits in excess of $155,000,000, and growing.

7    **PRAYERS FOR RELIEF**

8    200.    WHEREFORE, the Plaintiff asks the Court to enter judgment in his favor, and

9    against Defendants, Neill Blomkamp, Sony Pictures Ent., Inc., TriStar Picture, Inc., Media Rights

10    Capital, and Q.E.D. International, and grant the Plaintiff the following relief:

11    201.    A.) Declare that the Defendants' unauthorized conduct violates the Plaintiff's rights

12    under the Federal Copyright Act;

13    202.    B.) Pursuant to Title 17 USC § 503(b) the Plaintiff requests The Court order the

14    end of production and distribution, and the impounding and destruction of all original recordings

15    and all copies of the Defendants' film "Elysium", in all formats (DVD, CD, film, digital, etc), and

16    order the impounding and destruction of all derivatives (such as video games, soundtracks, etc.);

17    203.    D.) As per Title 17 USC § 504(a)(b) the Plaintiff seeks Actual Damages (the

18    opportunity to make and market his film) and Lost Profits;

19    204.    E.) Such other and further relief as the Court deems just and proper;

20    205.    F.) Pursuant to Title 17 USC § 506(a)(1)(A), as the Defendants' actions were willful

21    and for purposes of commercial advantage, the Plaintiff asks the Court to hold the Defendant(s)

22    criminally accountable as provided under section 2319 of Title 18.

23    206.    G.) The Plaintiff also prays for the injunctive remedies of: ordering the stopping any

24    further and future sales and distribution of the Defendants' infringing work, "Elysium" (by that

25    name or any other name), in any form (digital, film, DVD, CD, online video, games, toys, etc.).

26    207.    The Plaintiff incorporates by reference all of the allegations of paragraphs 1 through

27    208, inclusive, as if fully set forth herein. Consistent with the guidelines for injunctive remedies

28    to establish that the Plaintiff (the moving party) will suffer irreparable harm without the

28

COMPLAINT

1  injunctive measures. Consistent with the guidelines for injunctive remedies, the Plaintiff has

2  presented a solid complaint and evidence supporting his claim that he will prevail. And,

3  consistent with the guidelines for injunctive remedies, the Defendants will not be harmed by the

4  injunction more than the Plaintiff will be harmed without them. And consistent with the

5  guidelines for injunctive remedies, it is in the publics interest to be protected from being sold

6  media and content misappropriated from other artists.

7      208.   H.) Pursuant to 17 U.S.C. §§ 412, the Plaintiff's "Butterfly Driver" was preregistered

8  under section 408 (f) before the commencement of the infringement (and that has an effective

9  date of registration not later than the earlier of 3 months after the first publication of the work or

10  1 month after the copyright owner has learned of the infringement). Thus, the Plaintiff prays of

11  the Court for the remedy of reasonable fees for attorneys and disbursements, to be paid by the

12  Defendants -as accrued, independent of, and in advance of judgement. The Plaintiff's U.S.

13  Copyright Office registration effective date for his unpublished script, "Butterfly Driver", is June

14  21st, 2013, which is seven weeks before the Defendants released, distributed and displayed

15  publicly, "Elysium", in The USA and 11 other countries, on August 9th, 2013 (SEE:

16  http://www.imdb.com/title/tt1535108/releaseinfo); which marked the commencement of the

17  infringement -as any infringement before that date would be presumptively fair, non-profit

18  activity. [LEWIS GALOOB TOYS, INC. v. NINTENDO OF AMERICA, INC. (9th Cir., 1992)

19  (964 F.2d 965) "Game Genie users are engaged in a non-profit activity. Their use of the Game

20  Genie to create derivative works therefore is presumptively fair." The Court also ruled in this

21  case that, "a family's use of a Game Genie for private home enjoyment must be characterized as a

22  non-commercial, nonprofit activity."].

23

24  DATED: October 8th, 2013

25  Respectfully submited,

26

27  By: _____

28  (Signature od Steve Wilson Briggs, Plaintiff)
                  29

                                          COMPLAINT

# EXHIBIT 3

ADRMOP,CLOSED,E-ProSe,ProSe,RELATE

## U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:17-cv-06552-VC

Briggs v. Universal Pictures et al                   Date Filed: 11/13/2017
Assigned to: Judge Vince Chhabria                    Date Terminated: 04/25/2018
Demand: $9,999,000                                   Jury Demand: None
Relate Case Case: 3:18-cv-04952-VC                   Nature of Suit: 360 P.I.: Other
Cause: 28:1332 Diversity-Personal Injury             Jurisdiction: Federal Question

**Plaintiff**

**Steve Kenyatta Wilson Briggs**          represented by   **Steve Kenyatta Wilson Briggs**
                                                           681 Edna Way
                                                           San Mateo, CA 94402
                                                           510-200-3763
                                                           Email: snc.steve@gmail.com
                                                           PRO SE

V.

**Defendant**

**Universal Pictures**                    represented by   **Rochelle L. Wilcox**
                                                           Attorney at Law
                                                           865 South Figueroa Street, Suite 2400
                                                           Los Angeles, CA 90017
                                                           213-633-6800
                                                           Fax: 213-633-6899
                                                           Email: rochellewilcox@dwt.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Brendan Nathaniel Charney**
                                                           Davis Wright Tremaine LLP
                                                           865 S. Figueroa Street
                                                           Suite 2400
                                                           Los Angeles, CA 90017
                                                           United Sta
                                                           213-633-6800
                                                           Fax: 213-633-6899
                                                           Email: brendancharney@dwt.com
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Sony Pictures**                         represented by   **Gregory Philip Korn**
                                                           Kinsella Weitzman et al LLP
                                                           808 Wilshire Blvd 3FL
                                                           Santa Monica, CA 90401
                                                           310-566-9800
                                                           Fax: 310-566-9850

Email: gkorn@kwikalaw.com
*ATTORNEY TO BE NOTICED*

**Michael Joseph Kump**
Kinsella Weitzman et al LLP
808 Wilshire Blvd 3FL
Santa Monica, CA 90401
310-566-9855
Fax: 310-566-9850
Email: mkump@kwikalaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**NBCUniversal**                        represented by **Rochelle L. Wilcox**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brendan Nathaniel Charney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kevin Spacey**

**Defendant**

**Ariel Emanuel**                       represented by **Gregory Philip Korn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Kump**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Matthew Damon**

**Defendant**

**Ben Affleck**

**Defendant**

**Neill Blomkamp**                      represented by **Gregory Philip Korn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Kump**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mordecai Wiczyk**                     represented by **Gregory Philip Korn**
(See above for address)
*ATTORNEY TO BE NOTICED*

Michael Joseph Kump
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Asif Satchu**                                    represented by   **Gregory Philip Korn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Kump**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bill Block**

**Defendant**

**Dana Brunetti**

**Defendant**

**Media Rights Capital**

**Defendant**

**MRC II LP**

**Defendant**

**MRC II Distribution Company LP**          represented by   **Gregory Philip Korn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Kump**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MRC II Holdings LP**                        represented by   **Gregory Philip Korn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Kump**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Asgari Inc.**

**Defendant**

**Oaktree Entertainment Inc.**                represented by   **Gregory Philip Korn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Kump**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MRC I Hedge Co LLC**                    represented by    **Gregory Philip Korn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Kump**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MRC SUB GP LLC**

**Defendant**

**MRC II Capital Company LP**            represented by    **Gregory Philip Korn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Kump**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MRC I Project Company LLC**            represented by    **Gregory Philip Korn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Kump**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/13/2017 | 1 | COMPLAINT against Ben Affleck, Asgari Inc., Bill Block, Neill Blomkamp, Dana Brunetti, Matthew Damon, Ariel Emanuel, MRC I Hedge Co LLC, MRC I Project Company LLC, MRC II Capital Company LP, MRC II Distribution Company LP, MRC II Holdings LP, MRC I LP, MRC SUB GP LLC, Media Rights Capital, NBCUniversal, Oaktree Entertainment Inc., Asif Satchu, Sony Pictures, Kevin Spacey, Universal Pictures, Mordecai Wiczyk (Filing fee $ 400, Receipt Number 34611128977). Filed bySteve Wilson Briggs. Consent/Declination due by 11/27/2017. (Attachments: # 1 part 2, # 2 part 3, # 3 part 4, # 4 part 5, # 5 part 6, # 6 part 7, # 7 part 8, # 8 part 9, # 9 part 10, # 10 part 11, # 11 part 12, # 12 part 13, # 13 part 14, # 14 part 15, # 15 part 16, # 16 Civil Cover Sheet, # 17 receipt)(farS, COURT STAFF) (Filed on 11/13/2017) (Entered: 11/14/2017) |
| 11/13/2017 | 2 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 2/8/2018. Initial Case Management Conference set for 2/15/2018 11:00 AM in Courtroom C, 15th Floor, San Francisco. (farS, COURT STAFF) (Filed on 11/13/2017) (Entered: 11/14/2017)** |
| 11/13/2017 | 3 | Summons Issued as to Ben Affleck, Asgari Inc., Bill Block, Neill Blomkamp, Dana |

|  |  | Brunetti, Matthew Damon, Ariel Emanuel, MRC I Hedge Co LLC, MRC I Project Company LLC, MRC II Capital Company LP, MRC II Distribution Company LP, MRC II Holdings LP, MRC II LP, MRC SUB GP LLC, Media Rights Capital, NBCUniversal, Oaktree Entertainment Inc., Asif Satchu, Sony Pictures, Kevin Spacey, Universal Pictures, Mordecai Wiczyk. (farS, COURT STAFF) (Filed on 11/13/2017) (Entered: 11/14/2017) |
|---|---|---|
| 11/13/2017 | 4 | NOTICE of Change of Address by Steve Wilson Briggs (farS, COURT STAFF) (Filed on 11/14/2017) Modified on 11/14/2017 (farS, COURT STAFF). (Entered: 11/14/2017) |
| 11/21/2017 | 5 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Steve Wilson Briggs.. (farS, COURT STAFF) (Filed on 11/21/2017) (Entered: 11/22/2017) |
| 11/21/2017 | 6 | MOTION for Permission for Electronic Case Filing filed by Steve Wilson Briggs. (Attachments: # 1 Proposed Order)(farS, COURT STAFF) (Filed on 11/21/2017) (Entered: 11/22/2017) |
| 11/27/2017 | 7 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge. (Attachments: # 1 Certificate/Proof of Service) (ejkS, COURT STAFF) (Filed on 11/27/2017) (Entered: 11/27/2017) |
| 11/27/2017 | 8 | **ORDER, Case reassigned to Judge Vince Chhabria. Magistrate Judge Laurel Beeler no longer assigned to the case. This case is assigned to a judge who participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and http://cand.uscourts.gov/cameras. Signed by Executive Committer on 1/27/17. (Attachments: # 1 Notice of Eligibility for Video Recording)(haS, COURT STAFF) (Filed on 11/27/2017) (Entered: 11/27/2017)** |
| 11/28/2017 | 9 | REASSIGNED CASE - NOTICE OF NEW HEARING DATE: You are notified that the Court has scheduled an Initial Case Management Conference before Judge Vince Chhabria upon reassignment. For a copy of Judge Chhabria's Standing Order and other information, please refer to the Court's website at www.cand.uscourts.gov. Case Management Statement due by 2/6/2018. Initial Case Management Conference set for 2/13/2018 01:30 PM in Courtroom 4, 17th Floor, San Francisco. The deputy clerk hereby certifies that on 11/28/2017 a copy of this order was served by sending it via first-class mail to the address of each non-CM/ECF user listed on the Notice of Electronic Filing. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (knm, COURT STAFF) (Filed on 11/28/2017) (Entered: 11/28/2017) |
| 12/07/2017 | 10 | **Order by Judge Vince Chhabria granting 6 Motion for Permission for Electronic Case Filing. The deputy clerk hereby certifies that on 12/7/2017 a copy of this order was served by sending it via first-class mail to the address of each non-CM/ECF user listed on the Notice of Electronic Filing.(knm, COURT STAFF) (Filed on 12/7/2017) (Entered: 12/07/2017)** |
| 12/08/2017 | 11 | **Judicial Referral for Purpose of Determining Relationship of Cases re 13-cv-4679-PJH. Signed by Judge Vince Chhabria on 12/8/2017. The deputy clerk hereby certifies that on 12/11/2017 a copy of this order was served by sending it via first-class mail to the address of each non-CM/ECF user listed on the Notice of Electronic Filing. (knm, COURT STAFF) (Filed on 12/8/2017) Modified on 12/11/2017 (knm, COURT STAFF). (Entered: 12/08/2017)** |
| 12/14/2017 | 12 | CLERK'S NOTICE. The Court has determined that Cases 13-4679 PJH and 17-6552 VC are not related and no reassignment shall occur. (dtmS, COURT STAFF) (Filed on 12/14/2017) (Additional attachment(s) added on 12/14/2017: # 1 Certificate/Proof of Service) (dtmS, COURT STAFF). (Entered: 12/14/2017) |
| 12/19/2017 | 13 | NOTICE by Steve Kenyatta Wilson Briggs *Notice of Completion of Service* (Wilson Briggs, Steve) (Filed on 12/19/2017) (Entered: 12/19/2017) |

| | | |
|---|---|---|
| 12/26/2017 | 14 | CERTIFICATE OF SERVICE by Steve Kenyatta Wilson Briggs *Proof of Service for NBCUniversal (proof of service for other defendants attached)* (Attachments: # 1 Certificate/Proof of Service, # 2 Certificate/Proof of Service, # 3 Certificate/Proof of Service, # 4 Certificate/Proof of Service, # 5 Certificate/Proof of Service, # 6 Certificate/Proof of Service, # 7 Certificate/Proof of Service, # 8 Certificate/Proof of Service, # 9 Certificate/Proof of Service, # 10 Certificate/Proof of Service, # 11 Certificate/Proof of Service)(Wilson Briggs, Steve) (Filed on 12/26/2017) (Entered: 12/26/2017) |
| 12/28/2017 | 15 | MOTION to Dismiss for Lack of Jurisdiction filed by Ariel Emanuel, MRC I Hedge Co LLC, MRC I Project Company LLC, MRC II Capital Company LP, MRC II Distribution Company LP, MRC II Holdings LP, Oaktree Entertainment Inc., Asif Satchu, Sony Pictures, Mordecai Wiczyk. Motion Hearing set for 2/8/2018 10:00 AM in Courtroom 4, 17th Floor, San Francisco before Judge Vince Chhabria. Responses due by 1/11/2018. Replies due by 1/18/2018. (Kump, Michael) (Filed on 12/28/2017) (Entered: 12/28/2017) |
| 12/28/2017 | 16 | Certificate of Interested Entities by Ariel Emanuel, MRC I Hedge Co LLC, MRC I Project Company LLC, MRC II Capital Company LP, MRC II Distribution Company LP, MRC II Holdings LP, Oaktree Entertainment Inc., Asif Satchu, Sony Pictures, Mordecai Wiczyk identifying Corporate Parent Sony Corporation for Sony Pictures. (Kump, Michael) (Filed on 12/28/2017) (Entered: 12/28/2017) |
| 12/28/2017 | 17 | Joinder *by Universal City Studios LLC and NBCUniversal Media, LLC to* 15 *Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), or, in the Alternative, Fed. R. Civ. P. 8(a), 41(b), and/or 12(b)(6)* filed by NBCUniversal, Universal Pictures. (Wilcox, Rochelle) (Filed on 12/28/2017) Modified on 12/29/2017 (rcsS, COURT STAFF). (Entered: 12/28/2017) |
| 12/28/2017 | 18 | Certificate of Interested Entities by NBCUniversal, Universal Pictures (Wilcox, Rochelle) (Filed on 12/28/2017) (Entered: 12/28/2017) |
| 12/28/2017 | 19 | NOTICE by NBCUniversal, Universal Pictures *Defendants Universal City Studios LLC and NBCUniversal Media, LLC's Corporate Disclosure Statement (FRCP 7.1)* (Wilcox, Rochelle) (Filed on 12/28/2017) (Entered: 12/28/2017) |
| 01/02/2018 | 20 | CERTIFICATE OF SERVICE by Steve Kenyatta Wilson Briggs *Brunetti proof of service* (Wilson Briggs, Steve) (Filed on 1/2/2018) (Entered: 01/02/2018) |
| 01/02/2018 | 21 | AMENDED COMPLAINT *FAC and All Exhibits* against All Defendants. Filed bySteve Kenyatta Wilson Briggs. (Attachments: # 1 Exhibit all FAC exhibits)(Wilson Briggs, Steve) (Filed on 1/2/2018) (Entered: 01/02/2018) |
| 01/03/2018 | 22 | NOTICE of Appearance by Gregory Philip Korn (Korn, Gregory) (Filed on 1/3/2018) (Entered: 01/03/2018) |
| 01/03/2018 | 23 | Response re 15 MOTION to Dismiss for Lack of Jurisdiction *Plaintiff's Opposition To Defendants' Motion To Dismiss* bySteve Kenyatta Wilson Briggs. (Wilson Briggs, Steve) (Filed on 1/3/2018) (Entered: 01/03/2018) |
| 01/06/2018 | 24 | MOTION for Sanctions *Against Defense Counsel* filed by Steve Kenyatta Wilson Briggs. Motion Hearing set for 2/15/2018 10:00 AM in Courtroom 4, 17th Floor, San Francisco before Judge Vince Chhabria. Responses due by 1/22/2018. Replies due by 1/29/2018. (Wilson Briggs, Steve) (Filed on 1/6/2018) (Entered: 01/06/2018) |
| 01/07/2018 | 25 | Declaration of Declaration in Support of Plaintiff's Motion For Sanctions in Support of 24 MOTION for Sanctions *Against Defense Counsel Declaration in Support of Motion For Sanctions Against Defense Counsel* filed bySteve Kenyatta Wilson Briggs. (Related document(s) 24 ) (Wilson Briggs, Steve) (Filed on 1/7/2018) (Entered: 01/07/2018) |

| | | |
|---|---|---|
| 01/16/2018 | 26 | MOTION to Dismiss *Universal City Studios LLC's and NBCUniversal Media, LLC's Notice of Motion and Motion to Dismiss First Amended Complaint; Memorandum of Points and Authorities* filed by NBCUniversal, Universal Pictures. Motion Hearing set for 2/22/2018 10:00 AM in Courtroom 4, 17th Floor, San Francisco before Judge Vince Chhabria. Responses due by 1/30/2018. Replies due by 2/6/2018. (Attachments: # 1 Proposed Order)(Wilcox, Rochelle) (Filed on 1/16/2018) (Entered: 01/16/2018) |
| 01/16/2018 | 27 | MOTION to Dismiss *Plaintiff's First Amended Complaint* filed by Neill Blomkamp, Ariel Emanuel, MRC II Distribution Company LP, Asif Satchu, Sony Pictures, Mordecai Wiczyk. Motion Hearing set for 2/22/2018 10:00 AM in Courtroom 4, 17th Floor, San Francisco before Judge Vince Chhabria. Responses due by 1/30/2018. Replies due by 2/6/2018. (Attachments: # 1 Declaration of Gregory Korn In Support of Defendant's Motion to Dismiss First Amended Complaint, # 2 Exhibit 1 to Gregory Korn Declaration In Support of Motion to Dismiss First Amended Complaint, # 3 Exhibit 2 to Gregory Korn Declaration In Support of Motion to Dismiss First Amended Complaint)(Kump, Michael) (Filed on 1/16/2018) (Entered: 01/16/2018) |
| 01/16/2018 | 28 | Request for Judicial Notice re 27 MOTION to Dismiss *Plaintiff's First Amended Complaint* filed byNeill Blomkamp, Ariel Emanuel, MRC II Distribution Company LP, Asif Satchu, Sony Pictures, Mordecai Wiczyk. (Related document(s) 27 ) (Kump, Michael) (Filed on 1/16/2018) (Entered: 01/16/2018) |
| 01/18/2018 | 29 | REPLY (re 15 MOTION to Dismiss for Lack of Jurisdiction ) filed byNeill Blomkamp, Ariel Emanuel, MRC II Capital Company LP, Asif Satchu, Sony Pictures, Mordecai Wiczyk. (Korn, Gregory) (Filed on 1/18/2018) (Entered: 01/18/2018) |
| 01/19/2018 | 30 | CLERK'S NOTICE RESCHEDULING THE HEARING DATE RE 24 MOTION for Sanctions *Against Defense Counsel*, AND 15 MOTION to Dismiss for Lack of Jurisdiction SO THAT THEY MAY BE HEARD ON THE SAME DATE AND TIME AS THE MOTIONS TO DISMISS. The change in hearing date has no impact on the briefing schedule as set. Motion Hearing set for 2/22/2018 10:00 AM in San Francisco, Courtroom 02, 17th Floor before Judge Vince Chhabria. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (knm, COURT STAFF) (Filed on 1/19/2018) (Entered: 01/19/2018) |
| 01/22/2018 | 31 | OPPOSITION/RESPONSE (re 24 MOTION for Sanctions *Against Defense Counsel* ) filed byNeill Blomkamp, Ariel Emanuel, MRC II Distribution Company LP, Asif Satchu, Sony Pictures, Mordecai Wiczyk. (Korn, Gregory) (Filed on 1/22/2018) (Entered: 01/22/2018) |
| 01/22/2018 | 32 | OPPOSITION/RESPONSE (re 24 MOTION for Sanctions *Against Defense Counsel* ) *Defendants' Universal City Studios LLCs' and NBCUniversal Media, LLC's (1) Opposition to Motion for Sanctions and (2) Request for Award of Expenses Under F.R.C.P. 11(e)(2)* filed byNBCUniversal, Universal Pictures. (Wilcox, Rochelle) (Filed on 1/22/2018) (Entered: 01/22/2018) |
| 01/22/2018 | 33 | Declaration of Brendan N. Charney in Support of 32 Opposition/Response to Motion, *Declaration of Brendan N. Charney in Support of Defendants' Univesal City Studios LLC's and NBCUiversal Media, LLC's (1) Opposition to Motion for Sanctions and (2) Request for Award of Expenses Under F.R.C.P. 11(e)(2)* filed byNBCUniversal, Universal Pictures. (Related document(s) 32 ) (Charney, Brendan) (Filed on 1/22/2018) (Entered: 01/22/2018) |
| 01/29/2018 | 34 | ADR Clerk's Notice re: Non-Compliance with Court Order (ewh, COURT STAFF) (Filed on 1/29/2018) (Entered: 01/29/2018) |
| 01/30/2018 | 35 | OPPOSITION/RESPONSE (re 26 MOTION to Dismiss *Universal City Studios LLC's and NBCUniversal Media, LLC's Notice of Motion and Motion to Dismiss First Amended Complaint; Memorandum of Points and Authorities* ) *Opposition To Defendant NBCU's* |

| | | |
|---|---|---|
| | | *Motion To Dismiss* filed bySteve Kenyatta Wilson Briggs. (Attachments: # 1 Declaration Declaration of Steve Wilson Briggs)(Wilson Briggs, Steve) (Filed on 1/30/2018) (Entered: 01/30/2018) |
| 01/30/2018 | 36 | OPPOSITION/RESPONSE (re 27 MOTION to Dismiss *Plaintiff's First Amended Complaint* ) *Plaintiff's Opposition To Defendants' Motion To Dismiss* filed bySteve Kenyatta Wilson Briggs. (Attachments: # 1 Declaration Declaration of Steve Wilson Briggs)(Wilson Briggs, Steve) (Filed on 1/30/2018) (Entered: 01/30/2018) |
| 01/30/2018 | 37 | MOTION to Continue *Notice of Motion and Motion to Continue Case Management Conference and Extend Case Management Schedule (L.R. 16-2(d)); Memorandum of Points and Authorities* filed by NBCUniversal, Universal Pictures. (Attachments: # 1 Proposed Order)(Wilcox, Rochelle) (Filed on 1/30/2018) (Entered: 01/30/2018) |
| 01/30/2018 | 38 | Declaration of Brendan N. Charney in Support of 37 MOTION to Continue *Notice of Motion and Motion to Continue Case Management Conference and Extend Case Management Schedule (L.R. 16-2(d)); Memorandum of Points and Authorities* filed byNBCUniversal, Universal Pictures. (Related document(s) 37 ) (Charney, Brendan) (Filed on 1/30/2018) (Entered: 01/30/2018) |
| 01/31/2018 | 39 | Joinder re 37 MOTION to Continue *Notice of Motion and Motion to Continue Case Management Conference and Extend Case Management Schedule (L.R. 16-2(d)); Memorandum of Points and Authorities*, 38 Declaration in Support, by Neill Blomkamp, Ariel Emanuel, MRC II Distribution Company LP, Asif Satchu, Sony Pictures, Mordecai Wiczyk. (Korn, Gregory) (Filed on 1/31/2018) (Entered: 01/31/2018) |
| 01/31/2018 | 40 | CLERK'S NOTICE RESCHEDULING THE INITIAL CASE MANAGEMENT CONFERENCE. Case Management Statement due by 3/6/2018. Initial Case Management Conference set for 3/13/2018 01:30 PM in San Francisco, Courtroom 04, 17th Floor. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (knm, COURT STAFF) (Filed on 1/31/2018) (Entered: 01/31/2018) |
| 02/06/2018 | 41 | REPLY (re 26 MOTION to Dismiss *Universal City Studios LLC's and NBCUniversal Media, LLC's Notice of Motion and Motion to Dismiss First Amended Complaint; Memorandum of Points and Authorities* ) *Reply Memorandum of Points and Authorities in Support of Defendants Universal City Studios LLC's and NBCUniversal Media, LLC's Motion to Dismiss First Amended Complaint* filed byNBCUniversal, Universal Pictures. (Wilcox, Rochelle) (Filed on 2/6/2018) (Entered: 02/06/2018) |
| 02/06/2018 | 42 | REPLY (re 27 MOTION to Dismiss *Plaintiff's First Amended Complaint* ) filed byNeill Blomkamp, Ariel Emanuel, MRC II Distribution Company LP, Asif Satchu, Sony Pictures, Mordecai Wiczyk. (Korn, Gregory) (Filed on 2/6/2018) (Entered: 02/06/2018) |
| 02/08/2018 | 43 | Second MOTION for Sanctions *Against Defense Counsel* filed by Steve Kenyatta Wilson Briggs. Motion Hearing set for 3/15/2018 10:00 AM in San Francisco, Courtroom 04, 17th Floor before Judge Vince Chhabria. Responses due by 2/22/2018. Replies due by 3/1/2018. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C)(Wilson Briggs, Steve) (Filed on 2/8/2018) (Entered: 02/08/2018) |
| 02/09/2018 | 44 | CERTIFICATE OF SERVICE by Steve Kenyatta Wilson Briggs *proof of service for Ben Affleck* (Wilson Briggs, Steve) (Filed on 2/9/2018) (Entered: 02/09/2018) |
| 02/09/2018 | 45 | CERTIFICATE OF SERVICE by Steve Kenyatta Wilson Briggs *Proof of service of summons, cover sheet, FAC, etc. for Defendant Bill Block* (Wilson Briggs, Steve) (Filed on 2/9/2018) (Entered: 02/09/2018) |
| 02/09/2018 | 46 | CERTIFICATE OF SERVICE by Steve Kenyatta Wilson Briggs *Proof of service of summons, cover sheet, FAC, etc. for Defendant Dana Brunetti* (Wilson Briggs, Steve) |

| | | (Filed on 2/9/2018) (Entered: 02/09/2018) |
|---|---|---|
| 02/09/2018 | 47 | CERTIFICATE OF SERVICE by Steve Kenyatta Wilson Briggs *Proof of service of summons, cover sheet, FAC, etc. for Defendant Kevin Spacey* (Wilson Briggs, Steve) (Filed on 2/9/2018) (Entered: 02/09/2018) |
| 02/09/2018 | 48 | CERTIFICATE OF SERVICE by Steve Kenyatta Wilson Briggs *Proof of service of summons, cover sheet, FAC, etc. for Defendant Matt Damon* (Wilson Briggs, Steve) (Filed on 2/9/2018) (Entered: 02/09/2018) |
| 02/10/2018 | 49 | Declaration of Steve Wilson Briggs in Support of 1 Complaint,,, filed bySteve Kenyatta Wilson Briggs. (Related document(s) 1 ) (Wilson Briggs, Steve) (Filed on 2/10/2018) (Entered: 02/10/2018) |
| 02/10/2018 | 50 | Declaration of Steve Wilson Briggs in Support of 43 Second MOTION for Sanctions *Against Defense Counsel in support of MOTION FOR SANCTIONS AGAINST DEFENDANTS ATTORNEYS ROCHELLE L.WILCOX, AND MICHAEL J. KUMP* filed bySteve Kenyatta Wilson Briggs. (Related document(s) 43 ) (Wilson Briggs, Steve) (Filed on 2/10/2018) (Entered: 02/10/2018) |
| 02/13/2018 | 51 | CLERK'S NOTICE vacating the motion hearing scheduled for 2/22/2018. The Court will issue a written ruling based on the motions filed and the responsive briefs to those motions. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (knm, COURT STAFF) (Filed on 2/13/2018) (Entered: 02/13/2018) |
| 02/19/2018 | 52 | ERRATA re 43 Second MOTION for Sanctions *Against Defense Counsel* by Steve Kenyatta Wilson Briggs. (Wilson Briggs, Steve) (Filed on 2/19/2018) (Entered: 02/19/2018) |
| 02/21/2018 | 53 | NOTICE of need for ADR Phone Conference (ADR L.R. 3-5 d) (Wilcox, Rochelle) (Filed on 2/21/2018) (Entered: 02/21/2018) |
| 02/22/2018 | 54 | ADR Clerk's Notice Setting ADR Phone Conference on March 7, 2018 at 10:30 AM Pacific time. Please note that you must be logged into an ECF account of counsel of record in order to view this document. (cmf, COURT STAFF) (Filed on 2/22/2018) (Entered: 02/22/2018) |
| 02/22/2018 | 55 | OPPOSITION/RESPONSE (re 43 Second MOTION for Sanctions *Against Defense Counsel* ) filed byNeill Blomkamp, Ariel Emanuel, MRC II Distribution Company LP, Asif Satchu, Sony Pictures, Mordecai Wiczyk. (Korn, Gregory) (Filed on 2/22/2018) (Entered: 02/22/2018) |
| 02/22/2018 | 56 | OPPOSITION/RESPONSE (re 43 Second MOTION for Sanctions *Against Defense Counsel* ) *Defendants' Universal City Studios LLC's and NBCUniversal Media, LLC's (1) Opposition to Second Motion for Sanctions and (2) Request for Award of Expenses Under F.R.C.P. 11(c)(2)* filed byNBCUniversal, Universal Pictures. (Wilcox, Rochelle) (Filed on 2/22/2018) (Entered: 02/22/2018) |
| 02/22/2018 | 57 | DECLARATION of Brendan N. Charney in Opposition to 43 Second MOTION for Sanctions *Against Defense Counsel Declaration of Brendan N. Charney in Support of Defendants' Universal City Studios LLC's and NBCUniversal Media, LLC's Opposition to Plaintiff's Second Motion for Santions* filed byNBCUniversal, Universal Pictures. (Related document(s) 43 ) (Charney, Brendan) (Filed on 2/22/2018) (Entered: 02/22/2018) |
| 02/26/2018 | 58 | CLERK'S NOTICE RESCHEDULING THE INITIAL CASE MANAGEMENT CONFERENCE UNTIL AFTER PENDING MOTIONS HAVE BEEN ADJUDICATED. Case Management Statement due by 4/24/2018. Initial Case Management Conference set for 5/1/2018 01:30 PM in San Francisco, Courtroom 04, 17th Floor. *(This is a text-only* |

| | | *entry generated by the court. There is no document associated with this entry.)* (knm, COURT STAFF) (Filed on 2/26/2018) (Entered: 02/26/2018) |
|---|---|---|
| 02/28/2018 | 59 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Wilcox, Rochelle) (Filed on 2/28/2018) (Entered: 02/28/2018) |
| 02/28/2018 | 60 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *with Defendant Mordecai Wiczyk* (Korn, Gregory) (Filed on 2/28/2018) (Entered: 02/28/2018) |
| 02/28/2018 | 61 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *with Defendant Ariel Emanuel* (Korn, Gregory) (Filed on 2/28/2018) (Entered: 02/28/2018) |
| 02/28/2018 | 62 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *with Defendant Sony Pictures* (Korn, Gregory) (Filed on 2/28/2018) (Entered: 02/28/2018) |
| 02/28/2018 | 63 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *with Defendant MRC II Distribution Company LP* (Korn, Gregory) (Filed on 2/28/2018) (Entered: 02/28/2018) |
| 02/28/2018 | 64 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *with Defendant Asif Satchu* (Korn, Gregory) (Filed on 2/28/2018) (Entered: 02/28/2018) |
| 02/28/2018 | 65 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *with Defendant Neill Blomkamp* (Korn, Gregory) (Filed on 2/28/2018) (Entered: 02/28/2018) |
| 03/06/2018 | 66 | Supplemental Brief re 28 Request for Judicial Notice, filed byNeill Blomkamp, Ariel Emanuel, MRC II Distribution Company LP, Asif Satchu, Sony Pictures, Mordecai Wiczyk. (Related document(s) 28 ) (Korn, Gregory) (Filed on 3/6/2018) (Entered: 03/06/2018) |
| 03/07/2018 | 67 | ADR Remark: ADR Phone Conference held on 3/7/2018 by Tamara Lange. (cmf, COURT STAFF) (Filed on 3/7/2018) *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Entered: 03/07/2018) |
| 03/12/2018 | 68 | CLERK'S NOTICE vacating the Second Motion for Sanctions Against Defendants, scheduled for 3/15/2018. The Court will issue a written ruling based on the motion and responsive briefs connected to the motion. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (knm, COURT STAFF) (Filed on 3/12/2018) (Entered: 03/12/2018) |
| 03/14/2018 | 69 | **ORDER DENYING MOTIONS FOR SANCTIONS AND ORDER TO SHOW CAUSE. Plaintiff's Show Cause Response due by 3/21/2018. Defendants' Responses due by 3/28/2018. Signed by Judge Vince Chhabria on 3/14/2018. (knm, COURT STAFF) (Filed on 3/14/2018) (Entered: 03/14/2018)** |
| 03/15/2018 | 70 | Request for Judicial Notice re 21 Amended Complaint filed bySteve Kenyatta Wilson Briggs. (Related document(s) 21 ) (Wilson Briggs, Steve) (Filed on 3/15/2018) (Entered: 03/15/2018) |
| 03/20/2018 | 71 | RESPONSE TO ORDER TO SHOW CAUSE by Steve Kenyatta Wilson Briggs (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E)(Wilson Briggs, Steve) (Filed on 3/20/2018) Modified on 3/20/2018 (fabS, COURT STAFF). (Entered: 03/20/2018) |
| 03/20/2018 | 72 | CERTIFICATE OF SERVICE by Steve Kenyatta Wilson Briggs re 71 Response to Order to Show Cause, (Wilson Briggs, Steve) (Filed on 3/20/2018) (Entered: 03/20/2018) |
| 03/28/2018 | 73 | RESPONSE TO ORDER TO SHOW CAUSE filed by NBCUniversal, Universal Pictures . (Wilcox, Rochelle) (Filed on 3/28/2018) (Entered: 03/28/2018) |
| 03/28/2018 | 74 | RESPONSE TO ORDER TO SHOW CAUSE filed by Neill Blomkamp, Ariel Emanuel, |

| | | MRC II Distribution Company LP, Asif Satchu, Sony Pictures, Mordecai Wiczyk . (Korn, Gregory) (Filed on 3/28/2018) (Entered: 03/28/2018) |
|---|---|---|
| 04/24/2018 | 75 | CLERK'S NOTICE RESCHEDULING THE INITIAL CASE MANAGEMENT CONFERENCE. Case Management Statement due by 5/22/2018. Initial Case Management Conference set for 5/29/2018 01:30 PM in San Francisco, Courtroom 04, 17th Floor. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (knm, COURT STAFF) (Filed on 4/24/2018) (Entered: 04/24/2018) |
| 04/25/2018 | 76 | **ORDER DISMISSING CASE. Signed by Judge Vince Chhabria on 4/25/2018. (knm, COURT STAFF) (Filed on 4/25/2018) (Entered: 04/25/2018)** |
| 04/25/2018 | 77 | **JUDGMENT. Signed by Judge Vince Chhabria on 4/25/2018. (knm, COURT STAFF) (Filed on 4/25/2018) (Entered: 04/25/2018)** |
| 08/16/2018 | 78 | **ORDER OF REFERRAL TO DETERMINE WHETHER CASES ARE RELATED. Signed by Judge Saundra Brown Armstrong on 8/16/18. (dtmS, COURT STAFF) (Filed on 8/16/2018) (Entered: 08/16/2018)** |
| 08/28/2018 | 79 | **ORDER RELATING CASES 17-cv-6552-VC, Briggs v. Universal Pictures, et al., and 18-cv-04952-SBA, Briggs v. Spacey et al. Signed by Judge Vince Chhabria on 8/28/2018. (knm, COURT STAFF) (Filed on 8/28/2018) (Entered: 08/28/2018)** |
| 10/22/2018 | 80 | CERTIFICATE OF SERVICE by Steve Kenyatta Wilson Briggs *Declartion re Defendants MRC, Satch, Wiczyk* (Wilson Briggs, Steve) (Filed on 10/22/2018) (Entered: 10/22/2018) |
| 10/25/2018 | 81 | Second MOTION for Default Judgment by the Clerk as to filed by Steve Kenyatta Wilson Briggs. (Attachments: # 1 Certificate/Proof of Service certification/declaration of Cecile Lusby, # 2 Affidavit Declaration of Plaintiff, # 3 Certificate/Proof of Service copy of proof of service of summons and complaint, # 4 Proposed Order proposed entry of default) (Wilson Briggs, Steve) (Filed on 10/25/2018) (Entered: 10/25/2018) |
| 10/26/2018 | 82 | Clerk's DECLINATION OF DEFAULT. Case was dismissed and judgment entered on 4/25/18. (Related documents(s) 81 )(fabS, COURT STAFF) (Filed on 10/26/2018) (Entered: 10/26/2018) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/29/2018 13:57:56 | | |
| **PACER Login:** | Koralfoster0116:4624215:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:17-cv-06552-VC |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |

# EXHIBIT 4

1   Steve Wilson Briggs
2   4322 Chico Ave.
3   Santa Rosa, CA 95407
4   510 200 3763
5   snc.steve@gmail.com
6   PLAINTIFF In Propria Persona

FILED

NOV 13 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8               UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA

10

11   STEVE WILSON BRIGGS                 Civ No: 17  6552
12              Plaintiff,
13                   vs                   **COMPLAINT FOR:**
14   UNIVERSAL PICTURES;                  1.  **CONSPIRACY**
15   SONY PICTURES;                       2.  **OBSTRUCTION OF JUSTICE**
     NBCUNIVERSAL;                        3.  **FALSE STATEMENTS**
16   KEVIN SPACEY;                        4.  **BREACH OF CONTRACT**
17   ARIEL (ARI) EMANUEL;                 5.  **FRAUD AND FALSE**
     MATTHEW (MATT) DAMON;                    **STATEMENTS**
18   BEN AFFLECK;                         6.  **DECEIT**
19   NEILL BLOMKAMP;                      7.  **NEGLIGENCE**
     MORDECAI (MODI) WICZYK;              8.  **GROSS NEGLIGENCE**
20   ASIF SATCHU;                         9.  **VIOLATION OF CALIFORNIA**
     BILL BLOCK;                              **LABOR CODE § 1700.39**
21   DANA BRUNETTI;                       10. **VIOLATION OF UNFAIR**
21   MRC;                                     **BUSINESS PRACTICES ACT**
       all MRC entities and subsidiaries:    **[CAL BUS & PROF CODE**
22   (MEDIA RIGHTS CAPITAL; MRC II LP;         **§ 17200, ET SEQ.]**
23   MRC II DISTRIBUTION COMPANY LP;      11. **PERJURY**
     MRC II HOLDINGS, L.P.; ASGARI INC.;  12. **TAMPERING WITH EVIDENCE**
24   OAKTREE ENTERTAINMENT, INC.;         13. **WITNESS TAMPERING**
25   MRC I HEDGE CO, LLC;  MRC SUB GP,    14. **SUBORNATION OF PERJURY**
     LLC; MRC II CAPITAL COMPANY, L.P.;
26   MRC I PROJECT COMPANY, LLC)
27                                        **DEMAND FOR JURY TRIAL**
28              Defendants.

COMPLAINT
1

| 1 | **NATURE OF ACTION:** |
|---|---|

1.     Pursuant to 28 U.S. Code § 1332 (as this matter involves Defendants who are not American citizens, and concerns violations that cross US state and international borders) the Plaintiff brings this lawsuit against the Defendants (**Defs**) for their willful violations of US and California state laws, done for their personal enrichment and/or to gain unlawful competitive advantage, through their participation in such actions and violations as:

1. Obstruction Of Justice: 6 days after Plaintiff filed his Notice of Appeal (in Briggs v Blomkamp, C134679 PJH), the Defs closed their social network (TriggerStreet), to destroy evidence and records, as this was their *access* point in Briggs v Blomkamp.

2. The Defs used Def Emanuel's influence with Universal Pictures to entice, persuade or bribe the enlistment of other conspirators, and as leverage against business rivals.

3. The Defendants created a social network, "TriggerStreet.com" (**TS**) to secretly and unlawfully access, appropriate and alter unsuspecting writers' work. The Defendants financially profited from these activities, or received film acting roles for themselves, or film production or distribution benefits;

4. Without informing TS members, the Defendants installed a secret counter-security feature on TS, which erased all access records if a member deleted their work.

5. Breach: TS's "Terms of Use" stated the site was made **solely for use in the USA**, yet Def Spacey went to London for a TS launch party and interviews, and went to Spain for a TS recruitment speech, to tout TS's **"400,000 members around the world."**

6. Evidence will show Def Ari Emanuel, a talent agent, is also Hollywood's most powerful film producer—against California labor & business codes § 1700.39, which makes it unlawful for a talent agent to act as both agent and as an employer.

7. In a surreal move, in Briggs v Blomkamp, rather than hiring a copyright attorney, the Defs hired fixer/conman **Jeff Rovin**—a high school-educated fantasy writer—as their sole "expert" witness. Rovin provided falsified and fraudulent testimony to the court (surely on the Defs orders). Two years after Briggs v Blomkamp went to appeals, Rovin went on national TV, Fox News' "*The Sean Hannity Show*," Oct. 24, 2016, to admit he was a professional "fixer" (someone hired to make problems go

COMPLAINT

2

1    away by producing false documents and stories) for President Bill and Hillary

2    Clinton. June 12, 2014, Plaintiff moved to exclude Rovin's report due to its gross

3    fraud. Somehow the district court denied the Plaintiff's motion.

4    8. Defs rendered contracts relying false statements, misrepresentations and omissions.

5    9. Defs boasted TS had "industry standard" security, when, in fact, they removed all

6    security features to allow themselves constant anonymous access to writer's works.

7    10. Defs made wild false promises to entice new writers, such as: "Our team has been

8    extensively researching and designing TriggerStreet.com **to ensure that it**

9    **encapsulates every aspect of the user's desires and needs**".

10   11. The Defendants conflict of interest-ridden relationships (e.g. Defs Emanuel's and

11   Bill Block's secret co-ownership of Screenbid.com with Sony Picture's CEO M.

12   Lynton, and Def Emanuel's unlawful co-ownership of MRC with Defs Satchu and

13   Wiczyk) created a culture where the Defs neglected to do basic due diligence. Thus,

14   **before they ever read a script**, Sony and MRC agreed to buy the rights to Def

15   Blomkamp's screenplay "*Elysium*," which was misappropriated from the Plaintiff.

16   <div align="center">**JURISDICTION:**</div>

17   2. **Jurisdiction:** This court has subject matter jurisdiction per 28 USC § 1332(a)(2), as

18   one or more Defendant are foreign citizens, and (a)(2), as one is a citizen of a different State.

19   3. **Venue:** venue is proper pursuant to 28 § 1391(b)(2) as events giving rise to this

20   complaint occurred in this district, and 28 § 1391(d), by virtue of the Defendants' business

21   transaction with this dist., and under 326 US 310 the Defs meet the minimum contact rule.

21   4. **Intradistrict Assignment:** San Francisco is the proper intradistrict assignment as a

22   substantial part of the events and omissions, leading to this lawsuit, occurred in this district.

23   <div align="center">**THE PARTIES:**</div>

24   5. **Plaintiff,** Steve Wilson Briggs, is a filmmaker, screenwriter, author and musician.

25   6. **Defendant** Universal Pictures is an American film studio; NBCUniversal subsidiary.

26   7. **Defendant** Sony Pictures is a subsidiary of the Japanese multinational Sony Corp.

27   8. **Def** NBCUniversal is a multinational media conglomerate & Comcast subsidiary.

28   9. **Defendant** Kevin Spacey is an American actor, and one of the men purportedly

<div align="center">COMPLAINT

3</div>

1  responsible for creating the now defunct social network TriggerStreet (TS).

2      10. **Defendant** Ariel (Ari) Emanuel is a talent agent and co-CEO of WME-IMG.

3      11. **Defendant** Matt Damon is an American actor and screenwriter.

4      12. **Defendant** Ben Affleck is an American actor and screenwriter.

5      13. **Defendant** Neill Blomkamp is a South African-born film director. He is, on

6  information and belief, a Canadian or South African citizen.

7      14. **Defendant** Mordecai Wiczyk is the co-CEO of Media Rights Capital (MRC);

8      15. **Def** Asif Satchu is the co-CEO of MRC, and is believed to be a citizen of Canada.

9      16. **Def** Bill Block is CEO of Miramax (a subsidiary of beIN Media Group—a Qatari

10  company, owned by Al Jazeera) and a co-owner of Screenbid with Def Emanuel.

11      17. **Defendant** Dana Brunetti is credited with the conception of TriggerStreet.

12      18. **Defendant** MRC is a diversified global media company. It has many subsidiaries

13  and alternate names, including: MRC; MRC II LP; MRC II Distribution Company LP.

14                 **RELATED CASES:**

15      19. This lawsuit is related to Briggs v. Blomkamp, et al, No. C134679 PJH, a copyright

16  case, currently in appeals. No aspect of this suit is contingent on the outcome of that matter.

17  Certain new events, related to Briggs v Blomkamp, informs this matter; such as:

18    **1.** Six (6) days after Briggs v Blomkamp moved to appeals, the Defs destroyed

19        essential case evidence (closing and destroying the entire social network website

20        TriggerStreet, without explanation); hence, the obstruction charge.

21    **2.** As Plaintiff researched the Obstruction Of Justice charges against Defs, he found

21        multiple reports of Def Spacey travelling to abroad to give speeches and host parties

22        to attract foreign member to TS, in violation of the website's "Terms of Use", stating

23        TS was made solely for use in the USA; contributing to the *breach* charges, herein.

24    **3.** As Plaintiff prepared to draft this Complaint, **Jeff Rovin** (the Defendants "expert"

25        witness from Briggs v Blomkamp) admitted on *The Sean Hannity Show* that he was

26        a professional "fixer" (hired to produce false stories for tabloids). This revelation,

27        coupled with the fraud contained in Rovin's report (in Briggs v Blomkamp) shores a

28        portion of the Subornation Of Perjury claims against the Defendants.

ER 1066

## STATEMENT OF FACTS & ALLEGATIONS:

### Brief Case Overview

20. The Defendants conspired to create and operate (for 12 years) a social network for screenwriters and filmmakers, known as **TriggerStreet** (referred to as **TS** in this Complaint). TriggerStreet (**TS**) was located at www.triggerstreet.com from 11/2002 to 07/2011, and at www.labs.triggerstreet.com from 07/2011 to 11/2014. The Defendants used TS to fraudulently access and acquire original film ideas. By using TS's 400,000+ members to review, judge, and rank the best work, the Defendants were able to peruse the very best scripts at their leisure, alter them slightly, then produce and market them, as their own.

21. To entice the best undiscovered writers into joining TS and submitting their screenplays, the Defs published and rendered a contract comprised of false claims, deception and concealments. TS's "Terms of Use", "About Us" and "Security" pages claimed to employ "industry standard" security, and boasted that TS "encapsulates every aspect of the user's desires and needs", when, in fact, TS's security features were effectively non-existent. (Said TS websites pages "Terms of Use", "About Us" and "Privacy" are attached, respectively, as **Exhibit A**, **Exhibit B**, **Exhibit C**, and are incorporated by reference as if fully set out herein.) The Defs conspired to remove all security features on the website. Any member could download any script, without the writer knowing the downloader's ID. Only if an accessor chose to write a script review would the writer be informed of the accessor's ID —but only the accessor's pseudonym (fake name) ID, while others users who downloaded the script without leaving a review, left no trace at all.

22. More astounding, in 2007, the Defs added a new "counter-security" feature, **without informing members,** whereby if a member—concerned about security—deleted his script from TS, the deletion would trigger the erasure of all access records. This was done to conceal the Defs accessing the Plaintiff's work (only posted in 2007). In May 2016, in an Amazon Studios forum (https://studios.amazon.com/discussions/Tx26JKEN8CYMP95) a former TS member recalled that this **"memory dump"** feature was added in 2007. (Said forum is attached as "**Exhibit D**" and incorporated by reference as if fully set out herein; see last entry, page 4.) In 2014, as Briggs v Blomkamp proceeded through discovery, the

ER 1067

1  Plaintiff contacted TS to ask for their records of all the members who accessed his work.
2  (Said email is attached as "**Exhibit E**" and incorporated by reference as if fully set out
3  herein). TS replied that when his work was removed, all access records were erased. (Said
4  email is attached as "**Exhibit F**" and is incorporated by reference as if fully set out herein.)

5      23. TS falsely assured members that the site was intended solely for use in the USA.
6  But Spacey and Brunetti secretly marketed TS all around the world.

7      24. Through secret and private business co-ownerships with key CEOs, in businesses
8  like Screenbid and MRC, Def Emanuel cultivated unethical relationships with Universal
9  Pictures, Sony Pictures, MRC, QED, etc. Thus, these companies would finance and
10  distribute almost any project Emanuel asked, ignoring due diligence and best practices.

11      25. The Defendants' final illegal action occurred on Nov 6th, 2014, 6 days after
12  Plaintiff filed his Notice Of Appeal (Briggs v Blomkamp), when the Defs surreptitiously
13  closed TS, to destroy incriminating evidence —understanding the district court based its
14  MFSJ ruling on vacated law, rather than prevailing law—cited by Plaintiff. Thus, the case
15  was apt to be remanded for trial, where the Plaintiff would subpoena all site access records.

16                                    NOTE:

17      26. This Complaint reveals Def Ari Emanuel lead a conspiracy to misappropriate ideas
18  using TS and ProjectGreenlight.com (**Project Greenlight**), to market these ideas to his
19  business partners at Sony Pictures, MRC, Universal Pictures, parent NBCUniversal, etc.
20  Relevant to this, Def Emanuel has represented Defs Ben Affleck and Matt Damon for most
21  of their careers. Curiously, like Spacey, Affleck and Damon ran a screenwriter/filmmaker
21  website, Project Greenlight, from 2000-05 and 2015-16. Curiously, both sites used peculiar
22  language like *peer-to-peer,* and used *peer reviews* to weed out bad scripts. And curiously,
23  Spacey, Damon and Affleck were the only celebrities with screenwriter websites from
24  2000-2014.    In 2005, writer Joel Lamontagne sued Project Greenlight and **Harvey**
25  **Weinstein's *Miramax,*** alleging the TV series *Project Runway* (2005-present) was stolen
26  from a treatment he submitted to Project Greenlight. The allegedly stolen work became the
27  property of Universal Pictures' parent, **NBCUniversal**. Def Emanuel's shadowy projects
28  eventually becoming the property of Universal is a recurring pattern in this Complaint.

COMPLAINT
6

| 1 | **BACKGROUND FACTS:** |
| 2 | THE SIX (6) PRIMARY DEFENDANT ACTORS: |
| 3 | **ARI EMANUEL** (DEFENDANT) |

4    27.  Defendant Ari Emanuel is the co-CEO of William Morris Endeavor (WME, aka
5  WME-IMG). Prior to this, Def Emanuel was the CEO of Endeavor Talent Agency
6  (1995-2009), where his aggressive manner and unethical business practices became
7  notorious, inspiring the character *Ari Gold* in the HBO TV series "Entourage". Under Def
8  Emanuel Endeavor was sued by Sandra Epstein for sexual harassment in 2002. (Emanuel is
9  a close associate of many of America's most notorious sexual harassers.) Epstein suit also
10  accused Def Emanuel of making racist remarks, and in 2014 WME was found guilty at
11  arbitration of racial discrimination. WME-IMG seems to attract clients who share Def
12  Emanuel's values; thus WME-IMG disproportionately represents aging white clients and
13  *difficult* clients that other agencies avoid (Charlie Sheen, Russell Crowe), and clients who
14  are more conservative, or politically unaware, than the rest of Hollywood.

15    28.  November 20th, 2016, Def Emanuel traveled to New Jersey to congratulate
16  President-elect Trump. Emanuel is also President Trump's former talent agent. Predictably,
17  *The Apprentice* (starring Trump) was broadcast on **NBCUniversal**. Recently, *The Hill* (and
18  others) reported that it was Def Emanuel who helped get the accused serial sexual predator
19  elected President, by sealing the Miss Universe tape archives, so no further tapes of
20  candidate Trump sexually harassing beauty contestants would be released. (Said "The Hill"
21  article is attached as **"Exhibit G"** and is incorporated by reference as if fully set out herein.)

21    **ASIF SATCHU (Defendant)**

22    29.  Defendant Asif Satchu was born in Kenya but moved to **Canada** when he was 6
23  years old. Satchu, like Def Blomkamp, is believed to be a Canadian citizen. (Canadian
24  connections are a recurring feature in this matter.) Def Satchu is a co-founder of MRC, with
25  Wiczyk. Def Satchu is the brother of **Reza Satchu**, an enormously successful Canadian
26  businessman. Def Satchu and Reza, both graduated from Canada's **McGill** University. Def
27  Satchu is something of a business and business-technology genius.  **In 1999 Satchu**
28  **co-founded SupplierMarket.com** with Jon Burgstone (Reza Satchu was also a heavily

COMPLAINT

7

ER 1069

1   invested partner). SupplierMarket.com facilitated the **international sales and distribution**
2   of software, bolts, nuts, fasteners, rubber and glass products, corrugated packaging, and
3   probably anything else. **Only 18 months later, Aug. 2000, Satchu and his partners sold**
4   **SupplierMarket for $950,000,000.** Def Satchu graduated from Harvard (MBA) in 1999.

5           **MORDECAI (MODI) WICZYK (Defendant)**

6      30.    Defendant Modi Wiczyk is an American born business man, co-CEO and
7   co-founder of MRC (with Defendant Satchu). Wiczyk is the **visionary** of this conspiracy.

8     31. Around 1995, fresh out of college, Defendant Wiczyk began working at Summit
9   Entertainment, LLC. That was the first year Summit began producing and financing films
10  (prior, Summit had exclusively sold US films abroad), surely the vision of Def Wiczyk.

11     32. Only four years later, in 1999, when Wiczyk was only 27, Summit Entertainment
12  made Wiczyk their Senior Vice President of Production and Acquisitions. That same year,
13  1999, Wiczyk sent out his now famous **memo** (more about this later), **which would make**
14  **him one of the most influential and sought after men in Hollywood**. Within a year, in
15  2000, likely on the order of Def Ari Emanuel, Def Wiczyk was **hired by Universal**
16  **Pictures** as Vice President of Productions, where Wiczyk served for 2 years, until January
17  2002, when Def Ari Emanuel made Wiczyk a partner at Emanuel's Endeavor Talent
18  Agency. Def Wiczyk graduated from Harvard (MBA) in 1999.

19           **KEVIN SPACEY** (Defendant).

20     33. Defendant Kevin Spacey is an Academy Award winning actor. His career was
21  floundering and at its nadir in 2000 when the conspiracy(s) detailed herein began, and
21  when, purportedly, he and Def Brunetti conceived of TS. Def Spacey, who dropped out of
22  Juilliard School in his sophomore year, has no known web-design skills. Seemingly,
23  Spacey's only value to the TS social network was as a high-profile, semi-likeable celebrity,
24  whose promise of "industry access and exposure" would lure the best undiscovered writers
25  to the website, to unwittingly surrendering their wares to the Defendants.

26          **DANE BRUNETTI** (Defendant)

27     34. Defendant Brunetti has no known college education. He joined the US coast guard
28  in 1992, at 18 or 19. Brunetti met Spacey around 1998, while Brunetti was selling cell

COMPLAINT

8

1   phones in New York. Brunetti soon became Spacey's partner and personal assistant. It is
2   purported around the internet (including on Wikipedia) that Brunetti was responsible for
3   designing TriggerStreet.com. That is one operational assumptions of this complaint.
4   However, there is no evidence that Brunetti possessed any of the skills required to design a
5   social network. The Plaintiff suspects Def Asif Satchu (who founded the internet-based
6   marketplace SupplierMarket.com) may be the website's true designer and talent coordinator.

7   **MRC**

8   35. MRC is a television and film studio, founded by its co-CEOs Defs Asif Satchu and
9   Modi Wiczyk. MRC was started in 2003 with money provided by Def Ari Emanuel
10  (although MRC often reports it was started in 2006 or 2007). Def Emanuel is a silent
11  partner in MRC. Unlike most ethical companies MRC operates under many names. Likely,
12  only Defs Emanuel, Satchu and Wiczyk know what these companies do. But such LLC
13  companies are a hallmark of money laundering networks (see Dept of Treasury's FinCEN
14  report). The Plaintiff is aware of 11 MRC companies: **MRC, Media Rights Capital; MRC**
15  **II LP; MRC II Distribution Company LP (foreign based); MRC II Holdings, LP;**
16  **Oaktree Entertainment, Inc. (a foreign stock business); MRC I Hedge Co, LLC; MRC**
17  **II Capital Company, LP; MRC Sub Gp, LLC; MRC I Project Company, LLC; Asgari**
18  **Inc.** Plaintiff believes that most of these *companies* are "shell" companies (fronts for illegal
19  activity), existing to launder money and other transactions. Working in conjunction with
20  Def Bill Block (**Miramax** CEO) and *Al Jazeera or beIN Media Group* (Miramax's parent),
21  and perhaps with Satchu's Kenyan-based family, these shells may also be responsible for:

21      a. producing and selling ideas taken from TS to foreign markets (not for US release);

22      b. financing foreign films that utilize ideas taken from TS (not for US release).

23

24              **Def Ari Emanuel's Relationship With Defendant Spacey:**

25  36. Defendant Ari Emanuel likely first met Defendant Kevin Spacey between 1987 and
26  1989, when both men were at Creative Artist Agency (CAA). In 1987 Def Ari Emanuel was
27  a new CAA talent agent, working in **TV** casting. In 1987 Def Kevin Spacey, represented by
28  CAA, was working in Los Angeles, and appeared in 9 episodes of the **TV** series "Wiseguy".

ER 1071

**Def Emanuel's Notorious Connection to Def Wiczyk & Satchu:**

37. Defendant Ari Emanuel is a quiet partner in MRC. Thus, by casting WME-IMG actors in MRC films, Def Emanuel profits both as an agent, and as a studio owner. This arrangement is a conflict of interest, in violation of CA Labor Code 1700.39.

38. In 2007, The New York Times published an article called *"Tilting The Balance of Power Toward Talent Agency Clients"* (by Mike Cieply), which looked at the questionable relationship Def Ari Emanuel has with MRC, among other matters. (Said article "Tilting The Balance of Power Toward Talent Agency Clients" is attached as **"Exhibit H"** and is incorporated by reference as if fully set out herein.) The article states:

....representatives of several such companies said last week that they knew of no firm that has pushed its alliance with an agency as far as Media Rights. Films backed by the financier have included substantial talent from other agencies — Brad Pitt and Cate Blanchett, stars of "Babel," are represented by Creative Artists. But virtually all of the company's projects have been built around an Endeavor-backed participant, like the actor Jude Law in "Sleuth," or Hugh Jackman, in "The Tourist."According to Mr. Wiczyk and Mr. Satchu, the agency owns a minority, nonvoting stake in their company, which they declined to specify.

39. Reporter Cieply also interviewed other established Hollywood financiers who are wary of working with Defs Emanuel and MRC because of these questionable arrangements.

...some agents last week questioned whether Media Rights could be trusted not to put their proprietary information in the service of Endeavor. Others wondered if the Endeavor's ownership stake ran afoul of regulatory provisions in California law or contracts with guilds.

"For us, financing opportunities are always exciting and interesting,"said Jeremy Zimmer, a partner at United Talent. Mr. Zimmer said that his agency has not done business with Media Rights, but might do so if it was satisfied that the company's ownership and influences were clear. "What becomes critical is who is the management?" he asked. "What level of transparency are we going to have?"

Robert Jones, California's acting labor commissioner, whose office regulates talent agents, said the state's labor code has a provision banning conflicts of interest by agencies. The law, from a time when models were sometimes sent for hair and makeup work by operators with a close connection to their agencies, says that **no agent may refer a client for services to any entity in which the agency has a direct or indirect financial interest.**

COMPLAINT

10

ER 1072

| | |
|---|---|
| 1 | **BACKGROUND FACTS** (CONTINUED) |
| 2 | THE 4 MAJOR EVENTS THAT SET UP THE CONSPIRACY(S) |
| 3 | 40. The seeds of the Defendants unlawful actions were planted about two decades ago, |
| 4 | by **4 events:** two of these events occurring in 1995, two occurring in 1999. |
| 5 | 1. **In 1995** Def Ari Emanuel started Endeavor Talent Agency. |
| 6 | 2. **In 1995** Edgar Bronfman Jr. (CEO of Seagram's) bought Universal Pictures. |
| 7 | 3. **In 1999,** Jerrol LeBaron copyrighted a revolutionary screenwriter-to- |
| 8 | Hollywood-film-industry-professional website **Writers' Script Network.com,** |
| 9 | which went online in March 2000, changing its name to "**InkTip**" (inktip.com) in |
| 10 | 2003. |
| 11 | 4. **In 1999** Defendant Modi Wiczyk wrote a revolutionary **memo**, titled "Another New |
| 12 | Ball Game", which sent Hollywood's powerhouses scrambling. Wiczyk's memo |
| 13 | would be discussed in magazines and lounges for years to come. |
| 14 | |
| 15 | 41. These 4 events, **each** require a brief explanation to understand how they set the stage |
| 16 | for the Defendants' conspiracy(s). |
| 17 | **(1) Def Ari Emanuel Comes To Power As CEO Of Endeavor Talent Agency, 1995** |
| 18 | 42. In 1995, Def Ari Emanuel would start his own talent agency, Endeavor Talent |
| 19 | Agency. Endeavor would soon become the fastest growing talent agency in Hollywood. |
| 20 | **(2) Edgar Bronfman Jr. Comes To Power At Universal Pictures, 1995** |
| 21 | 43. In 1995, Canadian based "Seagram's" (the giant beverage company) bought |
| 21 | controlling interest (80%) of Universal Pictures, and Edgar Bronfman Jr. (Seagram's heir; |
| 22 | **Canadian,** graduate of **McGill** College) became owner and CEO of Universal Pictures. |
| 23 | Bronfman remained CEO of Universal Pictures even after Vivendi bought Universal in |
| 24 | 2000. He stepped down as chief of Universal in 2001, BUT remained Vice-Chairman of the |
| 25 | Board (likely to insure that Def Emanuel's relationship to Universal remained in place) until |
| 26 | December 2003; by then Def Emanuel's role with Universal Pictures was well established. |
| 27 | 44. To pay for Universal Pictures, Bronfman Jr. sold Seagram's stake in Dupont (for |
| 28 | $9-billion). Most analysts and Seagram's investors considered this a terrible business move. |

COMPLAINT

11

ER 1073

1   To make matters worse, Bronfman knew little about the film business. **NOTE:** Bronfman
2   was convicted of insider trading, in France, in 2011, receiving a 15 months suspended
3   sentence, and a €5,000,000 fine.

4       45. In 1995, Bromfman and Def Ari Emanuel may have represented big changes in
5   Hollywood, but the biggest change in Hollywood in 1995 was the advent of the **DVD**.
6   DVDs represented huge new opportunities for producers and film companies
7   —opportunities that would make movies FAR more profitable than ever before, but more
8   profitable for producers, NOT talent agents (adding fuel to Emanuel's drive to become a
9   producer and a studio owner).

10       **(3) The Advent Of Writers' Script Network.com (InkTip.com), 1999**

11       46. In 1999, Jerrol LeBaron copyrighted his brilliant website *Writers' Script*
12   *Network.com*, (writersscriptnetwork.com), going online, March 2000, and changing its
13   name to **InkTip**, and its location to inktip.com, in 2003. Unlike all other screenwriter
14   websites at that time (which either just posted screenwriter agents' addresses, or just
15   allowed screenwriters to post loglines or synopses, with no ability to bring the writers to
16   the agents and filmmakers), LeBarons website promised something new. Based in Los
17   Angeles County, LeBaron went out and told Hollywood agents and filmmakers about his
18   website, and invited them to join and peruse the works of thousands of undiscovered
19   screenwriters. The site had great safeguards, designed to protect both the writers and
20   industry professionals. Writers Script Network.com required all users to use their real
21   names. Writers could not read other writers' work, as that would only reduced the writers'
21   safety. However, after registering, the **industry professionals** could freely read any logline
22   (a short description, 60 words or less) on the website. If a professional wanted to read
23   more, they could click on a link to read a synopsis—and immediately the screenwriter
24   would receive notification of who had accessed his work, when, and from where. If the
25   professional wanted to read the entire script, he/she would then need to contact the writer
26   and request a script. Writers Script Network.com kept all records of access. **LeBarons's**
27   **site was the new online industry standard** (where there had been no standard, rules,
28   safety, or security for screenwriters ); flawless in conception, safety and transparency.

ER 1074

| | |
|---|---|
| 1 | **(4) The Memo, 1999** |
| 2 | 47. In 1999, only 27 years old, Def Mordecai (Modi) Wiczyk, the new Senior Vice |
| 3 | President of Production and Acquisitions at Summit Entertainment, LLC, sent out a **memo** |
| 4 | titled "Another New Ball Game". That memo sent the unethical Hollywood's establishment |
| 5 | scrambling after massive new profits. Wiczyk's memo would be discussed in magazines and |
| 6 | lounges for years. Within a year, in 2000 (likely at Def Ari Emanuel's bidding) **Universal** |
| 7 | **Pictures** would steal Wiczyk away from Summit, making him VP of Productions. Two |
| 8 | years later, Def Ari Emanuel made Wiczyk his **partner** at Endeavor Talent Agency. |
| 9 | 48. In 2007, *Slate* remembered "the memo", in an article called "How An Agent Turned |
| 10 | His Pie-In-The-Sky Memo into A Reality". (Said "Slate" article is attached as "**Exhibit I**" |
| 11 | and is incorporated by reference as if fully set out herein.). Writer Kim Masters wrote: |

> ...The memo predicted the decline of the studios, with filmmaking
> talent as the beneficiary. He also predicted that a management company
> with a lot of big stars would start to produce and own films. "The most
> immediate and pressing challenge would be to get the studios to carry
> the product," he said. The likelihood of a studio boycott was remote, he
> said, because "whichever studio was suffering at the time would
> probably break ranks in the name of short-term self-preservation."
> Hmm.
>
> Michael Ovitz eventually tried to launch such a management
> company and failed. But Wiczyk's memo said the agencies could also
> carry out the change. **"A similar structure could be created which
> complies with the conflict-of-interest laws,"** Wiczyk wrote. "If [a]
> fund was created as a stand-alone entity and the agency had an
> arms-length service contract, they could avoid conflict-of-interest
> violations... Admittedly this is a delicate issue and a tough deal to pull
> off, but it's certain someone would try it." Why? The potential for
> enhancing agency commission was "too rich to ignore." **In fact, he
> said, an agency could double its annual revenues.**

| | |
|---|---|
| 24 | 49. Wiczyk's psychopathy is on full display in those final lines of the article, as he |
| 25 | enthusiastically implies it is reasonable to behave without ethics —if the profits are "too rich |
| 26 | to ignore." But Wiczyk's prediction that "...it's certain someone would try it" would soon |
| 27 | prove correct. |
| 28 | 50. But who would want to wander with Wyczyk into such ethically questionable water? |

**THE ENDEAVOR/UNIVERSAL/MRC DEFENDANTS:**

ARI EMANUEL AND HIS SECRET RELATIONSHIP WITH UNIVERSAL

PICTURES; EMANUEL UNITES WITH ASIF SATCHU AND MODI WICZYK

51.  In 1999, Def Ari Emanuel knew producers made the REAL money in Hollywood. But, as a talent agent, he couldn't get in the action—not legally (or not with his name on the product), due to California's conflict of interest laws.

52.  But Def Emanuel saw an opportunity.

53.  Defendant Ari Emanuel had a **distribution problem**. He represented many directors, writers and actors, who sometimes decided to make independent and experimental films, only to discover later that their films couldn't get national or global distribution because the distributors thought the films weren't marketable. Thus, many of these films died early deaths.

54.  Bronfman Jr., on the other hand, had a **talent problem**. Bronfman Jr. knew the importance of getting marquee names on films. Big American studios crank out about 17 films a year. In this haste, sometimes the studios commit to bad screenplays that no big actors will commit to, thereby dooming the film. But just one or two big names attached to these *inferior* films could increase their returns by tens of millions of dollars.

55.  Bronfman Jr. was in trouble in 1998, and most of Hollywood knew it. Bronfman Jr. came to power in 1995 with Universal in 4th place among the big six studios (20 Century Fox, Disney, Paramount, Warner Bros., Sony Pictures, Universal Pictures). But only one year later, in 1996, Universal was in last place. And last again in 1997. And in 1998, even worse: last place, and Universal had one of its worst years ever, with only a 5.9% market share. Stockholders were restless. (See **Exhibit J**.)

56.  In this tough time, Def Ari Emanuel approached Bronfman with a proposal.

57.  Def Emanuel offered to put special effort into Universal Picture films, give Bronfman Jr. his best business advice, and ask his actors, writer and directors to give preference to Universal Pictures films. Emanuel also likely offered to take a reduced agent's fee. **In exchange** Def Ari Emanuel likely received a percentage of the films, and/or a generous share of Seagram's (Universal's parent) stock, but no film credit), and an

1   agreement that Universal Pictures would distribute, and/or provide production money for,

2   any reasonably viable film Def Emanuel brought to Universal Pictures.

3      58. The agreement was made late 1998.

4      59. In 1999 Universal pictures would have their best year since Bronfman arrived,

5   climbing to 3rd place, with a 12.7% market share. That was 1999 —the same year Def

6   Modi Wiczyk wrote his memo.

7      60. Def Ari Emanuel read the memo.

8      61. Bronfman Jr. surely read the memo. In fact, two years after Wiczyk wrote the memo,

9   in 2001, Bronfman's **Universal Pictures** made Def Wiczyk their vice President of

10   Productions. (An article about Universal hiring Wiczyk is attached as "**Exhibit K**" and is

11   incorporated by reference as if fully set out herein.)

12      62. And a year after that, in 2002, Def Emanuel would hire Def Wiczyk away from

13   Bronfman Jr., to make Wiczyk a **partner** at Endeavor Talent Agency.

14   •  63. But Wiczyk had been Vice President of **productions** at Summit Entertainment,

15   AND Vice President of **productions** at Universal Pictures. Wiczyk was a **producer**. Why

16   would Defendant Ari Emanuel need a producer at a talent agency? Because Def Emanuel

17   was secretly going into the production business, with MRC and Universal Pictures.

18      64. When Def Ari Emanuel stole Wiczyk away from Universal Pictures there were no

19   hard feelings between Def Emanuel, Bronfman and Universal Pictures, and nothing

20   changed in their arrangement. Def Ari Emanuel continued to provide the same talent and

21   producorial services for both MRC and Universal Pictures. And although Bronfman left

21   Universal a year later (2003), Def Emanuel continues to do favors for Bronfman and his

22   Universal "family" to this very day (e.g. Def Emanuel and WME-IMG represent Bronfman

23   Jr's daughter, Hannah).

24                **Wiczyk's Memo Inspires A Conspiracy**

25      65. The driving force behind Defs Emanuel's, Wiczyk's and Satchu's involvement in

26   this conspiracy was to create the film production system outlined in Wiczyk's **memo**, to

27   increase—maybe even **double**—profits. The conspiracy required maybe 4 players, with the

28   right talents. Def Emanuel had connections to all the studios, and access to huge stars; Asif

1　Satchu was a creative business force who specialized in distribution and networking; Modi

2　Wiczyk was a proven business, financing, and film production prodigy. They had almost

3　everything they needed—except good screenplays. But as a new "questionable" company,

4　established writers were not inclined to work with this unscrupulous band.

5　　66.　A film production start with acquiring a screenplay, a "property". The Defendants

6　knew that. They also knew good screenplays are hard to find, cost good money, and are a

7　risky investment. A bad director could ruin a great script, and even the best writers

8　sometimes wrote bad scripts. In 2000 Def Wiczyk helped sell his brother's (Roee Wiczyk)

9　screenplay to his former employer (Summit Ent.). But the script was weak, thus never

10　developed, and Roee Wiczyk never sold another script. "Variety" reported on this script sale

11　in 2000. (Said article is attached as "**Exhibit L**" and is incorporated by reference as if fully

12　set out herein.) As a business man, Wiczyk could sell anything —he sold his brother's script

13　idea without even having a script name. But now, operating as film producers and a *studio*,

14　without an **actual** *good* script, or some good ideas, they couldn't get any project started.

15　　67.　The Defendants needed scripts, but they wanted to reduce their risks.

16　　68.　Defs Emanuel, Satchu and Wiczyk knew ideas are not copyrightable; only unique

17　arrangements of ideas are copyrightable. If the Defendants had a method to access good

18　writers' work, they could extract the best of those ideas, then pay their own writers to turn

19　them into "new" screenplays, then produce and market those derivatives, as their own.

20　　69.　The L.A. based Defendants were aware of WritersScriptNetwork.com. As prominent

21　"industry" insiders, they had likely even received a call or email from Jerrol LeBaron. They

21　wanted something like WritersScriptNetwork.com, but **without** the good security features.

22

23　　　　　　　　　**THE TRIGGERSTREET DEFENDANTS**

24　SPACEY'S CAREER SPUTTERS; SPACEY MEETS BRUNETTI; CONCEPTION OF

25　THE TIGGERSTREET SOCIAL NETWORK; TRIGGERSTREET CONSPIRES W/ MRC

26　　70.　In 1994 Def Spacey learned Warner Bros intended to make a movie about the life of

27　Bobby Darin (eventually called "Beyond The Sea"). This was Spacey's secret dream role.

28　He offered to play the leading role, but the producers refused, believing Spacey was too old.

1  71. In 1995, Def Spacey's career soared with *Usual Suspects* and *Seven*. But in 1996 and
2  1997 Def Spacey was back to NOT getting solid leading-man roles.

3  72. This likely inspired Def Spacey to form his production company, "Trigger Street
4  Productions", to make quality films with himself cast as the lead. But for the next 7 years
5  his production company floundered. The problem was getting a good screenplay.

6  73. It is reported that around 1998 Def Spacey met Def Dana Brunetti, who soon
7  became Spacey's personal assistant.

8  74. Although in 1999 Def Spacey won an **Academy Award** for Best Actor (American
9  Beauty), 1999 would mark the beginning of a very difficult period of Def Spacey's career
10 (1999-2003). His production company would go 3 years without making a film (Jan 2000 to
11 Jan 2003). And worse, for some reason Hollywood would not invest much money in any
12 movie with **Kevin Spacey** in a leading role, **his films budgets were far below the**
13 **Hollywood average** (the average Hollywood budget in 2000 was about $60 million):
14 1. American Beauty, 1999, **$15 million**; 2. The Big Kahuna, 1999, **$7 million**; 3. Ordinary
15 Decent Criminal, 2000, **$12 million**; 4. Pay It Forward, 2000, **$40 million**.

16 75. Def Spacey's difficulty consistently getting good roles, then, was likely due to his
17 terrible reputation around Hollywood as something of a hustler. In 1999, actor Val Kilmer
18 explained in a "Mr Showbiz" interview that in the 1970s Kevin Spacey, who was then a
19 young college student, tricked Kilmer's father out of $18,000 for college tuition —but
20 Spacey, according to Kilmer, kept the money, dropped out of school, and never repaid
21 Kilmer's father. (Said "Mr. Showbiz" article is attached as "**Exhibit M**" and is incorporated
21 by reference as if fully set out herein.) Stories like Kilmer's, and a tabloid photo journal of
22 Def Spacey participating in a public indiscretion, contributed to Def Spacey's trouble.

23 76. But amid all of these struggles, somehow in 2000, Spacey was able to secure the
24 film rights to his dream project -**Bobby Darin's life story**. But since Def Spacey had no
25 production funding, he would have to wait almost 4 more years to make his movie.

26 77. It's possible that during these tough times, Spacey and Brunetti looked around
27 online for affordable scripts for Spacey's production company to film. And maybe then they
28 stumbled upon *Writers Script Network.com*, which inspired them to create TS... Then, this

COMPLAINT
17

1   unlikely pair—a college dropout actor whose career was on life support, and a cellphone
2   salesman—teamed up to create a massive social network for screenwriters and filmmakers.
3   And soon Ari Emanuel learned about the site and asked Spacey to make some
4   modifications: relaxing security, and making access private and untraceable. That could be
5   how TS was created. It makes little difference to the conspiracy that followed.

6       78.    However, the Plaintiff believes TS was formed in a conspiracy conceived by Def
7   Ari Emanuel, to enrich himself and his conspirators. Elysium, alone, earned $286,000,000
8   worldwide theatrically, and should have earn another $570,000,000 in home entertainment
9   and TV, (typically, movies earn twice their theatrical total in home ent., TV, and auxiliary
10  sales), for a total of **$856,000,000** —almost a billion dollars. **This is why setting up TS**
11  **and Project Greenlight were so important to Def Ari Emanuel. One good script can**
12  **easily earn a billion dollars, and one big TV show can earn far more than that.**

13

14                    **THE DEFENDANTS' CONSPIRACY BEGINS:**

15

16      79.    In 2000, shortly after Def Emanuel discovered Writers Script Network.com, Def
17  Emanuel planned his own screenwriter/filmmaker website, with minimal or no security
18  features. He would use his clients, Def Matt Damon and Ben Affleck, as website spokesmen
19  and alleged *conceivers*. In August 2000 Project Greenlight was born. (An Internet Archives
20  screenshot of projectgreenlight.com, showing the origin time of Project Greenlight, is
21  attached as "**Exhibit N**" and incorporated by reference as if fully set out herein.)

21      80.    Then misfortune struck Universal Pictures in 2000, and Def Ari Emanuel seized
22  the occasion to launch a **second** website, allegedly conceived by Defs Spacey and Brunetti.

23      81.    In 2000, Universal Pictures was in a bind. They were just a few months away from
24  beginning to film "K-PAX" but they didn't have a leading actor (after Will Smith and others
25  dropped out). Smith, and other actors and directors (with integrity) were perhaps dropping
26  out due to rumours that Argentinian film director and screenwriter, Eliseo Subiela, learned
27  about writer Gene Brewer's 1995 book "K-PAX" and planned to sue Brewer and Universal
28  Pictures for copyright infringement of Subiela's 1986 film "Man Facing Southeast".

ER 1080

1     82.   But Universal Pictures, not worried about a small director from Argentina suing,

2   decided to push forward, film, release, make a fortune, and fight Subiela in court later.

3     83.   By mid 2000, with little time to find a leading man, Universal Pictures was

4   desperate enough to consider casting Def Kevin Spacey in the leading role.

5     84.   Def Ari Emanuel could have just asked Spacey to take the leading role. Spacey

6   would have leaped at the chance. But Spacey wasn't an Endeavor client, so Def Emanuel

7   wouldn't receive his casting fee. Def Ari Emanuel was a businessman. As such, even

8   though he needed a favor from Spacey, he wasn't going to just give Spacey a leading role,

9   he wanted something in return. Def Ari Emanuel knew Def Spacey's career was in trouble.

10     85.   Def Ari Emanuel approached Def Spacey to ask him about starting or endorsing, a

11   screenwriter/filmmaker social network; a social network with little or no security features.

12   The conversation likely started with Def Ari Emanuel asking how Spacey's career was

13   going. Def Spacey likely explained his recent career setbacks, and his hope to one day film

14   Bobby Darin's life story. He may have explained that he had recently secured the rights to

15   his Bobby Darin film (Beyond the Sea), but had no funding to shoot his dream film.

16                                  **Quid Pro Quo**

17     86.   Upon hearing about Spacey's career troubles, Def Emanuel made Def Spacey and

18   Brunetti an offer: (1) he asked Defs Spacey and Brunetti to design a social network so that

19   ALL user could access ALL screenplays, anonymously, with few security safeguards (it is

20   possible/probable that Def Asif Satchu facilitated the website design); (2) Def Emanuel also

21   may have asked Spacey and Brunetti to include a counter-security feature whereby if a

21   screenplay was removed from the website all access history would also be erased (**although**

22   **the Defs seem to have added this second features in 2007, shortly before accessing the**

23   **Plaintiff's work**). The Plaintiff believes that in exchange for agreeing to operate such a

24   social network, Def Ari Emanuel promised Defs Spacey and Brunetti a few things in return:

25     1.  Spacey would star in K-PAX, a film with a solid $68 million budget;

26     2.  Def Ari Emanuel would finance Spacey's production company to make Def

27         Spacey's dream film, Beyond the Sea;

28     3.  Def Emanuel would help Spacey's production company arrange financing and

COMPLAINT

19

ER 1081

1    distribution (as needed) for the life of the social network;

2    4.  Def Emanuel would introduce Spacey and Brunetti to the financial and distribution

3        partners necessary for their production company to succeed;

4    5.  Def Emanuel would try to find Spacey a very meaningful—maybe even a career

5        defining—role.

6

7    87.  The agreement was made.

8    88.  Thus, September 2000, only <u>one</u> <u>month</u> <u>after</u> <u>the</u> <u>birth</u> <u>of</u> <u>Project</u> <u>Greenlight</u>,

9  **TriggerStreet.com (<u>TS</u>) was born.** (Internet Archives screenshot of projectgreenlight.com,

10  showing the origin time of Project Greenlight is attached as "**Exhibit O**" and incorporated

11  by reference as if fully set out herein.)

12    89.  But TS would remain a closed, private, and inactive site for 2 years, not having its

13  official "launch" party until 2002. This was done to keep TriggerStreet from competing with

14  Project Greenlight. This wait also allowed TS to learn from Project Greenlight's mistakes.

15    90.  In November 2000, as agreed, Spacey began filming KPAX. When the film was

16  released it would be the first smoking gun in this conspiracy:

17  •  91.  KPAX was released Oct 2001. It would be the first time **Universal Pictures**

18  **EVER** cast Kevin Spacey in a leading role (in fact, Universal had only ever cast Spacey in

19  **one [1]** film, a **supporting** role, ten years prior, in 1990, in "Henry & June"). (*Spacey was

20  most commonly cast in **Warner Bros** films and independent films.) <u>Casting</u> <u>Spacey</u> <u>to</u> <u>star</u>

21  <u>in</u> <u>K-PAX,</u> <u>a</u> <u>$68</u> <u>million</u> <u>film,</u> <u>at</u> <u>such</u> <u>a</u> <u>low</u> <u>point</u> <u>in</u> <u>Spacey's</u> <u>career,</u> <u>was</u> <u>almost</u>

21  <u>inconceivable</u>. **Def Spacey wouldn't star in a film with a budget over $40 million for 5**

22  **more years** (Superman Returns). Spacey would only appear in one other Universal Pictures

23  film, 2 years later, *The Life of David Gale*—originally a Warner Bros (Spacey's stable)

24  property that Universal Pictures optioned. Spacey just came with the deal.

25  •  92.  A month after K-PAX was released, in November 2001, director/writer **Eliseo**

26  **Subiela (via Jason Laskay) sued Universal Pictures**, Gene Brewer, et al, for plagiarizing

27  his film *Man Facing Southeast*. The suit was eventually withdrawn when Subiela and

28  Laskay could no longer afford to litigate against a giant corporation like Universal Pictures.

ER 1082

| 1 | **TS LAUNCHES, NOVEMBER 2002** |
| 2 | 93. After giving Project Greenlight two years to gain traction, November 2002, the |
| 3 | Defendants prepared to launch TS. To attract the best undiscovered writers, the Defendants |
| 4 | planned to generate "buzz" by throwing 3 huge TS "launch parties": one in New York, one |
| 5 | in Los Angeles, and one in **London**. (A photo of Kevin Spacey at the TS London Launch |
| 6 | party is attached as "**Exhibit P**" and is incorporated by reference as if fully set out herein.) |
| 7 | While in Britain, Def Spacey did many interviews about TS. The Guardian featured a piece |
| 8 | called "Cyber Spacey", in which writer Sean Clarke mocked Defs Spacey's and Brunetti's |
| 9 | well-rehearsed lines. (Said Guardian article in which Def Spacey went to London to discuss |
| 10 | TS is attached as "**Exhibit Q**" and incorporated by reference as if fully set out herein.) |
| 11 | Writer Sean Clarke wrote: |

| 12 | Spacey tells an anecdote about the original idea for the site, |
| 13 | which is essentially Brunetti's brainchild. He says they "came up with a sketchy plan, which at the time..." and chuckles |
| 14 | wryly, on which cue Brunetti take up the story "... which at the time, we thought was great." They both shake their heads |
| 15 | ruefully. Later, I watch as the pair address a press conference, |
| 16 | they repeat the story, with exactly the same pauses, the same chuckle, the same interruptions. It's beat-perfect, like a |
| 17 | Mamet script. |
| 18 | |

| 19 | 94. And to generate even more buzz, before the website was launched, Budweiser |
| 20 | announced their corporate sponsorship of the TS social network. |
| 21 | 95. Along with the sponsors, parties and interviews, to help repair Def Spacey's |
| 21 | damaged reputation, the TS website posted a heartwarming story that Spacey started his |
| 22 | new social network "to help undiscovered writers and filmmakers get industry access and |
| 23 | exposure." |
| 24 | 96. **TriggerStreet.com was "launched", and went online, November 2002** |
| 25 | • 97. Def Spacey held a New York TriggerStreet **launch party** on Nov 11th, 2002. |
| 26 | • 98. Def Spacey held a Los Angeles TS **launch party** on Nov 18th, 2002. |
| 27 | • 99. Def Spacey held a London TS **launch party** on Nov 26th, 2002. |
| 28 | |

COMPLAINT

21

| | |
|---|---|
| 1 | **After Triggerstreet Officially Launched, Nov 11th, 2002,** |
| 2 | **The Following Events (Connecting The Defendants) Occurred:** |
| 3 | 100. Shortly after TS's official launch (November 2002), Def Spacey would receive |
| 4 | three (3) huge payments from Defendants Ari Emanuel and Universal Pictures (Def Spacey |
| 5 | would receive many other unlikely benefits—payments—during the subsequent 12 year |
| 6 | lifespan of TS). |
| 7 | • 101. In **February** 2003, 3 months after TS launched, **Universal Pictures** |
| 8 | distributed Spacey's film "**The Life of David Gale**" (again, originally a property of |
| 9 | Spacey's home studio, Warner Bros). This would be the last time Universal Pictures would |
| 10 | be involved in a Spacey film (to the date of the filing of this Complaint). Thus, the only two |
| 11 | Universal Pictures films featuring Spacey as a lead are *K-PAX*, and *The Life of David Gale*. |
| 12 | • 102. That same month, **February of 2003**, Spacey's production company would |
| 13 | magically get money to release and distribute its first movie in 3 years: "United States of |
| 14 | Leland". The film would only be released in 14 theaters, losing millions, and bringing in |
| 15 | only $344,000. Likely, Universal Pictures wouldn't put their name on the film, because |
| 16 | after two bad years, Universal was back in 5th place (second to last place), and they didn't |
| 17 | want *United States of Leland* to move them into last place. |
| 18 | • 103. That same month, again, **February 2003**, it was announced that Production |
| 19 | for ***Beyond the Sea*** (Spacey's dream film about Bobby Darin) was being fast-tracked with |
| 20 | Spacey as lead actor. |
| 21 | 104. Suddenly, in the nadir of Defendant Spacey's career, inexplicably Hollywood was |
| 21 | showing Def Spacey tremendous love and support—when 4 of his previous 5 films were |
| 22 | major money losers. |
| 23 | Footnotes: |
| 24 | 105. Shortly after TS launched, in **2003**, Ari Emanuel gave Asif Satchu and Mordecai |
| 25 | Wiczyk financing to start MRC. |
| 26 | 106. **December 17th, 2004**, *Beyond the Sea* was released. It would be Spacey's **greatest** |
| 27 | **failure**; costing $25 million, but only earning $8.4 million; losing over $16,000,000. |
| 28 | |

COMPLAINT

22

**Additional Facts Regarding TS And The Defendants**

• 107. Spacey's production company made no films for 3 years, January 2000 to January 2003: Ordinary Decent Criminal (Jan 2000, direct to DVD in USA), and United States of Leland (Jan 2003, released in only 14 theaters).

• 108. Since TS launched, Def Spacey's production company has made 22 films.

• 109. May 2005, 2.5 years after TS launched, Project Greenlight was effectively dead (no new contests for filmmakers or screenwriters). Killed by the success of TS. Although, oddly, the Project Greenlight website remained open, but inactive —no new contests, no new submissions accepted; just an open, inactive website, until 2015.

• 110. In 2006 Spacey held a TriggerStreet "RE-launch" party in Los Angeles.

• 111. 2007, Plaintiff's screenplay, Butterfly Driver, was posted and accessed on TS.

• 112. 2007-2009 TS secretly joined Bud.TV (Budweiser TV), without informing members or revising its Term of Use page. In a 2007 Anheuser-Busch announced it was launching Bud.TV with TriggerStreet.com providing programming. (Said Bud.TV news release is attached as "**Exhibit R**" and incorporated by reference as if fully set out herein.) Curiously, Bud.TV's Wikipedia page shows Defs Matt Damon and Ben Affleck (Project Greenlight), and Kevin Spacey (TS) all provided Bud.TV programming. (Said Wikipedia article is attached as "**Exhibit S**" and incorporated by reference as if fully set out herein.)

• 113. Feb 2009, the BBC reported Def Spacey hosted the Mofilm Film Festival, in Spain, where he boasted of TS's **"400,000 members around the world."** (Said BBC article is attached as "**Exhibit T**" and is incorporated by reference as if fully set out herein.)

• 114. On April 27th, 2009, Def Ari Emanuel and Endeavor Talent Agency (ETA) merged with the William Morris Agency (WMA), creating William Morris Endeavor. **17 days later**, May 14th 2009, **after about 20 years** with the William Morris Agency, Def Spacey signed with CAA (Creative Artist Agency). Def Spacey did so to keep TS members (and any observing regulatory authorities) from becoming suspicious of his link to Def Ari Emanuel through TS. (A New York Times article about the April 2009 merger of WMA and Endeavor is attached as "**Exhibit U**" and is incorporated by reference as if fully set out herein.) (A May 2009 Variety article about Def Spacey leaving WME is attached as

ER 1085

1    "**Exhibit V**" and is incorporated by reference as if fully set out herein.)

2    ● 115. May 2010, "Deadline Hollywood" reported Defendant **Universal Pictures**

3    and Defendant Media Rights Capital (MRC) announced a 20 picture, 5-year production and

4    distribution deal. (Said "Deadline Hollywood" article is attached as "**Exhibit W**" and is

5    incorporated by reference as if fully set out herein.) Thus, MRC's (a company co-owned by

6    Defendant Ari Emanuel) first mega-deal would be with **Universal Pictures**.

7    ● 116. On March 15th, 2011, **Netflix** and Def **MRC** (owned by Defs Emanuel,

8    Wiczyk and Satchu) announced their mega $100 million dollar 2-season deal to produce the

9    new series *House of Cards*, starring Def Kevin Spacey, in his career defining role. Quietly, a

10   few months later, in July 2011, with the role of a lifetime secured, Def Spacey would move

11   his social network, TS, to http//www.labs.triggerstreet.com, and begin to use the web

12   address TriggerStreet.com as his production company's site.

13   ● 117. August 2013, the film Elysium (an infringement on the Plaintiff's work) was

14   released internationally. The Plaintiff then filed his copyright infringement suit against the

15   Defendants, October 2013.

16   ● 118. November 6th, 2014, 6 days after the Plaintiff filed his Notice Of Motion of

17   appeal, Defs Spacey and Brunetti closed and destroyed the TS social network.

18   ● 119. In 2015, almost immediately after TS closed, Project Greenlight (which had

19   been **dead for 10 years**, came back to life, with a new HBO TV show, airing fall of 2015.

20   ● 120. July 2016, HBO announced the Project Greenlight TV show was cancelled.

21   ● 121. In 2016, with the cancellation of the TV show *Project Greenlight*, and with

21   the closing of TS—with no way to gain access to original screenplays to misappropriate—

22   ProjectGreenlight**.com** went active, again. **After 10 years of online inactivity**, Def Matt

23   Damon, Ben Affleck and ProjectGreenlight.com began seeking new screenplays again.

24   ● 122. In 2015, Def Dana Brunetti (former cellphone salesman and Spacey's personal

25   assistant) produced his **first** solo film, without Kevin Spacey, *50 Shades of Grey* —payment

26   for his involvement in the TS conspiracy. *50 Shades of Grey* was **Distributed** **by** **Universal**

27   **Pictures**. (A Wikipedia article showing the producers and distributors of 50 Shades of Grey

28   is attached as "**Exhibit X**" and is incorporated by reference as if fully set out herein.)

**SONY PICTURES EMAIL LEAK EXPOSE DEF ARI EMANUEL'S SECRET UNIVERSAL PICTURES TIES, HIS UNLAWFUL RELATIONSHIPS WITH SONY PICTURES' CEO (M. LYNTON), & HIS BULLYING, THUGGISH METHODS**

123. Further confirming all allegation herein, in 2015 Wikileaks released thousands of Sony Pictures emails, which had been previously released in 2014, when North Korea hacked and published thousands of Sony's emails. Within days hundreds of respected news agencies carried the story —The NYTimes, LATimes, Hollywood Reporter, all reported the juicy details—and the juiciest story was the story of how Sony Pictures lost -or passed on- "Steve Jobs", the movie.

124. All of the reports are similar: the emails provide an inside view of bunch of super-rich Hollywood producers, writers, and directors negotiating the production budget of the film "Steve Jobs", until the deal went bad and Sony gave up on the film. And right in the eye of the storm is Def Ari Emanuel. (An articles from "Mashable.com" about said "Steve Jobs" film emails is attached as "**Exhibit Y**"and is incorporated by reference as if fully set out herein.)

125. A few of the celebrities captured on Sony Pictures email/text leak, at times, behaved poorly, but no one behaved worse than, Def Emanuel. Brazen and thuggish, we see Def Ari Emanuel berate Sony Pictures' Chairman Amy Pascal, with impunity. And when the other Sony execs learned of this, they only called Def Emanuel a *bully*—behind his back. No one dared to confront Def Emanuel. But more surprisingly, through a tiny sliver of Def Ari Emanuel's emails (just those going into, or out of, Sony Pictures) we learn:

1. Def Ari Emanuel is a major film producer —in conflict with his role as a talent agent, and in violating California labor law which forbids employers (a producer) from charging employees (his actors) fees to be hired—perhaps an even more significant conflict of interest than Def Emanuel's partnership in MRC II LP.

2. Defs Emanuel, Bill Block and Michael Lynton (then Sony Pictures CEO and Chairman) are secretly business partners: co-owners in the company *Screenbid*.

3. Ari Emanuel is also a film financier, or executive producer (a person who provides or finds money to make films).

COMPLAINT
25

1    4. Def Ari Emanuel also arranges peripheral services for Sony Pictures (and others),

2    like making deals with Hasbro Toy Co. for Sony Pictures (for Spider-Man 2 &

3    Minions action figures?).

4    5. Whenever necessary, **Universal Pictures** will distribute ANY film for Ari Emanuel.

5

6             "STEVE JOBS" EMAILS CONFIRM DEF ARI EMANUEL

7             IS SECRETLY A MAJOR FILM PRODUCER, AND THE TRUE

8             PRODUCER OF "STEVE JOBS" —NOT SCOTT RUDIN

9    126. Through the Sony "Steve Jobs" email trail we see the "Steve Jobs" negotiation go

10   on for about 8 months, then it begins to fall apart on October 16th, 2014, after Sony

11   Pictures' President of Business Affairs, Andrew Gumpert, sends Sony Pictures Chairperson

12   Amy Pascal, film producer Scott Rudin, Def Ari Emanuel, and WME co-CEO Patrick

13   Whitesell a financing offer, which the filmmakers felt was too low. October 18th, 2014,

14   two days after Gumpert's low offer, Scott Rudin, angrily responds:

15           2014-10-18 16:09:38 Re: wwbo bumps/jobs From: Scott Rudin

16                 &lt;sr@scottrudinproductions.com&gt; To: pascal, amy

                    gumpert, andrew aemanuel@wmeentertainment.com

17                   pwhitesell@wmeentertainment.com

18   **SCOTT RUDIN:**

               "You have NO risk in the movie but WE should have risk?

19         You lay off every cent except what you choose to keep and WE

20        should then also fund you --- that's how this should work?

               I cannot believe you're serious. What idiot would make

21        this deal? The presumption that five Oscar winners would be

21        desperate enough to give up all value for their services and then

        also risk the baseline bargain-basement fees on top of it is beyond

22        comprehension.

               Every single movie like this that we have made for you

23        has worked. And you think this is fair?"

24

25    127. At Rudin's words, Def Ari Emanuel, who purports to the world that he is just a

26   talent agent, would then take over the email exchange —seemingly eager to bully a woman.

27            On Oct 18, 2014, at 9:15 AM, From: Ariel Emanuel

28           &lt;AEmanuel@wmeentertainment.com&gt; To: pascal, amy

1        sr@scottrudinproductions.com   gumpert, andrew
2        pwhitesell@wmeentertainment.com
    **ARI EMANUEL:**
3        "This offer is fucking bull shit. Give us the movie back. You you guys
       in the business. No other studio would even ask for this. Pass"
4

5     128.   Def Ari Emanuel immediately establishes and retains dominance and control of the

6 matter for the remainder of the negotiation, and Scott Rudin would remain quiet and

7 subordinate to Def Emanuel. But the key detail in this email is that Def Emanuel has the

8 authority to say "Pass", meaning: we choose NOT to do business with you, we will find

9 another partner. No mere talent agent can usurp that power from the producer. Scott Rudin

10 put Ari Emanuel on that email chain because Ari Emanuel is the true producer.

11     129.   The exchange goes on. Amy Pascal writes:

12        On Oct 18, 2014, at 10:18 AM From: Amy_Pascal@spe.sony.com
13        To: aemanuel@wmeentertainment.com
       sr@scottrudinproductions.com gumpert, Andrew
14        pwhitesell@wmeentertainment.com
    **AMY PASCAL:**
15        "Can we please deal with this Monday
16        Maybe we all get in a room and close it up"

17 130.   But Def Ari Emanuel will not be silenced by Ms Pascal's request to wait until

18 Monday. He replies five minutes later::

19        On Oct 18, 2014, at 10:23 AM, From: Ariel Emanuel
20        <AEmanuel@wmeentertainment.com> To: pascal,
       amy sr@scottrudinproductions.com gumpert,
21        andrew pwhitesell@wmeentertainment.com
21     **ARI EMANUEL:**
       "Whatever
22        **You guys ask us to find financing, Scott, Patrick and myself get**
       **Modi and we still get no respect.** Amy, this is not what you want to
23        hear - but this NEVER happens and any other studio. In fact they
24        then would go out of their way to make a proper deal.
       Even Harvey.
25        Monday is fine."
26

27     131.     With that statement **Def Ari Emanuel admitted he found film financiers for**

28 **"Steve Jobs", which is a strictly a producer's, or an executive producer's job.** Def Ari

1  Emanuel also generously (and falsely) shares credit with Rudin and Whitsell for getting

2  Modi Wiczyk to help with financing, to make Rudin and Whitsell appear more significant to

3  the process. Again, Defs Modi Wiczyk and Ari Emanuel had been a business partners since

4  2002 (at Endeavor, as well as in MRC). Getting Def Modi Wiczyk involved was entirely

5  Def Ari Emanuel's doing. Amy Pascal responds to Def Emanuel's provocation:

6            On Oct 18, 2014, at 10:51 AM, From: Amy_Pascal@spe.sony.com

7                  To: aemanuel@wmeentertainment.com
             sr@scottrudinproductions.com gumpert,Andrew

8                 pwhitesell@wmeentertainment.com

9  **AMY PASCAL:**
      "arithat is totally unnecessary we are in a negotiationwe have all

10  been doing this a long timewe want to make moneyyou want to
make money for yourselves andyour clientsthis has nothing to do

11  with respect and to be fair and its a credit to the movie that scott

12  put together there are more financing partners  than we know
what todo with here....thats not the issue...we are the only major

13  studio that even tries to make thesekind of movesdont make it

14  harder than it isthe tone is really uncalled for  and unfairand
doesnt help get things doneamy"

15

16      132.   Through all of this, Scott Rudin never commented or told Def Ari Emanuel to

17  disengaged. That is not his place. Ari runs the show. Def Ari Emanuel replies:

18        2014-10-18 10:58:41  <u>Re: wwbo bumps/jobs</u> From: Ariel Emanuel

19           <AEmanuel@wmeentertainment.com>  To: pascal, amy
         sr@scottrudinproductions.com  gumpert,

20          andrew pwhitesell@wmeentertainment.com

21  **ARI EMANUEL:**
      "Ok not true. Other studios make these movies"

21

22      133.   Def Ari Emanuel was eluding to Universal Pictures, who would produce any film

23  Def Emanuel suggested. Texting stopped for 7 or 8 hours, until Def Ari Emanuel resumed.

24        2014-10-18 16:20:47 From: aemanuel@wmeentertainment.com

25          To: gumpert, andrew sr@scottrudinproductions.com,
        pwhitesell@wmeentertainment.com,  pascal, amy

26  **ARI EMANUEL:**

27      "In the real world when some one either risks something or gives something
up they get something in return. You guys seem to think we should be

28  honored just to be in business with you based on your offer. Why?"

ER 1090

1    134. After this, the negotiation disintegrated over the next 4 weeks. The last email from

2    Def Emanuel to Amy Pascal was sent November 11, 2014, when Emanuel abruptly asked:

3          2014-11-14 22:57:02 From: aemanuel@wmeentertainment.com
                                        To: pascal, amy
4          **ARI EMANUEL:**
5                "Is business affairs calling me so I can take this to Fox
                 Searchlight officially?"
6

7    135. With that statement Def Emanuel showed that, in addition to producing, **he even**

8    **arranges distribution**. Def Emanuel is asking Amy Pascal if Sony Pictures' President of

9    Business Affairs, Andrew Gumpert, is going to call to let him know if Sony wants "Steve

10   Jobs". Def Emanuel is bluffing that Fox Searchlight has agreed to take the film. He never

11   had a deal with Fox Searchlight. He was just playing hardball; trying to get a better offer out

12   of Sony, AND keep them in the dark about his distribution relationship with **Universal**

13   **Pictures.**

14   136. As this deal dragged on over 8 months, 3 weeks before the previous exchange,

15   Sony Pictures' Andrew Dumpert, spotted Def Emanuel's chicanery and bad motives. In an

16   email to Sony execs Lynton, Pascal, and Doug Belgrad; Andrew Gumpert wrote:

17                    2014-10-18 16:59:16 From: Andrew Gumpert
                      To: lynton, michael; pascal, amy; belgrad, doug
18   **Andrew Gumpert:**
19           "The fact is there is only so much in the kitty. Unless the movie
             massively breaks out they can never make real money, nor can we
20           and our investors.They have a 50pt pool with the best definition and
             5m of box office bonuses. **Do they want to make MORE than the**
21           **equity? I think they do.** There is a huge philosophical gap (given
21           the rude and insolent responses from Ari and **Scott**)..."
22

23   137. Andrew Gumpert knew something was wrong, because Def Ari Emanuel and Scott

24   Rudin weren't adhering to established guidelines.

25   138. Although there have surely been occasions when Sony Pictures did cave-in to Def

26   Emanuel's arm-twisting, this would not be one of those occasion. But oddly, Michael

27   Lynton, CEO of Sony Pictures, responds to Gumpert only with silence—because Def Ari

28   Emanuel is his close friend and secret business partner in Screenbid.

1         **"Steve Jobs" Film's Not-So Surprising *Twist* Ending:**

2     139.   Fox Searchlight never touched "Steve Jobs".

3     140.   Def Ari Emanuel had just been playing the ace up his sleeve; trying to push the

4 price of the film above market value, to increase his profit margin. He didn't need Sony

5 Pictures to give him standard market value for "Steve Jobs", he could get standard value

6 from Universal Pictures. When the maneuver failed, and Sony Pictures backed out, Def Ari

7 Emanuel took the film to the Studio that has distributed all of his films, since around 1999.

8     141.   On September 5th, 2015, 10 months after Sony Pictures declined on "Steve Jobs",

9 after so much posturing and tumult, "Steve Jobs" was distributed by **Universal Pictures.**

10

11     SONY PICTURES EMAILS SHOW DEFS EMANUEL & BILL BLOCK & SONY

12     PICTURES' CEO (M. LYNTON) MAINTAIN UNETHICAL RELATIONSHIPS,

13     AS THEY CO-OWN "SCREENBID" TOGETHER (CONFLICT OF INTERESTS)

14     142.   The "Steve Jobs" emails reveal Defs Emanuel and Bill Block are in a co-ownership

15 business with Sony Pictures' then-CEO Michael Lynton. As we see Def Ari Emanuel write

16 Michael Lynton to ask Lynton to check on their co-owned business, *Screenbid.*

17         On Dec 3, 2013, at 3:11 PM, From: aemanuel@wmeentertainment.com
                          To: lynton, michael;

18     **ARI EMANUEL:**

19         Michael -

20         What are we doing on Screenbid? We had success on our early tests,
        nothing since. You guys own a piece of this company, we've had

21         nothing since our early success. We have to keep the engines going.

21     143.   In the text above, Def Emanuel's and CEO Michael Lynton's joint ownership of

22 Screenbid is confirmed by the repeated use of pronoun"we". Def Ari Emanuel asks "What

23 are we doing..." Then he states "**We** had success on our early tests..." Then he reminds

24 Lynton that he (and some unknown party, or parties) also own shares of this company. Then,

25 implying Lynton has a responsibility, Def Emanuel says, "**You guys own a piece of this**

26 **company...**" Then Def Emanuel exhorts CEO Michael Lynton to take action, saying: "**We**

27 have to keep the engines going."

28     144.   These are not the messages of quiet stockholders. These men are owners.

ER 1092

1     145.   Sony Picture's CEO, Michael Lynton is quite a bit wiser than Def Emanuel, and
2  does not reply to Emanuel through his Sony Email account, understanding they are engaged
3  in an unlawful enterprise. But 11 months later, 10/31/2014, Def Bill Block, the CEO of
4  Screenbid, not-so-wisely emails Def Emanuel and Lynton (to Lynton's Sony email address)
5  to give his business partners a business report, pasted below his reply text. (Bill Block was
6  the CEO of QED International, a Defendant in Briggs v Blomkamp.) Def Bill Block's reply
7  email reads:

8              2014-10-31 00:35:37 FW: SCREENBID AUCTION UPDATE
9              From: bblock@qedintl.com  To: aemanuel@wmeentertainment.com
                            michael_lynton@spe.sony.com
10    **BILL BLOCK:**
11        Going well gentlemen.
          Bill
12        From: Jeffrey A. Dash [mailto:jdash@screenbid.com]
          Sent: Monday, October 27, 2014 10:13 AM
13        To: Bill Block
14        Subject: SCREENBID AUCTION UPDATE
          AUCTION UPDATE:
15
16        TRUE BLOOD: (HBO) We are winding down aftermarket sales and
          fulfillment and are on schedule to present audited reports to HBO
17        accounting within 14 days.
18
19        SONS OF ANARCHY: (FOX) We visited the set on Friday
          10/24/14 and met with the department heads for props, wardrobe,
20        transportation and set decoration. They are scheduled to wrap next
          week and we will take delivery by 11/5/14, immediately inventory
21        and shoot. Writing began about 2 weeks ago The auction is
21        scheduled to go live on 12/01/14 and bidding will end on 12/10/14.
          Fulfillment time will be tight. In order to get everything shipped
22        prior to XMAS  we will have extra staff in place to facilitate…"
23

24    146.   In this unethical relationship, Sony Pictures' CEO Lynton, personally profited as
25  Screenbid's owner, in such ways as directing Sony Pictures to give Screenbid millions in set
26  furnishings to auction on Screenbid, where he and Def Emanuel profited as owners.
27  Lynton's secret relationship with Def Emanuel is why Sony Pictures did not do due
28  diligence to vet Def Blomkamp's Elysium script.

ER 1093

| | |
|---|---|
| 1 | SONY EMAILS SHOW DEF EMANUEL PERFORMS |
| 2 | PRODUCORIAL SERVICES: CALLING SONY'S CEO & CHAIRMAN |
| 3 | TO ARRANGE A DEAL WITH HASBRO |
| 4 | 147. On March 28, 2014, Def Ari Emanuel emailed/texted Sony's Pictures' CEO and |
| 5 | Chairman to close an animation co-financing deal with Hasbro. Def Emanuel's email read: |
| 6 | 2014-03-28  re: HASBRO Animation deal |
| 7 | From: aemanuel@wmeentertainment.com |
| | To:amy_pascal@spe.sony.com; michael_lynton@spe.sony.com |
| 8 | **ARI EMANUEL:** |
| 9 | "HASBRO Animation deal |
| | Amy & Michael - |
| 10 | We have sent Ronni our proposal for the animation co-financing |
| 11 | deal. Please take a look when you get a chance and lets lock this down. |
| 12 | Ari |
| 13 | 148. Talent Agents don't arrange animation co-financing deals with Hasbro, producers |
| 14 | and studios do. Curiously, after Billionaire Def Ari Emanuel recently purchased the UFC he |
| 15 | arranged a UFC Hasbro deal. (An article where Def Emanuel discusses UFC and Hasbro is |
| 16 | attached as "**Exhibit Z**" and is incorporated by reference as if fully set out herein.) |
| 17 | |
| 18 | **SONY EMAILS SHOW DEFENDANTS COMMITTED PERJURY REGARDING** |
| 19 | **THEIR EFFORTS TO HIDE INFRINGEMENT IN BRIGGS V BLOMKAMP** |
| 20 | 149. The Defendants' fraud, conspiracy and routine deceit included committing perjury |
| 21 | by lying on documents signed under oath. |
| 21 | 150. During the discovery phase of Briggs v Blomkamp, et al (C13 4679 PJH) the |
| 22 | Plaintiff informed the district court that he suspected that writer/producer Simon Kinberg |
| 23 | was hired to rewrite Def Blomkamp's poorly written screenplay. In response to Plaintiff's |
| 24 | interrogatories to MRC II LP, the Defendants made false statement, under oath, regarding a |
| 25 | substantial matter in that case, which may impact the Plaintiff's ability to prevail in that |
| 26 | lawsuit (currently in appeals). (Said Def MRC II LP's Interrogatory Responses from Briggs |
| 27 | v Blomkamp are attached as "**Exhibit AA**" and is incorporated by reference as if fully set |
| 28 | out herein.) |

ER 1094

| 1 | 151. That deceit occurred when the Defs responded to interrogatory #17; believing |
|---|---|
| 2 | Simon Kinberg helped disguise Def Blomkamp's infringement, the Plaintiff asked: |

3     **Plaintiff's Interrogatory:**

4     INTERROGATORY #17:
    "Simon Kinberg is a writer and "script doctor" (a writer who fixes scripts

5     that have serious problems). Simon Kinberg is listed as a producer of
    Elysium. Exactly what duties did Simon Kinberg play in the production and

6     script doctoring of the screenplay and film "Elysium"?"

7

8     **Defendants' Answer:**

9     "Defendant incorporates by reference the preliminary statement and
    general objections... Subject to and without waiving the foregoing

10     objections, Defendant responds as follows:
        Simon Kinberg produced the Film. As producer, Mr. Kinberg also

11     **assisted with a polish of the Film's screenplay** during the later stages of

12     writing."

13     **But The Leaked Sony Emails Reveal The Truth About Said Perjury:**

14   152. The Defendants admitted that Simon Kinberg helped improve the weak screenplay,

15 BUT suggested that his help was just a "polish", which suggests merely dotting I's and

16 crossing T's, and maybe a dialogue suggestion here and there. But, in fact, Simon Kinberg

17 had to do exhaustive work to try to salvage Elysium's terrible screenplay.

18   153. The gross underestimation and misrepresentation of all the work Simon Kinberg

19 had to do to repair Def Blomkamp's Elysium script is revealed in the 2015

20 Wikileaks're-posting of the Sony Pictures' hacked emails, in five (5) key email exchanges

21 between Defs **Modi Wiczyk**, **Simon Kinberg**, and Sony Pictures Chairperson **Amy Pascal**.

21 In the first email, Def Wiczyk explains Kinberg's role:

22     2014-10-27 13:36:12 Fwd: CHAPPIE NOTES

23     From: mwiczyk@mrcstudios.com To: pascal, amy
    **MODI WICZYK:,**

24     "hi!so i asked si to share all the notes hes wanted to do, in detail, for

25     weeks but hasnt been able to do.it lines up w what everyones saying.
    great detail and very specific.he also included rachels document and

26     merged it.**simon is a fixer and a logician** and i want him to trest this like

27     hes been brought in to doctor it on some level, and he does too. nb has
    been ignoring him the past few weeks after listening to him up until then.

28     dont know why, dont care. its our turn now.i told doug that we should

ER 1095

1      leave the mtg telling thema. timeline for seeing new stuff b. possibly do a
2   parallel more radical cut to play w thebig first act and religious note.c. first
    "basic" cut should do all cuts in the notes, deal w ending. see you at 9."

3      154.  Def Wieczyk, Simon Kinberg, and Amy Pascal continued to discuss the endless and
4   unimaginable problems Kinberg was having helping director Def Blomkamp's save his
5   film, *Chappie*; the executives discuss reshoots, dialogue rewrites, other huge changes, and
6   how to protect Def Blomkamp's insecure ego. Yet, amid these massive problems, Kinberg
7   comments that Def Blomkamp was handling Kinberg's executive ordered changes much
8   better than he handled them on Elysium, where Kinberg explains Blomkamp **"shut down**
9   **on elysium, partly because he felt he didn't have the answers. he's never shut down on**
10  **this movie, not once."** In this email to Amy Pascal, Simon Kinberg wrote:

11                 2014-08-07 07:02:55  Re: Chappie  from:
12                    sdkinberg@aol.com  to: pascal, amy
13    **SIMON KINBERG:**
          "cool! neill has been really open throughout this process, and wants to get
14        the audience all the way there. i think we're all feeling the same things
15        now, so we can put it together and deliver to him, and he'll take it as an
          assignment not a judgement, and stay creative. **i saw him shut down on**
16        **elysium, partly because he felt he didn't have the answers. he's never**
17        **shut down on this movie, not once. so i don't think he will now…"**

18     155.  In fact, the text/emails reveal Def Wieczyk and Amy Pascal were forced to hide
19  from Def Blomkamp the fact that Simon Kinberg had to take over the film to finish it. This
20  is revealed when Def Wieczyk wrote to Sony's Chairperson, Amy Pascal:

21                2014-10-27 13:42:22  Re: To discuss
21                From: mwieczyk@mrcstudios.com; To: pascal, amy
22    **MODI WICZYK:**
          "not to oversimplify but i know simon has been biting his tongue for a
23        month and all the sloppy stuff has been making him **crazy**. when i speak
24        to him he seems to have a very clear view of what he wants to do. it
          lines up w what ur saying. i hink if we make them do it we will have a
25        much much much better film that works. we just cant literally tell neill **si**
26        **is taking over**....so its "our" notes"

27     156.  Additional evidence of the extreme measures that Defendants Simon Kinberg,
28  Sony Pictures, MRC and Modi Wiczyk resorted to salvage Chappie. Can be seen in such

1   emails/texts as when Def Modi Wiczyk explains director Def Neill Blomkamp's inability to

2   even write or direct "basics". In an email text to Amy Pascal, Wiczyk wrote:

3                            2014-10-27 13:52:57 Re: To discuss

                        From: mwiczyk@mrcstudios.com, To: pascal, amy

4     **MODI WICZYK:**

5         "yes thats what i meant the right version of this could be iconic and do 300

        and have a huge sequel what bugs me is how obvious and unpolished the

6         problems are all the hard stuff is great but all the basics are killing us"

7

8     157.    A week later, Def Modi Wiczyk emailed Amy Pascal to discuss BlomKamp's

9   insecurities, and how they were impacting production.

10                      2014-11-03 04:31:07 Re: From:

11              mwiczyk@mrcstudios.com To: pascal, amy

    **MODI WICZYK:**

12         "dunno re simon. maybe insecure, maybe thinks simon is on "studio"

        side, which is juvenile. hes always mad at somebody. vacillates btwn

13         targets. i ignore it until it stops forward progress.

        re edgar i actually initially got nervous the music was too old to be

14         cool,but all my assistants say lots of these songs are in the collective

15         consciousness, played in bars and clubs. shows what i know....i dug the

        reel he did. and i loved the app w script and music."

16

17     158.   There are many more such emails that further reveal how inept and difficult Def

18   Blomkamp is. But from these select emails, we see that to revise Blomkamp's *Chappie*,

19   Kinberg took extraordinary measures, and that Blomkamp's inept, "insecure" and "juvenile"

20   conduct made Kinberg "crazy", forcing the executives to takeover the edit. Yet, Kinberg

21   implied these problems were mild compared to what he endured with Blomkamp revising

21   *Elysium*, where the problems were so extreme that Blomkamp **"shut down"** and **"didn't**

22   **have the answers".** Clearly, the script work Kinberg did on Elysium was **exhaustive**, and

23   not a mere "polish" as Def MRC II LP stated under oath. This was a clear act of perjury.

24

25       **SONY EMAILS CONFIRM DEFS RULE 37 VIOLATION IN BRIGGS V**

26     **BLOMKAMP, SHOWING DEFS OMITTED TESTIMONY & EVIDENCE**

27     159.   On page 28 of the Plaintiff's First Amended Complaint in Briggs v Blomkamp, et

28   al, the Plaintiff made a bold prediction: that sometime after May of 2013 (when Blomkamp

1    learned the details of Plaintiff's impending copyright lawsuit) Defendant Neill Blomkamp

2    went back into the editing room and tried to edit-out key headache scenes, which were

3    identical to the Plaintiff's work. The Plaintiff explained that Blomkamp did this to try to

4    cover-up his theft of the Plaintiff's intellectual property.

5    160.   Supporting this prediction, during the discovery phase of Briggs v Blomkamp, the

6    Plaintiff found a report on TheProvince.com (titled: "Elysium's ready as director Blomkamp

7    looks forward to next project" from February 2013) in which Def Blomkamp stated the film

8    was finished back in February 2013. (Said article from "The Province" is attached as

9    "**Exhibit BB**" and is incorporated by reference as if fully set out herein.) Then, proving the

10   Plaintiff's prediction, in sworn responses to Plaintiff's interrogatories, during discovery in

11   Briggs v Blomkamp, Def Blomkamp admitted film editing was finished "Sometime in or

12   about June 2013." (Said Defendant Blomkamp's Interrogatory Responses from Briggs v

13   Blomkamp are attached as "**Exhibit CC**" and are incorporated by reference, as if fully set

14   out herein.)

15   161.   The Plaintiff then filed a motion to compel documents, asking for all texts and

16   emails between Def Blomkamp and both *Elysium* film editors: Julian Clarke and Lee Smith

17   (Smith was the final editor—the editor who would have made these headache changes). The

18   Plaintiff made this motion to prove that Def Blomkamp resumed film editing after February

19   2013, to try to remove or alter the "headache" scenes. However, **the Defendants would not**

20   **provide a response from Lee Smith**, only from Clarke (Clarke stated that editing ended

21   well before June 2013—contradicting Blomkamp, who said editing ended June 2013). But

21   Lee Smith returned to the editing room to fix the headache scenes in May and June 2013.

22   162.   As well as doing the final edit of Elysium, the 2014 Sony email leak show that Lee

23   Smith also did the final edits for Blomkamp's next film, *Chappie* (although Smith isn't

24   credited on IMDB or Wikipedia).

25   163.   Lee Smith's final edit of Chappie is revealed in the Sony email leaks as Def Modi

26   Wiczyk writes to Amy Pascal:

27                    2014-08-12 00:13:30  saw it.  From:
                      mwiczyk@mrcstudios.com  To:
28

COMPLAINT
36

1                           amy_pascal@spe.sony.com

2     **MODI WICZYK:**

          "we are going to get there and have a big success with this one. **lee**

3           **smith** will be huge, **nb** is in GREAT frame of mind."

4      164.    Def Wiczyk knew Smith would be "huge" because of how Smith helped salvage

5 Elysium. A few months later Def Wiczyk told Amy Pascal about all the work Lee Smith

6 had left to do on the film, and the continued problems between Blomkamp and Kinberg.

7                2014-11-03 02:03:10 Re: From: mwiczyk@mrcstudios.com

8                       To; pascal, amy

    **MODI WICZYK:**

9        "Hi!

10        in terms of neill, totally ur call but...

       i feel like this coming week is critical bc neill has to really really let lee

11       in to **polish,** refine, etc. alot of little indulgences are gonna have to go.

       so--- i was trying to be positive but also let him know theres real real

12       work yet to do. and in a short period of time.... i talked to lee for a

       while today who says neills been very open so thats good...but hes

13       been a dick to simon for whatever reason. so a long way of saying i

14       want to keep the pressure on him. because i agree it can be special.

       make sense?"

15

16      165.    The Plaintiff filed his Motion to Compel (seeking a statement from Lee Smith)

17 three (3) weeks before the deadline for dispositive motions (liability), July 9th, 2013. But

18 the district court set the motion hearing for more than a week AFTER the deadline for

19 dispositive motions (Aug 7th, 2013). Thus, the Plaintiff had to file his Motion For

20 Summary Judgment (**MFSJ**), without being able to inform the court of the Defendants'

21 **violation of Rule 37** (failure to cooperate to compel a discovery response); a violation that,

21 in this case, resulted in the omission of evidence of a cover-up (that cover-up being: Neill

22 Blomkamp returned to the editing room with Lee Smith, in June 2013, to ask Smith to try to

23 erase edit and remove the headaches from Elysium). Thus, during the teleconference

24 hearing with Magistrate Judge Laurel Beeler, the Plaintiff explained that the matter was

25 unresolved but was effectively "moot" because both parties' MFSJs had been filed, and the

26 Plaintiff had less than a week to file his Reply Brief (Magistrate Beeler thus ruled the issue

27 moot). (Note: the Defs also refused ALL of the Plaintiff's discovery requests for texts or

28 emails regarding ANY Elysium matters; expanding the Defendants' **Rule 37 violations**).

<div align="center">

**MRC & SONY PICTURES NEGLECTED TO DO BASIC**

**DUE DILIGENCE, BUYING THE RIGHTS TO ELYSIUM**

**WITHOUT EVEN READING A SCREENPLAY**

</div>

166. In 2008, Def Neill Blomkamp filmed *District 9* without a screenplay. District 9's star, Sharlto Copley, has given many interviews discussing the fact that he improvised every line of the film—such as the interview he gave *USA Today* in 2011. (Said USA Today article with Sharlto Copley is attached as "**Exhibit DD**" and is incorporated by reference as if fully set out herein.) Due to Def Emanuel's inappropriate relationship with Sony Pictures' CEO Michael Lynton and Def Bill Block (of QED Int.), Emanuel was able to get QED and Sony Pictures' subsidiary *TriStar* to produce and distribute District 9, without a screenplay —using only Def Blomkamp's notes, which they referred to as a "script". Countless writers in online forums, have tried to find a copy of a District 9 script. All have failed.

167. Similarly, MRC (co-owned by Def Emanuel) and Sony Pictures bought the film and distribution rights to Elysium from Def Blomkamp, without ever reading a screenplay. Sony Pictures bought the rights to Elysium in a hasty meeting in 2008. In this well documented meeting MRC and Def Blomkamp displayed 50-60 concept art paintings of scenes from Blomkamp's proposed film. The art was so persuasive that Sony Pictures agreed to buy the rights, immediately, never bothering to read the script. HollywoodReporter.com reported the details of the stunningly hasty meeting between Blomkamp, MRC and Sony Pictures —on the very day it occurred, January 19, 2011. MRC scheduled meetings with several other distributors that same day, but Sony Pictures was so rushed and eager to buy the film that MRC canceled all other distribution meetings scheduled that day. The Hollywood Reporter article carefully reports the "art designs" that secured this deal, but never mentions a "screenplay" or a "script". (Said Hollywood Reporter article about Blomkamp, MRC closing the deal with Sony Pictures is attached as "**Exhibit EE**" and is incorporated by reference as if fully set out herein.) This same meeting and concept art were also recounted in the book "Elysium: The Art of the Film" —a book primarily made up of interviews with Def Blomkamp, himself. On August 6th, 2013, Deep Focus Review (deepfocusreview.com) reviewed the book "Elysium: The Art of

<div align="center">

COMPLAINT

38

</div>

1  the Film", reflecting on this meeting. (Said Deep Focus Review article is attached as
2  "**Exhibit FF**" and and is incorporated by reference as if fully set out herein.) Upon
3  interviewing Blomkamp, the Deep Focus Review article revealed that Defs Blomkamp and
4  MRC staged 50-60 concept art paintings "and set them against the screenplay", explaining:

5       "On the strength of these images—not to mention the strength of his first
6       film, *District 9*—he garnered himself a $100 million budget and signed
     stars Matt Damon and Jodie Foster."
7

8      168.   The Defendants used the amazing artwork to strategically distract attention from
9  the flawed screenplay. Sony Pictures took the bait. Within an hour or so, a deal for about
10  $115 million was made, and no executive from Sony Pictures ever read a script. MRC
11  didn't do due diligence because Defendant Ari Emanuel was a co-owner of MRC and Def
12  Blomkamp's personal agent; thus, they stood to make millions from the deal. Sony Pictures
13  failed to do due diligence because CEO Michael Lynton had an improper, secret business
14  partnership with Def Emanuel (Screenbid.com), and wanted to maintain good relations with
15  Defs Emanuel and MRC—and make millions without regard for whose work they pirated.

16      169.   Def Blomkamp's script was so poorly executed and riddled with evidence of
17  misappropriation of the Plaintiff's work, that Defs Blomkamp, MRC and Sony Pictures took
18  extreme measures to protect the script during film production. The website Games Radar
19  (gamesradar.com) interviewed one of Elysium's stars, film icon **Jodie Foster**, who revealed
20  the producer's paranoia as she explained she wasn't allowed to possess a script. (Said
21  Games Radar interview with Jodie Foster is attached as "**Exhibit GG**" and is incorporated
21  by reference as if fully set out herein.) Foster said:

22       **"They won't even give me a screenplay. I've read it, but they won't**
23       **give me one to physically keep in my home 'cause they're so worried**
     **about everybody."**
24

25      170.  How Sony Pictures and MRC committed $115 million to a movie without reading a
26  screenplay, but invested millions to keep the screenplay secret defies reason. This was done
27  to keep the Plaintiff from learning details of the film's plot before it was released, to prevent
28  the Plaintiff from getting an injunction to stop production.

COMPLAINT
39

1  171. Had Sony Pictures behaved ethically, AND done their due diligence, they would

2  have read Blomkamp's screenplay, then they would have seen Def Blomkamp's unfocused

3  ideas, vast story weakness, and his poor literary skills. These shortcomings, juxtaposing

4  concepts that were beyond such limited literary skills, should have raised red flags that

5  Blomkamp's story may have been misappropriate, thus killing the deal. Hence, the Plaintiff

6  would have filed no claims, including all claims herein.

7  172. When Sony Pictures finally read Blomkamp's screenplay, seeing his poor writing

8  skills and disjointed ideas, they hired writer/producer Simon Kinberg, who Def Wiczyk

9  described as a "fixer" (a term Wiczyk borrowed from Jeff Rovin, expert witness in Briggs v

10  Blomkamp). In a 2014 email to Sony Pictures Chairperson, Amy Pascal. Wiczyk wrote:

11  2014-10-27 13:36:12 Fwd: CHAPPIE NOTES
From: mwiczyk@mrcstudios.com To: pascal, amy

12  **MODI WICZYK:**

13  "hi!so i asked si to share all the notes hes wanted to do, in detail, for
weeks but hasnt been able to do.it lines up w what everyones

14  saying.  great detail and very specific.he also included rachels

15  document and merged it.**simon is a _fixer_ and a logician** and i want
him to trest this like hes been brought in to doctor it on some level,

16  and he does too.  nb has been ignoring him the past few weeks after

17  listening to him up until then. dont know why, dont care. its our turn
now.i told doug that we should leave the mtg telling thema. timeline

18  for seeing new stuff b. possibly do a parallel more radical cut to

19  play w thebig first act and religious note.c. first "basic" cut should
do all cuts in the notes, deal w ending. see you at 9."

20

21  173. A company has a responsibility to do basic due diligence, to make sure their

21  products are what they allege: original works. Having a CEO who is secret business partners

22  with the CEO of a talent agency subcontractor, undermines due diligence. Failing to read a

23  screenplay before buying the rights to that screenplay is not doing due diligence. Hiring a

24  "fixer" to hide evidence of misappropriation is not doing due diligence. Rather, these are the

25  methods of corrupt, mob-like conspirators.

26  174. Further, during discovery in Briggs v Blomkamp et al, the Plaintiff asked the

27  Defendants for all documentation of their due diligence to make sure Elysium was not an

28  infringement. The Defendants failed to produced any such documentation.

COMPLAINT
40

| | |
|---|---|
| 1 | **Defendant Blomkamp Gets Caught Lying To The World About** |
| 2 | **His "Aliens" Script (Which Also Did Not Exist) , in 2017:** |
| 3 | 175.  Just as Def Blomkamp (with Def Wiczyk's help) sold Elysium to Sony and MRC |
| 4 | without a screenplay, Blomkamp recently tried to sell his idea for a fifth "Aliens" film |
| 5 | without a script—but this time he did it openly, online, for the world to see. Unfortunately, |
| 6 | in the process he ensnared several other Hollywood notables in his' strange world of lies. |
| 7 | 176.   On January 2nd, 2015, Def Blomkamp shared some "Aliens" concept art on his |
| 8 | Twitter account, expressing hope of one day shooting the film. Soon dozens of Blomkamp |
| 9 | fans began spreading the word that Def Blomkamp was out to make the fifth Aliens film, |
| 10 | including in an article on Nerdist.com. (Said article from Nerdist.com is attached as |
| 11 | "**Exhibit HH**" and is incorporated by reference as if fully set out herein.) |
| 12 | 177.   By July **2016,** websites like ScreenRant.com were reporting Def Blomkamp had |
| 13 | recruited actress Sigourney Weaver and director James Cameron to tell the world how great |
| 14 | Blomkamp's script was. (Said ScreenRant article is attached as "**Exhibit II**" and is |
| 15 | incorporated by reference as if fully set out herein.)  In ScreenRant Sigourney Weaver said: |
| 16 | **"There is an incredible script by Neill. I didn't want to do a fifth one. I** |
| 17 | **thought going to earth wouldn't be fun. I got this script that was** **amazing and gives fans everything they're looking for..."** |
| 18 | |
| 19 | 178.  And James Cameron also praised the script in the ScreenRant article: |
| 20 | **Director James Cameron (***Avatar***) then went on to throw in his two cents,** |
| 21 | **saying that Blomkamp's is "***a very strong script***" and "***works gangbusters.***"** |
| 21 | 179.  "Gangbusters." |
| 22 | 180.  Then, in April 2017, ScreenCrush.com reported that director Ridley Scott, owner of |
| 23 | the Aliens franchise, had announced there would be no *Aliens 5* movie.  Mr. Scott explained |
| 24 | Defendant Blomkamp **never even had a script**. (Said Screen Crush article is attached as |
| 25 | "**Exhibit JJ**" and incorporated by reference as if fully set out herein.)   Ridley Scott stated: |
| 26 | **"I don't think it will ever see the light of day. There <u>was</u> <u>never</u> a <u>script</u>.** |
| 27 | **Just an idea that evolved from a dozen or so pages."** |
| 28 | 181.  This all caused the article writer to wonder who was lying: "We seem to find |

ER 1103

1  ourselves in a bit of a '*he said, she and he said*' situation here," Monagle wrote.

2  182. Remember, in 2000 Def Wiczyk helped sell his brother's script to Summit without
3  so much as a script name, and Sony Pictures was right there, negotiating for the rights to
4  that unwritten, nameless script—eager to please any good friend of Ari Emanuel's.
5  By 2016, with *Aliens 5*, the Defendants had grown so brazen that they let Def Blomkamp go
6  out and lie to the world for himself, believing they could throw a script together after the
7  contract was signed. Rubbing their hands in anticipation of all that money, none of them
8  expected Ridley Scott to do due diligence and insist on seeing a script, ruining their scheme.

9

10  **IN BRIGGS V BLOMKAMP THE DEFS HIRED A CONMAN, JEFF ROVIN**
11  **(WHO COMMITTED FRAUD UPON THE COURT & WENT ON FOX NEWS**
12  **TO ADMIT HE WAS A"FIXER" FOR BILL CLINTON) AS THEIR "EXPERT"**

13  183. Not only does this case reveal how effortlessly seemingly everyone in Hollywood
14  lies, it reveals that when they get caught lying and stealing other people's work, they call on
15  world-class liars.

16  184. In a surreal, mobster-like twist, in Briggs v Blomkamp, rather than hiring one of
17  thousands of California intellectual property attorneys as an expert witness, the Defs hired
18  Jeff Rovin, a high school-educated New York "fixer" (Rovin's self description). This is the
19  same Jeff Rovin who confessed (two years after Briggs v Blomkamp went to MFSJ) to the
20  *National ENQUIRER (*October 19th, 2016), and confessed on **Fox News'** live telecast of
21  *The Sean Hannity Show* (Oct 24, 2016), that he was a professional "fixer" who
22  orchestrated false "smear" reports on people who disparaged President Bill and Hillary
23  Clinton—while Bill Clinton was President. Rovin claimed he then published these smear
24  articles in tabloid newspapers. Rovin's interview with Hannity can be seen at
25  https://www.youtube.com/watch?v=L3mzoKuFN5o. The story carried in countless other
26  publications, including The Daily Beast. (Said Daily Beast article is attached as "**Exhibit**
27  **KK**" and is incorporated by reference as if fully set out herein.) (Said National ENQUIRER
28  article is attached as as "**Exhibit LL**" and is incorporated by reference as if fully set out
    herein.)

COMPLAINT
42

1    185.  **Rovin made these self-incriminating admissions on camera, in his own words.**
2    Rovin admitted that he also bribed the victims of his smears to stay quiet. Shockingly,
3    Rovin says the bribes were so effective that they rarely needed to resort to **other measures**.
4    In Rovin's words, "**Most of the time** it was just money, it never had to be any threats."
5    Witlessly, Rovin admitted threats, violence—or worse—might ensue if the money wasn't
6    accepted.

7    186.  Sean Hannity summarized Rovin's work, saying, "Smearing happened. Money was
8    paid. Orders were given. You were to go out and damage the reputation of people like
9    Monica Lewinski."

10   187.  Rovin modestly agreed with Hannity's assessment, stating, "It was a team effort."

11   188.  Rovin went on to explain he had worked as a "fixer" many times in the past.

12   189.  In Brigg v Blomkamp, the Defendants paid Jeff Rovin $50,000 as a "fixer", to use
13   his literary talents to lie, falsify and commit fraud.

14   190.  In Brigg v Blomkamp, Rovin's fraud was so extensive that the Plaintiff moved the
15   the court to exclude Rovin's "expert" report, as Rovin had falsified dozens of citations and
16   fabricated evidence to substantiate his own claims, including a lengthy "quote" in which he
17   fraudulently omitted 42 words—that wholly countered what Rovin reported. (Said Motion
18   to Exclude is attached as "**Exhibit MM**" and is incorporated by reference as if fully set out
19   herein.)  Oddly, the court took no interest in the fraud contained in Rovin's report—which
20   became the base of the district court's summary judgment opinion—and denied the motion.

21   191.  How the Defendants knew such a devious man's "expert" report would go
21   unchallenged is a mystery. How the Defendants knew such a sinister man existed—at all—is
22   stunning.  Rovin explained that he worked for President Clinton when Bill Clinton was in
23   office (1991-2001). When asked how he came to be involved with the Clintons, Rovin
24   explained that the Clintons became aware of Rovin because, in Rovin's words, he was
25   **"fixing something for an actor who was in their** (the Clinton's) **inner circle."** Rovin does
26   not identify who this cabinet member is, but during the time Rovin was involved with the
27   Clintons (1991-1998), **Rahm Emanuel** worked as the senior adviser to President Clinton
28   (1993-1998). Rahm Emanuel is Defendant Ari Emanuel's brother.

COMPLAINT
43

| 1 | **Defendants May Use Campaign Donation To Avoid Prosecution** |
|---|---|

2  192.  July 17, 2017, Observer.com reported that when Senator **Kamala Harris** was

3  California's Attorney General she ignored corporate lawbreakers who made max donations

4  to her campaign. (Said Observer article is attached as "**Exhibit NN**" and is incorporated by

5  reference, as if fully set out herein). CampaignMoney.com reported **Def Emanuel** made max

6  donations to Harris's campaign. (Said Campaign Money report is attached as "**Exhibit OO**"

7  and is incorporated by reference as if fully set out herein.) The L.A. Times also reported Def

8  Emanuel hosted a fundraiser for California's Lieutenant Governor Gavin Newsom. (Said LA

9  Times article is attached as "**Exhibit PP**" and incorporated by reference, as if fully set out

10  herein.) Emanuel likely made said donations to keep Harris, Newsom, and the Dept of Bus

11  Oversight from investigating his improper ties with Universal, MRC, Screenbid, Sony, etc.

12  **9TH CIRCUIT FILM RULING IRREGULARITIES & CONFLICTS**

13  193.  The district court's Briggs v Blomkamp summary ruling applied reversed law,

14  rather than the prevailing law (cited by the Plaintiff). Such irregularities seem common in

15  film industry cases in the 9th.  In 2014, the L.A. Times asked Chief Justice **Alex Kozinski**

16  about this and the 9th's relationship with the film industry. (Said article is attached as

17  "**Exhibit QQ**" and incorporated by reference as if fully set out herein.) Kozinsky explained:

18  "He holds movie nights at the 9th Circuit courthouses in Pasadena, San
19  Francisco and occasionally Seattle, where judges and lawyers pitch in for
  pizza and beer, **watch films and hear from scriptwriters and other**
20  **industry insiders about the movies. Director** George Lucas **used to**
  **provide the court with films before they came out on DVDs...**"
21

21  194.  Many readers were stunned to learn that The Studios had such access to the very

22  judges trying their cases. The article quotes attorney Steven T. Lowe, who, implying bias in

23  the Ninth, said, "The studios and networks always win." In 2010, *The Los Angeles Lawyer*

24  published Lowe's article "Death of Copyright". (Said article is attached as "**Exhibit RR**"

25  and is incorporated by reference as if fully set out herein.)  In the article Lowe explains:

26  "Of the **48** copyright infringement cases against studios or networks that resulted
27  in a final judgment within the Second and **Ninth Circuits** (and the district courts
  within those circuits) **in the last two decades, the studios and networks**
28  **prevailed in all of them** and nearly always on motions for summary judgment."

COMPLAINT
44

| 1 | **SUMMARY** |
| 2 | **Review Of Facts Regarding Defendants' Actions,** |
| 3 | **Resulting In Injury To Plaintiff:** |
| 4 | 195.   The Defendants are accountable for taking the following actions, which resulted in |
| 5 | injury to the Plaintiff: |
| 6 | **(1)** |
| 7 | 196.   Kevin Spacey and Dana Brunetti, acting alone or in conspiracy with other |
| 8 | Defendants, create a social network website, called Trigger Street, or TriggerStreet ("TS" |
| 9 | herein), located at triggerstreet.com from 2002 until 2011, and at labs.triggerstreet.com |
| 10 | from 2011 until 2014. |
| 11 | **(2)** |
| 12 | 197.   Kevin Spacey and Dana Brunetti, acting alone or in conspiracy with other |
| 13 | Defendants, published and rendered the TS "Terms of Use" contract page, which stated: |
| 14 | Unless otherwise specified, the materials on the Site and in the Services |
| 15 | are presented **solely for** the purpose of promoting the entertainment, information, and community resources and services available in, and other |
| 16 | uses in, **the United States of America.** We control and operate the Site |
| 17 | and the Services from within the United States. We make no representation that materials on the Site or the Services are appropriate or available for |
| 18 | use in locations outside the United States, and accessing them from |
| 19 | territories where their contents are illegal is prohibited. Those who choose to access the Site from other locations do so on their own initiative and are |
| 20 | responsible for compliance with local laws. |
| 21 | 198.   The previous statement from the TS "Terms of Use" page was deliberately false |
| 21 | and/or misleading, and intended to inform members (or suggest, imply or insinuate) that |
| 22 | TS was intended for use by and for, users in the USA. This was false, and WAS FRAUD, |
| 23 | A MISREPRESENTATION, A FALSE STATEMENT, AND A DECEIT. These false |
| 24 | statements were made to falsely assure informed, savvy writers that the website was safe |
| 25 | from foreign "bad actors', as there are many nations that do not, or cannot enforce the |
| 26 | Universal Copyright Convention, and often American copyright holders never learn that |
| 27 | their works were misappropriated by foreign infringers, because the stolen works are only |
| 28 | displayed in the infringers' nation. (TS also may have stated it was intended for US use to |

COMPLAINT

45

1  avoid paying taxes on the international earnings from its Budweiser endorsement deal.)

2      199.    In truth, unbeknownst to American users, from the outset TS was intended for

3  international use.

4      200.   The Defendants' action were also a violation of 18 U.S. Code § 1001 - Statements

5  or entries generally (a) (1), which makes it illegal to make any materially false, fictitious,

6  or fraudulent statement or representation.

7                                          (3)

8      201.   Defendant Kevin Spacey made numerous trips abroad, to London, Spain, etc., to

9  give speeches and interviews, and throw parties, intent to recruit new TS members. While in

10 Spain, in 2009, Spacey stated,  "I started the website about six years ago, and we now have

11 close to 400,000 members around the world."

12     202.   This was **BREACH OF CONTRACT**, as most (perhaps all) members in the USA

13 believed the website was solely for use in the USA.

14                                         (4)

15     203.   TS and the Defendants provided content and programming from TS to Bud.TV

16 from 2007 to 2009. Bud.TV also ran an international advertising campaign about this. This

17 international ad campaign advertised TS all around the world, as well as Bud.TV. Both,

18 advertising TS in Bud.TV promotions, AND advertising TS on Bud.TV itself, were

19 **BREACHES OF CONTRACT** of TS's Terms of Use contract page.

20                                         (5)

21     204.   The Defendant(s) made the TS website with effectively no security features, as

21 ALL members were allowed to ANONYMOUSLY read ALL screenplays. This, while TS

22 claimed to be industry standard, encapsulating all of the desires and needs of its users, and

23 touted its state of the art security. This was a violation of state and federal conspiracy,

24 negligence, gross negligence, fraud, deceit, misrepresentations, and false statements laws.

25                                         (6)

26     205.   Unlike a truly "industry standard" site like WritersScriptNetwork.com, all TS

27 members/users were encouraged and deceived into using and navigating the website with

28 false identities (even for writing reviews). Intent to protect the identities of misappropriating

COMPLAINT
46

1  conspirators, the Privacy page was written and designed to scare user/members into using

2  false identities. The TS Privacy page stated:

3

4  User Names and User Disclosure
   The user name you select or are provided with upon registration with the

5  Site is deemed non-personally identifiable information. Your user name
   may be published on the Site and may be disclosed to others, including,

6  without limitation, to the public, and to any third parties with whom we

7  elect to share such information. In addition, **if you include your name**

8  **or any other personally identifying information** in any material
   transmitted or posted on public areas of the Site or the Services

9  (including, without limitation, message boards, **reviews** and chat rooms),

10 **such information will become public information and will be**
   **published on the Site and will be disclosed to other users of the Site**

11 **and to other third parties who may have access to or otherwise see a**
   **display of such information**.

12

13 206.  These statements were made to encourage users to take risks they ordinarily would

14 not take, and should not take, as part of the Defendants efforts to persuade users/members to

15 make their wares accessible to the Defendants. This was CONSPIRACY and DECEIT.

16                                      (7)

17 207.  The TS Privacy page suggested that the website had a method to reveal the true

18 identity of all "accessors", if necessary.

19 Information Disclosure
   We reserve the right to disclose information submitted by or concerning

20 any user as we feel is necessary to protect our systems or business.

21 Specifically, but without limitation, we reserve the right to disclose such
   information when a visitor or member is in violation of our Terms of Use

21 or any other agreement with us, or engages (or is suspected of engaging)

22 in any harmful, infringing or illegal activity....

23 208.  However, there is no evidence to support that TS ever, truly, had any method of

24 retrieving any access records, or the accessor's true identity, etc. Nor is there any reason to

25 believe such a system ever existed on TS. Thus, the Defendants' action were in violation of

26 18 U.S. Code § 1001 - Statements or entries generally, which makes it illegal to make any

27 materially false, fictitious, or fraudulent statement or representation.

28

COMPLAINT
47

| 1 | (8) |
|---|---|
| 2 | 209. The Defendant(s) made extraordinary and fraudulent claims about website security; |
| 3 | doing so to lure in the best undiscovered writers, and eliminate any doubts or suspicions |
| 4 | users might otherwise reasonably have. Such false and exceptional claims as: |
| 5 | a.  The TS "About Us" page stated: |
| 6 7 | "Our team has been extensively researching and designing TriggerStreet.com to ensure that it **encapsulates every aspect of the user's desires and needs**." |
| 8 | 210.  THIS WAS FRAUD. All reasonable screenwriter members would expect (from a |
| 9 | website assuring that the website "**encapsulates every aspect of the user's desires and** |
| 10 | **needs**") that records be preserved of all access of writers' work, identifying which members |
| 11 | accessed which works, AND recorded by the accessor's true name —AND NOT erase all |
| 12 | access history if the member removes his/her work because he/she worries his work may be |
| 13 | unsafe on the website. Members would reasonably expect and *desire* this (from a site |
| 14 | claiming to be industry standard) because other websites were already doing this |
| 15 | (InkTip.com, perhaps others). Further, all reasonable members would **desire** and **need** a |
| 16 | website to use accurate language, and behave in accordance with the implicit language of |
| 17 | the Website's Terms of Use". And if the "Terms of Use" stated, suggested, implied—or |
| 18 | used language that implied—that the website was solely for use in the USA, members |
| 19 | should expect that site operators would act in accordance with that agreement, and not |
| 20 | advertise or recruit abroad. This false claim was made to lure writers to an unsafe website. |
| 21 | 211.  This was deceit. The Defendants' action were also in violation of 18 U.S. Code § |
| 21 | 1001 - Statements or entries generally, which makes it illegal to make any materially false, |
| 22 | fictitious, or fraudulent statement or representation. |
| 23 | a.  On the TS Privacy page, the "Security" message stated: |
| 24 25 26 27 28 | "Security When you submit information via the Site, your information is protected using secure data networks protected by **industry standard firewall and password protection systems**. Our security practices and policies are periodically reviewed and updated as necessary, and only authorized individuals have access to the information provided by our users." |

ER 1110

212. THIS WAS FRAUD. There was nothing "industry standard" about the TS screenwriter website. The standard was set by Writers Script Network.com (InkTip.com). InkTip kept all records of all access, even after members left. On Inktip.com, there was no feature erasing all access records upon script removal. By implying all information was protected and secure and industry standard, reasonable members would assume all members' access activity would be recorded, stored, and protected —not erased.

213. The Defendants' action were also a violation of 18 U.S. Code § 1001 - Statements or entries generally (a) (1), which makes it illegal to make any materially false, fictitious, or fraudulent statement or representation.

   b. The Defendant(s) and TS used Def Spacey's stardom to lure in writers, then writers were **promised** "industry access and exposure"; using Spacey's fame and Academy Award winning laurels to leverage a false promise. TS's statement from its "About Us" page promised that:

   > "Based on the principles of creative excellence, it (the TS website) provides **industry access and exposure** to help build the careers of notable new filmmakers and screenwriters."

214. THIS FALSE PROMISE, bolstered by the other fraudulent statements on the "Terms of Use", "About Us", and "Privacy" pages, expanded a pattern of false statements, misrepresentations, fraud and deceit. The Plaintiff did NOT expect to be *discovered*. But he also did NOT expect to be cheated by these industry insiders.

**(9)**

215. The Defendants added a new counter security feature, whereby if a member removed his/her screenplays from the TS website because he/she worried that it might be unsafe or the target of infringers or pirates, the moment the writer removed his script ALL access records would be erased. The Plaintiff believes the Defs added this feature in 2007 to access and steal the Plaintiff's work. But whether this extra hidden layer of counter-security was added when the website was made, in 2002, or if it was added in 2007, the Defendant(s) and TS did not inform members about this feature, and it was never mentioned on the TS website. The Defendants' failure to inform members of this counter-security

ER 1111

1   feature, and the risks it posed, was a deliberate omission of imperative information. The
2   Defendants actions were in violation of California Civ. Code § 1572, fraud by omission, and
3   constitute DECEIT in violation of California Civ. Code § 1709, and these actions and
4   inactions were in violation of 18 U.S. Code § 1001 - Statements or entries generally (a) (1),
5   which makes it illegal to conceal or cover up such facts.

6                                            **(10)**

7       216.    Corporations are expected to do due diligence in all substantial purchases,
8   transactions and deals (such as investing $120 million in a film). Due diligence means doing
9   **"a complete and appropriate review of documentation and facts by a potential buyer**
10  **or its agents before purchasing an asset or engaging in business with a prospect"** (from
11  the Law Offices of Stimmel, Stimmel & Smith); this definition goes on to require a
12  "...complete review using lawyers and CPAs to assist so that when one is done, one knows
13  all that one needs to know before engaging in business with or buying a company or other
14  asset or piece of property." The Defendants did not do due diligence —not even reading the
15  screenplay before buying its rights; thus, the Defendants engaged in **gross negligence.**

16                                           **(11)**

17      217.    The Defendants engaged in conflicts of interests that violated **CALIFORNIA**
18  **LABOR CODE SECTION 1700.39**, which states, "No talent agency shall divide fees with
19  an employer, an agent or other employee of an employer." Defendant Ari Emanuel was the
20  central talent agent in making the film Elysium, representing Elysium's star Def Matt
21  Damon, and its writer/director Def Neill Blomkamp. Defendant Ari Emanuel is also an
21  owner of MRC (the employer of Def Neill Blomkamp for the making of Elysium, and the
22  buyer of Elysium's film rights). Thus, Def Ari Emanuel divided fees as a talent agent and
23  employer. The Plaintiff was injured by this violation of California law.

24                                           **(12)**

25      218.    The Defendants engaged in VIOLATIONS OF CALIFORNIA BUSINESS &
26  PROFESSIONS CODE § 17200, ET SEQ., UNFAIR BUSINESS PRACTICES ACT. Sony
27  Pictures' (a publicly traded company), and its CEO Michael Lynton, violated California
28  Business & Professions Code § 17200, ET SEQ., by engaging in improper and unethical

ER 1112

1   business relationship, whereby Michael Lynton, acting as an officer of Sony Pictures, hired

2   a subcontract, Screenbid, to sell numerous items of substantial value for Sony Pictures.

3   Thus, Def Lynton profited as Sony Pictures' CEO, and he and Def Ari Emanuel profited as

4   the owners of Screenbid, the subcontracted auction service. This was a conflict of interest.

5       219.    This improper relationship caused CEO Michael Lynton to encourage his

6   subordinates and peers NOT to scrutinize projects, clients or business entities associated

7   with his secret business partner Def Ari Emanuel. Thus, Sony Pictures agreed to distribute

8   Elysium without doing due diligence to read a screenplay to see to it that it was reasonably

9   executed. Had Sony Pictures employed a reasonable standard of due diligence, Elysium

10   would not have been made; thus, no injury would have come to the Plaintiff.

11                         **(13)**

12     220.   The Defendants engaged in Obstruction Of Justice by closing and destroying the

13   TS website 6 days after the Plaintiff filed his Notice of Appeal to the Ninth Circuit Court of

14   Appeals. The Defendants did this to destroy incriminating evidence, because the district

15   court based its MFSJ ruling on reversed law, cited by the Defendants, rather than the

16   prevailing law, cited by Plaintiff. Thus, Briggs v Blomkamp, et al, is/was apt to be returned

17   to the lower court, where the Plaintiff will/would subpoena all website access records, to

18   confirm the Defendants used TS to access the Plaintiff's work, and confirm that TS

19   misrepresented its security and ID protection features, and had no such records or oversight

20   at all.

21                         **(14)**

21     221.   By conspiring to hire an admitted "fixer", Jeff Rovin (who spent years of his life

22   preparing false smear stories for tabloid news), to prepare and submit a falsified "expert"

23   report to the court, the Defendants engaged in SUBORNATION OF PERJURY. This was

24   also a violation of 18 U.S. Code § 1001 - Statements or entries generally (a) (1), which

25   makes it illegal to knowingly and willfully: (1) falsify, conceal, or cover up by any trick,

26   scheme, or device a material fact; (2) make any materially false, fictitious, or fraudulent

27   statement or representation; or (3) make or uses any false writing or document knowing the

28   same to contain any materially false, fictitious, or fraudulent statement or entry.

COMPLAINT

51

| 1 | **(15)** |
| 2 | 222.  By stating, in their answers to the Plaintiff's interrogatories, that Simon Kinberg |
| 3 | only provided a "polish" to the Defendants script, "Elysium", when, in fact, he did |
| 4 | exhaustive work to salvage the screenplay, the Defendant(s) committed **Perjury.** This was |
| 5 | also a violation of 18 U.S. Code § 1001 - Statements or entries generally (a) (1), which |
| 6 | makes it illegal to conceal or cover up such facts. |
| 7 | **(16)** |
| 8 | 223.  In Briggs v Blomkamp, the Plaintiff stated that the Elysium film editor(s) would |
| 9 | confirm that the Film's editing resumed in June, 2013 (after wrapping up originally in |
| 10 | February 2013), after the Defendants learned of the Plaintiff's immanent lawsuit. The |
| 11 | Plaintiff stated the editor(s) would also confirm that this final film editing was done to try to |
| 12 | remove the the hero's headaches. But the Defendants refused to provide Plaintiff any access |
| 13 | to Elysium's final editor, Lee Clarke. In doing so the Defendants **VIOLATED RULE 37** |
| 14 | —a violation that may have changed the outcome of the case. In doing so, the Defendants |
| 15 | endeavored to **conceal and cover** up their misappropriation of the Plaintiff's work; a |
| 16 | violation of 18 U.S. Code § 1001 - Statements or entries generally (a) (1). |
| 17 | |
| 18 | **CLAIMS FOR RELIEF** |
| 19 | **FIRST CLAIM FOR RELIEF** |
| 20 | CONSPIRACY |
|    | Violating California Penal Code 182(a)(3),(4), and/or (5) |
| 21 | **(Against All Defendants)** |
| 21 | 224.  The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through |
| 22 | 223, as if fully set out herein. |
| 23 | California Penal Code 182 (a)(3)(4)(5) makes it unlawful: |
| 24 | (a) If two or more persons conspire: |
|    | (3) Falsely to move or maintain any suit, action, or proceeding. |
| 25 | (4) To cheat and defraud any person of any property, by any means which |
| 26 | are in themselves criminal, or to obtain money or property by false pretenses |
|    | or by false promises with fraudulent intent not to perform those promises. |
| 27 | (5) To commit any act injurious to the public health, to public morals, or to |
| 28 | pervert or obstruct justice, or the due administration of the laws. |

225.  The Defendants engaged in three (3) conspiracies, in violation of California Penal Code 182(a) (3)(4) and/or (5).  California Penal Code requires that one of the conspirators commit an **overt act** in the process. The Defendants committed many overt actions:

### First Conspiracy

226.  To unlawfully enrich themselves, the Defendants conspired to create a social network for screenwriters and filmmakers, with little or no security features. The Defendants would then mislead screenwriters that the website was safe, then the Defendants could access and misappropriate these screenwriter's work.

227.  **Overt Act #1:** The Defendants conspired to create a social network website.

228.  **Overt Act #2:** The Defendants conspired to design the website with effectively no security features.

229.  **Overt Act #3:**The Defendants conspired to commit fraud and mislead website member/users that the website had reasonable security features, when it had none.

230.  **Overt Act #4:** The Defendants conspired to add a counter security feature that erased all access information if members removed their screenplays.

231.  **Overt Act #5:**The Defendants apparently conspired to add this feature (described in the previous paragraph) in 2007, to erase evidence of their access of the Plaintiff's script.

232.  **Overt Act #6:** The Defendants conspired to make the film Elysium (which may still be legally proven to be derived from the Plaintiff's work), careful not to leak any information about the project.

233.  **Overt Act #7:** The Defendants conspired to create website *Terms of Use* page that stated the website was intended solely for use in America, but the Defendants repeatedly sent Def Spacey around the globe to recruit members. The Defendants ALSO secretly advertised TS on international websites (like Bud.TV) and in other international publications. The Defendants knew what the Terms of Use rules stated, and they agreed amongst themselves that it was important to violate said rules, to get international members.

234.  **Overt Act #8:** While producing the film Elysium, the Defendants conspired to keep the Elysium script an absolute secret, not even allowing Hollywood giants like Jody Foster to take her script home.

COMPLAINT

53

1    235. **Overt Act #9:** The Defendants (particularly Ari Emanuel, who profited the most

2    from these acts and arrangements) also had Def Matt Damon and Ben Affleck start a

3    screenwriter/filmmaker website, similar to TriggerStreet, called Project Greenlight. Affleck

4    and Damon have been Def Emanuel's clients (through Endeavor and WME-IMG) for most

5    of their careers. Both websites (TS and Project Greenlight) have been accused of being the

6    place of access in major film and TV copyright infringement suits. Both "stolen" film or TV

7    projects were eventually sold to companies with questionable relationships to Def Emanuel

8    (MRC and Universal Pictures -or their parents or subsidiaries). Both websites (TS and

9    Project Greenlight) used suspiciously similar language: "peer reviews," "peer-to-peer," etc.

10                  **Second Conspiracy**

11    236. Once the Plaintiff realized the Defendants misappropriated his work, he sued.

12    237. In response, the Defendants designed a second conspiracy, to prevent the Plaintiff

13    from duly prevailing in his copyright lawsuit. This would require cheating the Plaintiff, and

14    cheating the US and California civil justice systems.

15    238. **Overt Act #10:** Rather than hiring any one of of perhaps ten-thousand well

16    qualified California intellectual property attorneys for their expert witness in Briggs v

17    Blomkamp, et al, the Defendants opted to hire a New York conman named Jeff Rovin, who

18    admitted on Fox News "The Sean Hannity Show" that he was a professional "fixer" who

19    worked for President Bill Clinton's administration, and used his literary skill to create

20    "smear" stories for junk tabloid newspapers to attack Clinton critics. Rovin said he came to

21    work for Bill and Hillary Clinton because he was working for another "actor" in the Clinton

21    White House. The Plaintiff is certain that other actor is Rahm Emanuel, who was Senior

22    Advisor to the President (Clinton). Rahm Emanuel is Defendant Ari Emanuel's brother.

23    Rahm likely referred Def Ari Emanuel to hire Jeff Rovin to "fix" the expert report. Def Ari

24    Emanuel is a co-owner of MRC, Defs Blomkamp's agent, and business partner of Bill

25    Block (CEO of QED Int.), all of whom were named in Briggs v Blomkamp, et al.

26    239. **Overt Act #11:** Defendants conspired to prevent the Plaintiff from speaking to

27    editor Lee Smith in Briggs v Blomkamp.

28    240. **Overt Act #12:** The Defendants conspired to commit perjury, stating that Simon

1    Kinberg merely "polished" Def Blomkamp's script.

2    241.  **Overt Act #13:** The Defendants conspired to shut-down and destroy the TS social

3    network 6 days after the Plaintiff filed his Notice Of Appeal, also obstructing justice.

**Third Conspiracy**

5    242.  To greatly increase and accelerate their rate of personal enrichment, the Defendants

6    conspired to break California business, labor and ethics codes. Breaking these business

7    labor and ethics codes caused a disintegration in the Defendants' business practices, causing

8    them to act recklessly, and negligently.

9    243.  **Overt Act #14:** The Defendants conspired to commit to invest over $100,000,000

10   to make the film Elysium, without reading a script.

11   244.  **Overt Act #15:** The Defendants conspired to create an arrangement where

12   Universal Pictures or its parent or its subsidiaries, will finance and/or distribute any project

13   Def Ari Emanuel brings Universal Pictures—even unlawfully acquired projects.

14   245.  **Overt Act #16:** The Defendants conspired to engage in inappropriate business

15   relationships, such as Def Emanuel and Sony Pictures CEO Michael Lynton co-owning

16   Screenbid, and Defendant Emanuel co-owning MRC (violating Cal Labor Code 1700.39).

17   246.  In the aforementioned actions, and others detailed in this Complaint, and perhaps

18   others to be revealed at trial, the Defendants willfully, maliciously, fraudulently, with

19   wrongful intent to harm the Plaintiff, with disregard for the Plaintiff's rights and welfare,

20   and with disregard for ethics and for the law, engaged in one or more conspiracies.

21   247.  The Plaintiff was injured as a direct, foreseeable and proximate consequence of the

21   Defendants' actions, in an amount to be determined at trial.

22   **SECOND CLAIM FOR RELIEF**
**OBSTRUCTION OF JUSTICE & ANTICIPATORY OBSTRUCTION OF JUSTICE**
23   **Violating 18 U.S. Code § 1519**
24   Destruction, Alteration, Or Falsification Of Records In A Federal Investigation
**(Against All Defendants)**
25

26   248.  The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

27   247, as if fully set out herein.

28   249.  18 U.S. Code § 1519 makes it unlawful to destroy evidence, etc., in anticipation or

COMPLAINT
55

1   contemplation of a legal action; stating:

2       Whoever knowingly alters, destroys, mutilates, conceals, covers up,
3       falsifies, or makes a false entry in any record, document, or tangible object
        with the intent to impede, obstruct, or influence the investigation or proper
4       administration of any matter within the jurisdiction of any department or
        agency of the United States or any case filed under title 11, or in relation
5       to or **contemplation** of any such matter or case, shall be fined under this
6       title, imprisoned not more than 20 years, or both.

7       250.   The Defendants engaged in obstruction of justice (and/or anticipatory obstruction

8   of justice), violating 18 U.S. Code § 1519, by endeavoring to close and destroy their social

9   network TriggerStreet.com, as detailed throughout this Complaint. Although the Defendants

10  knew the website was the central access point of an ongoing legal case, they closed the site

11  6 days after the Plaintiff filed his Notice Of Appeal; doing so while the site was still

12  growing, without giving the website's perhaps 700,000 members an explanation.

13      251.   In these actions, detailed in this Complaint, and perhaps others to be revealed at

14  trial, the Defendants willfully, maliciously, with wrongful intent to harm the Plaintiff, and

15  with disregard for the law, acted to violate the law and obstruct justice.

16      252.   The Plaintiff was injured as a direct, foreseeable and proximate consequence of the

17  Defendants' actions, in an amount to be determined at trial, in addition to any other

18  remedies deemed necessary and appropriate by the court.

19                      **THIRD CLAIM FOR RELIEF**
20                      FRAUD AND FALSE STATEMENTS
            **Violating 18 U.S. Code § 1001** (Statements or entries generally)
21                      **(Against All Defendants)**

21      253.   The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

22  252, as if fully set out herein.

23      254.   In their actions, detailed in this Complaint, the Defendants willfully, maliciously,

24  with wrongful intent to harm the Plaintiff and perhaps others, with disregard for the law,

25  committed numerous acts of fraud, misrepresentations, deceit, fraudulent omissions, false

26  statements, etc., in violation of 18 U.S. Code § 1001.

27      255.   The Plaintiff was injured as a direct, foreseeable and proximate consequence of the

28  Defendants' actions, in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
BREACH OF CONTRACT
Violating California Code, Civil Code § 3294
(**Against All Defendants**)

256. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 255, as if fully set out herein.

257. In their actions detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully and with disregard for ethics and law, committed numerous acts of Breach Of Contract, in violation of California Civil Code § 3294.

258. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
FRAUD
Violating California Civ. Code § 1572
(**Against All Defendants**)

259. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 258, as if fully set out herein.

260. In their actions detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully, maliciously, and with wrongful intent to harm the Plaintiff and perhaps others, and with disregard for the law, committed numerous acts of fraud, misrepresentation, deceit, fraudulent omissions, false statements, etc., in violation of California Civ. Code § 1572.

261. The Plaintiff was injured as a direct, foreseeable and proximate consequence of the Defendants' actions, in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
DECEIT
Violating California Civ. Code § 1709
(**Against All Defendants**)

262. The Plaintiff Hereby realleges and incorporates by reference paragraphs 1 through 261, as if fully set out herein.

263. In their actions detailed in this Complaint, and perhaps other actions to be revealed at trial, the Defendants willfully, maliciously, and with wrongful intent to harm the Plaintiff

COMPLAINT
57

1  (and perhaps others), and with disregard for the law, committed numerous acts of deceit, in

2  violation of California Civ. Code § 1709.

3     264.  The Plaintiff was injured as a direct, foreseeable and proximate consequence of the

4  Defendants' actions, in an amount to be determined at trial.

5  **SEVENTH CLAIM FOR RELIEF**

NEGLIGENCE

6  Violating 19 U.S. Code § 1592 (Penalties for fraud, gross negligence, and negligence)

7  **(Against All Defendants)**

8     265.  The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

9  264, as if fully set out herein.

10     266.  In their actions, detailed in this Complaint, and perhaps other actions to be revealed

11  at trial, the Defendants, with wrongful intent to harm the Plaintiff (and perhaps others), with

12  disregard for ethics and the law, acted with negligence, in violation of 19 U.S. Code § 1592.

13     267.  The Plaintiff was injured as a direct, foreseeable and proximate consequence of the

14  Defendants' actions, in an amount to be determined at trial.

15  **EIGHTH CLAIM FOR RELIEF**

GROSS NEGLIGENCE

16  **Violating 19 U.S. Code § 1592** (Penalties for fraud, gross negligence, and negligence)

17  **(Against All Defendants)**

18     268.  The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

19  267, as if fully set out herein.

20     269.  In their actions, detailed in this Complaint, and perhaps other actions to be

21  revealed at trial, the Defendants willfully, maliciously, with wrongful intent to harm the

22  Plaintiff (and perhaps others), with disregard for the Plaintiff, ethics, and the law, acted

23  with gross negligence, in violation of 19 U.S. Code § 1592.

23     270.  The Plaintiff was injured as a direct, foreseeable and proximate consequence of the

24  Defendants' actions, in an amount to be determined at trial.

25  **NINTH CLAIM FOR RELIEF**

VIOLATING CALIFORNIA LABOR CODE § 1700.39

26  **(Against All Defendants)**

27

28     271.  The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

COMPLAINT
58

1 | 270, as if fully set out herein.

2 |     272.   In their actions, detailed in this Complaint, and perhaps other actions to be

3 | revealed at trial, the Defendants willfully, with wrongful intent, and disregard for others,

4 | ethics and the law, violated California Labor Code 1700.39.

5 |     273.   The Plaintiff was injured as a direct, foreseeable and proximate consequence of

6 | the Defendants' actions, in an amount to be determined at trial.

7 | 
8 | **TENTH CLAIM FOR RELIEF**
VIOLATION OF UNFAIR BUSINESS PRACTICES ACT
[CAL BUS & PROF CODE§ 17200, ET SEQ.]
9 | **(Against All Defendants)**

10 |     274.   The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

11 | 273, as if fully set out herein.

12 |     275.   In their actions, detailed in this Complaint, and perhaps others to be revealed at

13 | trial, the Defendants willfully, with wrongful intent, motivated to unlawfully enrich

14 | themselves, with negligent disregard for the Plaintiff, others, ethics and the law, violated

15 | the Unfair Business Practices Act [Cal Bus & Prof Code§ 17200, Et Seq., namely: officers

16 | of separate but cooperating businesses, willfully entered a conflict of interest, by going into

17 | a secret, private business partnership as co-owners of Screenbid, which the Defendants

18 | used as a subcontractor for their separate businesses. These conflicts of interests eroded the

19 | Defendants business standards and practices; creating the circumstances whereby the

20 | Defendants were able to misappropriate the Plaintiff's intellectual property.

21 |     276.   The Plaintiff was injured as a direct, foreseeable and proximate consequence of the

21 | Defendants' actions, in an amount to be determined at trial.

22 | **ELEVENTH CLAIM FOR RELIEF**
23 | PERJURY
**Violating 18 U.S. Code § 1621** (Perjury generally)
24 | **(Against All Defendants)**

25 |     277.   The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

26 | 276, as if fully set out herein.

27 |     278.   In their actions, detailed in this Complaint, and perhaps other actions to be

28 | revealed at trial, the Defendants willfully, maliciously, with disregard for the law,

1   committed perjury, in violation of 18 U.S. Code § 1621.

2   279.  The Plaintiff was injured as a direct, foreseeable and proximate consequence of

3   the Defendants' actions, in an amount to be determined at trial.

4   **TWELFTH CLAIM FOR RELIEF**

  TAMPERING WITH EVIDENCE

5   **Violating 18 U.S. Code § 1512(c)(1)** (Tampering with a witness, victim, or informant)

6   **(Against All Defendants)**

7   280.  The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

8   279, as if fully set out herein.

9   281.  In their actions, detailed in this Complaint, and perhaps other actions to be

10   revealed at trial, the Defendants willfully, maliciously, and with disregard for the law,

11   engaged in tampering with evidence, in violation of 18 U.S. Code § 1512(c)(1).

12   282.  The Plaintiff was injured as a direct, foreseeable and proximate consequence of

13   the Defendants' actions, in an amount to be determined at trial.

14   **THIRTEENTH CLAIM FOR RELIEF**

15   WITNESS TAMPERING

  **Violating 18 U.S. Code § 1512(c)(2)** (Tampering with a witness, victim, or informant)

16   **(Against All Defendants)**

17   283.  The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

18   282, as if fully set out herein.

19   284.  In their actions, detailed in this Complaint, and perhaps other actions to be

20   revealed at trial, the Defendants willfully, and with disregard for the law, justice, and the

21   Plaintiff's rights, engaged in tampering with evidence, in violation of 18 U.S. Code §

21   1512(c)(1).

22   285.  The Plaintiff was injured as a direct, foreseeable and proximate consequence of the

23   Defendants' actions, in an amount to be determined at trial.

24   **FOURTEENTH CLAIM FOR RELIEF**

25   SUBORNATION OF PERJURY

  **Violating 18 U.S. Code § 1622**

26   **(Against All Defendants Except The California Dept. Of Business Oversight)**

27   286.  The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1

28   through 285, as if fully set out herein.

1     287.   In their actions, detailed in this Complaint, and perhaps other actions to be
2  revealed at trial, the Defendants willfully and maliciously violated the Plaintiff's rights and
3  the law, to engage in subornation of perjury, in violation of 18 U.S. Code § 1622.
4     288.  The Plaintiff was injured as a direct, foreseeable and proximate consequence of the
5  Defendants' actions, in an amount to be determined at trial.

6

7                                 **PRAYER FOR RELIEF:**

8          WHEREFORE, Plaintiff prays for a judgment against the Defendants as follows:

9         1.  For general damages in an amount according to proof at the time of trial;

10       2.  For exemplary damages;

11       3.  For special damages in an amount according to proof at trial;

12       4.  For  restitution  and  disgorgement  of  all  profits  (estimated  at
13             $850,000,000—which represents the total projected profits that the
14             Defendants will realize from the misappropriation of the Plaintiff's work,
15             see page 18, para 2) in favor of the Plaintiff, consistent with US
16             copyright remedies (plus any exemplary damages for deceiving the
17             district court);

18       5.  For Plaintiff's cost of this lawsuit and reasonable attorney's fees;

19       6.  For such injunctions and additional relief the Court may deem proper..

20

21

21

22

23  DATED: November 13th, 2017

24  Respectfully Submitted

25                 By: _____

26                     Steve Wilson Briggs, Plaintiff

27

28

COMPLAINT
61

# EXHIBIT 5

| | |
|---|---|
| 1 | Steve Wilson Briggs |
| 2 | 681 Edna Way, |
| 3 | San Mateo, CA 94402 |
| 4 | 510 200 3763 |
| 5 | snc.steve@gmail.com |
| 6 | PLAINTIFF In Propria Persona |
| 7 | |

<div align="center">

UNITED STATES DISTRICT COUR T

NORTHERN DISTRICT OF CALIFORNIA

</div>

| | | |
|---|---|---|
| 11 | STEVE WILSON BRIGGS | Civ No: CV 17 6552 |
| 12 | Plaintiff, | FIRST AMENDED COMPLAINT |
| 13 | vs | FOR: |
| 14 | UNIVERSAL CITY STUDIOS LLC; | 1. CIVIL CONSPIRACY |
| 15 | NBCUNIVERSAL MEDIA, LLC; | 2. SPOLIATION OF EVIDENCE |
| | SONY PICTURES ENT INC.; | 3. BREACH OF CONTRACT |
| 16 | KEVIN SPACEY; | 4. FRAUD / INTENTIONAL |
| 17 | ARI (ARIEL) EMANUEL; | MISREPRESENTATIONS |
| | MATT DAMON; | 5. DECEIT |
| 18 | BEN AFFLECK; | 6. CONCEALMENT |
| 19 | NEILL BLOMKAMP; | 7. NEGLIGENCE |
| | MORDECAI (MODI) WICZYK; | 8. GROSS NEGLIGENCE |
| 20 | ASIF SATCHU; | 9. VIOLATION OF CALIFORNIA |
| 21 | BILL BLOCK; | LABOR CODE § 1700.39 |
| | DANA BRUNETTI; | 10. VIOLATION OF UNFAIR |
| 21 | MRC II DISTRIBUTION COMPANY LP | BUSINESS PRACTICES ACT [CAL |
| 22 | (AKA MRC, Media Rights Capital, and | BUS & PROF CODE |
| | all other MRC entities and subsidiaries) | § 17200, ET SEQ.] |
| 23 | | 11. WITNESS TAMPERING |
| 24 | Defendants. | 12. INFRINGING EXPORTATION |
| | | (17 USC § 602, under 17 USC § 501) |
| 25 | | 13. COPYRIGHT INFRINGEMENT |
| 26 | | (17 U.S.C § 501) |
| 27 | | DEMAND FOR JUR Y TRIAL |
| 28 | | |

<div align="center">

COMPLAINT

1

</div>

|   |   |
|---|---|
| 1 | <u>NATURE OF ACTION</u> : |
| 2 | 1.   Pursuant to 28 U.S. Code § 1331 (as this matter involves violations of US federal |
| 3 | law) and 28 U.S. Code § 1367(a) (as this matter is substantially related to the prior action, |
| 4 | Briggs v Blomkamp, currently in appeals), Plaintiff brings this action against the Defendants |
| 5 | (Defs) for their violations of federal and state law.  In pursuit of personal enrichment and/or |
| 6 | to gain unlawful competitive advantage, the Defendants engaged in such violations as: |
| 7 | 1.  Spoliation: 6 days after Plaintiff filed Notice of Appeal (in Briggs v Blomkamp, |
| 8 |      C134679), the Defs closed their social network TriggerStreet.com (TS) to destroy |
| 9 |      evidence and records, as this was their access point in Briggs v Blomkamp; Plaintiff |
| 10 |      would subpoena these records if the 9th Circuit remands the matter for trial. |
| 11 | 2.  Defs Spacey and Brunetti (likely acting at Def Emanuel's behest) created the social |
| 12 |      network, TS, to secretly and unlawfully access, appropriate and alter the original |
| 13 |      works of undiscovered writers. The Defs financially profited from these activities, |
| 14 |      or received film acting roles, or film production or distribution benefits. |
| 15 | 3.  Breach:  TS's Terms Of Use stated the site was solely for use in the USA, yet |
| 16 |      secretly the site operated around the world. Further, secretly and without consent |
| 17 |      from US members, Spacey and Brunetti went to London (2002) and Spain (2009) to |
| 18 |      recruit new members, touting TS's "400,000 members <u>around the world</u> ." |
| 19 | 4.  By making Plaintiff's work available in foreign markets, without Plaintiff's consent, |
| 20 |      the Defs committed Infringing Exportation, infringing on the Plaintiff's copyright. |
| 21 | 5.  Without informing TS members, the Defendants installed an anti-security feature on |
| 21 |      TS, which erased all access records if a member deleted their work. |
| 22 | 6.  In Briggs v Blomkamp, the Defs hired 'fixer" Jeff Rovin (a high school-educated |
| 23 |      fantasy writer) as their sole "expert" witness. Rovin provided a falsified report to the |
| 24 |      court. Two years after Briggs v Blomkamp went to appeals, on Oct. 24, 2016, Rovin |
| 25 |      went on national TV, Fox News' The Sean Hannity Show, to admit he was a |
| 26 |      professional "fixer" (someone who makes problems go away by producing false |
| 27 |      stories and documents) for President Bill Clinton's administration. Clearly, the Defs |
| 28 |      hired Rovin to "fix" his expert report, and violate the judicial process. In June 2014, |

COMPLAINT
2

ER 1126

|   |   |
|---|---|
| 1 | the Plaintiff moved to exclude Rovin's report due to its gross fraud: Motion denied. |
| 2 | 7. Evidence will show Def Ari Emanuel, a talent agent, is also Hollywood's most |
| 3 | powerful film producer—against California labor & business codes § 1700.39, |
| 4 | which makes it unlawful for a talent agent to act as both agent and as an employer. |
| 5 | 8. Defs boasted TS had "industry standard" security, when, in fact, they removed all |
| 6 | security features to allow themselves constant anonymous access to writer's works. |
| 7 | 9. Defs made wild false promises to entice new writers to TS, such as: "Our team has |
| 8 | been extensively researching and designing TriggerStreet.com to ensure that it |
| 9 | encapsulates every aspect of the user's desires and needs ". |
| 10 | 10. The Defs used Def Emanuel's influence with Universal Pictures to entice, persuade |
| 11 | or bribe the enlistment of other conspirators and as leverage against business rivals. |
| 12 | 11. The Defs unlawful relationships (e.g. Defs Emanuel's and Block's co-ownership of |
| 13 | Screenbid.com with Sony Picture's CEO M. Lynton; Emanuel's co-ownership of |
| 14 | MRC with Defs Satchu and Wiczyk) created a culture where the Defs neglected to |
| 15 | do due diligence. Thus, before they ever read a script, Sony Pictures and MRC |
| 16 | bought the rights to the film Elysium (which was misappropriated from the Plaintiff). |
| 17 | <u>JURISDICTION:</u> |
| 18 | 2. Jurisdiction: This court has subject matter jurisdiction per 28 USC § 1331, as this |
| 19 | action involves violation of federal law; per 28 U.S. Code § 1367(a), as this matter is |
| 20 | substantially related to Plaintiff's prior federal action, Briggs v Blomkamp; and perhaps |
| 21 | partially under 28 USC § 1332(a)(2), as one or more Defendant is/are foreign citizens. |
| 21 | 3. Venue: venue is proper pursuant to 28 § 1391(b)(2) as events giving rise to this |
| 22 | complaint occurred in this district, and 28 § 1391(d), by virtue of the Defendants' business |
| 23 | transaction with this dist., and under 326 US 310 the Defs meet the minimum contact rule. |
| 24 | 4. Intradistrict Assignment: San Francisco is the proper intradistrict assignment as a |
| 25 | substantial part of the events and omissions, leading to this lawsuit, occurred in this district. |
| 26 | <u>THE PARTIES:</u> |
| 27 | 5. Plaintiff, Steve Wilson Briggs, is a filmmaker, screenwriter, author, musician and a |
| 28 | makerspace tinkerer/teacher at Cesar Chavez & Green Oaks Academy. |

1    6.   Defendant  Universal Pictures is an American film studio; NBCUniversal subsidiary.

2    7.   Defendant  Sony Pictures is a subsidiary of the Japanese multinational Sony Corp.

3    8.   Def  NBCUniversal is a multinational media conglomerate & Comcast subsidiary.

4    9.   Defendant  Kevin Spacey is an American actor, and one of the men purportedly

5   responsible for creating the now defunct social network TriggerStreet (TS).

6    10.  Defendant  Ariel (Ari) Emanuel is a talent agent and co-CEO of WME-IMG.

7    11.  Defendant  Matt Damon is an American actor and screenwriter.

8    12.  Defendant  Ben Affleck is an American actor and screenwriter.

9    13.   Defendant  Neill Blomkamp is a South African-born film director. He is, on

10   information and belief, a Canadian or South African citizen.

11   14.  Defendant  Mordecai Wiczyk is the co-CEO of Media Rights Capital (MRC);

12   15.  Def Asif Satchu is the co-CEO of MRC, and is believed to be a citizen of Canada.

13   16.   Def Bill Block is CEO of Miramax (a subsidiary of Qatari's beIN Media & Al

14   Jazeera).

15   17.  Defendant  Dana Brunetti is credited with the conception of TriggerStreet.

16   18.   Defendant  MRC is a diversified global media company, with many subsidiaries

17   and/or aliases, including: Media Rights Capital, MRC II LP; MRC II Distribution Company

18   LP; ; MRC II Holdings, L.P.; AsgarI Inc.; Oaktree Entertainment, Inc., and more.

19                                    NOTE:

20   19.  Some of the issues in this Complaint concern false statements made during discovery

21   and a falsified witness report submitted in Briggs v Blomkamp, C134679 PJH. Some of the

21   issues concern certain the Defendants destroying property/evidence related to Briggs v

22   Blomkamp, as that matter moved into appeals—actions which were unknown to the Plaintiff

23   until February 2016. Some of the issues involve the Defendants creating a business culture

24   that encouraged deceit and neglect, creating the conditions under which the Plaintiff's

25   property was violated. Some of the issues involve the Defendants writing and entering into

26   falsified contracts and/or breaching these contracts, which bound the Defendants and

27   Plaintiff until the contract terminated when TriggerStreet.com (or labs.triggerstreet.com)

28   went out of business, November 6th, 2016.

COMPLAINT
4

<u>STATEMENT OF FACTS & ALLEGATIONS</u>:

Brief Case Overview

20. The Defendants conspired to create and operate (for 12 years) a social network for screenwriters and filmmakers, known as TriggerStreet (referred to as <u>TS</u> in this Complaint). TriggerStreet (TS) was located at www.triggerstreet.com from 11/2002 to 07/2011, and at www.labs.triggerstreet.com from 07/2011 to 11/2014. The Defendants used TS to fraudulently access and acquire original film ideas. By using TS's 400,000+ members to review, judge, and rank the best work, the Defendants were able to peruse the very best scripts at their leisure, alter them slightly, then produce and market them, as their own.

21. To entice the best undiscovered writers into joining TS and submitting their screenplays, the Defs published and rendered a contract comprised of false claims, deception and concealments. TS's "Terms of Use", "About Us" and "Security" pages claimed to employ "industry standard" security, and boasted that TS "encapsulates every aspect of the user's desires and needs", when, in fact, TS's security features were effectively non-existent. (Said TS websites pages "Terms of Use", "About Us" and "Privacy" are attached, respectively, as Exhibit A, Exhibit B, Exhibit C, and are incorporated by reference as if fully set out herein.) The Defs conspired to remove all security features on the website. Any member could download any script, without the writer knowing the downloader's ID. Only if an accessor chose to write a script review would the writer be informed of the accessor's ID —but only the accessor's pseudonym (fake name) ID, while others users who downloaded the script without leaving a review, left no trace at all.

22. More astounding, in 2007, the Defs added a new anti-security feature, without informing members, whereby if a member—concerned about security—deleted his script from TS, the deletion would trigger the erasure of all access records. This was done to conceal the Defs accessing the Plaintiff's work (only posted in 2007). In May 2016, in an Amazon Studios forum (https://studios.amazon.com/discussions/Tx26JKEN8CYMP95) a former TS member recalled that this "memory dump" feature was added in 2007. (Said forum is attached as "Exhibit D" and incorporated by reference as if fully set out herein; see last entry, page 4.) In 2014, as Briggs v Blomkamp proceeded through discovery, the

COMPLAINT
5

1  Plaintiff contacted TS to ask for their records of all the members who accessed his work.

2  (Said email is attached as "Exhibit E" and incorporated by reference as if fully set out

3  herein). TS replied that when his work was removed, all access records were erased. (Said

4  email is attached as "Exhibit F" and is incorporated by reference as if fully set out herein.)

5      23.  TS falsely assured members that the site was intended solely for use in the USA.

6  But Spacey and Brunetti secretly marketed TS all around the world.

7      24.  Through secret and private business co-ownerships with key CEOs, in businesses

8  like Screenbid and MRC, Def Emanuel cultivated unethical relationships with Universal

9  Pictures, Sony Pictures, MRC, QED, etc. Thus, these companies would finance and

10  distribute almost any project Emanuel asked, ignoring due diligence and best practices.

11      25.  The Defendants' final illegal action occurred on Nov 6th, 2014, 6 days after

12  Plaintiff filed his Notice Of Appeal (Briggs v Blomkamp), when the Defs surreptitiously

13  closed TS, to destroy incriminating evidence —understanding the district court based its

14  MFSJ ruling on vacated law, rather than prevailing law (cited by Plaintiff). Thus, the case

15  was apt to be remanded for trial, where the Plaintiff would subpoena all site access records.

16                            NOTE:

17    26.  This Complaint reveals Def Ari Emanuel lead a conspiracy to misappropriate ideas

18  using TS and ProjectGreenlight.com (Project Greenlight), to market these ideas to his

19  business partners at Sony Pictures, MRC, Universal Pictures, NBCUniversal, etc. Relevant

20  to this, Def Emanuel or WME has represented Defs Ben Affleck and Matt Damon for most

21  of their careers. Curiously, like Spacey, Affleck and Damon ran a screenwriter/filmmaker

21  website, Project Greenlight, from 2000-05 and 2015-16. Curiously, both sites used peculiar

22  language like peer-to-peer, and used peer reviews to weed out bad scripts. And curiously,

23  Spacey, Damon and Affleck were the only celebrities with screenwriter websites from

24  2000-2014. In 2005, writer Joel Lamontagne sued Project Greenlight and Harvey

25  Weinstein's Miramax, alleging the TV series Project Runway (2005-present) was stolen

26  from a treatment he submitted to Project Greenlight. The allegedly stolen work became the

27  property of Universal Pictures' parent, NBCUniversal. Def Emanuel's shadowy projects

28  eventually becoming the property of Universal is a recurring pattern in this Complaint.

COMPLAINT

6

| | |
|---|---|
| 1 | <u>BACKGROUND F ACTS:</u> |
| 2 | (Understanding This Case Requir   es Knowledge Of Key Backgr  ound Facts & Actors; |
| 3 | A Review Of Facts Dir ectly Pertaining T o The Defs Violations Begins On Page 18) |
| 4 | <u>THE SIX (6) PRIMARY DEFENDANT ACTORS</u>: |
| 5 | ARI EMANUEL  (DEFENDANT) |
| 6 | 27.  Defendant Ari Emanuel is the co-CEO of William Morris Endeavor (WME, aka |
| 7 | WME-IMG). Prior Emanuel was CEO of Endeavor Talent Agency (1995-2009), where his |
| 8 | aggressive, unethical business practices inspired the character Ari Gold, in the HBO TV |
| 9 | series Entourage . In 2002, Def Emanuel's Endeavor was sued for sexual harassment by |
| 10 | Sandra Epstein. Epstein also accused Def Emanuel of making racist remarks. In 2014 WME |
| 11 | was found guilty at arbitration of racial discrimination. Logically, WME-IMG attracts |
| 12 | clients who share Def Emanuel's values; thus, WME-IMG disproportionately represents |
| 13 | aging white clients and difficult clients that other agencies avoid (Charlie Sheen, Russell |
| 14 | Crowe), and clients who are politically conservative, or politically unaware or inactive. |
| 15 | 28.  November 20th, 2016, Def Emanuel traveled to New Jersey to congratulate |
| 16 | President-elect Trump. Emanuel is also President Trump's former talent agent. Predictably, |
| 17 | The Apprentice (starring Trump) was broadcast on NBCUniversal . Recently, The Hill (and |
| 18 | others) reported that it was Def Emanuel who helped seal the Miss Universe tape archives, |
| 19 | so no further tapes of candidate Trump sexually harassing beauty contestants would be |
| 20 | released. (Said "The Hill" article is attached as "Exhibit  G" and is incorporated by |
| 21 | reference as if fully set out herein.) |
| 21 | ASIF SATCHU (Defendant) |
| 22 | 29.  Defendant Asif Satchu was born in Kenya but moved to Canada  when he was 6 |
| 23 | years old. Satchu, like Def Blomkamp, is believed to be a Canadian citizen. (Canadian |
| 24 | connections are a recurring feature in this matter.)  Def Satchu is a co-founder of MRC, with |
| 25 | Wiczyk. Def Satchu is the brother of Reza  Satchu , an enormously successful Canadian |
| 26 | businessman. Def Satchu and Reza, both graduated from Canada's McGill University. Def |
| 27 | Satchu is something of a business and business-technology genius.  In 1999 Satchu |
| 28 | co-founded  SupplierMarket.com   with Jon Burgstone (Reza Satchu was also a heavily |

1   invested partner). SupplierMarket.com facilitated the international sales and distribution

2   of software, bolts, nuts, fasteners, rubber and glass products, corrugated packaging, and

3   probably anything else. Only 18 months later, Aug. 2000, Satchu and his partners sold

4   SupplierMarket for $950,000,000.    Def Satchu graduated from Harvard (MBA) in 1999.

5         MORDECAI (MODI) WICZYK (Defendant)

6   30.   Defendant Modi Wiczyk is an American born businessman, co-CEO and co-founder

7   of MRC (with Defendant Satchu). Wiczyk is the visionary of this conspiracy.

8    31.   Around 1995, fresh out of college, Defendant Wiczyk began working at Summit

9   Entertainment, LLC. That was the first year Summit began producing and financing films

10  (prior, Summit had exclusively sold US films abroad); surely the vision of Def Wiczyk.

11   32.   Only four years later, in 1999, when Wiczyk was only 27, Summit Entertainment

12  made Wiczyk their Senior Vice President of Production and Acquisitions. That same year,

13  1999, Wiczyk sent out his now famous memo, which would make him one of the most

14  influential and sought after men in Hollywood. Within a year, in 2000, likely on the order

15  of Def Ari Emanuel, Def Wiczyk was hired by Universal Pictures as Vice President of

16  Productions, where Wiczyk served for 2 years, until January 2002, when Def Ari Emanuel

17  made Wiczyk a partner at Emanuel's Endeavor Talent Agency.  Def Wiczyk graduated from

18  Harvard (MBA) in 1999.

19        KEVIN SPACEY (Defendant).

20   33.   Defendant Kevin Spacey is an Academy Award winning actor. His career was

21  floundering and at its nadir in 2000 when the conspiracy(s) detailed herein began, and when,

21  purportedly, he and Def Brunetti conceived of TS. Def Spacey, who dropped out of Juilliard

22  School in his sophomore year, has no known web-design skills. Seemingly, Spacey's only

23  value to the TS social network was as a high-profile, semi-likeable celebrity whose promise

24  of "industry access and exposure" would lure the best undiscovered writers to the website,

25  to unwittingly surrendering their wares to the Defendants.

26        DANE BRUNETTI  (Defendant)

27   34.  Defendant Brunetti has no known college education. He joined the US coast guard in

28  1992, at 18 or 19. Brunetti met Spacey around 1998, while Brunetti was selling cell phones

ER 1132

1  in New York. Brunetti soon became Spacey's partner and personal assistant. It is purported

2  around the internet (including on Wikipedia) that Brunetti was responsible for designing

3  TriggerStreet.com. That is possible. However, there is no evidence that Brunetti possessed

4  any of the skills required to design a social network. The Plaintiff suspects Def Asif Satchu

5  (who founded the internet-based marketplace SupplierMarket.com) may be the website's

6  true designer and talent coordinator.

7      MRC

8      35.  MRC is a television and film studio, founded by its co-CEOs Defs Asif Satchu and

9  Modi Wiczyk. MRC was started in 2003 with money provided by Def Ari Emanuel

10 (although MRC often reports it was started in 2006 or 2007). Def Emanuel is a silent

11 partner in MRC. Unlike most ethical companies MRC operates under many names. Likely,

12 only Defs Emanuel, Satchu and Wiczyk know what these companies do. But such LLC

13 companies are a hallmark of money laundering networks (see Dept of Treasury's FinCEN

14 report). The Plaintiff is aware of 11 MRC companies: MRC, Media Rights Capital;  MRC

15 II LP; MRC II Distribution  Company LP (foreign based);  MRC II Holdings, LP;

16 Oaktr ee Entertainment,  Inc. (a foreign stock business);  MRC I Hedge Co, LLC;  MRC

17 II Capital  Company , LP; MRC Sub Gp, LLC;  MRC I Pr oject Company , LLC;  Asgari

18 Inc.  Plaintiff believes that most of these companies are "shell" companies (fronts for illegal

19 activity), existing to launder money and other transactions. Working in conjunction with

20 Def Bill Block (Miramax  CEO) and Al Jazeera or beIN Media Group (Miramax's parent),

21 and perhaps with Satchu's Kenyan-based family, these shells may also be responsible for:

21     a.  producing and selling ideas taken from TS to foreign markets (not for US release);

22     b.  financing foreign films that utilize ideas taken from TS (not for US release).

23

24        Def Ari Emanuel' s Relationship W ith Defendant Spacey:

25     36.  Defendant Ari Emanuel likely first met Defendant Kevin Spacey between 1987 and

26 1989, when both men were at Creative Artist Agency (CAA). In 1987 Def Ari Emanuel was

27 a new CAA talent agent, working in TV casting. In 1987 Def Kevin Spacey, represented by

28 CAA, was working in Los Angeles and appeared in 9 episodes of the TV series "Wiseguy".

COMPLAINT
9

1        Def Emanuel's Notorious Connection to Def Wiczyk & Satchu:

2    37.  Defendant Ari Emanuel is a quiet partner in MRC. Thus, by casting WME-IMG

3  actors in MRC films, Def Emanuel profits both as an agent and as a studio owner. This

4  arrangement is a conflict of interest, in violation of CA Labor Code 1700.39.

5    38.  In 2007, The New York Times published an article called "Tilting The Balance

6  Power Toward Talent Agency Clients" (by Mike Cieply), which looked at the questionable

7  relationship Def Ari Emanuel has with MRC, among other matters. (Said article "Tilting

8  The Balance of Power Toward Talent Agency Clients" is attached as "Exhibit H" and is

9  incorporated by reference as if fully set out herein.) The article states:

> ….representatives of several such companies said last week that they knew of
> no firm that has pushed its alliance with an agency as far as Media Rights.
> Films backed by the financier have included substantial talent from other
> agencies — Brad Pitt and Cate Blanchett, stars of "Babel," are represented by
> Creative Artists. But virtually all of the company's projects have been built
> around an Endeavor-backed participant, like the actor Jude Law in "Sleuth,"
> or Hugh Jackman, in "The Tourist." According to Mr. Wiczyk and Mr. Satchu,
> the agency owns a minority, nonvoting stake in their company, which they
> declined to specify.

39.  Reporter Cieply also interviewed other established Hollywood financiers who are

wary of working with Defs Emanuel and MRC because of these questionable arrangements.

> ...some agents last week questioned whether Media Rights could be trusted
> not to put their proprietary information in the service of Endeavor. Others
> wondered if the Endeavor's ownership stake ran afoul of regulatory
> provisions in California law or contracts with guilds.
>     "For us, financing opportunities are always exciting and interesting," said
> Jeremy Zimmer, a partner at United Talent. Mr. Zimmer said that his agency
> has not done business with Media Rights, but might do so if it was satisfied
> that the company's ownership and influences were clear. "What becomes
> critical is who is the management?" he asked. "What level of transparency
> are we going to have?"
>     Robert Jones, California's acting labor commissioner, whose office
> regulates talent agents, said the state's labor code has a provision banning
> conflicts of interest by agencies. The law, from a time when models were
> sometimes sent for hair and makeup work by operators with a close
> connection to their agencies, says that no agent may refer a client for
> services to any entity in which the agency has a direct or indirect
> financial interest.

| 1 | BACKGROUND F ACTS (CONTINUED) |
|---|---|
| 2 | THE 4 MAJOR EVENTS THAT SET UP THE CONSPIRACY(S) |

3   40.  The seeds of the Defendants unlawful actions were planted about two decades ago,

4  by 4 events:  two of these events occurring in 1995, two occurring in 1999.

5   1.  In 1995  Def Ari Emanuel started Endeavor Talent Agency.

6   2.  In 1995 Edgar Bronfman Jr. (CEO of Seagram's) bought Universal Pictures.

7   3.  In   1999,   Jerrol   LeBaron   copyrighted   a   revolutionary   screenwriter-to-

8       Hollywood-film-industry-professional   website   Writers'   Script   Network.com ,

9       which went online in March 2000, changing its name to "InkT ip" (inktip.com) in

10       2003.

11   4.  In 1999 Defendant Modi Wiczyk wrote  a revolutionary <u>memo</u>, titled "Another New

12       Ball Game", which sent Hollywood's powerhouses scrambling. Wiczyk's memo

13       would be discussed in  magazines and lounges for years to come.

14

15   41.  These 4 events, each  require a brief explanation to understand how they set the stage

16  for the Defendants' conspiracy(s).

17   (1)  <u>Def Ari Emanuel Comes T o Power As CEO Of Endeavor T  alent Agency , 1995</u>

18   42.  In 1995 Def Ari Emanuel started Endeavor Talent Agency. Soon, his aggressive,

19  unethical practices would make Endeavor the fastest growing talent agency in Hollywood.

20       (2) <u>Edgar Br onfman Jr . Comes To Power At Universal Pictur  es, 1995</u>

21   43.   In 1995, Canadian based "Seagram's" (the giant beverage company) bought

21  controlling interest (80%) of Universal Pictures, and Edgar Bronfman Jr. (Seagram's heir;

22  Canadian , graduate of McGill College) became owner and CEO of Universal Pictures.

23  Bronfman remained CEO of Universal Pictures even after Vivendi bought Universal in

24  2000.  He stepped down as chief of Universal in 2001, BUT remained Vice-Chairman of the

25  Board (likely to insure that Def Emanuel's relationship to Universal remained in place) until

26  December 2003; by then Def Emanuel's role with Universal Pictures was well established.

27   44.  To pay for Universal Pictures, Bronfman Jr. sold Seagram's stake in Dupont (for

28  $9-billion). Most analysts and Seagram's investors considered this a terrible business move.

1  To make matters worse, Bronfman knew little about the film business.  NOTE:  Bronfman

2  was convicted of insider trading, in France, in 2011, receiving a 15 months suspended

3  sentence, and a €5,000,000 fine.

4      45.  In 1995, Bromfman and Def Ari Emanuel represented big changes in Hollywood,

5  but the biggest change in Hollywood in 1995 was the advent of the DVD. DVDs

6  represented huge new opportunities for producers and film companies —opportunities that

7  would make movies FAR more profitable than ever before; but more profitable for

8  producers, NOT talent agents—adding fuel to Emanuel's drive to become a producer and a

9  studio owner.

10          (3)  The Advent Of W riters' Script Network.com (InkT   ip.com), 1999

11      46.  In 1999, Jerrol LeBaron copyrighted his brilliant website Writers'  Script

12  Network.com ,  (writersscriptnetwork.com), going online March 2000; changing its name

13  to InkT ip and its location to inktip.com in 2003. Unlike all other screenwriter websites at

14  that time (which either just posted screenwriter agents' addresses, or just allowed

15  screenwriters to post loglines or synopses, with no ability to bring the writers to the agents

16  and filmmakers), LeBarons website promised something new. Based in Los Angeles

17  County, LeBaron went out and told Hollywood agents and filmmakers about his website,

18  and invited them to join and peruse the works of thousands of undiscovered screenwriters.

19  The site had great safeguards, designed to protect both the writers and industry

20  professionals. Writers' Script Network.com required all users to use their real names.

21  Writers could not read other writers' work, as that would only reduced the writers' safety.

21  However, after registering, the industry  pr ofessionals could freely read any logline (a

22  short description, 60 words or less) on the website. If a professional wanted to read more,

23  they could click on a link to read a synopsis—and immediately the screenwriter would

24  receive notification of who had accessed his work, when, and from where. If the

25  professional wanted to read the entire script, he/she would then need to contact the writer

26  and request a script. Writers' Script Network.com kept all records of access. LeBar ons's

27  site was the new online industry  standard  (where there had been no standard, rules,

28  safety, or security for screenwriters ); flawless in conception, safety and transparency.

(4) <u>The Memo, 1999</u>

47.   In 1999, only 27 years old, Def Mordecai (Modi) Wiczyk, the new Senior Vice President of Production and Acquisitions at Summit Entertainment, LLC, sent out a <u>memo</u> titled "Another New Ball Game". That memo sent Hollywood's unethical establishment scrambling after massive new profits. Wiczyk's memo would be discussed in magazines and lounges for years. Within a year, in 2000 (likely at Def Ari Emanuel's bidding) Universal Pictures would steal Wiczyk away from Summit, making him VP of Productions. Two years later, Def Ari Emanuel made Wiczyk his partner at Endeavor Talent Agency.

48.   In 2007, Slate remembered "the memo" in an article called "How An Agent Turned His Pie-In-The-Sky Memo into A Reality". (Said "Slate" article is attached as "Exhibit I" and is incorporated by reference as if fully set out herein.). Writer Kim Masters wrote:

> ...The memo predicted the decline of the studios, with filmmaking talent as the beneficiary. He also predicted that <u>a management company with a lot of big stars</u> would start to produce and own films. "The most immediate and pressing challenge would be to get the studios to carry the product," he said. The likelihood of a studio boycott was remote, he said, because "whichever studio was suffering at the time would probably break ranks in the name of short-term self-preservation." Hmm.
>
>     Michael Ovitz eventually tried to launch such a management company and failed. But Wiczyk's memo said the agencies could also carry out the change. "A similar structure could be created which complies with the conflict-of-interest laws," Wiczyk wrote. "If [a] fund was created as a stand-alone entity and the agency had an arms-length service contract, they could avoid conflict-of-interest violations… <u>Admittedly this is a delicate issue and a tough deal to pull off, but it's certain someone would try it</u>." Why? The potential for enhancing agency commission was "too rich to ignore." In fact, he said, an agency could <u>double</u> its annual revenues.

49.   Wiczyk's psychopathy is on full display in those final lines of the article, as he enthusiastically implies it is reasonable to behave without ethics —if the profits are "too rich to ignore." But Wiczyk's prediction that "...it's certain someone would <u>try it</u>" would soon prove correct.

50.   But who would want to wander with Wyczyk into such ethically questionable water?

1         THE ENDEA VOR/UNIVERSAL/MRC DEFENDANTS:

2    ARI EMANUEL AND  HIS SECRET RELATIONSHIP WITH UNIVERSAL

3    PICTURES; EMANUEL UNITES WITH ASIF SATCHU AND MODI WICZYK

4    51.   In 1999, Def Ari Emanuel knew producers made the REAL money in Hollywood.

5 But, as a talent agent, he couldn't get in the action—not legally (or not with his name on the

6 product), due to California's conflict of interest laws.

7    52.   But Def Emanuel saw an opportunity.

8    53.   Defendant Ari Emanuel had a distribution  pr oblem. His talent agency (Endeavor)

9 represented  many  directors,  writers  and  actors,  who  sometimes  decided  to  make

10 independent and experimental films, only to discover, later, that their films couldn't get

11 national or global distribution because the distributors thought the films weren't marketable.

12 Thus, many of these films died early deaths.

13    54.   Bronfman Jr., on the other hand, had a talent  pr oblem. Bronfman Jr. knew the

14 importance of getting marquee names on films. Big American studios crank out about 17

15 films a year. In this haste, sometimes the studios commit to bad screenplays that no big

16 actors will commit to, thereby dooming the films. But just one or two big names attached to

17 these inferior films could increase their returns by tens of millions of dollars.

18    55.   Bronfman Jr. was in trouble in 1998, and most of Hollywood knew it. Bronfman Jr.

19 came to power in 1995 with Universal in 4th place among the big six studios (20 Century

20 Fox, Disney, Paramount, Warner Bros., Sony Pictures, Universal Pictures). But only one

21 year later, in 1996, Universal was in last place. And last again in 1997. And in 1998, even

21 worse: last place, and Universal had one of its worst years ever, with only a 5.9% market

22 share. Stockholders were restless. (See Exhibit J .)

23    56.   In this tough time, Def Ari Emanuel approached Bronfman with a proposal.

24    57.   Def Emanuel offered to put special effort into Universal Picture films, and ask his

25 actors, writers and directors to give preference to Universal Pictures films. Emanuel also

26 likely offered to take a reduced agent's fee. In exchange Def Ari Emanuel likely received a

27 percentage of the films, and/or a generous share of Seagram's (Universal's parent) stock, but

28 no film credit), and an agreement that Universal Pictures would distribute, and/or provide

1  production money for, any reasonably viable film Def Emanuel brought to Universal
2  Pictures.

3  58. The agreement was made late 1998.

4  59. The next year, 1999, Universal pictures would have its best year since Bronfman
5  arrived, climbing to 3rd place, with a 12.7% market share. That was 1999 —the same year
6  Def Modi Wiczyk wrote his memo.

7  60. Def Ari Emanuel read the memo.

8  61. Bronfman Jr. surely read the memo. In fact, two years after Wiczyk wrote the memo,
9  in 2001, Bronfman's Universal Pictures made Def Wiczyk their vice President of
10 Productions. (An article about Universal hiring Wiczyk is attached as "Exhibit K" and is
11 incorporated by reference as if fully set out herein.)

12  62. And a year after that, in 2002, Def Emanuel would hire Def Wiczyk away from
13 Bronfman Jr., to make Wiczyk a partner at Endeavor Talent Agency.

14  ●  63. But Wiczyk had been Vice President of productions at Summit Entertainment,
15 AND Vice President of productions at Universal Pictures. Wiczyk was a producer. Why
16 would Defendant Ari Emanuel need a producer at a talent agency? Because Def Emanuel
17 was secretly going into the production business with MRC and Universal Pictures.

18  64. When Def Ari Emanuel stole Wiczyk away from Universal Pictures there were no
19 hard feelings between Def Emanuel, Bronfman and Universal Pictures, and nothing changed
20 in their arrangement. Def Ari Emanuel continued to provide the same talent and producorial
21 services for both MRC and Universal Pictures. And although Bronfman left Universal a
21 year later (2003), Def Emanuel continues to do favors for Bronfman and his Universal
22 "family" to this very day (e.g. Def Emanuel and WME-IMG represent Bronfman Jr's
23 daughter, Hannah).

24  Wiczyk's Memo Inspires A Conspiracy

25  65. The driving force behind Defs Emanuel's, Wiczyk's and Satchu's involvement in
26 this conspiracy was to create the film production system outlined in Wiczyk's memo, to
27 increase—maybe even double— profits. The conspiracy required only 3 or 4 players, with
28 the right talents. Def Emanuel had connections to all the studios, and access to huge stars;

1   Asif Satchu was a creative business force who specialized in distribution and networking;

2   Modi Wiczyk was a proven business, financing, and film production prodigy. They had

3   almost everything they needed—except good screenplays. But as a new "questionable"

4   company, established writers were not inclined to work with this unscrupulous band.

5       66.   A film production starts with acquiring a screenplay, a "property". The Defendants

6   knew that. They also knew good screenplays are hard to find, cost good money and are a

7   risky investment. A bad director could ruin a great script, and even the best writers

8   sometimes wrote bad scripts. In 2000 Def Wiczyk helped sell his brother's (Roee Wiczyk)

9   screenplay to his former employer (Summit Ent.). But the script was weak, thus never

10  developed, and Roee Wiczyk never sold another script. "Variety" reported on this script sale

11  in 2000. (Said article is attached as "Exhibit L" and is incorporated by reference as if fully

12  set out herein.) As a business man, Wiczyk could sell anything —he sold his brother's script

13  idea without even having a script name. But now, operating as film producers and a studio,

14  without an actual  good script, or some good ideas, they couldn't get any project started.

15      67.   The Defendants needed scripts, but they wanted  to reduce their risks.

16      68.   Defs Emanuel, Satchu and Wiczyk knew ideas are not copyrightable; only unique

17  arrangements of ideas are copyrightable. If the Defendants had a method to access good

18  writers' work, they could extract the best of those ideas, then pay their own writers to turn

19  them into "new" screenplays, then produce and market those derivatives as their own.

20      69.   The L.A. based Defendants were aware of Writers Script Network.com. As "industry

21  insiders" they had likely even received a call or email from Jerrol LeBaron. They wanted

21  something like Writers Script Network.com—but without  the good security features.

22

23                    THE TRIGGERSTREET DEFENDANTS

24              SPACEY'S CAREER SPUTTERS; SPACEY MEETS BRUNETTI;

25              THE CONCEPTION OF THE TRIGGERSTREET SOCIAL NETWORK

26      70.   In 1994 Def Spacey learned Warner Bros intended to make a movie  about the life of

27  Bobby Darin (eventually called "Beyond The Sea"). This was Spacey's secret dream role.

28  He offered to play the leading role, but the producers refused, believing Spacey was too old.

ER 1140

71. In 1995, Def Spacey's career soared with Usual Suspects and Seven. But in 1996 and 1997 Def Spacey was back to NOT getting solid leading-man roles.

72. This likely inspired Def Spacey to form his production company, "Trigger Street Productions", to make quality films with himself cast as the lead. But for the next 7 years his production company floundered. The problem was getting a good screenplay.

73. It is reported that around 1998 Def Spacey met Def Dana Brunetti, who soon became Spacey's personal assistant.

74. Although in 1999 Def Spacey won an Academy Award for Best Actor (American Beauty), 1999 would mark the beginning of a very difficult period of Def Spacey's career (1999-2003). His production company would go 3 years without making a film (Jan 2000 to Jan 2003). And worse, for some reason Hollywood would not invest much money in any movie with Kevin Spacey in a leading role, his films budgets were far below the Hollywood average (the average Hollywood budget in 2000 was about $60 million): 1. American Beauty, 1999, $15 million; 2. The Big Kahuna, 1999, $7 million; 3. Ordinary Decent Criminal, 2000, $12 million; 4. Pay It Forward, 2000, $40 million.

75. Def Spacey's difficulty consistently getting good roles, then, was likely due to his terrible reputation around Hollywood as something of a hustler. In 1999, actor Val Kilmer explained in a "Mr Showbiz" interview that in the 1970s Kevin Spacey, who was then a young college student, tricked Kilmer's father out of $18,000 for college tuition —but Spacey, according to Kilmer, kept the money, dropped out of school, and never repaid Kilmer's father. (Said "Mr. Showbiz" article is attached as "Exhibit M" and is incorporated by reference as if fully set out herein.) Stories like Kilmer's, and a tabloid photo journal of Def Spacey participating in a public indiscretion, contributed to Def Spacey's trouble.

76. But amid all of these struggles, somehow in 2000, Spacey was able to secure the film rights to his dream project -Bobby Darin's life story. But since Def Spacey had no production funding, he would have to wait almost 4 more years to make his movie.

77. It's possible that during these tough times, Spacey and Brunetti looked around online for affordable scripts for Spacey's production company to film. And maybe then they stumbled upon Writers Script Network.com, which inspired them to create TS... Then, this

COMPLAINT
17

1    unlikely pair—a college dropout actor whose career was on life support, and a cellphone

2    salesman—teamed up to create a massive social network for screenwriters and filmmakers.

3    And soon Ari Emanuel learned about the site and asked Spacey to make some

4    modifications: relaxing security, and making access private and untraceable. That could be

5    how TS was created. It makes little difference to the conspiracy that followed.

6        78.   However, the Plaintiff believes TS was formed in a conspiracy conceived by Def

7    Ari Emanuel, to enrich himself and his conspirators. Elysium, alone, earned $286,000,000

8    worldwide theatrically, and should have earn another $570,000,000 in home entertainment

9    and TV, (typically, movies earn twice their theatrical total in home ent., TV, and auxiliary

10   sales), for a total of $856,000,000 —almost a billion dollars. This is why setting up TS and

11   Project Greenlight were so important  to Def Ari Emanuel.  One good script  can easily

12   earn a billion dollars, and one big TV show can earn far mor    e than that.

13

14                    THE DEFENDANTS' CONSPIRACY BEGINS:

15

16       79.   In 2000, shortly after Def Emanuel discovered Writers Script Network.com, Def

17   Emanuel planned his own screenwriter/filmmaker website, with minimal or no security

18   features. He would use his clients, Def Matt Damon and Ben Affleck, as the website's

19   spokesmen and its alleged conceivers. In August 2000 Project Greenlight was born. (An

20   Internet Archives screenshot of projectgreenlight.com—showing its origin time—is

21   attached as "Exhibit N " and is incorporated by reference as if fully set out herein.)

21       80.   Then misfortune struck Universal Pictures in 2000, and  Def Ari Emanuel seized the

22   occasion to launch a second website, allegedly conceived by Defs Spacey and Brunetti.

23       81.   In 2000, Universal Pictures was in a bind. They were just a few months away from

24   beginning to film "K-PAX" but they didn't have a leading actor (after Will Smith and others

25   dropped out). Smith, and other actors and directors (with integrity) were perhaps dropping

26   out due to rumours that Argentinian film director and screenwriter, Eliseo Subiela, learned

27   about writer Gene Brewer's 1995 book "K-PAX" and planned to sue Brewer and Universal

28   Pictures for copyright infringement of Subiela's 1986 film "Man Facing Southeast".

82. But Universal Pictures, not worried about a small director from Argentina suing, decided to push forward, film, release, make a fortune, and fight Subiela in court later.

83. By mid 2000, with little time to find a leading man, Universal Pictures was desperate enough to consider casting Def Kevin Spacey in the leading role.

84. Def Ari Emanuel could have just asked Spacey to take the leading role. Spacey would have leaped at the chance. But Spacey wasn't an Endeavor client, so Def Emanuel wouldn't receive his casting fee. Def Ari Emanuel was a businessman. As such, even though he needed a favor from Spacey, he wasn't going to just give Spacey a leading role, he wanted something in return. Def Ari Emanuel knew Def Spacey's career was in trouble.

85. Def Ari Emanuel approached Def Spacey to ask him about starting or endorsing, a screenwriter/filmmaker social network; a social network with little or no security features. The conversation likely started with Def Ari Emanuel asking how Spacey's career was going. Def Spacey likely explained his recent career setbacks, and his hope to one day film Bobby Darin's life story. He may have explained that he had recently secured the rights to his Bobby Darin film (Beyond the Sea), but had no funding to shoot his dream film.

<center>Quid Pr o Quo</center>

86. Upon hearing about Spacey's career troubles, Def Emanuel made Def Spacey and Brunetti an offer: (1) he asked Defs Spacey and Brunetti to design a social network so that ALL user could access ALL screenplays, anonymously, with few security safeguards (it is possible/probable that Def Asif Satchu facilitated the website design); (2) Def Emanuel also may have asked Spacey and Brunetti to include a counter-security feature whereby if a screenplay was removed from the website all access history would also be erased (although the Defs seem to have added this second featur es in 2007, shortly befor e accessing the Plaintiff 's work ). The Plaintiff believes that in exchange for agreeing to operate such a social network, Def Ari Emanuel promised Defs Spacey and Brunetti a few things in return:

1. Spacey would star in K-PAX, a film with a solid $68 million budget;

2. Def Ari Emanuel would finance Spacey's production company to make Def Spacey's dream film, Beyond the Sea;

3. Def Emanuel would help Spacey's production company arrange financing and

<center>COMPLAINT

19</center>

1　　　distribution (as needed) for the life of the social network;

2　　4. Def Emanuel would introduce Spacey and Brunetti to the financial and distribution

3　　　partners necessary for their production company to succeed;

4　　5. Emanuel would try to find Spacey a meaningful, perhaps "career defining," role.

5　87. The agreement was made.

6　88.　Thus, September 2000, only one month after the birth of Project Greenlight,

7　TriggerStr eet.com (TS) was born. (Internet Archives screenshot of projectgreenlight.com,

8　showing the origin time of Project Greenlight is attached as "Exhibit O" and incorporated

9　by reference as if fully set out herein.) The probability that both of the world's only

10　screenwriter/filmmaker social websites (both of which also happened to be prominently

11　celebrity-endorsed) coincidentally starting only a month apart is infinitesimal.

12　89.　But TS would remain a closed and inactive site for 2 years, not having its official

13　"launch" party until 2002. This helped avert suspicion, kept TriggerSteet from competing

14　with Project Greenlight, and allowed TS to learn from Project Greenlight's mistakes.

15　90.　In November 2000, as agreed, Spacey began filming KPAX. When the film was

16　released it would be the first smoking gun in this conspiracy:

17　● 91.　KPAX was released Oct 2001. It would be the first time Universal Pictur es

18　EVER cast Kevin Spacey in a leading role (in fact, Universal had only ever cast Spacey in

19　one [1] film, a supporting  role, ten years prior, in 1990, in "Henry & June"). (*Spacey was

20　most commonly cast in Warner  Bros films and independent films.) Casting Spacey to star

21　in K-PAX, a $68 million film, at such a low point in Spacey's career, was almost

21　inconceivable. Def Spacey wouldn't star  in a film with a budget over $40 million for 5

22　mor e years  (Superman Returns). Spacey would only appear in one other Universal Pictures

23　film, 2 years later, The Life of David Gale—originally a Warner Bros (Spacey's stable)

24　property that Universal Pictures optioned. Spacey just came with the deal.

25　● 92.　A month after K-PAX was released, in November 2001, director/writer Eliseo

26　Subiela (via Jason Laskay) sued Universal  Pictur es, Gene Brewer, et al, for plagiarizing

27　his film Man Facing Southeast. The suit was eventually withdrawn when Subiela and

28　Laskay could no longer afford to litigate against a giant corporation like Universal Pictures.

| 1 | TS LAUNCHES, NOVEMBER 2002 |
|---|---|
| 2 |    93.  After giving Project Greenlight two years to gain traction, November 2002, the |
| 3 | Defendants prepared to launch TS. To attract the best undiscovered writers, the Defendants |
| 4 | planned to generate "buzz" by throwing 3 huge TS "launch parties": one in New York, one |
| 5 | in Los Angeles, and one in London . (A photo of Kevin Spacey at the TS London Launch |
| 6 | party is attached as "Exhibit P" and is incorporated by reference as if fully set out herein.) |
| 7 | While in Britain, Def Spacey did many interviews about TS. The Guardian featured a piece |
| 8 | called "Cyber Spacey", in which writer Sean Clarke mocked Defs Spacey's and Brunetti's |
| 9 | well-rehearsed lines. (Said Guardian article in which Def Spacey went to London to discuss |
| 10 | TS is attached as "Exhibit Q" and incorporated by reference as if fully set out herein.) |
| 11 | Writer Sean Clarke wrote: |
| 12 |         Spacey tells an anecdote about the original idea for the site, |
| 13 |         which is essentially Brunetti's brainchild. He says they "came |
| 14 |         up with a sketchy plan, which at the time..." and chuckles wryly, on which cue Brunetti take up the story "... which at |
| 15 |         the time, we thought was great." They both shake their heads ruefully. Later, I watch as the pair address a press conference, |
| 16 |         they repeat the story, with exactly the same pauses, the same |
| 17 |         chuckle, the same interruptions. It's beat-perfect, like a Mamet script. |
| 18 | |
| 19 |    94.  And to generate even more buzz, before the website was launched, Budweiser |
| 20 | announced their corporate sponsorship of the TS social network. |
| 21 |    95.  Along with the sponsors, parties and interviews, to help repair Def Spacey's |
| 21 | damaged reputation, the TS website posted a heartwarming story that Spacey started his |
| 22 | new social network "to help undiscovered writers and filmmakers get industry access and |
| 23 | exposure." |
| 24 |    96.  TriggerStr eet.com was "launched", and went online, November 2002 |
| 25 | •  97.  Def Spacey held a New York TriggerStreet launch party on Nov 11th, 2002. |
| 26 | •  98.  Def Spacey held a Los Angeles TS launch party on Nov 18th, 2002. |
| 27 | •  99.  Def Spacey held a London TS launch party on Nov 26th, 2002. |
| 28 | |

COMPLAINT
21

1            After TriggerStreet Officially Launched, Nov 11th, 2002,

2         The Following Events (Connecting The Defendants) Occurred:

3      100.  Within just a few months of TS's official launch (Nov 2002), Def Spacey would

4 receive 3 huge payments from Defs Ari Emanuel and Universal Pictures (although Spacey

5 would receive many other "benefits" during the 12 year lifespan of TS): 1) Universal

6 Pictures would distribute "The Life of David Gale"; 2) Spacey's production company

7 would receive distribution money for "United States of Leland"; 3) after 3 long years,

8 Spacey's production company would receive $25,000,000 to produce "Beyond the Sea".

9    ●   101.  In February 2003, 3 months after TS launched, Universal Pictures

10 distributed Spacey's film "The Life of David Gale" (again, originally a property of

11 Spacey's home studio, Warner Bros). This would be the last time Universal Pictures would

12 be involved in a Spacey film (to the date of the filing of this Complaint). Thus, the only two

13 Universal Pictures films featuring Spacey as a lead are K-PAX, and The Life of David Gale

14    ●   102. That same month, February of 2003, Spacey's production company would

15 magically get money to release and distribute its first movie in 3 years: "United States of

16 Leland". The film would only be released in 14 theaters, losing millions, and bringing in

17 only $344,000. Likely, Universal Pictures wouldn't put their name on the film, because

18 after two bad years, Universal was back in 5th place (second to last place), and they didn't

19 want United States of Leland to move them into last place.

20    ●   103.  That same month, again, February 2003, it was announced that production

21 of Spacey's Dream film, "Beyond the Sea," was being fast-tracked—directed by and

21 starring Spacey and produced by Spacey's production company, with a $25,000,000 budget.

22      104.  Suddenly, in the nadir of Spacey's career, inexplicably Hollywood was showing

23 him tremendous support—when 4 of Spacey's previous 5 films were major money losers.

24                       Footnotes:

25      105.  Shortly after TS launched, in 2003, Ari Emanuel gave Asif Satchu and Mordecai

26 Wiczyk financing to start MRC.

27      106.  December 17th, 2004, Beyond the Sea was released. It would be Spacey's greatest

28 failure; costing $25 million, but only earning $8.4 million; losing over $16,000,000.

ER 1146

| | |
|---|---|
| 1 | <u>Additional Facts Regarding TS And The Defendants</u> |
| 2 | ● 107. Spacey's production company made no films for 3 years, January 2000 to |
| 3 | January 2003: Ordinary Decent Criminal (Jan 2000, direct to DVD in USA), and United |
| 4 | States of Leland (Jan 2003, released in only 14 theaters). |
| 5 | ● 108. Since TS launched, Def Spacey's production company has made 22 films. |
| 6 | ● 109. May 2005, 2.5 years after TS launched, Project Greenlight was effectively |
| 7 | dead (no new contests for filmmakers or screenwriters); killed by the success of TS. |
| 8 | Although, oddly, the Project Greenlight website remained open, but inactive —no new |
| 9 | contests, no new submissions accepted; just an open, inactive website (until 2015). |
| 10 | ● 110. In 2006 Spacey held a TriggerStreet "RE-launch" party in Los Angeles. |
| 11 | ● 111. 2007, Plaintiff's screenplay, Butterfly Driver, was posted and accessed on TS. |
| 12 | ● 112. 2007-2009 TS secretly joined Bud.TV (Budweiser TV), without informing |
| 13 | members or revising its Term of Use page. In a 2007 Anheuser-Busch announced it was |
| 14 | launching Bud.TV with TriggerStreet.com providing programming. (Said Bud.TV news |
| 15 | release is attached as "Exhibit R" and incorporated by reference as if fully set out herein.) |
| 16 | Curiously, Bud.TV's Wikipedia page shows Defs Matt Damon and Ben Affleck (Project |
| 17 | Greenlight), and Kevin Spacey (TS) all provided Bud.TV programming. (Said Wikipedia |
| 18 | article is attached as "Exhibit S" and incorporated by reference as if fully set out herein.) |
| 19 | ● 113. Feb 2009, the BBC reported Def Spacey hosted the Mofilm Film Festival, in |
| 20 | Spain, where he boasted of TS's "400,000 members around the world." (Said BBC article |
| 21 | is attached as "Exhibit T" and is incorporated by reference as if fully set out herein.) |
| 21 | Willfully marketing TS outside of the USA violated the Plaintiff's copyrights. |
| 22 | ● 114. On April 27th, 2009, Def Ari Emanuel and Endeavor Talent Agency (ETA) |
| 23 | merged with the William Morris Agency (WMA), creating William Morris Endeavor. |
| 24 | 17 days later, May 14th 2009, after about 20 years <u>with the William Morris Agency</u>, |
| 25 | Def Spacey signed with CAA (Creative Artist Agency). Def Spacey did so to keep TS |
| 26 | members (and any observing regulatory authorities) from becoming suspicious of his link to |
| 27 | Def Ari Emanuel through TS. (A New York Times article about the April 2009 merger of |
| 28 | WMA and Endeavor is attached as "Exhibit U" and is incorporated by reference as if fully |

ER 1147

1  set out herein.) (A May 2009 Variety article about Def Spacey leaving WME is attached as

2  "Exhibit V " and is incorporated by reference as if fully set out herein.)

3  ● 115. May 2010, "Deadline Hollywood" reported Defendant Universal Pictur es

4  and Defendant Media Rights Capital (MRC) announced a 20 picture, 5-year production and

5  distribution deal. (Said "Deadline Hollywood" article is attached as "Exhibit W " and is

6  incorporated by reference as if fully set out herein.) Thus, MRC's (a company co-owned by

7  Defendant Ari Emanuel) first mega-deal would be with Universal Pictur es.

8  ● 116. March 15th, 2011, Netflix and Def MRC (owned by Defs Emanuel, Wiczyk

9  and Satchu) announced their mega $100 million dollar 2-season deal to produce the new

10  series House of Cards, starring Def Kevin Spacey. Quietly, a few months later, July 2011,

11  with the role of a lifetime secur ed, Spacey moved TS to http//www.labs.triggerstreet.com,

12  and begin to use the web address triggerstreet.com as his production company's site.

13  ● 117. August 2013, the film Elysium (infringing on the Plaintiff's work) was

14  released. The Plaintiff then sued for copyright infringement, October 2013.

15  ● 118. November 6th, 2014, 6 days after the Plaintiff filed his Notice Of Motion of

16  appeal, Defs Spacey and Brunetti closed and destroyed the TS social network.

17  ● 119. In 2015, almost immediately after TS closed, Project Greenlight (which had

18  been dead for 10 years , came back to life, with a new HBO TV show, airing fall of 2015.

19  ● 120. July 2016, HBO announced the Project Greenlight TV show was cancelled.

20  ● 121. In 2016, with the cancellation of the TV show Project Greenlight, and with

21  the closing of TS—with no way to gain access to original screenplays to misappropriate—

21  ProjectGreenlight.com went active, again. After 10 years of online inactivity , Def Matt

22  Damon, Ben Affleck and ProjectGreenlight.com began seeking new screenplays again.

23  ● 122. In 2015, Def Dana Brunetti produced his first solo effort (without Kevin

24  Spacey or their Trigger Street Production company), 50 Shades of Grey. 50 Shades of Grey

25  was, of course, distributed by Universal Pictur es, apparently the only major distributor that

26  will touch a Brunetti film (without Def Spacey or their Trigger Street Productions company

27  attached). (A Wikipedia article showing the producers and distributors of 50 Shades of Grey

28  is attached as "Exhibit X " and is incorporated by reference as if fully set out herein.)

1  SONY PICTURES EMAIL LEAK EXPOSE DEF ARI EMANUEL    'S SECRET
2  UNIVERSAL PICTURES TIES,  HIS UNLA   WFUL RELA TIONSHIPS WITH SONY
3  PICTURES' CEO (M. L  YNTON), & HIS BULL YING, THUGGISH METHODS

4  123.  Further confirming all allegation herein, in 2015 Wikileaks released thousands of

5  Sony Pictures emails, which had been previously released in 2014, when North Korea

6  hacked and published thousands of Sony's emails. Within days hundreds of respected news

7  agencies carried the story —The NYTimes, LATimes, Hollywood Reporter, all reported the

8  juicy details—and the juiciest story was the story of how Sony Pictures lost -or passed on-

9  "Steve Jobs", the movie.

10  124.  All of the reports are similar: the emails provide an inside view of bunch of

11  super-rich Hollywood producers, writers, and directors negotiating the production budget of

12  the film "Steve Jobs", until the deal went bad and Sony gave up on the film. And right in the

13  eye of the storm is Def Ari Emanuel. (An articles from "Mashable.com" about said "Steve

14  Jobs" film emails is attached as "Exhibit  Y"and is incorporated by reference as if fully set

15  out herein.)

16  125.  A few of the celebrities captured on Sony Pictures email/text leak, at times,

17  behaved poorly, but no one behaved worse than, Def Emanuel. Brazen and thuggish, we see

18  Def Ari Emanuel berate Sony Pictures' Chairman Amy Pascal, with impunity. And when

19  the other Sony execs learned of this, they only called Def Emanuel a bully—behind his

20  back. No one dared to confront Def Emanuel. But more surprisingly, through a tiny sliver of

21  Def Ari Emanuel's emails (just those going into, or out of, Sony Pictures) we learn:

21  1.  Def Ari Emanuel is a major film producer —in conflict with his role as a talent
22      agent, and in violating California labor law which forbids employers (a producer)
23      from charging employees (his actors) fees to be hired—perhaps an even more
24      significant conflict of interest than Def Emanuel's partnership in MRC II LP.

25  2.  Defs Emanuel, Bill Block and Michael Lynton (then Sony Pictures CEO and
26      Chairman) are secretly business partners: co-owners in the company Screenbid.

27  3.  Ari Emanuel is also a film financier, or executive producer (a person who provides
28      or finds money to make films).

COMPLAINT
25

4.  Def Ari Emanuel also arranges peripheral services for Sony Pictures (and others), like making deals with Hasbro Toy Co. for Sony Pictures (for Spider-Man 2 & Minions action figures?).

5.  Whenever necessary, Universal Pictur es will distribute ANY film for Ari Emanuel.

<p style="text-align:center">"STEVE JOBS" EMAILS CONFIRM DEF ARI EMANUEL<br>
IS SECRETLY A MAJOR FILM PRODUCER, AND THE TRUE<br>
PRODUCER OF "STEVE JOBS" —NOT SCOTT RUDIN</p>

126.   Through the Sony "Steve Jobs" email trail we see the "Steve Jobs" negotiation go on for about 8 months, then it begins to fall apart on October 16th, 2014, after Sony Pictures' President of Business Affairs, Andrew Gumpert, sends Sony Pictures Chairperson Amy Pascal, film producer Scott Rudin, Def Ari Emanuel, and WME co-CEO Patrick Whitesell a financing offer, which the filmmakers felt was too low.  October 18th, 2014, two days after Gumpert's low offer, Scott Rudin, angrily responds:

> 2014-10-18 16:09:38  Re: wwbo bumps/jobs  From: Scott Rudin
> <sr@scottrudinproductions.com> To: pascal, amy
> gumpert, andrew  aemanuel@wmeentertainment.com
> pwhitesell@wmeentertainment.com
>
> SCOTT RUDIN:
> "You have NO risk in the movie but WE should have risk? You lay off every cent except what you choose to keep and WE should then also fund you --- that's how this should work?
> I cannot believe you're serious. What idiot would make this deal? The presumption that five Oscar winners would be desperate enough to give up all value for their services and then also risk the baseline bargain-basement fees on top of it is beyond comprehension.
> Every single movie like this that we have made for you has worked. And you think this is fair?"

127.   At Rudin's words, Def Ari Emanuel, who purports to the world that he is just a talent agent, would then take over the email exchange —seemingly eager to bully a woman.

> On Oct 18, 2014, at 9:15 AM,  From: Ariel Emanuel
> <AEmanuel@wmeentertainment.com> To: pascal, amy

| 1 | sr@scottrudinproductions.com gumpert, andrew |
|---|---|
| | pwhitesell@wmeentertainment.com |
| 2 | ARI EMANUEL: |
| 3 | "This offer is fucking bull shit. Give us the movie back. You you guys |
| | in the business. No other studio would even ask for this. Pass" |
| 4 | |
| 5 | 128. Def Ari Emanuel immediately establishes and retains dominance and control of the |
| 6 | matter for the remainder of the negotiation, and Scott Rudin would remain quiet and |
| 7 | subordinate to Def Emanuel. But the key detail in this email is that Def Emanuel has the |
| 8 | authority to say "Pass", meaning: we choose NOT to do business with you, we will find |
| 9 | another partner. No mere talent agent can usurp that power from the producer. Scott Rudin |
| 10 | put Ari Emanuel on that email chain because Ari Emanuel is the true producer. |
| 11 | 129. The exchange goes on. Amy Pascal writes: |
| 12 | On Oct 18, 2014, at 10:18 AM From: Amy_Pascal@spe.sony.com |
| | To: aemanuel@wmeentertainment.com |
| 13 | sr@scottrudinproductions.com gumpert, Andrew |
| 14 | pwhitesell@wmeentertainment.com |
| 15 | AMY PASCAL: |
| | "Can we please deal with this Monday |
| 16 | Maybe we all get in a room and close it up" |
| 17 | 130. But Def Ari Emanuel will not be silenced by Ms Pascal's request to wait until |
| 18 | Monday. He replies five minutes later:: |
| 19 | On Oct 18, 2014, at 10:23 AM, From: Ariel Emanuel |
| 20 | <AEmanuel@wmeentertainment.com> To: pascal, |
| | amy sr@scottrudinproductions.com gumpert, |
| 21 | andrew pwhitesell@wmeentertainment.com |
| 21 | ARI EMANUEL: |
| | "Whatever |
| 22 | You guys ask us to find financing. Scott, Patrick and myself get |
| 23 | Modi and we still get no respect. Amy, this is not what you want to |
| | hear - but this NEVER happens and any other studio. In fact they |
| 24 | then would go out of their way to make a proper deal. |
| | Even Harvey. |
| 25 | Monday is fine." |
| 26 | |
| 27 | 131. With that statement Def Ari Emanuel admitted he found film financiers for |
| 28 | "Steve Jobs", which is a strictly a producer's, or an executive producer's job. Def Ari |

1  Emanuel also generously (and falsely) shares credit with Rudin and Whitsell for getting

2  Modi Wiczyk to help with financing, to make Rudin and Whitsell appear more significant to

3  the process. Again, Defs Modi Wiczyk and Ari Emanuel had been a business partners since

4  2002 (at Endeavor, as well as in MRC). Getting Def Modi Wiczyk involved was entirely

5  Def Ari Emanuel's doing. Amy Pascal responds to Def Emanuel's provocation:

6  On Oct 18, 2014, at 10:51 AM, From: Amy_Pascal@spe.sony.com
   To: aemanuel@wmeentertainment.com
7  sr@scottrudinproductions.com gumpert,Andrew
8  pwhitesell@wmeentertainment.com

9  AMY PASCAL:
   "arithat is totally unnecessary we are in a negotiationwe have all
10  been doing this a long timewe want to make moneyyou want to
   make money for yourselves andyour clientsthis has nothing to do
11  with respect and to be fair and its a credit to the movie that scott
   put together there are more financing partners  than we know
12  what todo with here....thats not the issue...we are the only major
13  studio that even tries to make thesekind of movesdont make it
   harder than it isthe tone is really uncalled for  and unfairand
14  doesnt help get things doneamy"

15

16  132.   Through all of this, Scott Rudin never commented or told Def Ari Emanuel to

17  disengaged. That is not his place. Ari runs the show. Def Ari Emanuel replies:

18  2014-10-18 10:58:41  Re: wwbo bumps/jobs From: Ariel Emanuel
   <AEmanuel@wmeentertainment.com>  To: pascal, amy
19  sr@scottrudinproductions.com   gumpert,
20  andrew pwhitesell@wmeentertainment.com

21  ARI EMANUEL:
   "Ok not true. Other studios make these movies"

21

22  133.   Def Ari Emanuel was alluding to Universal Pictures, who would produce any film

23  Def Emanuel suggested. Texting stopped for 7 or 8 hours, until Def Ari Emanuel resumed.

24  2014-10-18 16:20:47 From: aemanuel@wmeentertainment.com
   To: gumpert, andrew sr@scottrudinproductions.com,
25  pwhitesell@wmeentertainment.com,  pascal, amy
26  ARI EMANUEL:
   "In the real world when some one either risks something or gives something
27  up they get something in return. You guys seem to think we should be
28  honored just to be in business with you based on your offer. Why?"

COMPLAINT
28

134. After this, the negotiation disintegrated over the next 4 weeks. The last email from Def Emanuel to Amy Pascal was sent November 11, 2014, when Emanuel abruptly asked:

> 2014-11-14 22:57:02 From: aemanuel@wmeentertainment.com
>   To: pascal, amy
> ARI EMANUEL:
>   "Is business affairs calling me so I can take this to Fox
>   Searchlight officially?"

135. <u>With that statement Def Emanuel showed that, in addition to producing, he even arranges distribution</u>. Def Emanuel is asking Amy Pascal if Sony Pictures' President of Business Affairs, Andrew Gumpert, is going to call to let him know if Sony wants "Steve Jobs". Def Emanuel is bluffing that Fox Searchlight has agreed to take the film. He never had a deal with Fox Searchlight. He was just playing hardball; trying to get a better offer out of Sony, AND keep them in the dark about his distribution relationship with Universal Pictures.

136. As this deal dragged on over 8 months, 3 weeks before the previous exchange, Sony Pictures' Andrew Dumpert, spotted Def Emanuel's chicanery and bad motives. In an email to Sony execs Lynton, Pascal, and Doug Belgrad; Andrew Gumpert wrote:

> 2014-10-18 16:59:16 From: Andrew Gumpert
>   To: lynton, michael; pascal, amy; belgrad, doug
> Andrew Gumpert:
>   "The fact is there is only so much in the kitty. Unless the movie
>   massively breaks out they can never make real money, nor can we
>   and our investors.They have a 50pt pool with the best definition and
>   5m of box office bonuses. <u>Do they want to make MORE than the
>   equity? I think they do</u>. There is a huge philosophical gap (given
>   the rude and insolent responses from Ari and Scott)..."

137. Andrew Gumpert knew something was wrong, because Def Ari Emanuel and Scott Rudin weren't adhering to established guidelines.

138. Although there have surely been occasions when Sony Pictures did cave-in to Def Emanuel's arm-twisting, this would not be one of those occasion. But oddly, Michael Lynton, CEO of Sony Pictures, responds to Gumpert only with silence—because Def Ari Emanuel is his close friend and secret business partner in Screenbid.

COMPLAINT
29

1       "Steve Jobs" Film's Not-So Surprising Twist Ending:

2       139.    Fox Searchlight never touched "Steve Jobs".

3       140.    Def Ari Emanuel had just been playing the ace up his sleeve; trying to push the

4       price of the film above market value, to increase his profit margin. He didn't need Sony

5       Pictures to give him standard market value for "Steve Jobs", he could get standard value

6       from Universal Pictures. When the maneuver failed, and Sony Pictures backed out, Def Ari

7       Emanuel took the film to the Studio that has distributed all of his films, since around 1999.

8       141.    On September 5th, 2015, 10 months after Sony Pictures declined on "Steve Jobs",

9       after so much posturing and tumult, "Steve Jobs" was distributed by Universal Pictur es.

10

11      SONY PICTURES EMAILS SHOW DEFS EMANUEL & BILL BLOCK & SONY

12      PICTURES' CEO (M. LYNTON) MAINTAIN UNETHICAL RELATIONSHIPS,

13      AS THEY CO-OWN "SCREENBID" TOGETHER (CONFLICT OF INTERESTS)

14      142.    The "Steve Jobs" emails reveal Defs Emanuel and Bill Block are in a co-ownership

15      business with Sony Pictures' then-CEO Michael Lynton. As we see Def Ari Emanuel write

16      Michael Lynton to ask Lynton to check on their co-owned business, Screenbid.

17              On Dec 3, 2013, at 3:11 PM, From: aemanuel@wmeentertainment.com
                                To: lynton, michael;
18          ARI EMANUEL:
19              Michael -
                What are we doing on Screenbid? We had success on our early tests,
20              nothing since. You guys own a piece of this company, we've had
21              nothing since our early success. We have to keep the engines going.

21      143.    In the text above, Def Emanuel's and CEO Michael Lynton's joint ownership of

22      Screenbid is confirmed by the repeated use of pronoun"we". Def Ari Emanuel asks "What

23      are we doing..." Then he states "We had success on our early tests…" Then he reminds

24      Lynton that he (and some unknown party, or parties) also own shares of this company. Then,

25      implying Lynton has a responsibility, Def Emanuel says, "You guys own a piece of this

26      company…" Then Def Emanuel exhorts CEO Michael Lynton to take action, saying: "We

27      have to keep the engines going."

28      144.    These are not the messages of quiet stockholders. These men are owners.

COMPLAINT
30

1   145.   Sony Picture's CEO, Michael Lynton is quite a bit wiser than Def Emanuel, and

2   does not reply to Emanuel through his Sony Email account, understanding they are engaged

3   in an unlawful enterprise. But 11 months later, 10/31/2014, Def Bill Block, the CEO of

4   Screenbid, not-so-wisely emails Def Emanuel and Lynton (to Lynton's Sony email address)

5   to give his business partners a business report, pasted below his reply text. (Bill Block was

6   the CEO of QED International, a Defendant in Briggs v Blomkamp.) Def Bill Block's reply

7   email reads:

8   　　　　　　2014-10-31 00:35:37 FW: SCREENBID AUCTION UPDATE
　　　　　　From: bblock@qedintl.com  To: aemanuel@wmeentertainment.com
9   　　　　　　　　　　　　michael_lynton@spe.sony.com

10   **BILL BLOCK:**
　　　Going well gentlemen.
11   　　　Bill
　　　From: Jeffrey A. Dash [mailto:jdash@screenbid.com]
12   　　　Sent: Monday, October 27, 2014 10:13 AM
　　　To: Bill Block
13   　　　Subject: SCREENBID AUCTION UPDATE
　　　AUCTION UPDATE:
14

15

16   　　　TRUE BLOOD: (HBO) We are winding down aftermarket sales and
　　　fulfillment and are on schedule to present audited reports to HBO
17   　　　accounting within 14 days.

18
　　　SONS OF ANARCHY: (FOX) We visited the set on Friday
19   　　　10/24/14 and met with the department heads for props, wardrobe,
　　　transportation and set decoration. They are scheduled to wrap next
20   　　　week and we will take delivery by 11/5/14, immediately inventory
　　　and shoot. Writing began about 2 weeks ago The auction is
21   　　　scheduled to go live on 12/01/14 and bidding will end on 12/10/14.
　　　Fulfillment time will be tight. In order to get everything shipped
21   　　　prior to XMAS  we will have extra staff in place to facilitate…"
22

23

24   146.   In this unethical relationship, Sony Pictures' CEO Lynton, personally profited as

25   Screenbid's owner, in such ways as directing Sony Pictures to give Screenbid millions in set

26   furnishings to auction on Screenbid, where he and Def Emanuel profited as owners.

27   Lynton's secret relationship with Def Emanuel is why Sony Pictures did not do due

28   diligence to vet Def Blomkamp's Elysium script.

| | |
|---|---|
| 1 | <div align="center">SONY EMAILS SHOW DEF EMANUEL PERFORMS</div> |
| 2 | <div align="center">PRODUCORIAL SERVICES: CALLING SONY'S CEO & CHAIRMAN</div> |
| 3 | <div align="center">TO ARRANGE A DEAL WITH HASBRO</div> |
| 4 | 147.   On March 28, 2014, Def Ari Emanuel emailed/texted Sony's Pictures' CEO and |
| 5 | Chairman to close an animation co-financing deal with Hasbro. Def Emanuel's email read: |
| 6 | 2014-03-28  re: HASBRO Animation deal |
| 7 | From: aemanuel@wmeentertainment.com<br>To:amy_pascal@spe.sony.com;  michael_lynton@spe.sony.com |
| 8 | **ARI EMANUEL:** |
| 9 | "HASBRO Animation deal<br>Amy & Michael - |
| 10 | We have sent Ronni our proposal for the animation co-financing |
| 11 | deal. Please take a look when you get a chance and lets lock this<br>down. |
| 12 | Ari |
| 13 | 148.   Talent Agents don't arrange animation co-financing deals with Hasbro—producers |
| 14 | and studios do. Curiously, after Billionaire Def Ari Emanuel recently purchased the UFC he |
| 15 | arranged a UFC Hasbro deal. (An article where Def Emanuel discusses UFC and Hasbro is |
| 16 | attached as "**Exhibit Z**" and is incorporated by reference as if fully set out herein.) |
| 17 | |
| 18 | **SONY EMAILS SHOW DEFENDANTS COMMITTED PERJURY REGARDING** |
| 19 | **THEIR EFFORTS TO HIDE INFRINGEMENT IN BRIGGS V BLOMKAMP** |
| 20 | 149.   The Defendants' fraud, conspiracy and routine deceit included committing perjury |
| 21 | by lying on documents signed under oath. |
| 21 | 150.   During the discovery phase of Briggs v Blomkamp, et al (C13 4679 PJH) the |
| 22 | Plaintiff informed the district court that he suspected that writer/producer Simon Kinberg |
| 23 | was hired to rewrite Def Blomkamp's poorly written screenplay. In response to Plaintiff's |
| 24 | interrogatories to MRC II LP, the Defendants  made false statement, under oath, regarding a |
| 25 | substantial matter in that case, which may impact the Plaintiff's ability to prevail in that |
| 26 | lawsuit (currently in appeals). (Said Def MRC II LP's Interrogatory Responses from Briggs |
| 27 | v Blomkamp are attached as "**Exhibit AA**"  and is incorporated by reference as if fully set |
| 28 | out herein.) |

<div align="center">COMPLAINT</div>
<div align="center">32</div>

151.   That deceit occurred when the Defs responded to interrogatory #17; believing Simon Kinberg helped disguise Def Blomkamp's infringement, the Plaintiff asked:

**Plaintiff's Interrogatory:**
INTERROGATORY #17:
"Simon Kinberg is a writer and "script doctor" (a writer who fixes scripts that have serious problems). Simon Kinberg is listed as a producer of Elysium. Exactly what duties did Simon Kinberg play in the production and script doctoring of the screenplay and film "Elysium"?"

**Defendants' Answer:**
"Defendant incorporates by reference the preliminary statement and general objections... Subject to and without waiving the foregoing objections, Defendant responds as follows:
    Simon Kinberg produced the Film. As producer, Mr. Kinberg also **assisted with a polish of the Film's screenplay** during the later stages of writing."

**But The Leaked Sony Emails Reveal The Truth About Said Perjury:**

152.   The Defendants admitted that Simon Kinberg helped improve the weak screenplay, BUT suggested that his help was just a "polish", which suggests merely dotting I's and crossing T's, and maybe a dialogue suggestion here and there. But, in fact, Simon Kinberg had to do exhaustive work to try to salvage Elysium's terrible screenplay.

153.   The gross underestimation and misrepresentation of all the work Simon Kinberg had to do to repair Def Blomkamp's Elysium script is revealed in the 2015 Wikileaks're-posting of the Sony Pictures' hacked emails, in five (5) key email exchanges between Defs **Modi Wiczyk**, **Simon Kinberg**, and Sony Pictures Chairperson **Amy Pascal**. In the first email, Def Wiczyk explains Kinberg's role:

                2014-10-27 13:36:12 Fwd: CHAPPIE NOTES
                From: mwiczyk@mrcstudios.com To: pascal, amy
        **MODI WICZYK:,**
        "hi!so i asked si to share all the notes hes wanted to do, in detail, for weeks but hasnt been able to do.it lines up w what everyones saying. great detail and very specific.he also included rachels document and merged it.**simon is a fixer and a logician** and i want him to trest this like hes been brought in to doctor it on some level, and he does too.  nb has been ignoring him the past few weeks after listening to him up until then. dont know why, dont care. its our turn now.i told doug that we should

COMPLAINT
33

1  leave the mtg telling thema. timeline for seeing new stuff b. possibly do a
2  parallel more radical cut to play w thebig first act and religious note.c. first
   "basic" cut should do all cuts in the notes, deal w ending. see you at 9."

3  154.   Def Wiczyk, Simon Kinberg, and Amy Pascal continued to discuss the endless and

4  unimaginable problems Kinberg was having helping director Def Blomkamp's save his film,

5  *Chappie*; the executives discuss reshoots, dialogue rewrites, other huge changes, and how

6  to protect Def Blomkamp's insecure ego. Yet, amid these massive problems, Kinberg

7  comments that Def Blomkamp was handling Kinberg's executive ordered changes much

8  better than he handled them on Elysium, where Kinberg explains Blomkamp **"shut down**

9  **on elysium, partly because he felt he didn't have the answers. he's never shut down on**

10  **this movie, not once."** In this email to Amy Pascal, Simon Kinberg wrote:

11           2014-08-07 07:02:55  Re: Chappie  from:
12                    sdkinberg@aol.com  to: pascal, amy
13  **SIMON KINBERG:**
             "cool! neill has been really open throughout this process, and wants to get
14           the audience all the way there. i think we're all feeling the same things
15           now, so we can put it together and deliver to him, and he'll take it as an
             assignment not a judgement, and stay creative. **i saw him shut down on**
16           **elysium, partly because he felt he didn't have the answers. he's never**
             **shut down on this movie, not once. so i don't think he will now…"**
17

18  155.   In fact, the text/emails reveal Def Wiczyk and Amy Pascal were forced to hide

19  from Def Blomkamp the fact that Simon Kinberg had to take over the film to finish it. This

20  is revealed when Def Wiczyk wrote to Sony's Chairperson, Amy Pascal:

21           2014-10-27 13:42:22  Re: To discuss
21           From: mwiczyk@mrcstudios.com; To: pascal, amy
22  **MODI WICZYK:**
             "not to oversimplify but i know simon has been biting his tongue for a
23           month and all the sloppy stuff has been making him **crazy.** when i speak
             to him he seems to have a very clear view of what he wants to do. it
24           lines up w what ur saying. i hink if we make them do it we will have a
             much much much better film that works. we just cant literally tell neill si
25           is taking over....so its "our" notes"
26

27  156.   Additional evidence of the extreme measures that Defendants Simon Kinberg,

28  Sony Pictures, MRC and Modi Wiczyk resorted to salvage Chappie. Can be seen in such

1  emails/texts as when Def Modi Wiczyk explains director Def Neill Blomkamp's inability to

2  even write or direct "basics". In an email text to Amy Pascal, Wiczyk wrote:

3        2014-10-27 13:52:57  Re: To discuss
       From: mwiczyk@mrcstudios.com, To: pascal, amy
4  **MODI WICZYK:**

5        "yes thats what i meanthe right version of this could be iconic and do 300
       and have a huge sequelwhat bugs me is how obvious and unpolished the
6        problems areall the hard stuff is great but all the basics are killing us"

7

8      157.   A week later, Def Modi Wiczyk emailed Amy Pascal to discuss BlomKamp's

9  insecurities, and how they were impacting production.

10        2014-11-03 04:31:07  Re:  From:
        mwiczyk@mrcstudios.com  To: pascal, amy
11  **MODI WICZYK:**

12        "dunno re simon. maybe insecure. maybe thinks simon is on "studio"
       side, which is juvenile. hes always mad at somebody. vacillates btwn
13       targets. i ignore it until it stops forward progress.
       re edgar i actually initiallygot nervous the music was too old to be
14       cool,but all my assistants say lots of these songs are in the collective
       consciousness, played in bars and clubs. shows what i know....i dug the
15       reel he did. and i loved the app w script and music."
16

17      158.  There are many more such emails that further reveal how inept and difficult Def

18  Blomkamp is. But from these select emails, we see that to revise Blomkamp's *Chappie*,

19  Kinberg took extraordinary measures, and that Blomkamp's inept, "insecure" and "juvenile"

20  conduct made Kinberg "crazy", forcing the executives to takeover the edit. Yet, Kinberg

21  implied these problems were mild compared to what he endured with Blomkamp revising

21  *Elysium*, where the problems were so extreme that Blomkamp **"shut down"** and **"didn't**

22  **have the answers".** Thus, clearly the script work Kinberg did on Elysium was **exhaustive**,

23  and not a mere "polish" as Def MRC II LP stated under oath. This was a clear act of perjury.

24

25      **SONY EMAILS CONFIRM DEFS RULE 37 VIOLATION IN BRIGGS V**

26      **BLOMKAMP, SHOWING DEFS OMITTED TESTIMONY & EVIDENCE**

27      159.  On page 28 of the Plaintiff's First Amended Complaint in Briggs v Blomkamp, et

28  al, the Plaintiff made a bold prediction: that sometime after May of 2013 (when Blomkamp

COMPLAINT
35

1  learned the details of Plaintiff's impending copyright lawsuit) Defendant Neill Blomkamp

2  went back into the editing room and tried to edit-out key headache scenes, which were

3  identical to the Plaintiff's work. The Plaintiff explained that Blomkamp did this to try to

4  cover-up his theft of the Plaintiff's intellectual property.

5      160.   Supporting this prediction, during the discovery phase of Briggs v Blomkamp, the

6  Plaintiff found a report on TheProvince.com (titled: "Elysium's ready as director Blomkamp

7  looks forward to next project" from February 2013) in which Def Blomkamp stated the film

8  was finished back in February 2013. (Said article from "The Province" is attached as

9  "**Exhibit BB**" and is incorporated by reference as if fully set out herein.) Then, proving the

10  Plaintiff's prediction, in sworn responses to Plaintiff's interrogatories, during discovery in

11  Briggs v Blomkamp, Def Blomkamp admitted film editing was finished "Sometime in or

12  about June 2013." (Said Defendant Blomkamp's Interrogatory Responses from Briggs v

13  Blomkamp are attached as "**Exhibit CC**" and are incorporated by reference, as if fully set

14  out herein.)

15      161.   The Plaintiff then filed a motion to compel documents, asking for all texts and

16  emails between Def Blomkamp and both *Elysium* film editors: Julian Clarke and Lee Smith

17  (Smith was the final editor—the editor who would have made these headache changes). The

18  Plaintiff made this motion to prove that Def Blomkamp resumed film editing after February

19  2013, to try to remove or alter the "headache" scenes. However, **the Defendants would not**

20  **provide a response from Lee Smith**, only from Clarke (Clarke stated that editing ended

21  well before June 2013—contradicting Blomkamp, who said editing ended June 2013). But

21  Lee Smith returned to the editing room to fix the headache scenes in May and June 2013.

22      162.   As well as doing the final edit of Elysium, the 2014 Sony email leak show that Lee

23  Smith also did the final edits for Blomkamp's next film, *Chappie* (although Smith isn't

24  credited on IMDB or Wikipedia).

25      163.   Lee Smith's final edit of Chappie is revealed in the Sony email leaks as Def Modi

26  Wiczyk writes to Amy Pascal:

27                2014-08-12 00:13:30  saw it.  From:
                  mwiczyk@mrcstudios.com  To:
28

COMPLAINT

36

| 1 | amy_pascal@spe.sony.com |
|---|---|
| 2 | **MODI WICZYK:** |
| 3 | "we are going to get there and have a big success with this one. **lee smith** will be huge, **nb** is in GREAT frame of mind." |

4    164.    Def Wiczyk knew Smith would be "huge" because of how Smith helped salvage

5    Elysium. A few months later Def Wiczyk told Amy Pascal about all the work Lee Smith had

6    left to do on the film, and the continued problems between Blomkamp and Kinberg.

| 7 | 2014-11-03 02:03:10 <u>Re:</u> From: mwiczyk@mrcstudios.com |
|---|---|
| 8 | To; pascal, amy |
| 9 | **MODI WICZYK:** |
| 10 | "Hi! |
| 11 | in terms of neill, totally ur call but... |
| 12 | i feel like <u>this</u> <u>coming</u> <u>week</u> <u>is</u> <u>critical</u> bc <u>neill</u> <u>has</u> <u>to</u> <u>really</u> <u>really</u> <u>let</u> <u>lee</u> in <u>to</u> **polish,** <u>refine,</u> etc. alot of little indulgences are gonna have to go. |
| 13 | so--- i was trying to be positive but also let him know theres real real work yet to do. and in a short period of time.... i talked to lee for a while today who says neills been very open so thats good...but hes been a dick to simon for whatever reason. so a long way of saying i want to keep the pressure on him. because i agree it can be special. |
| 14 | make sense?" |
| 15 | |

16    165.    The Plaintiff filed his Motion to Compel (seeking a statement from Lee Smith)

17    three (3) weeks before the deadline for dispositive motions (liability), July 9th, 2013. But

18    the district court set the motion hearing for more than a week AFTER the deadline for

19    dispositive motions (Aug 7th, 2013).   Thus, the Plaintiff had to file his Motion For

20    Summary Judgment (**MFSJ**), without being able to inform the court of the Defendants'

21    **violation of Rule 37** (failure to cooperate to compel a discovery response); a violation that,

21    in this case, resulted in the omission of evidence of a cover-up (that cover-up being: Neill

22    Blomkamp returned to the editing room with Lee Smith, in June 2013, to ask Smith to try to

23    erase edit and remove the headaches from Elysium). Thus, during the teleconference

24    hearing with Magistrate Judge Laurel Beeler, the Plaintiff explained that the matter was

25    unresolved but was effectively "moot" because both parties' MFSJs had been filed, and the

26    Plaintiff had less than a week to file his Reply Brief (Magistrate Beeler thus ruled the issue

27    moot). (Note: the Defs also refused ALL of the Plaintiff's discovery requests for texts or

28    emails regarding ANY Elysium matters; expanding the Defendants' **Rule 37 violations**).

| | |
|---|---|
| 1 | **MRC & SONY PICTURES NEGLECTED TO DO BASIC** |
| 2 | **DUE DILIGENCE, BUYING THE RIGHTS TO ELYSIUM** |
| 3 | **WITHOUT EVEN READING A SCREENPLAY** |
| 4 | 166.   In 2008, Def Neill Blomkamp filmed *District 9* without a screenplay.  District 9's |
| 5 | star, Sharlto Copley, has given many interviews discussing the fact that he improvised every |
| 6 | line of the film—such as the interview he gave *USA Today* in 2011. (Said USA Today article |
| 7 | with Sharlto Copley is attached as "**Exhibit DD**" and is incorporated by reference as if fully |
| 8 | set out herein.) Due to Def Emanuel's inappropriate relationship with Sony Pictures' CEO |
| 9 | Michael Lynton and Def Bill Block (of QED Int.), Emanuel was able to get QED and Sony |
| 10 | Pictures' subsidiary *TriStar* to produce and distribute District 9, without a screenplay |
| 11 | —using only Def Blomkamp's notes, which they referred to as a "script". Countless writers |
| 12 | and fans, in online forums, have tried to find a copy of a District 9 script. All have failed. |
| 13 | 167.   Similarly, MRC (co-owned by Def Emanuel) and Sony Pictures bought the film |
| 14 | and distribution rights to Elysium from Def Blomkamp, without ever reading a screenplay. |
| 15 | Sony Pictures bought the rights to Elysium in a hasty meeting in 2008. In this well |
| 16 | documented meeting MRC and Def Blomkamp displayed 50-60 concept art paintings of |
| 17 | scenes from Blomkamp's proposed film. The art was so persuasive that Sony Pictures |
| 18 | agreed to buy the rights, immediately, never bothering to read the script. |
| 19 | HollywoodReporter.com reported the details of the stunningly hasty meeting between |
| 20 | Blomkamp, MRC and Sony Pictures —on the very day it occurred, January 19, 2011. |
| 21 | MRC scheduled meetings with several other distributors that same day, but Sony Pictures |
| 21 | was so rushed and eager to buy the film that MRC canceled all other distribution meetings |
| 22 | scheduled that day. The Hollywood Reporter article carefully reports the "art designs" that |
| 23 | secured this deal, but never mentions a "screenplay" or a "script".  (Said Hollywood |
| 24 | Reporter article about Blomkamp, MRC closing the deal with Sony Pictures is attached as |
| 25 | "**Exhibit EE**" and is incorporated by reference as if fully set out herein.)  This same |
| 26 | meeting and concept art were also recounted in the book "Elysium: The Art of the Film" |
| 27 | —a book primarily made up of interviews with Def Blomkamp, himself. On August 6th, |
| 28 | 2013, Deep Focus Review (deepfocusreview.com) reviewed the book "Elysium: The Art of |

1 the Film", reflecting on this meeting. (Said Deep Focus Review article is attached as

2 "**Exhibit FF**" and and is incorporated by reference as if fully set out herein.)  Upon

3 interviewing Blomkamp, the Deep Focus Review article revealed that Defs Blomkamp and

4 MRC staged 50-60 concept art paintings "and set them against the screenplay", explaining:

> "On the strength of these images—not to mention the strength of his first
> film, *District 9*—he garnered himself a $100 million budget and signed
> stars Matt Damon and Jodie Foster."

8     168.    The Defendants used the amazing artwork to strategically distract attention from

9 the flawed screenplay. Sony Pictures took the bait. Within an hour or so, a deal for about

10 $115 million was made, and no executive from Sony Pictures ever read a script. MRC didn't

11 do due diligence because Defendant Ari Emanuel was a co-owner of MRC and Def

12 Blomkamp's personal agent; thus, they stood to make millions from the deal. Sony Pictures

13 failed to do due diligence because CEO Michael Lynton had an improper, secret business

14 partnership with Def Emanuel (Screenbid.com), and wanted to maintain good relations with

15 Defs Emanuel and MRC—and make millions without regard for whose work they pirated.

16     169.    Def Blomkamp's script was so poorly executed and riddled with evidence of

17 misappropriation of the Plaintiff's work, that Defs Blomkamp, MRC and Sony Pictures took

18 extreme measures to protect the script during film production. The website Games Radar

19 (gamesradar.com) interviewed one of Elysium's stars, film icon **Jodie Foster**, who revealed

20 the producer's paranoia as she explained she wasn't allowed to possess a script.  (Said

21 Games Radar interview with Jodie Foster is attached as "**Exhibit GG**" and is incorporated

21 by reference as if fully set out herein.)  Foster said:

> **"They won't even give me a screenplay. I've read it, but they won't
> give me one to physically keep in my home 'cause they're so worried
> about everybody."**

25     170.   How Sony Pictures and MRC committed $115 million to a movie without reading a

26 screenplay, but invested millions to keep the screenplay secret defies reason. This was done

27 to keep the Plaintiff from learning details of the film's plot before it was released, to prevent

28 the Plaintiff from getting an injunction to stop  production.

171.　Had Sony Pictures behaved ethically, AND done their due diligence, they would have read Blomkamp's screenplay, then they would have seen Def Blomkamp's unfocused ideas, vast story weakness, and his poor literary skills. These shortcomings, juxtaposing concepts that were beyond such limited literary skills, should have raised red flags that Blomkamp's story may have been misappropriate, thus killing the deal. Hence, the Plaintiff would have filed no claims, including all claims herein.

172.　When Sony Pictures finally read Blomkamp's screenplay, seeing his poor writing skills and disjointed ideas, they hired writer/producer Simon Kinberg, who Def Wiczyk described as a "fixer" (a term Wiczyk borrowed from Jeff Rovin, expert witness in Briggs v Blomkamp). In a 2014 email to Sony Pictures Chairperson, Amy Pascal.  Wiczyk wrote:

> 2014-10-27 13:36:12  Fwd: CHAPPIE NOTES
> From: mwiczyk@mrcstudios.com To: pascal, amy
>
> **MODI WICZYK:**
>
> "hi!so i asked si to share all the notes hes wanted to do, in detail, for weeks but hasnt been able to do.it lines up w what everyones saying.  great detail and very specific.he also included rachels document and merged it.**simon is a fixer and a logician** and i want him to trest this like hes been brought in to doctor it on some level, and he does too.  nb has been ignoring him the past few weeks after listening to him up until then. dont know why, dont care. its our turn now.i told doug that we should leave the mtg telling thema. timeline for seeing new stuff b. possibly do a parallel more radical cut to play w thebig first act and religious note.c. first "basic" cut should do all cuts in the notes, deal w ending. see you at 9."

173.　A company has a responsibility to do basic due diligence, to make sure their products are what they allege: original works. Having a CEO who is secret business partners with the CEO of a talent agency subcontractor, undermines due diligence. Failing to read a screenplay before buying the rights to that screenplay is not doing due diligence. Hiring a "fixer" to hide evidence of misappropriation is not doing due diligence. Rather, these are the methods of corrupt, mob-like conspirators.

174.　Further, during discovery in Briggs v Blomkamp et al, the Plaintiff asked the Defendants for all documentation of their due diligence to make sure Elysium was not an infringement. The Defendants failed to produced any such documentation.

| 1 | **Defendant Blomkamp Gets Caught Lying To The World About** |
|---|---|
| 2 | **His "Aliens" Script (Which Also Did Not Exist) , in 2017:** |
| 3 | 175.   Just as Def Blomkamp (with Def Wiczyk's help) sold Elysium to Sony and MRC |
| 4 | without a screenplay, Blomkamp recently tried to sell his idea for a fifth "Aliens" film |
| 5 | without a script—but this time he did it openly, online, for the world to see. Unfortunately, |
| 6 | in the process he ensnared several other Hollywood notables in his' strange world of lies. |
| 7 | 176.   On January 2nd, 2015, Def Blomkamp shared some "Aliens" concept art on his |
| 8 | Twitter account, expressing hope of one day shooting the film. Soon dozens of Blomkamp |
| 9 | fans began spreading the word that Def Blomkamp was out to make the fifth Aliens film, |
| 10 | including in an article on Nerdist.com. (Said article from Nerdist.com is attached as |
| 11 | "**Exhibit HH**" and is incorporated by reference as if fully set out herein.) |
| 12 | 177.   By July **2016**, websites like ScreenRant.com were reporting Def Blomkamp had |
| 13 | recruited actress Sigourney Weaver and director James Cameron to tell the world how great |
| 14 | Blomkamp's script was. (Said ScreenRant article is attached as "**Exhibit II**" and is |
| 15 | incorporated by reference as if fully set out herein.)  In ScreenRant Sigourney Weaver said: |
| 16 | **"There is an incredible script by Neill. I didn't want to do a fifth one. I** |
| 17 | **thought going to earth wouldn't be fun. I got this script that was** |
| 18 | **amazing and gives fans everything they're looking for..."** |
| 19 | 178.   And James Cameron also praised the script in the ScreenRant article: |
| 20 | **Director James Cameron (*Avatar*) then went on to throw in his two cents,** |
| 21 | **saying that Blomkamp's is "*a very strong script*" and "*works gangbusters.*"** |
| 21 | 179.   "Gangbusters." |
| 22 | 180.   Then, in April 2017, ScreenCrush.com reported that director Ridley Scott, owner of |
| 23 | the Aliens franchise, had announced there would be no *Aliens 5* movie.  Mr. Scott explained |
| 24 | Defendant Blomkamp **never even had a script**. (Said Screen Crush article is attached as |
| 25 | "**Exhibit JJ**" and incorporated by reference as if fully set out herein.)   Ridley Scott stated: |
| 26 | **"I don't think it will ever see the light of day. There was never a script.** |
| 27 | **Just an idea that evolved from a dozen or so pages."** |
| 28 | 181.   This all caused the article writer to wonder who was lying: "We seem to find |

COMPLAINT
41

1 ourselves in a bit of a '*he said, she and he said*' situation here," Monagle wrote.

2     182. Remember, in 2000 Def Wiczyk helped sell his brother's script to Summit without

3 so much as a script name, and Sony Pictures was right there, negotiating for the rights to

4 that unwritten, nameless script—eager to please any good friend of Ari Emanuel's. By

5 2016, with *Aliens 5*, the Defendants had grown so brazen that they let Def Blomkamp go out

6 and lie to the world for himself, believing they could throw a script together after the

7 contract was signed. Rubbing their hands in anticipation of all that money —none of them

8 expected Ridley Scott to do due diligence and insist on seeing a script, ruining their scheme.

9

10     **IN BRIGGS V BLOMKAMP THE DEFS HIRED A CONMAN, JEFF ROVIN**

11     **(WHO COMMITTED FRAUD UPON THE COURT & WENT ON FOX NEWS**

12     **TO ADMIT HE WAS A"FIXER" FOR BILL CLINTON) AS THEIR "EXPERT"**

13     183. Not only does this case reveal how effortlessly seemingly everyone in Hollywood

14 lies, it reveals that when they get caught lying and stealing other people's work, they call on

15 world-class liars.

16     184. In a surreal, mobster-like twist, in Briggs v Blomkamp, rather than hiring one of

17 thousands of California intellectual property attorneys as an expert witness, the Defs hired

18 Jeff Rovin, a high school-educated New York "fixer" (Rovin's self description). This is the

19 same Jeff Rovin who confessed (two years <u>after</u> Briggs v Blomkamp went to MFSJ) to the

20 *National ENQUIRER (*October 19th, 2016), and confessed on **Fox News'** live telecast of

21 *The Sean Hannity Show* (Oct 24, 2016), that he was a professional "fixer" who

21 orchestrated false "smear" reports on people who disparaged President Bill and Hillary

22 Clinton—while Bill Clinton was President. Rovin claimed he then published these smear

23 articles in tabloid newspapers. Rovin's interview with Hannity can be seen at

24 https://www.youtube.com/watch?v=L3mzoKuFN5o. The story carried in countless other

25 publications, including The Daily Beast. (Said Daily Beast article is attached as "**Exhibit**

26 **KK**" and is incorporated by reference as if fully set out herein.) (Said National ENQUIRER

27 article is attached as as **"Exhibit LL"** and is incorporated by reference as if fully set out

28 herein.)

COMPLAINT

42

185. **Rovin made these self-incriminating admissions on camera, in his own words.**
Rovin admitted that he also bribed the victims of his smears to stay quiet. Shockingly, Rovin says the bribes were so effective that they rarely needed to resort to **other measures**. In Rovin's words, "**Most of the time** it was just money, it never had to be any threats." Witlessly, Rovin admitted threats, violence—or worse—might ensue if the money wasn't accepted.

186. Sean Hannity summarized Rovin's work, saying, "Smearing happened. Money was paid. Orders were given. You were to go out and damage the reputation of people like Monica Lewinski."

187. Rovin modestly agreed with Hannity's assessment, stating, "It was a team effort."

188. Rovin went on to explain he had worked as a "fixer" many times in the past.

189. In Brigg v Blomkamp, the Defendants paid Jeff Rovin $50,000 as a "fixer", to use his literary talents to lie, falsify and commit fraud.

190. In Brigg v Blomkamp, Rovin's fraud was so extensive that the Plaintiff moved the the court to exclude Rovin's "expert" report, as Rovin had falsified dozens of citations and fabricated evidence to substantiate his own claims, including a lengthy "quote" in which he fraudulently omitted 42 words—that wholly countered what Rovin reported. (Said Motion to Exclude is attached as "**Exhibit MM**" and is incorporated by reference as if fully set out herein.) Oddly, the court took no interest in the fraud contained in Rovin's report—which became the base of the district court's summary judgment opinion—and denied the motion.

191. How the Defendants knew such a devious man's "expert" report would meet no skepticism by the court is a mystery. How the Defendants knew such a sinister man existed—at all—is stunning. Rovin explained that he worked for President Clinton when Bill Clinton was in office (1991-2001). When asked how he came to be involved with the Clintons, Rovin explained that the Clintons became aware of Rovin because, in Rovin's words, he was **"fixing something for an actor who was in their** (the Clinton's) **inner circle."** Rovin does not identify who this cabinet member is, but during the time Rovin was involved with the Clintons (1991-1998), **Rahm Emanuel** worked as the senior adviser to President Clinton (1993-1998). Rahm Emanuel is Defendant Ari Emanuel's brother.

COMPLAINT
43

| | |
|---|---|
| 1 | **SUMMARY OF THE DEFENDANTS'** |
| 2 | **UNLAWFUL ACTIONS** |
| 3 | **Act 1** |
| 4 | 192.   Kevin Spacey and Dana Brunetti, acting alone or in conspiracy with other |
| 5 | Defendants, created a social network website called Trigger Street, or TriggerStreet ("TS" |
| 6 | herein), located at triggerstreet.com from 2002 until 2011, and at labs.triggerstreet.com from |
| 7 | 2011 until 2014. |
| 8 | 193.   Kevin Spacey and Dana Brunetti, acting alone or in conspiracy with other |
| 9 | Defendants, published and rendered the TS "Terms of Use" contract page, which stated: |
| 10 | Unless otherwise specified, the materials on the Site and in the Services are |
| 11 | presented **solely for** the purpose of promoting the entertainment, information, and community resources and services available in, and other |
| 12 | uses in, **the United States of America.** We control and operate the Site and the Services from within the United States. We make no representation |
| 13 | that materials on the Site or the Services are appropriate or available for use in locations outside the United States, and accessing them from |
| 14 | territories where their contents are illegal is prohibited. Those who choose |
| 15 | to access the Site from other locations do so on their own initiative and are responsible for compliance with local laws. |
| 16 | |
| 17 | 194.   The previous statement from the TS "Terms of Use" page was deliberately false |
| 18 | and/or misleading, and intended to inform members (or suggest, imply or insinuate) that |
| 19 | TS was intended for use by and for users in the USA. This was Fraud, Intentional |
| 20 | Misrepresentation, False Statements, and Deceit. These false statements were made to |
| 21 | falsely assure informed, savvy writers that the website was safe from foreign "bad actors', |
| 21 | as there are many nations that do not, or cannot enforce the Universal Copyright |
| 22 | Convention, and often American copyright holders never learn that their works were |
| 23 | misappropriated by foreign infringers, because the stolen works are only displayed in the |
| 24 | infringers' nation. (TS also may have stated it was intended for UAS use to avoid paying |
| 25 | taxes on the international earnings from its Budweiser endorsement deal.) |
| 26 | 195.  In truth, unbeknownst to American users who had been deceived by the Defendants, |
| 27 | from the outset TS was intended for international use. |
| 28 | 196.   The Defendants' action were also a violation of Cal Civ 1572, 3294, and 1709. |

ER 1168

| | |
|---|---|
| 1 | **Act 2** |
| 2 | 197.   Defendant Kevin Spacey made numerous trips abroad, to London, Spain, etc., to |
| 3 | give speeches and interviews, and throw parties, intent to recruit new TS members. While in |
| 4 | Spain, in 2009, Spacey stated,  "I started the website about six years ago, and we now have |
| 5 | close to 400,000 <u>members around the world</u>." |
| 6 | 198.   This was **BREACH OF CONTRACT**, as the Plaintiff—like most  members in the |
| 7 | USA (perhaps all US members)—believed the website was solely for use in the USA. |
| 8 | **Act 3** |
| 9 | 199.   TS and the Defendants provided content and programming from TS to Bud.TV |
| 10 | from 2007 to 2009.  Bud.TV also ran an international advertising campaign about TS. This |
| 11 | international ad campaign advertised TS (as well as Bud.TV) all around the world. In both, |
| 12 | advertising  TS  in  Bud.TV  promotions,  AND  advertising  TS  on  Bud.TV  itself,  the |
| 13 | Defendants **breached** the terms of TS's *Terms Of Use* contract page. |
| 14 | **Act 4** |
| 15 | 200.   The Defendant(s) made the TS website with effectively no security features, as |
| 16 | ALL members were allowed to ANONYMOUSLY read ALL screenplays. This, while TS |
| 17 | claimed to be industry standard, encapsulating all of the desires and needs of its users, and |
| 18 | touted its state of the art security. This was a violation of state and federal conspiracy, |
| 19 | negligence, gross negligence, fraud, deceit, misrepresentations, and false statements laws. |
| 20 | **Act 5** |
| 21 | 201.   Unlike a truly "industry standard" site like Writers Script Network.com, all TS |
| 21 | members/users were encouraged and deceived into using and navigating the website with |
| 22 | false identities (even for writing reviews). The Defendants' intent was to protect the |
| 23 | identities of their misappropriating conspirators, the Privacy page was written and designed |
| 24 | to scare user/members into using false identities. The TS Privacy page stated: |
| 25 | User Names and User Disclosure |
| 26 | The user name you select or are provided with upon registration with the Site is deemed non-personally  identifiable information. Your user name |
| 27 | may be published on the Site and may be disclosed to others, including, |
| 28 | without limitation, to the public, and to any third parties with whom we |

COMPLAINT

45

elect to share such information. In addition, **if you include your name or any other personally identifying information** in any material transmitted or posted on public areas of the Site or the Services (including, without limitation, message boards, **reviews** and chat rooms), **such information will become public information and will be published on the Site and will be disclosed to other users of the Site and to other third parties who may have access to or otherwise see a display of such information**.

202.   These statements were made to encourage users to take risks they ordinarily would not take and should not take, as part of the Defendants efforts to persuade users/members to make their wares accessible to the Defendants. This was CONSPIRACY and DECEIT.

### Act 6

203.   The TS Privacy page suggested that the website had a method to reveal the true identity of all "accessors", if necessary.

Information Disclosure
We reserve the right to disclose information submitted by or concerning any user as we feel is necessary to protect our systems or business. Specifically, but without limitation, we reserve the right to disclose such information when a visitor or member is in violation of our Terms of Use or any other agreement with us, or engages (or is suspected of engaging) in any harmful, infringing or illegal activity....

204.   However, there is no evidence to support that TS ever, truly, had any method of retrieving any access records, or the accessor's true identity, etc. Nor is there any reason to believe such a system ever existed on TS. Thus, the Defendants' action were in violation of California Civ. Code § 1572, which makes it unlawful to make materially false, fictitious, deceitful, or fraudulent statement or representation.

### Act 7

205.   The Defendant(s) made extraordinary and fraudulent claims about website security; doing so to lure in the best undiscovered writers, and eliminate any doubts or suspicions users might otherwise reasonably have. TS made such false and exceptional claims as:

a.   The TS "About Us" page stated:

"Our team has been extensively researching and designing TriggerStreet.com to ensure that it **encapsulates every aspect of the user's desires and needs**."

COMPLAINT
46

206.    This was Fraud. All reasonable screenwriter members would expect (from a website assuring that the website "**encapsulates every aspect of the user's desires and needs**") that records be preserved of all access of writers' work, identifying which members accessed which works, AND recorded by the accessor's true name —AND NOT erase all access history if the member removes his/her work because he/she worried his work may be unsafe on the website. Members would reasonably expect and *desire* this from a site claiming to be industry standard, because websites like InkTip.com were already doing this. Further, all reasonable members would **desire** and **need** a website to use accurate language, and behave in accordance with the implicit language of the website's *Terms Of Use*. And if these "Terms of Use" stated, suggested, implied that the website was solely for use in the USA, members should expect that site operators would act in accordance with that agreement, and not advertise or recruit abroad. This false claim was made to fraudulently lure writers to an unsafe website.

207.    This was deceit. The Defendants' actions were also in violation of California Civ. Code § 1572 - Statements or entries generally, which makes it unlawful to make any materially false, fictitious, or fraudulent statement or representation. On the TS "*Privacy*" page, the "Security" message stated:

> "Security
> When you submit information via the Site, your information is protected using secure data networks protected by **industry standard firewall and password protection systems**. Our security practices and policies are periodically reviewed and updated as necessary, and only authorized individuals have access to the information provided by our users."

208.    This was also Fraud. There was nothing "industry standard" about the TS screenwriter website. The standard was set by Writers Script Network.com (InkTip.com). InkTip kept all records of all access, even after members left. On Inktip.com, there was no feature erasing all access records upon script removal. By implying all information was protected and secure and industry standard, reasonable members would assume all members' access activity would be recorded, stored, and protected —not erased.

209.    The Defendant(s) and TS used Def Spacey's stardom to lure in writers. Then

1　writers were **promised** "industry access and exposure"—using Spacey's fame and
2　Academy Award winning laurels to leverage this false promise. TS's statement from its
3　"About Us" page promised that:

4　　"Based on the principles of creative excellence, it (the TS website) provides
5　　**industry access and exposure** to help build the careers of notable new
　　filmmakers and screenwriters."
6

7　　210.　This false promise, bolstered by the other fraudulent statements on the "Terms of
8　Use", "About Us", and "Privacy" pages, expanded a pattern of fraud, false statements,
9　false promises, concealment, intentional misrepresentations, and deceit.

10　　　　　　　　　　　　　　　　**Act 8**

11　　211.　The Defendants added a new anti-security feature, whereby if a member removed
12　his/her screenplays from the TS website because he/she worried that his/her work might be
13　unsafe or the target of infringers or pirates, the moment that writer removed his script from
14　the site ALL access records would be erased. The Plaintiff believes the Defs added this
15　feature in 2007 to access and steal the Plaintiff's work. Whether this extra hidden layer of
16　counter-security was added when the website was made, in 2002, or if it was added in 2007,
17　the Defendant(s) and TS did not inform members about this feature, and it was never
18　mentioned on the TS website. The Defendants' failure to inform members of this
19　anti-security feature, and the risks it posed, was a deliberate omission of imperative
20　information. The Defendants actions were in violation of California Civ. Code § 1572, fraud
21　by omission, and constitute DECEIT in violation of California Civ. Code § 1709.

21　　　　　　　　　　　　　　　　**Act 9**

22　　212.　Corporations are expected to do due diligence in all substantial purchases,
23　transactions and deals (such as investing $120 million in a film). Due diligence means doing
24　**"a complete and appropriate review of documentation and facts by a potential buyer**
25　**or its agents before purchasing an asset or engaging in business with a prospect"** (from
26　the Law Offices of Stimmel, Stimmel & Smith) This definition goes on to require a
27　"...complete review using lawyers and CPAs to assist so that when one is done, one knows
28　all that one needs to know before engaging in business with or buying a company or other

COMPLAINT
48

1 <u>asset or piece of property.</u>" The Defendants did not do due diligence —failing to even read

2 the screenplay before buying its rights. Thus, the Defendants engaged in **gross negligence.**

3 **Act 10**

4    213.   The Defendants engaged in conflicts of interests that violated **CALIFORNIA**

5 **LABOR CODE SECTION 1700.39**, which states, "No talent agency shall divide fees with

6 an employer, an agent or other employee of an employer." Defendant Ari Emanuel was the

7 central talent agent in making the film Elysium, representing Elysium's star Def Matt

8 Damon and its writer/director Def Neill Blomkamp. Defendant Ari Emanuel is also an

9 owner of MRC (the employer of Def Neill Blomkamp for the making of Elysium, and the

10 buyer of Elysium's film rights). Thus, Def Ari Emanuel divided fees as a talent agent and

11 employer. The Plaintiff was injured by this violation of California law.

12 **Act 11**

13    214.   The Defendants engaged in **Violations Of California Business & Professions**

14 **Code § 17200, Et Seq., Unfair Business Practices Act.** Sony Pictures' (a publicly traded

15 company), and its CEO Michael Lynton, violated California Business & Professions Code

16 § 17200, ET SEQ., by engaging in improper and unethical business relationship, whereby

17 Michael Lynton, acting as an officer of Sony Pictures, hired a subcontractor (Screenbid) to

18 sell numerous items of substantial value for Sony Pictures. Thus, Def Lynton profited as

19 Sony Pictures' CEO, and he and Defs Ari Emanuel and Bill Block profited as the owners of

20 Screenbid, the subcontracted auction service. This was a conflict of interest.

21    215.   This improper relationship caused CEO Michael Lynton to encourage his

21 subordinates and peers NOT to scrutinize projects, clients or business entities associated

22 with his secret business partner Def Ari Emanuel. Thus, Sony Pictures agreed to distribute

23 Elysium without doing due diligence to read a screenplay to see to it that it was reasonably

24 executed. Had Sony Pictures employed a reasonable standard of due diligence, Elysium

25 would not have been made; thus, no injury would have come to the Plaintiff.

26 **Act 12**

27    216.   The Defendants engaged in Spoliation Of Evidence by closing and destroying the

28 TS website  6 days after the Plaintiff filed his Notice of Appeal to the Ninth Circuit Court of

COMPLAINT
49

1  Appeals. The Defendants did this to destroy unfavorable evidence, because the district court

2  based its MFSJ ruling on reversed law (cited by the Defendants), rather than the prevailing

3  law (cited by Plaintiff). Thus, Briggs v Blomkamp, et al, is/was apt to be returned to the

4  lower court, where the Plaintiff will/would subpoena all website access records, to confirm

5  the Defendants used TS to access the Plaintiff's work, and/or confirm that TS

6  misrepresented its security and ID protection features, and had no such records or oversight.

7  **Act 13**

8  217.  By conspiring to hire "fixer" Jeff Rovin (who spent years of his life writing false

9  "smear" stories for tabloid news) to submit a falsified "expert" report to the court, the

10 Defendants engaged in civil conspiracy, as well as fraud and deceit in violation of California

11 Civ. Code §§ 1572 and 1709. In these actions may also constitute Subornation Of Perjury

12 **Act 14**

13 218.  By stating, in their answers to the Plaintiff's interrogatories, that Simon Kinberg

14 only provided a "polish" to the Defendants script *Elysium* (when, in fact, Kinberg did

15 exhaustive work to salvage the screenplay) the Defendants engaged a conspiracy to commit

16 fraud and deceit, violating California Civ. Code §§ 1572 and 1709. Beyond these civil

17 infractions, the Defendants may have committed **Perjury,** violating 18 U.S. Code § 1001.

18 **Act 15**

19 219.  In the Briggs v Blomkamp Complaint, the Plaintiff stated that the *Elysium* film

20 editor(s) would confirm that Film editing resumed in June, 2013 (after initially wrapping up

21 in February 2013) —after the Defendants learned of the Plaintiff's impending lawsuit. The

21 Plaintiff predicted the editor(s) would confirm that this final editing was done to remove the

22 hero's headaches. But during discovery, the Defs gave Plaintiff only a statement from Julian

23 Clarke, refusing to provide a statement from final editor, Lee Clarke. Thus, the Defendants

24 **violated RULE 37** —a violation that may have changed the outcome of the case. **The**

25 **Defendants' actions violated Cal Civ 1572 and 1709** —and perhaps 18 U.S. Code § 1001.

26 **Act 16**

27 220.  Using the TS website, Defendants Spacey and Brunetti marketed the Plaintiff's

28 original screenplay in foreign markets all around the world, without informing the Plaintiff.

COMPLAINT
50

1  The TS social network website made representations that the website was solely for use in
2  the USA. The plaintiff relied on these claims. Unbeknownst to the Plaintiff, the Defendants
3  repeatedly travelled to foreign markets to invite foreign citizens to join TS, where they
4  could freely access the Plaintiff's screenplay ("Butterfly Driver", posted on TS in 2007). In
5  engaging in these actions, **the Defendant committed INFRINGING EXPORTATION of**
6  **the Plaintiff's copyright protected property,** under 17 USC § 602(a)(2), which makes it
7  unlawful to export copyrighted property from the USA, without the authority of the owner
8  of copyright, as this would infringe of the copyright owner's exclusive right to distribute,
9  under 17 USC § 106; actionable under sections 17 USC § 501.

10  221.  The Plaintiff was unaware of Defendants Spacey's and Brunetti's infringing
11  exportation of his work until February of 2016, when the Plaintiff discovered a BBC article,
12  written in 2009, about Kevin Spacey travelling to Barcelona, Spain to tout TS's "400,000
13  members around the world." (See Exhibit T). **Immediately, upon discovering the article,**
14  **the Plaintiff notified the 9th Circuit Court of Appeals, via a court filing on February**
15  **29th, 2016.** Shortly after discovering the article, the Plaintiff discovered other articles about
16  Spacey travelling abroad to market TS, dating back to 2002. (See **Exhibit P and Q.**)
17  American users were never informed that TS was being marketed around the world.

18  222.  The 3 year statute of limitations to take legal action on this infringement started to
19  run in February 2016, when the Plaintiff learned of the Defendants' infringement.

20  <div align="center">**Act 17**</div>

21  223.  Defendants Spacey's and Brunetti's actions (detailed in the 3 preceding paragraphs
21  under the heading "Act 16") infringed on the Plaintiff's exclusive copyrights of his
22  screenplay *Butterfly Driver*, posted on the TS website in 2007, as the Defendants' actions
23  violated the Plaintiff's exclusive right to distribute his work, under section 17 USC § 106.

24

25  <div align="center">**STATEMENT OF INJURY**</div>

26  224.  Among the injuries caused by the Defendants' actions were (1) the misappropriation
27  of Plaintiff's work; (2) the infringement of the Plaintiff's copyright —by a foreign actor
28  (Blomkamp); (3) a judgement against the Plaintiff in his effort to protect his copyright.

<div align="center">COMPLAINT

51</div>

| | |
|---|---|
| 1 | **CLAIMS FOR RELIEF** |
| 2 | **FIRST CLAIM FOR RELIEF** |
| 3 | CIVIL CONSPIRACY<br>**(Against All Defendants)** |
| 4 | 225. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through |
| 5 | 224, as if fully set out herein. |
| 6 | 226. Judicial Council of California Civil Jury Instructions states that "A conspiracy is an |
| 7 | agreement by two or more persons to commit a wrongful act. **Such an agreement may be** |
| 8 | **made orally or in writing or may be implied by the conduct of the parties**." Keeping |
| 9 | with standard, the Defendants engaged in three (3) conspiracies. While engaged in these |
| 10 | conspiracies, the Defendants committed many clear, overt acts. |
| 11 | **First Conspiracy** |
| 12 | 227. To unlawfully enrich themselves, the Defendants conspired to create a social |
| 13 | network for screenwriters and filmmakers, with little or no security features. The |
| 14 | Defendants would then mislead screenwriters that the website was safe, then the Defendants |
| 15 | could access and misappropriate the screenwriters' work. In the execution of this conspiracy |
| 16 | the Defendants took the following overt actions: |
| 17 | 1. The Defendants conspired to create a social network website (TS) for screenwriters |
| 18 | and filmmakers, a website with effectively no security features. |
| 19 | 2. The Defendants conspired to commit fraud and mislead TS member/users that the |
| 20 | website had reasonable security features, when it had none. |
| 21 | 3. The Defendants conspired to add a anti-security feature that erased all access |
| 21 | information if members removed their screenplays. |
| 22 | 4. The Defendants conspired to add the anti-security feature in 2007, to erase evidence |
| 23 | of their access of the Plaintiff's script. |
| 24 | 5. The Defendants conspired to make the film Elysium, careful not to leak any |
| 25 | information about the project . |
| 26 | 6. The Defendants conspired to create a *Terms of Use* page that stated the website was |
| 27 | intended solely for use in America, but the Defendants repeatedly sent Def Spacey |
| 28 | around the globe to recruit members, in violation of the *Terms of Use* agreement. |

| | |
|---|---|
| 1 | 7. Also in violation of the Terms of Use agreement the Defendants secretly advertised |
| 2 | TS on international websites like Bud.TV, and other international media outlets. |
| 3 | 8. While producing *Elysium*, the Defendants conspired to keep the script an absolute |
| 4 | secret, not even allowing Hollywood giants like Jody Foster to take the script home. |
| 5 | 9. The Defendants (particularly Ari Emanuel, who profited the most from these acts |
| 6 | and arrangements) had actors Def Damon and Affleck start a screenwriter/filmmaker |
| 7 | website, similar to TS, called Project Greenlight. Not coincidentally, these two |
| 8 | websites were created only a month apart; both websites used celebrity endorsers; |
| 9 | both websites have been accused of being the *access* point in major film and TV |
| 10 | copyright infringement suits; both of these "stolen" projects were eventually sold to |
| 11 | companies with deep connections to Def Emanuel (MRC and Universal Pictures). |
| 12 | **Second Conspiracy** |
| 13 | 228. Once the Plaintiff realized the Defendants misappropriated his work, he sued. |
| 14 | 229. In response, the Defendants devised a second conspiracy to prevent the Plaintiff |
| 15 | from prevailing in his copyright lawsuit. Their plan involved cheating the Plaintiff and the |
| 16 | US federal justice systems. In the execution of this second conspiracy the Defendants took |
| 17 | the following actions: |
| 18 | 1. Rather than hiring an intellectual property attorneys as their expert witness in Briggs |
| 19 | v Blomkamp, the Defendants opted to hire a con man named Jeff Rovin; who, two |
| 20 | years later, admitted on Fox News' "The Sean Hannity Show" that he was a "fixer" |
| 21 | who worked for President Bill Clinton, where he used his literary skill to create |
| 21 | "smear" stories, to attack Clinton critics in tabloid newspapers. Rovin said he came |
| 22 | to work for Bill and Hillary Clinton because he was working for another "actor" in |
| 23 | the Clinton White House. This *actor* wss surely Rahm Emanuel, the Senior Advisor |
| 24 | to the President (Clinton), who is also Defendant Ari Emanuel's brother; |
| 25 | 2. During discovery in Briggs v Blomkamp, the Defendants conspired to prevent editor |
| 26 | Lee Smith from answering the Plaintiff's interrogatories; |
| 27 | 3. The Defendants made false statements in their interrogatory answers, as Simon |
| 28 | Kinberg stated that he merely "polished" Def Blomkamp's script; |

COMPLAINT
53

1     4.   The Defendants conspired to shut-down and destroy the TS social network 6 days

2         after the Plaintiff filed his Notice Of Appeal;

3                             **Third Conspiracy**

4     230.    To greatly increase their rate of personal enrichment, the Defendants conspired to

5 break California business, labor and ethics codes. Breaking these codes caused an erosion in

6 the Defendants' business practices, causing them to act recklessly and negligently. In the

7 execution of this second conspiracy the Defendants took the following negligent actions:

8     1.   The Defendants conspired to commit to invest over $100,000,000 to make the film

9         Elysium, without reading a script.

10     2.   The Defendants conspired to create an arrangement where Universal Pictures, or its

11         parent or its subsidiaries, would finance and/or distribute any project Def Ari

12         Emanuel brought to Universal Pictures—even unlawfully acquired projects.

13     3.   The Defendants conspired to engage in inappropriate business relationships, such as

14         Def Emanuel and Sony Pictures CEO Michael Lynton co-owning Screenbid, and

15         Defendant Emanuel co-owning MRC (violating Cal Labor Code 1700.39).

16     231.   In these actions the Defendants willfully, with disregard for the Plaintiff's rights,

17 and with disregard for the law, engaged in one or more conspiracies.

18     232.   The Plaintiff was injured as a direct, foreseeable and proximate consequence of the

19 Defendants' actions, in an amount to be determined at trial.

20                   **SECOND CLAIM FOR RELIEF**
                      <u>SPOLIATION OF EVIDENCE</u>

21                   **(Against All Defendants)**

21     233.   The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

22 232, as if fully set out herein.

23     234.    California Civil Jury Instructions (CACI) (2017) 204 makes willful suppression or

24 destruction of evidence unlawful, stating: **"You may consider whether one party intentionally**

25 **concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence**

26 **would have been unfavorable to that party."** Similarly, 18 U.S. Code § 1519 makes it unlawful

27 to destroy evidence —even in **anticipation or contemplation** of a legal action.

28     235.   The Defendants engaged in spoliation of evidence by closing and destroying their

1 social network, TS (TriggerStreet.com). Although the Defendants knew the website was the

2 central access point of an ongoing legal case, they closed the site 6 days after the Plaintiff

3 filed his Notice Of Appeal.

4     236.   The Defendants willfully, maliciously, with wrongful intent to harm the Plaintiff,

5 and with disregard for the law, acted to violate the law and conceal and destroy evidence.

6     237.   The Plaintiff was injured as a consequence of the Defendants' actions, in an

7 amount to be determined at trial, in accordance with prevailing compensatory and/or

8 punitive damages guideline.

9 <div align="center">**THIRD CLAIM FOR RELIEF**</div>

10 <div align="center">BREACH OF CONTRACT
Violating California Code, Civil Code § 3294</div>

11 <div align="center">**(Against Defendants Kevin Spacey and Dana Brunetti)**</div>

12    238.   The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

13 237, as if fully set out herein.

14    239.   In joining the TS (TriggerStreet) social network, the plaintiff entered into a contract

15 with Defendant Spacey and Brunetti. By repeatedly travelling abroad to places like London

16 and Barcelona to market TS, the Defendants breached the TS "Terms of Use" contract,

17 which stated the site was made **solely for use in the USA**. The Defendants furthered

18 breached this contract by secretly advertising the TS social network on various media

19 outlets, like Bud.TV. In these actions the Defendants committed numerous contractual

20 breaches, in violation of California Civil Code § 3294.

21    240.   The Plaintiff was injured as a consequence of the Defendants' actions, in an

21 amount to be determined at trial.

22 <div align="center">**FOURTH CLAIM FOR RELIEF**</div>

23 <div align="center">FRAUD / INTENTIONAL MISREPRESENTATIONS
Violating California Civ. Code § 1572</div>

24 <div align="center">**(Against Defs Satchu, Wiczyk, MRC II Dist Co LP, Blomkamp, Spacey, Brunetti)**</div>

25    241.   The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

26 240, as if fully set out herein.

27    242.   The Defendants produced contracts in which the Defendants made claims that they

28 purported as true. The Defendants knew these claims were false. The Defendants intended

<div align="center">COMPLAINT
55</div>

1  for the Plaintiff, and others, to rely on their representations. The Plaintiff relied on the

2  Defendants' claims. The Plaintiff was harmed by the Defendants' false representations. The

3  Plaintiff's reliance on the Defendants' false representation was a substantial factor in the

4  Plaintiff's harm. In these actions, the Defendants committed fraud, intentional

5  misrepresentation, and fraudulent omission, in violation of Cal Civ. § 1572.

6      243.   The Plaintiff was injured as a consequence of the Defendants' actions, in an

7  amount to be determined at trial.

8                    **FIFTH CLAIM FOR RELIEF**
                          <u>DECEIT</u>
9             Violating California Civ. Code §§ 1709 & 1710
10  **(Against Defs MRC II Dist Co LP, Blomkamp, Spacey, Brunetti, Wiczyk, and Satchu)**

11     244.   The Plaintiff hereby realleges and incorporates by reference paragraphs 1 through

12  243, as if fully set out herein.

13     245.   In their numerous acts of Deceit, detailed herein, the Defendants (1) suggested as

14  fact things that were not true and that they did not believe to be true; (2) asserted as fact,

15  that which was not true, which they had no reasonable ground for believing to be true; (3)

16  suppressed facts which they were bound to disclose it, and gave information of other facts

17  which were likely to mislead. In these actions the Defendants engaged in Deceit, in

18  violation of California Civ. Code §§ 1709 and 1710.

19     246.   The Plaintiff was injured as a consequence of the Defendants' actions, in an

20  amount to be determined at trial.

21                   **SIXTH CLAIM FOR RELIEF**
                       <u>CONCEALMENT</u>
21             Violating California Civ. Code § 1709
22  **(Against Defendants MRC II Distribution Company LP, Blomkamp, Spacey, Brunetti)**

23     247.   The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

24  246, as if fully set out herein.

25     248.   The Defendants engaged in numerous acts of Concealment (e.g. during discovery in

26  Briggs v Blomkamp, witnesses and agents for the Defendants intentionally failed to disclose

27  certain facts that were known only to them, which the Plaintiff could not have discovered),

28  in violation of California Civ. Code § 1709.

COMPLAINT
56

249. The Plaintiff was injured as a consequence of the Defendants' actions, in an amount to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**
NEGLIGENCE
Violating Cal. Civ. Code § 1714(a)
**(Against All Defendants)**

250. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 249, as if fully set out herein.

251. The Defendants engaged in a variety of negligent business practices, in violation of Cal. Civ. Code § 1714(a). The Plaintiff was harmed by the Defendants' negligence. The Defendants' negligence was a substantial factor in causing the Plaintiff's harm.

252. The Plaintiff was injured as a consequence of the Defendants' actions, in an amount to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
GROSS NEGLIGENCE
Violating Cal. Civ. Code § 1714(a)
**(Against All Defendants)**

253. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 252, as if fully set out herein.

254. Through their actions as engaging in prohibited business relationships, and failing to read the screenplay before buying its rights, the Defendants engaged in grossly negligent business practices. The Plaintiff was harmed by the Defendants' gross negligence. The Defendants' gross negligence was a substantial factor in causing the Plaintiff's harm. The Defendants actions were in violation of Cal. Civ. Code § 1714(a).

255. The Plaintiff was injured as a consequence of the Defendants' actions, in an amount to be determined at trial.

**NINTH CLAIM FOR RELIEF**
VIOLATING CALIFORNIA LABOR CODE § 1700.39
(Against Emanuel, Block, MRC II Dist Co lp, Universal City Stu llc, Sony Pictures Ent Inc)

256. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through 255, as if fully set out herein.

257. The Defendants violated **CALIFORNIA LABOR CODE SECTION 1700.39**,

1  which states, "No talent agency shall divide fees with an employer, an agent or other
2  employee of an employer." Defendant Ari Emanuel represented *Elysium*'s star Def Matt
3  Damon, and represented writer/director Def Neill Blomkamp. Defendant Ari Emanuel is
4  also an owner of MRC (the employer of Defs Blomkamp and Damon for the making of
5  *Elysium*). Thus, Emanuel divided fees as an agent and employer. In so doing the
6  Defendants violated California Labor Code 1700.39.

7      258.   The Plaintiff was injured as a consequence of the Defendants' actions, in an
8  amount to be determined at trial.

9  <div align="center">**TENTH CLAIM FOR RELIEF**</div>
10 <div align="center">VIOLATION OF UNFAIR BUSINESS PRACTICES ACT</div>
   <div align="center">[CAL BUS & PROF CODE§ 17200, ET SEQ.]</div>
11 **(Against Defendants Emanuel, Block, MRC II Dist Co LP, Sony Pictures Ent Inc)**

12     259.  The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through
13 258, as if fully set out herein.

14     260.   Def Emanuel and Def Block, while acting as the CEOs of WME and Miramax,
15 respectively, secretly entered into  a private business partnership with Sony Pictures
16 Entertainment's CEO Michael Lynton, as co-owners of Screenbid, a business that said
17 Defendants then used as a subcontractor for WME, Miramax, and Sony Picture Ent. In
18 these actions the Defendants violated the California's Unfair Business Practices Act [Cal
19 Bus & Prof Code§ 17200, Et Seq.]. Further, these arrangements contributed to the negligent
20 culture that lead to the Defendants' misappropriation of the Plaintiff's work.

21     261.   The Plaintiff was injured as a consequence of the Defendants' actions, in an
21 amount to be determined at trial.

22 <div align="center">**ELEVENTH CLAIM FOR RELIEF**</div>
23 <div align="center">WITNESS TAMPERING</div>
   **(Against Defs Emanuel, Block, Blomkamp, MRC II Dist Co lp,, Sony Pictures Ent Inc)**
24     262.  The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through
25 261, as if fully set out herein.

26     263.  California Civil Jury Instructions (CACI) (2017) 204 makes willful suppression of
27 of evidence unlawful; stating: **"You may consider whether one party intentionally <u>concealed</u> or**
28 **destroyed evidence. If you decide that a party did so, you may decide that the evidence would have**

<div align="center">COMPLAINT</div>
<div align="center">58</div>

1  **been unfavorable to that party.**" In such actions as (1) hiring a professional "fixer" to provide

2  a falsified expert witness report, and (2) proffering a discovery statement from writer

3  Simon Kinberg stating that he merely "polished" Def Blomkamp's screenplay—when the

4  online film communication records show Kinberg performed a massive reworking of the

5  screenplay— the Defendants willfully engaged in witness tampering.

6      264. The Plaintiff was injured as a consequence of the Defendants' actions, in an

7  amount to be determined at trial.

8  <div align="center">**TWELFTH CLAIM FOR RELIEF**</div>

9  <div align="center">INFRINGING EXPORTATION<br>Violating 17 USC § 602(a)(2)</div>

10  <div align="center">**(Against Defendants Spacey and Brunetti)**</div>

11    265. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

12  264, as if fully set out herein.

13    266. By marketing and making the Plaintiff's work available around the world on the TS

14  social network website, without the Plaintiff's consent, Defendants Spacey and Brunetti

15  committed Infringing Exportation of the Plaintiff's copyrighted work, under 17 USC §

16  602(a)(2); thereby violating the Plaintiff's exclusive right to distribute his copyrighted work

17  under 17 USC 106(3), enforceable under 17 USC § 501(a): Copyright Infringement.

18      267. The Plaintiff was injured as a consequence of the Defendants' actions, in an

19  amount to be determined at trial.

20  <div align="center">**THIRTEENTH CLAIM FOR RELIEF**</div>

21  <div align="center">COPYRIGHT INFRINGEMENT<br>Under 17 USC § 501(a)</div>

21  <div align="center">**(Against Defendants Spacey and Brunetti)**</div>

22    268. The Plaintiff hereby realleges, and incorporates by reference, paragraphs 1 through

23  267, as if fully set out herein.

24    269. By marketing and making the Plaintiff's work available around the world on the TS

25  social network website, without the Plaintiff's consent, Defs Spacey and Brunetti infringed

26  on the Plaintiff's exclusive right to distribute his work, violating 17 USC § 501(a).

27      270. The Plaintiff was injured as a consequence of the Defendants' actions, in an amount

28  to be determined at trial.

<div align="center">COMPLAINT<br>59</div>

**PRAYER FOR RELIEF:**

WHEREFORE, Plaintiff prays for a judgment against the Defendants as follows:

1.  For general damages in an amount according to proof at the time of trial;

2.  For exemplary damages;

3.  For special damages in an amount according to proof at trial;

4.  For restitution and disgorgement of all profits (estimated at $850,000,000—which represents all projected profits the Defendants will realize from the misappropriation of the Plaintiff's work; see p19, para 2) for the Plaintiff, consistent with US copyright remedies;

5.  For Plaintiff's cost of this lawsuit and reasonable attorney's fees;

6.  For such injunctions and additional relief the Court may deem proper.

DATED: January 2st, 2018

Respectfully Submitted,

By: _/s/ Steve Wilson Briggs_

Steve Wilson Briggs

Plaintiff In Propria Persona

COMPLAINT
60

# EXHIBIT 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE KENYATTA WILSON BRIGGS,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL PICTURES, et al.,<br><br>Defendants. | Case No. 17-cv-06552-VC<br><br>**ORDER DISMISSING CASE**<br><br>Re: Dkt. No. 69 |

Steve Wilson Briggs has not met his burden of establishing that he properly served either Dana Brunetti or Kevin Spacey. He has provided no information to suggest that the purported agents he served – or at least attempted to serve – were in fact authorized either "by appointment or by law to receive service of process" for Spacey and Brunetti. Fed. R. Civ. P. 4(e)(2)(C). The fact that Todd Rubenstein of Morris Yorn Barnes Levine Krintzman Rubenstein Kohner & Gellman has represented Spacey in other actions is not evidence Rubenstein or Morris Yorn is authorized to accept service for Spacey. Likewise, the fact that Matt DelPiano of Creative Artists Agency is Dana Brunetti's talent agent does not suggest that DelPiano or Creative Artists Agency is authorized to accept service for Brunetti.

Moreover, even if Todd Rubenstein or Matt DelPiano were agents to Spacey or Brunetti, Briggs has not provided evidence to suggest that process was personally delivered to either DelPiano or Rubenstein, as would be required under either Federal Rule of Civil Procedure 4(e)(2)(C) or California law. *See* Dkt. Nos. 46-47. Nor has he provided evidence that Morris Yorn or Creative Artists Agency were properly served under either Federal Rule of Civil Procedure 4(h)(1)(B) or California law. *Id.*

Briggs has not shown good cause for his failure to properly serve Spacey and Brunetti. *See* Fed. R. Civ. P. 4(m). Inadvertent failure to comply with Rule 4 does not constitute good cause. *See Townsel v. Contra Costa County*, 820 F.2d 319, 320 (9th Cir. 1987). Moreover, there is no indication that Spacey or Brunetti have actually learned of this suit. *See Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). The Court declines to otherwise extend the time for service of process. Thus, all counts against Brunetti and Spacey are dismissed without prejudice.

There are no federal claims asserted against any of the remaining defendants, and the Court declines to exercise supplemental jurisdiction on the state-law claims. *See* 28 U.S.C. § 1367(c)(3). Thus, these remaining claims are also dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: April 25, 2018

_____
VINCE CHHABRIA
United States District Judge

2

ER 1187

1

2

3

4

5

6

7

8

9

10

11                          **UNITED STATES DISTRICT COURT**

12                       **NORTHERN DISTRICT OF CALIFORNIA**

13

14 STEVE WILSON BRIGGS,                    Case No: 3:18-cv-04952-VC
                                           Related Case No. 3:17-CV-6552-VC
15                  Plaintiffs,

16         v.                              [Hon. Vince Chhabria]

17 KEVIN SPACEY; ARI (ARIEL);             **[PROPOSED] ORDER GRANTING**
   EMANUEL; MATT DAMON; BEN               **DEFENDANT TRIGGER STREET**
18 AFFLECK; NBC UNIVERSAL                 **PRODUCTIONS, INC.'S MOTION**
   MEDIA, LLC; SONY PICTURES ENT          **TO DISMISS FIRST AMENDED**
19 INC.; TRIGGER STREET                   **COMPLAINT PURSUANT TO FED. R.**
   PRODUCTIONS; NEILL                     **CIV. P. 12(B)(6) AND/OR 9(B)**
20 BLOMKAMP; ASIF SATCHU;
   MORDECAI (MODI) WICZYK;                *[Filed concurrently with Notice of*
21 WILLIAM (BILL) BLOCK; DANA             *Motion and Motion to Dismiss;*
   BURNETTI; SOUND POINT CAPITAL          *Request for Judicial Notice; and*
22 MANAGEMENT, LC; MRC (and all           *Declaration of A. Alexander Lowder*]
   MRC entities and subs.),
23                                         Date:   December 6, 2018
                   Defendants.             Time:   10:00 a.m.
24                                         Crtrm.: 4

25

26

27

28

1    Defendant Trigger Street Productions, Inc. moved to dismiss Plaintiff Steven

2    Wilson Briggs's Complaint.  The Court having considered the motion and

3    supporting papers, any opposition, reply, or other submission of the parties, the

4    arguments by counsel, and other material properly before the Court, and for

5    GOOD CAUSE shown, grants the motion to dismiss and ORDERS:

6        1.    The First Claim for Relief is dismissed without leave to amend as to

7    Defendant Trigger Street Productions, Inc.

8        2.    The Second Claim for Relief is dismissed without leave to amend as

9    to Defendant Trigger Street Productions, Inc.

10       3.    The Third Claim for Relief is dismissed without leave to amend as to

11   Defendant Trigger Street Productions, Inc.

12       4.    The Fourth Claim for Relief is dismissed without leave to amend as to

13   Defendant Trigger Street Productions, Inc.

14       5.    The Fifth Claim for Relief is dismissed without leave to amend as to

15   Defendant Trigger Street Productions, Inc.

16       6.    The Sixth Claim for Relief is dismissed without leave to amend as to

17   Defendant Trigger Street Productions, Inc.

18       7.    The Seventh Claim for Relief is dismissed without leave to amend as

19   to Defendant Trigger Street Productions, Inc.

20       8.    The Eighth Claim for Relief is dismissed without leave to amend as to

21   Defendant Trigger Street Productions, Inc.

22       9.    The Ninth Claim for Relief is dismissed without leave to amend as to

23   Defendant Trigger Street Productions, Inc.

24       10.   The Tenth Claim for Relief is dismissed without leave to amend as to

25   Defendant Trigger Street Productions, Inc.

26   ////

27   ////

28

1

1
2          11.    The Eleventh Claim for Relief is dismissed without leave to amend as
3    to Defendant Trigger Street Productions, Inc.
4
5          **IT IS SO ORDERED.**
6
7    Dated: _____
8                                          _____
9                                          HONORABLE VINCE CHHABRIA
                                           UNITED STATES DISTRICT JUDGE
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 2 –

| | |
|---|---|
| 1 | Steve Wilson Briggs |
| 2 | 4322 Chico Ave., |
| | Santa Rosa, CA 95407 |
| 3 | 510 200 3763 |
| 4 | snc.steve@gmail.com |
| | PLAINTIFF In Propria Persona |
| 5 | |
| 6 | |
| 7 | |
| 8 | UNITED STATES DISTRICT COURT |
| 9 | NORTHERN DISTRICT OF CALIFORNIA |
| 10 | |

| | |
|---|---|
| 11 | Civ No: 18-cv-04952-VC |
| 12 | SUPPLEMENTAL CERTIFICATION OF SERVICE: PROOF SUMMONS WAS SERVED ON DEFENDANTS TRIGGER STREET PRODUCTIONS, INC. (TSP), AND SOUND POINT CAPITAL MANAGEMENT, ON 09/17/2018; AND SERVED ON DEFENDANTS SPACEY, BRUNETTI AND TSP, ON 09/27/2018, IN THE FORM OF SIGNED RETURN RECEIPTS FROM CERTIFIED MAIL SERVICE OF DEFENDANTS; COMPLIANT WITH CCP § 417.20 |
| 13 | |
| 14 | STEVE WILSON BRIGGS |
| 15 | Plaintiff, |
| 16 | vs |
| 17 | KEVIN SPACEY; et al |
| 18 | |
| 19 | |
| 20 | |

| | |
|---|---|
| 21 | SUPPLEMENTAL CERTIFICATION OF SERVICE: PROOF SUMMONS WAS SERVED ON DEFENDANTS TRIGGER STREET PRODUCTIONS, INC. (TSP), AND SOUND POINT CAPITAL MANAGEMENT, ON 09/17/2018; AND SERVED ON DEFENDANTS SPACEY, BRUNETTI AND TSP, ON 09/27/2018, IN THE FORM OF SIGNED RETURN RECEIPTS FROM CERTIFIED MAIL SERVICE OF DEFENDANTS; COMPLIANT WITH CCP § 417.20 |
| 21 | |
| 22 | |
| 23 | |

24  On October 25, 2018, the Plaintiff submitted to the Clerk a Request For Entry Of Default;

25  however, the Plaintiff neglected to submit to this Court a copy of the signed return receipts to verify

26  that service was executed on these out-of-state Defendants, in compliance with CCP § 417.20.

27  Therefore the Request was denied. The Plaintiff apologizes for any wasted time and energy this

28  oversight may have caused the Court, the Clerk, or the Clerk's office.

1
SUPPLEMENTAL PROOF OF SERVICE

1         This filing is to verify for the Court that all out-of-state parties have been served in

2    compliance with § 417.20. Since serving the out-of-state Defendants required two separate

3    service efforts (one on September 17, 2018, the other on September 27, 2018), the details and

4    supplemental proof of service (signed return receipts) are provided under two separate headings.

5

6              PROOF FROM 09/17/2018 SERVICE OF PROCESS:

7              Signed Return Receipts From TSP & Soundpoint

8         On September 17, 2018, Morgan Marchbanks served out-of-state Defendants Kevin

9    Spacey, Dana Brunetti, Trigger Street Productions, Inc., and Sound Point Capital

10   Management, by sending the summons, complaint and other legal documents via the United

11   States Postal Service, certified mail, with return receipt requested, as required for service of

12   process for out of state Defendants.  Dr. Marchbanks signed a declaration outlining the details of

13   this service of these Defendants, which the Plaintiff subsequently submitted to the Court.

14        Approximately a week after Dr. Marchbanks' 09/17/2018 service via mail, Defendants

15   Trigger Street Productions, Inc.'s (TSP) and Sound Point Capital Management's signed return

16   receipts arrived in the mail. [See Exhibit A, the signed certified mail return receipts, as required by

17   **CA CCP SECTION 417.20; and [See Exhibit B, the reverse side of same signed return**

18   **receipts**]. Although Defendants Spacey and Brunetti (or their agent) did not respond to Dr.

19   Morgan Marchbanks on this particular service attempt (09/17/2018), they would, however,

20   respond to her second service of process attempt, made on September 27, 2018.

21        The Certified Mail Receipts for these four service parcels is attached a Exhibit C.

21

22             PROOF FROM 09/27/2018 SERVICE OF PROCESS:

23            Signed Return Receipts From Defs Spacey, Brunetti & Sound Point Capital

24        On September 27, 2018, Dr. Morgan Marchbanks once again served out-of-state

25   Defendants Kevin Spacey, Dana Brunetti and Trigger Street Productions, Inc.  Since the

26   Plaintiff was concerned about the Defendants many rumoured, purported and registered

27   addresses, and the possibility the Defendants might attempt somehow to deny valid service, the

28   Plaintiff resolved to serve these three Defendants at least two more times and ways, on their most

1  credible out-of-state address(s). Thus the Plaintiff asked Dr. Marchbanks to send two envelopes

2  containing summons, complaint, etc., to the Defendants' address(s), or their agent's address(s),

3  specified in Dr. Marchbanks service of process declaration, and via the United States Postal

4  Service, certified mail, with return receipt requested, as required under CCP 415.20 for service of

5  process for out of state Defendants.  Approximately a week after Dr. Marchbanks' 09/27/2018

6  service via mail, Defendants Kevin Spacey's, Dana Brunetti's and TSP's signed return receipts

7  arrived in the mail. [See Exhibit D, signed certified mail return receipts for Spacey, Bruneti, and

8  TSP, as required by **CA CCP SECTION 417.20]; and [See Exhibit E, the reverse side of same**

9  **signed return receipts**]. A second return receipt came for Defendant Brunetti, and an unsigned but

10  returned receipt also came for Defendant Spacey. [See Exhibits F and G, signed front, and back,

11  respectively].  All of the return receipts sent ℅ these Defendants' registered agent were signed and

12  returned.

13       The Certified Mail Receipts for these four service parcels is attached a Exhibit H.

14                        Note:

15       The Court should observe that the numbers printed on the left base of the signed face of the

16  return receipts, and the numbers printed horizontally on the left edge of the Certified Mail Receipts,

17  precisely conform to the numbers printed horizontally on the left edge of the Certified Mail

18  Receipts attached to the respective declarations of Morgan Marchbanks.

19

20    Dated:_____10/29/2018_____        Signed:___/s/ Steve Wilson Briggs_____

21                                Plaintiff, In Propria Persona

21

22

23

24

25

26

27

28

3
SUPPLEMENTAL PROOF OF SERVICE

# EXHIBIT



# A

Case 3:18-cv-04952-VC Document 26 Filed 10/29/18 Page 5 of 13

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Trigger Street Prods
200 Park Ave South
8th Floor
NY NY 10003

9590 9402 3919 8060 3459 09

2. Article Number (Transfer from service label)

7018 0360 0002 1269 7255

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addres

B. Received by (Printed Name)       C. Date of Deli

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Rest Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmati
☐ Signature Confirmati Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053       Domestic Return Rece

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sound Point Capital Managem
375 Park Avenue,
33rd Floor
New York NY 10152

9590 9402 3919 8060 3459 16

2. Article Number (Transfer from service label)

7018 0360 0002 1269 7224

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addresse

B. Received by (Printed Name)       C. Date of Delive

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restric Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053       Domestic Return Receip

# EXHIBIT

# B





# EXHIBIT

# C



7018 0360 0002 1269 7224

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10152
OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee | $3.45 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.75 |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | |
| Postage | $17.30 |
| Total Postage and Fees | $23.50 |

0664 09
Postmark Here
ROSELAND STATION SEP 17 2018 95401
09/17/2018

Sent To: Sound Point Capital Mgmt
Street and Apt. No., or PO Box No.: 375 Park Ave, 33rd Floor
City, State, ZIP+4®: NY, NY 10152

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7018 0360 0002 1269 7248

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10003
OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee | $3.45 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.75 |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | |
| Postage | $17.30 |
| Total Postage and Fees | $23.50 |

0664 09
Postmark Here
ROSELAND STATION SEP 17 2018 95407
09/17/2018

Sent To: Kevin Spacey
Street and Apt. No., or PO Box No.: 200 Park Ave. South, 8th F
City, State, ZIP+4®: NY, NY 10003

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7018 0360 0002 1269 7262

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10003
OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee | $3.45 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.75 |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | |
| Postage | $17.30 |
| Total Postage and Fees | $23.50 |

0664 09
Postmark Here
ROSELAND STATION SEP 17 2018 95407
09/17/2018

Sent To: Dana Brunetti
Street and Apt. No., or PO Box No.: 200 Park Ave. South, 8th Floor
City, State, ZIP+4®: NY, NY 1003

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7018 0360 0002 1269 7255

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10003
OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee | $3.45 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.75 |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | |
| Postage | $17.30 |
| Total Postage and Fees | $23.50 |

0664 09
Postmark Here
ROSELAND STATION SEP 17 2018 95407
09/17/2018

Sent To: Trigger Street Productions
Street and Apt. No., or PO Box No.: 200 Park Ave. South, 8th Fl
City, State, ZIP+4®: NY, NY 10003

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

# EXHIBIT

# D

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kevin Spacey
C/o Frank Selvaggi
200 Park Ave South
8th Floor
NY NY 10003

9590 9402 3919 8060 3462 89

2. Article Number (Transfer from service label)
7018 0360 0002 1269 6258

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Javier Buendic   10/1/18

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dana Brunetti
C/o Frank Selvaggi
200 Park Ave. South
8th Floor
New York, NY 10003

9590 9402 3105 7124 9631 53

2. Article Number (Transfer from service label)
7018 0360 0002 1269 6210

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Javier Buendic   10/1/18

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Trigger Street Prods, Inc
C/o Frank Selvaggi
200 Park Ave South
8th Floor
New York, NY 10034

9590 9402 3105 7124 9631 46

2. Article Number (Transfer from service label)
7018 0360 0002 1269 6227

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

# EXHIBIT

# E



9590 9402 3919 8060 3462 89

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Dr. Morgan Marchbanks
346 Major Dr.
Santa Rosa, CA 95403

---

USPS TRACKING#

9590 9402 3105 7124 9631 53

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Dr. Morgan Marchbanks
346 Major Dr.
Santa Rosa, CA 95403

3-311146

---

USPS TRACKING#

9590 9402 3105 7124 9631 46

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Dr. Morgan March
346 Major Drive
Santa Rosa, CA 95403

EXHIBIT

F

Case 3:18-cv-04952-VC   Document 26   Filed 10/29/18   Page 15 of 19

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dana Brunetti
200 Park Ave South
8th Floor
New York, NY 10003

9590 9402 3919 8060 3462 96

7018 0360 0002 1269 6241

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____ ☐ Agent
☐ Addr

B. Received by (Printed Name)     C. Date of De
Xavier Buendie      10/1/

D. Is delivery address different from item 1?  ☑ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Expres
☐ Registered Mail™
☐ Registered Mail Re
   Delivery
☐ Return Receipt for
   Merchandise
☐ Signature Confirma
☐ Signature Confirma
   Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Re

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kevin Spacey
120 W 45th St.
STE 3601
New York, NY 10036

9590 9402 3105 7124 9631 60

7018 0360 0002 1269 6203

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____ ☐ Agen
☐ Addr

B. Received by (Printed Name)     C. Date of De

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express
☐ Registered Mail™
☐ Registered Mail Res
   Delivery
☐ Return Receipt for
   Merchandise
☐ Signature Confirmati
☐ Signature Confirmati
   Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Rece

# EXHIBIT

# F



USPS TRACKING #

9590 9402 3919 8060 3462 96

United States
Postal Service

First-Class Mail
Postage & Fees Pa
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Dr. Morgan Marchbanks
346 Major Dr.
Santa Rosa, CA 95403

3-311146

USPS TRACKING #

9590 9402 3105 7124 9631 60

United States
Postal Service

First-Class Mail
Postage & Fees P
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Dr. Morgan Marchbanks
346 Major Dr.
Santa Rosa, CA 95403

# EXHIBIT

# G



7018 0360 0002 1269 6203

**U.S. Postal Service™ CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10036

OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $3.45 | 0664 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.75 | 09 |
| ☐ Return Receipt (hardcopy) | $0.00 | |
| ☐ Return Receipt (electronic) | $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $0.00 | ROSELAND STATION SEP 27 2018 95407 |
| ☐ Adult Signature Required | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $7.00 | |
| Total Postage and Fees | $13.20 | 09/27/2018 |

Sent To: Kevin Spacey
Street and Apt. No., or PO Box No.: 120 W 45th St, STE 3601
City, State, ZIP+4®: New York, NY 10036

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7018 0360 0002 1269 6227

**U.S. Postal Service™ CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10003

OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $3.45 | 0664 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.75 | 09 |
| ☐ Return Receipt (hardcopy) | $0.00 | |
| ☐ Return Receipt (electronic) | $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $0.00 | ROSELAND STATION SEP 27 2018 95407 |
| ☐ Adult Signature Required | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $7.00 | |
| Total Postage and Fees | $13.20 | 09/27/2018 |

Sent To: Triggerstreet Productions, Inc. c/o Selv
Street and Apt. No., or PO Box No.: 200 Park Ave South 8th Flr
City, State, ZIP+4®: New York, NY 10003

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instruct

7018 0360 0002 1269 6234

**U.S. Postal Service™ CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10036

OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $3.45 | 0664 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.75 | 09 |
| ☐ Return Receipt (hardcopy) | $0.00 | |
| ☐ Return Receipt (electronic) | $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $0.00 | ROSELAND STATION SEP 27 2018 95407 |
| ☐ Adult Signature Required | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $7.00 | |
| Total Postage and Fees | $13.20 | 09/27/2018 |

Sent To: Trigger Street Productions, Inc.
Street and Apt. No., or PO Box No.: 120 W 45th St, STE 3601
City, State, ZIP+4®: NY NY 10036

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7018 0360 0002 1269 6210

**U.S. Postal Service™ CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10003

OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $3.45 | 0664 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.75 | 09 |
| ☐ Return Receipt (hardcopy) | $0.00 | |
| ☐ Return Receipt (electronic) | $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $0.00 | ROSELAND STATION SEP 27 2018 95407 |
| ☐ Adult Signature Required | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $7.00 | |
| Total Postage and Fees | $13.20 | 09/27/2018 |

Sent To: Dana Brunetti c/o Frank Selvagg
Street and Apt. No., or PO Box No.: 200 Park Ave South, 8th Flo
City, State, ZIP+4®: New York, NY 10003

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instruct

7018 0360 0002 1269 6241

**U.S. Postal Service™ CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10003

OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $3.45 | 0664 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.75 | 09 |
| ☐ Return Receipt (hardcopy) | $0.00 | |
| ☐ Return Receipt (electronic) | $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $0.00 | ROSELAND SEP 27 2018 95407 |
| ☐ Adult Signature Required | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $7.00 | |
| Total Postage and Fees | $13.20 | 09/27/2018 |

Sent To: Dana Brunetti
Street and Apt. No., or PO Box No.: 200 Park Ave South, 8th Floor
City, State, ZIP+4®: New York NY 10003

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7018 0360 0002 1269 6258

**U.S. Postal Service™ CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10003

OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $3.45 | 0664 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.75 | 09 |
| ☐ Return Receipt (hardcopy) | $0.00 | |
| ☐ Return Receipt (electronic) | $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $0.00 | ROSELAND STATION SEP 27 2018 95407 |
| ☐ Adult Signature Required | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $7.00 | |
| Total Postage and Fees | $13.20 | 09/27/2018 |

Sent To: Kevin Spacey c/o Frank Selvaggi
Street and Apt. No., or PO Box No.: 200 Park Ave South, 8th Floor
City, State, ZIP+4®: NY NY 10003

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

1   Steve Wilson Briggs
2   4322 Chico Ave.,
    Santa Rosa, CA 95407
3   510 200 3763
4   snc.steve@gmail.com
    PLAINTIFF In Propria Persona
5
6
7
8                   UNITED STATES DISTRICT COURT
9               NORTHERN DISTRICT OF CALIFORNIA
10
11                              Civ No: 18-cv-04952-VC
12   STEVE WILSON BRIGGS             DECLARATION OF DR. MORGAN
                                     MARCHBANKS, IN VERIFICATION
13            Plaintiff,             AND SUPPORT OF PLAINTIFF'S
14               vs                  SUPPLEMENTAL PROOF OF SERVICE
                                     FILING
15   KEVIN SPACEY; et al
16
17
18       DECLARATION OF DR. MORGAN MARCHBANKS, IN VERIFICATION AND
19       SUPPORT OF PLAINTIFF'S SUPPLEMENTAL PROOF OF SERVICE FILING
20
21       My name is Dr. Morgan Marchbanks and I declare the following:
21           I am over 18, and not a party of this action.
22           I am a resident of Sonoma County, where the mailing took place.
23           My address is 346 Major Dr., Santa Rosa, CA 95403.
24           On September 17th, 2018, I sent four envelopes containing summons, complaint, etc.,
25   via USPS certified mail, with return receipt requested, to the Defendants in the matter of Briggs v
26   Spacey et al, named Kevin Spacey, Dana Brunetti, Trigger Street Productions, Inc., and
27   Sound Point Capital Management.  Then again, ten Days later, on September 27, 2018, I sent
28   six more envelopes containing summons complaint, etc., via USPS certified mail, with return

                                    1
                DECLARATION RE: SUPPLEMENTAL PROOF OF SERVICE

1   receipt requested, to Defendants in this matter named Kevin Spacey, Dana Brunetti, and Trigger

2   Street Productions, Inc. The address that I sent these certified parcels to are detailed in my two

3   previous service declarations in this matter.

4         I have reviewed the document(s) that I am told that the Plaintiff in this matter, Steve Wilson

5   Briggs, submitted to the Court on October 29, 2018, entitled: "**Supplemental Certification Of**

6   **Service: Proof Summons Was Served On Defendants Trigger Street Productions, Inc.**

7   **(TSP), And Sound Point Capital Management, On 09/17/2018; And Served On**

8   **Defendants Spacey, Brunetti And TSP, On 09/27/2018, In The Form Of Signed Return**

9   **Receipts From Certified Mail Service Of Defendants; Compliant With Ccp § 417.20."**

10        I hereby verify that all of the details in that document (named in bold print above),

11  concerning my service of the Defendants, to be completely accurate with my recollection of events,

12  and consistent with the declarations that I signed previously in this matter.

13        Additionally, I reviewed the exhibit attachments attached to that document (named in bold

14  print above), and I hereby verify that all of the exhibit attachments (which are signed return receipts

15  for service, and certified mail receipts) are the same return receipts that I prepared with the USPS

16  postal clerk on September 17, 2018, and/or are the same return receipts that Mr. Briggs pre-filed

17  for me to deliver to the US post office on September 27, 2018, to attach to the parcels at the US

18  post office, and which were subsequently signed by the Defendants or their agents, and returned,

19  via USPS mail, to my address, which I later returned to Mr. Briggs.

20        I declare under penalty of perjury under the laws of the United States of America that the

21  foregoing is true and correct.

21

22  Dated:    10/29/2018        Signed

23                                   Dr. Morgan Marchbanks

24

25

26

27

28

2
DECLARATION RE: SUPPLEMENTAL PROOF OF SERVICE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 Golden Gate Avenue
San Francisco, CA 94102

_____
www.cand.uscourts.gov

Susan Y. Soong                                                                General Court Number
Clerk of Court                                                                          415-522-2000

October 26, 2018

RE:  Briggs v. Spacey
          18-cv-04952-VC

Default is declined as to Kevin Spacey, Trigger Street Productions and Dana Brunetti on October 26, 2018.

Susan Y. Soong, Clerk

_____

by:  Felicia Brown
Case Systems Administrator
415-522-2000

| 1 | Steve Wilson Briggs |
| 2 | 4322 Chico Ave., |
|   | Santa Rosa, CA 95407 |
| 3 | 510 200 3763 |
| 4 | snc.steve@gmail.com |
|   | PLAINTIFF In Propria Persona |
| 5 | |
| 6 | |
| 7 | |

<div align="center">

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

</div>

| 10 | STEVE WILSON BRIGGS | Civ No: 18-cv-04952-VC |
| 11 | Plaintiff, | |
| 12 | vs | **REQUEST FOR ENTRY OF DEFAULT** |
|    |    | [CORRECTED/AMENDED] |
| 13 | KEVIN SPACEY,  et al | |
| 14 | | |

15        <u>**REQUEST FOR ENTRY OF DEFAULT**</u>

16

17        **TO: the CLERK** of the U. S. District Court Northern District Of California.

18

19        Pursuant to FRCP 55(a), Plaintiff Steve Wilson Briggs, hereby requests that the

20   Clerk of the United States District Court Northern District Of California enter default in this

21   matter against Defendants **Kevin Spacey**, **Dana Brunetti**, and **Trigger Street Productions,**

21   **Inc.,** on the grounds that these Defendants did not respond to the Complaint within the time

22   limits prescribed by the Federal Rules of Civil Procedure, Rule 55(a).

23        ● The summons in this matter was issued on August 15, 2018.

24        ● In the summons the Court gave the defendants a fixed 21 days to answer.

25        ● The summons and **complaint** were served on these Defendants on September 17,

26            2018.

27        ● The Defendants have not answered with motion or any other responsive pleading

28            within the time limit fixed by the court. The Defendants are not known to be in the

<div align="center">

1
REQUEST FOR ENTRY OF DEFAULT

</div>

| | |
|---|---|
| 1 | military service, as required by 50 U.S.C. app. Section 520. |
| 2 | |
| 3 | Dated:_____10/25/2018_____         Signed:_____/s/ Steve Wilson Briggs_____ |
| 4 | Plaintiff, In Propria Persona |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

2
REQUEST FOR ENTRY OF DEFAULT

1   Steve Wilson Briggs
2   4322 Chico Ave.,
    Santa Rosa, CA 95407
3   510 200 3763
4   snc.steve@gmail.com
    PLAINTIFF In Propria Persona
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **NORTHERN DISTRICT OF CALIFORNIA**
10                                      Civ No: 18-cv-04952-VC
11   STEVE WILSON BRIGGS                **CERTIFICATION OF SERVICE**
                                        **OF "REQUEST FOR ENTRY OF**
12              Plaintiff,              **DEFAULT"**
13              vs                      **AND  DECLARATION OF**
                                        **CECILE LUSBY**
14   KEVIN SPACEY;  et al
15
16   **CERTIFICATION OF SERVICE OF "REQUEST FOR ENTRY OF DEFAULT"**
17            **AND DECLARATION OF CECILE LUSBY**
18       My name is Cecile Lusby, and I declare the following:
19   1.  I am over 18, and not a party of this action.
20   2.  I am a resident of Sonoma County, where the mailing took place.
21   4.  My address is 4322 Chico Avenue, Santa Rosa, CA 95407.
21   5.  On **October 25, 2018,** I mailed three (3) envelopes (separately addressed envelopes
22   to three separate parties) from the U.S. Post Office at 2585 Sebastopol Rd., Santa Rosa,
23   California. Each of the three envelopes contained the following documents:
24            a.  **Request For Entry Of Default**
25   6.  The names of the three separately served parties were:
26            a.  Kevin Spacey
27            b.  Dana Brunetti
28            c.  Trigger Street Productions, Inc.

1
PROOF OF SERVICE

ER 1215

7.  I addressed the envelopes to the individual defendants % (care of) **Frank Selvaggi**,

1   who, I am told, is the designated agent for service of process for each of the parties served

2   (Kevin Spacey, Dana Brunetti, Trigger Street Productions, Inc.).

3   8.  I served the documents to each of the separate parties, listed above, by enclosing the

4   documents in separate envelopes, with prepaid first-class postage affixed, then depositing

5   the envelopes in the mail drop box of the U.S. Post Office at 2585 Sebastopol Rd., Santa

6   Rosa, California, on October 25, 2018.

7   9.  These three (3) individual envelopes were addressed as follows:

8       a.  Kevin Spacey
9           % Frank Selvaggi
            200 Park Avenue South, 8th Floor
10          New York, NY 10003

11      b.  Dana Brunetti
12          % Frank Selvaggi
13          200 Park Avenue South, 8th Floor
            New York, NY 10003
14
        c.  Trigger Street Productions, Inc.
15          % Frank Selvaggi
16          200 Park Avenue South, 8th Floor
17          New York, NY 10003

18  10.  I declare under penalty of perjury under the laws of the United States of America

19  that the foregoing is true and correct.

20

21  Dated:___10/25/2018___   Signed: *Cecile Lusby*

22                                   Cecile Lusby

23

24

25

26

27

28

2
PROOF OF SERVICE

1   Steve Wilson Briggs
2    4322 Chico Ave.,
    Santa Rosa, CA 95407
3    510 200 3763
    snc.steve@gmail.com
4   PLAINTIFF In Propria Persona
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10   STEVE WILSON BRIGGS | Civ No: 18-cv-04952-VC |
| 11          Plaintiff, | **DECLARATION OF PLAINTIFF** |
| | **STEVE WILSON BRIGGS,** |
| 12             vs | **IN SUPPORT OF REQUEST FOR** |
| 13   KEVIN SPACEY;  et al | **ENTRY OF DEFAULT** |

14
15              **DECLARATION OF PLAINTIFF STEVE WILSON BRIGGS,**
16                **IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT**
17
18       My name is Steve Wilson Briggs, and I declare the following:
19    1.  Service of the the summons and Complaint in this matter was made upon the
20        defendants via certified USPS mail, with return receipt requested, by Dr Morgan
21        Marchbanks, on October 25, 2018.
21    2.  The Defendants have not responded to the summons and complaint with a motion,
22        answer or in any other manner.
23    3.  The Defendants are not juveniles, incompetent, or in the military.
24
25        Dated: October 25, 2018      Signed:  /s/ Steve Wilson Briggs____
26                                      Plaintiff, In Propria Persona
27
28

1    Steve Wilson Briggs
2    4322 Chico Ave.,
     Santa Rosa, CA 95407
3    510 200 3763
4    snc.steve@gmail.com
     PLAINTIFF In Propria Persona

**ORIGINAL FILED**

**OCT − 4 2018**

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8          **UNITED STATES DISTRICT COURT**

9         **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11   STEVE WILSON BRIGGS | Civ No: 18-cv-04952-VC |
| 12         Plaintiff, | **(FIRST) PROOF OF SERVICE OF SUMMONS AND COMPLAINT, AFFIDAVIT OF DR. MORGAN MARCHBANKS** |
| 13         vs | |
| 14   KEVIN SPACEY; et al | |

16     **FIRST PROOF OF SERVICE OF SUMMONS AND COMPLAINT,**

17        **AFFIDAVIT OF DR. MORGAN MARCHBANKS**

18    1.   I am over 18, and not a party of this action.

19    2.   I am a resident of Sonoma County, where the mailing took place.

20    3.   My name is Dr. Morgan Marchbanks

21    4.   My address is 346 Major Dr., Santa Rosa, CA 95403.

21    5.   On **September 17th**, 2018, I mailed four envelopes to four separate parties, from the

22   U.S. Post Office at 2585 Sebastopol Rd., Santa Rosa, California. Each of the four envelopes

23   contained the following documents:

24        a.   **Summons** In A Civil Action (2)

25        b.   **Complaint**

26        c.   **Civil Cover Sheet**

27        d.   Notice Of Availability Of Magistrate Judge To Exercise Jurisdiction

28        e.   Consent Or Declination To Magistrate Judge Jurisdiction

| | |
|---|---|
| 1 | f.   Welcome To The Oakland Divisional Office |
| 2 | g.   ECF Registration Handout |
| 3 | h.   Proposed Order Granting Motion For Permission For Electronic Case Filing |
| 4 | i.   Order Setting Initial Case Management And ADR Deadlines |
| 5 | j.   Standing Order General (SBA) |
| 6 | k.   Standing Order For All Judges OF The Northern District Of California |
| 7 | l.   Standing Order - General (SBA) Patent Case |
| 8 | 6.  The names of the four separately served parties were: |
| 9 | a.   Kevin Spacey |
| 10 | b.   Dana Brunetti |
| 11 | c.   Trigger Street Productions |
| 12 | d.   Sound Point Capital Management |
| 13 | 7.  I served the documents to each of the separate parties, listed above, by enclosing the |
| 14 | documents in separate envelopes and giving the envelope to a U.S. Postal Service clerk at |
| 15 | the U.S. Post Office at 2585 Sebastopol Rd., Santa Rosa, California, and paying the clerk to |
| 16 | send each of the envelopes "Priority" mail, certified and with return receipt requested, to |
| 17 | addresses that are outside of California. |
| 18 | 7.  The four individual envelopes were addressed as follows: |
| 19 | |
| 20 | 1. Trigger Street Productions |
| 21 | 200 Park Avenue South, 8th Floor |
| | New York, NY 10003 |
| 21 | |
| 22 | 2. Kevin Spacey |
| 23 | 200 Park Avenue South, 8th Floor |
| | New York, NY 10003 |
| 24 | |
| 25 | 3. Sound Point Capital Management |
| 26 | 375 Park Avenue, 33rd Floor |
| | New York, NY 10152 |
| 27 | |
| 28 | 4. Dana Brunetti |
| | ℅ Cavalry Media |

2
PROOF OF SERVICE

1         200 Park Avenue South, 8th Floor

2         New York, NY 10003

3    8.  I am not a professional process server.

4    9.  I was not paid to serve these documents upon the parties.

5    10. I declare under penalty of perjury under the laws of the United States of America that

6 the foregoing is true and correct.

7

8   Dated: _____09/17/2018_____    Signed _____

9                            Dr. Morgan Marchbanks

10

11

12

13

14

15

16

17

18

19

20

21

21

22

23

24

25

26

27

28



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10003

Certified Mail Fee $3.45

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $ $0.00
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $ $0.00

Postage $7.00
Total Postage and Fees $13.20

0664
09

Postmark Here

09/27/2018

Sent To Daya Brunetti
Street and Apt. No., or PO Box No. 200 Park Ave South, 8th Floor
City, State, ZIP+4 New York NY 10003

PS Form 3800, April 2015 PSN 7530-02-000-9047

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10003

Certified Mail Fee $3.45

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $ $0.00
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $ $0.00

Postage $7.00
Total Postage and Fees $13.20

0664
09

Postmark Here

09/27/2018

Sent To Kevin Spacey c/o Frank Selvaggi
Street and Apt. No., or PO Box No. 200 Park Ave. South, 4th Floor
City, State, ZIP+4 New York NY 10003

PS Form 3800, April 2015 PSN 7530-02-000-9047

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10003

Certified Mail Fee $3.45

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $ $0.00
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $ $0.00

Postage $7.00
Total Postage and Fees $13.20

0664
09

Postmark Here

09/27/2018

Sent To Trigger Street Productions, Inc.
Street and Apt. No., or PO Box No. 200 Park Ave South 8th Fl (c/o Selvaggi)
City, State, ZIP+4 New York NY 10003

PS Form 3800, April 2015 PSN 7530-02-000-9047

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10036

Certified Mail Fee $3.45

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $ $0.00
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $ $0.00

Postage $7.00
Total Postage and Fees $13.20

0664
09

Postmark Here

09/27/2018

Sent To Trigger Street Productions, Inc.
Street and Apt. No., or PO Box No. 120 W 45th St, STE 3601
City, State, ZIP+4 NY NY 10036

PS Form 3800, April 2015 PSN 7530-02-000-9047

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10036

Certified Mail Fee $3.45

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $ $0.00
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $ $0.00

Postage $7.00
Total Postage and Fees $13.20

0664
09

Postmark Here

09/27/2018

Sent To Kevin Spacey
Street and Apt. No., or PO Box No. 120 W 45 St, STE 3601
City, State, ZIP+4 New York NY 10036

PS Form 3800, April 2015 PSN 7530-02-000-9047

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

NEW YORK, NY 10003

Certified Mail Fee $3.45

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $ $0.00
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage $7.00
Total Postage and Fees $13.20

0664
09

Postmark Here

09/27/2018

Sent To Daya Brunetti c/o Frank Selv.
Street and Apt. No., or PO Box No. 200 Park Ave South, 8th Fl
City, State, ZIP+4 New York, NY 10003

PS Form 3800, April 2015 PSN 7530-02-000-9047

```
                    ROSELAND
               2585 SEBASTOPOL RD
                   SANTA ROSA
                       CA
                   95407-9991
                   0569960664
09/27/2018     (800)275-8777   5:05 PM

Product                Sale       Final
Description             Qty       Price

PM 2-Day                 1        $7.00
Legal FR Env
    (Domestic)
    (NEW YORK, NY  10036)
    (Flat Rate)
    (Expected Delivery Date)
    (Saturday 09/29/2018)
Certified                1        $3.45
    (@@USPS Certified Mail #)
    (7018036000212696203)
Return                   1        $2.75
Receipt
    (@@USPS Return Receipt #)
    (9590940231057124963160)
PM 2-Day                 1        $7.00
Legal FR Env
    (Domestic)
    (NEW YORK, NY  10003)
    (Flat Rate)
    (Expected Delivery Date)
    (Saturday 09/29/2018)
Certified                1        $3.45
    (@@USPS Certified Mail #)
    (7018036000212696210)
Return                   1        $2.75
Receipt
    (@@USPS Return Receipt #)
    (9590940231057124963153)
PM 2-Day                 1        $7.00
Legal FR Env
    (Domestic)
    (NEW YORK, NY  10003)
    (Flat Rate)
    (Expected Delivery Date)
    (Monday 10/01/2018)
Certified                1        $3.45
    (@@USPS Certified Mail #)
    (7018036000212696227)
Return                   1        $2.75
Receipt
    (@@USPS Return Receipt #)
    (9590940231057124963146)
PM 2-Day                 1        $7.00
Legal FR Env
    (Domestic)
    (NEW YORK, NY  10036)
    (Flat Rate)
    (Expected Delivery Date)
    (Monday 10/01/2018)
Certified                1        $3.45
    (@@USPS Certified Mail #)
    (7018036000212696234)
Return                   1        $2.75
Receipt
    (@@USPS Return Receipt #)
    (9590940231057124963139)
PM 2-Day                 1        $7.00
Legal FR Env
    (Domestic)
    (NEW YORK, NY  10003)
    (Flat Rate)
    (Expected Delivery Date)
    (Monday 10/01/2018)
Certified                1        $3.45
    (@@USPS Certified Mail #)
    (7018036000212696241)
Return                   1        $2.75
```

1   Steve Wilson Briggs
2   4322 Chico Ave.,
    Santa Rosa, CA 95407
3   510 200 3763
    snc.steve@gmail.com
4   PLAINTIFF In Propria Persona
5
6
7
8                       **UNITED STATES DISTRICT COURT**
9                   **NORTHERN DISTRICT OF CALIFORNIA**
10
11  STEVE WILSON BRIGGS                    Civ No: 18-cv-04952-VC
12          Plaintiff,                  **[PROPOSED] ENTRY OF DEFAULT**
13             vs
14  KEVIN SPACEY,  et al
15
16
17                  **[PROPOSED] ENTRY OF DEFAULT**
18
19          Plaintiff, Steve Wilson Briggs, requests that the clerk of court enter default against
20  defendants Kevin Spacey, Dana Brunetti, and Trigger Street Productions, Inc., pursuant to
21  Federal Rule of Civil Procedure 55(a).  As it appears from the record that said defendants
21  have failed to appear, plead or otherwise defend, the default of defendants Spacey, Btunetti
22  and Trigger Street Productions, Inc  is hereby entered, pursuant to Federal Rule of Civil
23  Procedure 55(a).
24          Dated this _____ day of _____, 2018.
25
26                              _____
27                              Susan Y. Soong, Clerk of Court
28

                                    1
                        [PROPOSED] ENTRY OF DEFAULT

1  Steve Wilson Briggs
2  4322 Chico Ave.,
   Santa Rosa, CA 95407
3  510 200 3763
4  snc.steve@gmail.com
   PLAINTIFF In Propria Persona
5
6
7
8                  **UNITED STATES DISTRICT COURT**
9                **NORTHERN DISTRICT OF CALIFORNIA**
10                                    Civ No: 18-cv-04952-VC
11  STEVE WILSON BRIGGS              **DECLARATION OF NEXUS**
                                    **ASSOON, REGARDING SERVICE**
12              Plaintiff,           **OF PROCESS OF DEFENDANTS**
                                    **MRC (MEDIA RIGHTS CAPITAL**
13              vs                   **AND ALL MRC ENTITIES),**
14  KEVIN SPACEY;  et al            **ASIF SATCHU, AND**
                                    **MORDECAI WICZYK**
15
16
17  **DECLARATION OF NEXUS ASSOON, REGARDING SERVICE OF PROCESS OF**
18  **DEFENDANTS MRC (MEDIA RIGHTS CAPITAL AND ALL MRC ENTITIES),**
    **ASIF SATCHU, AND MORDECAI WICZYK**
19
20      My name is Nexus Assoon, and I declare the following:
21  1.  I am over 18, and not a party of this action.
21  2.  I am a resident of Los Angeles County, where this service of process took place.
22  4.  My address is 3007 4th Ave., Los Angeles, CA 90018.
23  5.  On **October 19th**, 2018, I attempted to serve summons, Complaint and other legal
24  documents on **Media Rights Capital** (and all MRC entities)**, Asif Satchu,** and **Mordecai**
25  **Wiczyk,** by personally delivering said legals documents to Media Rights Capital's
26  **headquarters, at 9665 Wilshire Blvd., Beverly Hills, CA 90212.**
27  6.  **HOWEVER,** when I arrived to MRC's headquarters the exterior of the building was
28  under construction and blocked off, although I did not actually see any construction

ER 1224

1   workers. It appeared as if the building was open only to construction workers. When I

2   circled the building I eventually found a building entry. At the door a security guard greeted

3   me and asked me where I was going.

4      7.   I explained that I was there to serve legal documents to MRC, and MRC's co-CEOs

5   Asif Satchu and Mordecai Wiczyk.

6      8.   The security guard explained that until the building construction project was

7   complete MRC had moved its headquarters to **1800 Century Park East (10th Fl), Los**

8   **Angeles CA 90067**. This new address was the address that was given to me, by the Plaintiff

9   Steve Wilson Briggs, as the second—backup—address to serve these parties (as the Plaintiff

10   explained that **1800 Century Park East** address is the address that the California Secretary

11   of State's Business Entity registration designates as the address for service of process). The

12   Plaintiff further explained that the designated register agent for service of process at this

13   address, for MRC, was Scott Tenley.

14      9.   **HOWEVER**, when I arrived at 1800 Century Park East (10th Fl), Los Angeles CA

15   90067 (again, the officially designated address for service of process), there was no one at

16   all on the very large 10th floor to receive me or assist me. There was no door or directory

17   with the name or words *Scott Tenley*, *MRC*, or *Media Rights Capital*. After about 15

18   minutes of searching, I encountered a tall, young, caucasian man getting on an elevator, who

19   volunteered to help find a **manager** to assist me.

20      10.   After another 5-7 minutes, the tall man returned with another man (who I assume

21   was some sort of building or floor manager). This new "manager" was an African American

21   man of moderate (brown) complexion. I explained to this man that I was looking for **Scott**

22   **Tenley**, MRC's registered agent for service of process.

23      11.   <u>The "manager" had no idea who Scott Tenley was</u>. I explained I was there to

24   serve documents for MRC, Asif Satchu and Mordecai Wiczyk, and optimally I should give

25   the documents to Scott Tenley.

26      Once I said the name MRC the "manager" indicated that he knew this company.

27   The man asked me to follow him to his office. Next to his office was a large room full of

28   racks and racks of very nice and unusual clothes. The room appeared to be a storage area for

1   movie wardrobe. The man walked to a small desk in the office and wrote down an address.

2   The "manager" then handed me the address and explained that Media Rights Capital (MRC)

3   was no longer located in that building and had moved to the address on the slip of paper in

4   his hand.

5        The address on the slip of paper was **9665 Wilshire Blvd., Beverly Hills, CA**

6   **90212**, which is the MRC headquarters address where I attempted to serve MRC, Satchu

7   and Wiczyk about an hour earlier —which was blocked off by construction barriers, and

8   where the security guard stopped me from entering the building and insisted MRC was no

9   longer located and had moved until the construction project concluded.

10   8.  I am not a professional process server.

11   9.  I was paid a total of $500 to serve these documents upon several Defendants in the

12   matter of *Briggs v Spacey, et al* .

13   10.  I declare under penalty of perjury under the laws of the United States of America that

14   the foregoing is true and correct.

15

16   Dated:___10/20/2018___   Signed:___

17                       Nexus Assoon

18

19

20

21

21

22

23

24

25

26

27

28

3
PROOF OF SERVICE

1  Steve Wilson Briggs
2  4322 Chico Ave.,
   Santa Rosa, CA 95407
3  510 200 3763
   snc.steve@gmail.com
4  PLAINTIFF In Propria Persona
5
6
7
8              **UNITED STATES DISTRICT COURT**
9            **NORTHERN DISTRICT OF CALIFORNIA**

10 |                                    | Civ No: 18-cv-04952-VC              |
11 | STEVE WILSON BRIGGS                 | **PROOF OF SERVICE**               |
12 |            Plaintiff,               | **DECLARATION OF NEXUS**           |
   |                                     | **ASSOON, REGARDING SERVICE**      |
13 |               vs                    | **OF PROCESS OF DEFENDANTS**       |
   |                                     | **SONY PICTURES**                  |
14 | KEVIN SPACEY; et al                 | **ENTERTAINMENT, LLC**             |
15 |                                     |                                    |
16
17
18 **DECLARATION OF NEXUS ASSOON, REGARDING SERVICE OF PROCESS OF**
19          **DEFENDANT NBCUNIVERSAL MEDIA, LLC**
20
21      My name is Nexus Assoon, and I declare the following:
21   1.  I am over 18, and not a party of this action.
22   2.  I am a resident of Los Angeles County, where this service of process took place.
23   4.  My address is 3007 4th Ave., Los Angeles, CA 90018.
24   5.  On **October 19th**, 2018, I served summons, Complaint and other legal documents
25 on **Sony Pictures Entertainment, Inc**, by personally delivering said legals documents to
26 the Sony Pictures Entertainment, Inc's stated address for service: 10202 W. Washington
27 Blvd., Culver City CA 90232 (designated in the California Secretary of State's Business
28 Entity statement as the address for service of process).

1
PROOF OF SERVICE

1    6.  The Sony Pictures' agent (whom I gave the legal documents to) stated her name was

2    **Deborah Ahn**. Deborah Ahn also stated that she was with Sony Pictures' litigation

3    department.

4    7.  Incidentally, when I arrived at the lobby of Sony Pictures' designated service of

5    process building (10202 W. Washington Blvd., Culver City CA 90232) it was approximately

6    4:25pm. However, before accepting and receiving the documents, a Sony Pictures' security

7    personnel, whom I encountered in the building lobby, asked me to wait twenty minutes in

8    the building lobby, because she alleged that all of the legal and/or service agents were in a

9    meeting. Thus, I waited the twenty minutes. And at approximately 5pm, Deborah Ahn came

10   out to the lobby and accepted the documents.

11    8.  The documents that I served upon Sony Pictures Entertainment, Inc., by delivering

12   them to Deborah Ahn, were the following documents:

13        a.  **Summons** In A Civil Action (2)

14        b.  **Complaint**

15        c.  **Civil Cover Sheet**

16        d.  Notice Of Availability Of Magistrate Judge To Exercise Jurisdiction

17        e.  Consent Or Declination To Magistrate Judge Jurisdiction

18        f.  Welcome To The Oakland Divisional Office

19        g.  ECF Registration Handout

20        h.  Proposed Order Granting Motion For Permission For Electronic Case Filing

21        i.  Order Setting Initial Case Management And ADR Deadlines

21        j.  Standing Order General (SBA)

22        k.  Standing Order For All Judges OF The Northern District Of California

23        l.  Standing Order - General (SBA) Patent Case

24        m. Order Relating Cases (Hon. Judge Vincent Chhabria)

25        n.  Reassigned Case - Notice of New Hearing Date -VC

26        o.  Related Case Order

27    9.  I am not a professional process server.

28   10. I was paid a total of $500 to serve these documents upon several Defendants in the

ER 1228

1    matter of *Briggs v Spacey, et al* .

2      11.  I declare under penalty of perjury under the laws of the United States of America

3    that the foregoing is true and correct.

4

5    Dated:____10/20/2018_____    Signed:_____

6                                       Nexus Assoon

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

21

22

23

24

25

26

27

28

3
PROOF OF SERVICE

ER 1229

1  Steve Wilson Briggs
2  4322 Chico Ave.,
   Santa Rosa, CA 95407
3  510 200 3763
4  snc.steve@gmail.com
   PLAINTIFF In Propria Persona
5
6
7
8              UNITED STATES DISTRICT COURT
9            NORTHERN DISTRICT OF CALIFORNIA
10 |                                    | Civ No: 18-cv-04952-VC
11 | STEVE WILSON BRIGGS                |   **PROOF OF SERVICE**
   |                                    |   **DECLARATION OF NEXUS**
12 |              Plaintiff,            | **ASSOON, REGARDING SERVICE**
   |                                    | **OF PROCESS OF DEFENDANTS**
13 |                vs                  | **NBCUNIVERSAL MEDIA, LLC**
14 | KEVIN SPACEY; et al                |
15
16
17    **PROOF OF SERVICE DECLARATION OF NEXUS ASSOON, REGARDING**
18       **SERVICE OF PROCESS OF DEFENDANT NBCUNIVERSAL MEDIA, LLC**
19
20     My name is Nexus Assoon, and I declare the following:
21   1.  I am over 18, and not a party of this action.
21   2.  I am a resident of Los Angeles County, where this service of process took place.
22   4.  My address is 3007 4th Ave., Los Angeles, CA 90018.
23   5.  On **October 19th**, 2018, I served summons, Complaint and other legal documents
24  on **NBCUniversal Media, LLC**, by personally delivering said legals documents to the
25  Defendant's registered agent for service of process, **CT Corporation**, located at 818 West
26  Seventh Street (Suite 930), Los Angeles, CA 90017.
27   6.  The CT Corporation agent or staff member whom I gave the documents to was
28  named **Carlos Paz**. Mr. Paz stated his job title was "Intake Specialist."

1
PROOF OF SERVICE

1    7.   The documents that I served upon NBCUniversal Media, LLC, by delivering them
2  to CT Corporation's intake specialist, Carlos Paz, were the following documents:
3           a.   **Summons** In A Civil Action (2)
4           b.   **Complaint**
5           c.   **Civil Cover Sheet**
6           d.   Notice Of Availability Of Magistrate Judge To Exercise Jurisdiction
7           e.   Consent Or Declination To Magistrate Judge Jurisdiction
8           f.   Welcome To The Oakland Divisional Office
9           g.   ECF Registration Handout
10          h.   Proposed Order Granting Motion For Permission For Electronic Case Filing
11          i.   Order Setting Initial Case Management And ADR Deadlines
12          j.   Standing Order General (SBA)
13          k.   Standing Order For All Judges OF The Northern District Of California
14          l.   Standing Order - General (SBA) Patent Case
15          m.  Order Relating Cases (Hon. Judge Vincent Chhabria)
16          n.   Reassigned Case - Notice of New Hearing Date -VC
17          o.   Related Case Order
18  8.  I am not a professional process server.
19  9.  I was paid a total of $500 to serve these documents upon several Defendants in the
20  matter of *Briggs v Spacey, et al* .
21  10. I declare under penalty of perjury under the laws of the United States of America that
21  the foregoing is true and correct.
22
23  Dated:____10/20/2018_____   Signed:_____
24                                          Nexus Assoon
25
26
27
28

1    Steve Wilson Briggs
2    4322 Chico Ave.,
     Santa Rosa, CA 95407
3    510 200 3763
     snc.steve@gmail.com
4    PLAINTIFF In Propria Persona
5
6
7
8              **UNITED STATES DISTRICT COURT**
9            **NORTHERN DISTRICT OF CALIFORNIA**
10   |                                | Civ No: 18-cv-04952-VC            |
11   | STEVE WILSON BRIGGS            | **PROOF OF SERVICE**               |
12   |            Plaintiff,          | **DECLARATION OF NEXUS**           |
     |                                | **ASSOON, REGARDING SERVICE**      |
13   |              vs                | **OF PROCESS OF DEFENDANTS**       |
     |                                | **ARI EMANUEL, NEILL**             |
14   | KEVIN SPACEY;  et al           | **BLOMKAMP, MATT DAMON, BEN**      |
15   |                                | **AFFLECK**                        |
16
17
18       **PROOF OF SERVICE DECLARATION OF NEXUS ASSOON, REGARDING**
19              **SERVICE OF PROCESS OF DEFENDANTS**
20       **ARI EMANUEL, NEILL BLOMKAMP, MATT DAMON, BEN AFFLECK**
21
21       My name is Nexus Assoon, and I declare the following:
22       1.   I am over 18, and not a party of this action.
23       2.   I am a resident of Los Angeles County, where this service of process took place.
24       4.   My address is 3007 4th Ave., Los Angeles, CA 90018.
25       5.   On **October 19th**, 2018, I served summons, Complaint and other legal documents
26   on Ari Emanuel, Neill Blomkamp, Matt Damon, and Ben Affleck by personally delivering
27   summons complaint and other legal documents to the headquarters of WME (William
28   Morris Endeavor), at 9601 Wilshire Blvd (3rd floor), Beverly Hills, CA 90210.

1
PROOF OF SERVICE

1   6.   When I arrived to the WME building, the lobby receptionist greeted me, and asked

2   me how he could assist me.

3   7.   I explained that I was there to go to the third (3rd) floor to serve legal documents for

4   aforementioned parties.

5   8.   The receptionist then instructed me that correct location for service on these parties

6   was in the downstairs mailroom. I then took the elevator to the downstairs mailroom.

7   9.   In the mailroom, I was greeted by a man who identified himself as "Josh, the

8   Mailroom Supervisor." Josh was caucasian, in his mid 30s, with shortish blonde hair and

9   beard, a slender build, about 5' 10" tall.  There was another mailroom employee working in

10  the mailroom who was also caucasian, and who also appeared to be in his 30s, about 5' 8"

11  tall, brown hair and beard, with glasses.

12  10.  I told Josh that I was there to serve documents for the CEO of WME, Ari Emanuel,

13  and I began to ask if he (Josh) could accept service of process for the WME clients Neill

14  Blomkamp, Matt Damon and Ben Affleck.

15  11.  The man in glasses interrupted and prompted Josh that he should probably call the

16  legal department.

17  12.  Josh ignored the other man with sort of a wave of his hand, and said something like,

18  "I got this." Josh then told me that he could accept the documents and proceeded to take the

19  documents from my hands.

20  13.  The documents that I served upon Ari Emanuel, Neill Blomkamp, Matt Damon and

21  Ben Affleck by delivering them to William Morris Endeavor's mailroom personnel, were:

21      a.   **Summons** In A Civil Action (2)

22      b.   **Complaint**

23      c.   **Civil Cover Sheet**

24      d.   Notice Of Availability Of Magistrate Judge To Exercise Jurisdiction

25      e.   Consent Or Declination To Magistrate Judge Jurisdiction

26      f.   Welcome To The Oakland Divisional Office

27      g.   ECF Registration Handout

28      h.   Proposed Order Granting Motion For Permission For Electronic Case Filing

ER 1233

| | |
|---|---|
| 1 | i. Order Setting Initial Case Management And ADR Deadlines |
| 2 | j. Standing Order General (SBA) |
| 3 | k. Standing Order For All Judges OF The Northern District Of California |
| 4 | l. Standing Order - General (SBA) Patent Case |
| 5 | m. Order Relating Cases (Hon. Judge Vincent Chhabria) |
| 6 | n. Reassigned Case - Notice of New Hearing Date -VC |
| 7 | o. Related Case Order |
| 8 | 14. I am not a professional process server. |
| 9 | 15. I was paid a total of $500 to serve these documents upon these and several other |
| 10 | Defendants in the matter of *Briggs v Spacey, et al.* |
| 11 | 16. I declare under penalty of perjury under the laws of the United States of America that |
| 12 | the foregoing is true and correct. |
| 13 | |
| 14 | Dated:____10/20/2018____    Signed:_____ |
| 15 | Nexus Asscon |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

3
PROOF OF SERVICE

1  Steve Wilson Briggs
2  4322 Chico Ave.,
   Santa Rosa, CA 95407
3  510 200 3763
   snc.steve@gmail.com
4  PLAINTIFF In Propria Persona
5
6
7
8                **UNITED STATES DISTRICT COURT**
9              **NORTHERN DISTRICT OF CALIFORNIA**

10                              | Civ No: 18-cv-04952-VC
11  STEVE WILSON BRIGGS         | **DECLARATION OF NEXUS ASSOON**
                                | **REGARDING ATTEMPTED**
12         Plaintiff,           | **SERVICE OF PROCESS ON**
                                | **KEVIN SPACEY, DANA BRUNETTI,**
13           vs                 | **AND TRIGGER STREET**
14  KEVIN SPACEY;  et al        | **PRODUCTIONS, INC.**
15

16  **DECLARATION OF NEXUS ASSOON REGARDING ATTEMPTED SERVICE OF**
17  **PROCESS ON KEVIN SPACEY, DANA BRUNETTI, AND TRIGGER STREET**
18                        **PRODUCTIONS, INC.**
19
20     My name is Nexus Assoon, and I declare the following:
21     1.  I am over 18, and not a party of this action.
21     2.  I am a resident of Los Angeles County, where this service of process took place.
22     4.  My address is 3007 4th Ave., Los Angeles, CA 90018.
23     5.  On **October 19th**, 2018, I served attempted to serve summons, Complaint and other
24  legal documents on **Kevin Spacey, Dana Brunetti,** and **Trigger Street Productions, Inc.,**
25  by personally delivering said legals documents to the Sony Pictures Entertainment, Inc's
26  stated address for service: 11766 W. Wilshire Blvd., Los Angeles, CA 90025 (designated in
27  the California Secretary of State's Business Entity statement as the address for service of
28  process for Trigger Street Productions and its executives).

1
PROOF OF SERVICE

1   6.   Entering the building, as I approached the elevators I observed a sign that read, as I
2   recall: **"VISITORS: Please check in at the Visitors' Desk before entering the elevator."**

3   7.   At the visitors' desk, I told the receptionist that I was there to give legal documents
4   Trigger Street Productions' registered agent for service of process—Frank Selvaggi, in suite
5   #1610, for service of process on Selvaggi's clients Kevin Spacey, Dana Brunetti, and
6   Trigger Street Productions, Inc.

7   8.   The receptionist at the visitors' desk (a man with medium brown skin, a reddish
8   afro, and African American features) then told me that Altman, Greenfield & Selvaggi (the
9   company that Frank Selvaggi works for) **moved out of the building four of five years**
10  **earlier**, and further stated that room #1610 is completely vacant and has been vacant since
11  Altman, Greenfield & Selvaggi moved out 4 or 5 years ago. The receptionist then told me
12  that he understood that Altman, Greenfield and Selvaggi moved to "the Equinox building
13  near U.C.L.A."

14  9.   I had, and have, no idea what or which "Equinox" building the receptionist was
15  referring to.

16  10.  I am not a professional process server.

17  11.  I was paid a total of $500 to serve these documents upon several Defendants in the
18  matter of *Briggs v Spacey, et al* .

19  12.  I declare under penalty of perjury under the laws of the United States of America
20  that the foregoing is true and correct.

21

21  Dated:___10/20/2018___   Signed:_____

22                                      Nexus Assoon

23

24

25

26

27

28

2
PROOF OF SERVICE

ER 1236

1    Steve Wilson Briggs
2    4322 Chico Ave.,
     Santa Rosa, CA 95407
3    510 200 3763
     snc.steve@gmail.com
4    PLAINTIFF In Propria Persona
5
6
7

8                 **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10   STEVE WILSON BRIGGS | |
| 11        Plaintiff, | Civ No: 18-cv-04952-VC |
| 12          vs | |
| 13   KEVIN SPACEY; ARI EMANUEL; | **REQUEST FOR ENTRY OF DEFAULT** |
| 14   MATT DAMON; BEN AFFLECK; | AGAINST DEFENDANTS |
|      NBCUNIVERSAL MEDIA, LLC; | KEVIN SPACEY, |
| 15   SONY PICTURES ENT INC.; | DANA BRUNETTI, AND |
|      TRIGGER STREET PRODUCTIONS INC; | TRIGGER STREET PRODUCTIONS, INC. |
| 16   NEILL BLOMKAMP; ASIF SATCHU; | |
| 17   MORDECAI (MODI) WICZYK; | |
|      BILL BLOCK; DANA BRUNETTI; | |
| 18   SOUND POINT CAPITAL MGMT, LC; | |
| 19   MRC (and all MRC entities and subs.) et al | |

20

21               **<u>REQUEST FOR ENTRY OF DEFAULT</u>**

21

22       TO: the CLERK of the U. S. District Court Northern District Of California.

23

24        The Plaintiff in this matter, Steve Wilson Briggs, hereby requests that the Clerk of

25 the United States District Court Northern District Of California enter default in this matter

26 against Defendants **Kevin Spacey**, **Dana Brunetti**, and **Trigger Street Productions, Inc.**,

27 on the grounds that these Defendants did not respond to the Complaint within the time

28 limits prescribed by the Federal Rules of Civil Procedure, Rule 12 (a)(1)(A).

1    As the Plaintiff's server's declarations (see docket #16) confirm, the Plaintiff

2  properly served Defendants (**Defs**) Spacey, Brunetti and Trigger Street Productions, Inc (all

3  who allege to reside outside of California, in New York state), via his server, Morgan

4  Marchbanks, on September 17, 2018. California allows USPS certified mail service, with

5  return receipt requested, upon defendants living outside of California in another U.S. state.

6  (The Plaintiff also re-served these Defendants' registered agent, via certified mail with

7  return receipt requested, on September 27, 2018; however, the initial service of these

8  defendants, on September 17, 2018, satisfied state and federal standards for serving an

9  out-of state defendant.)

10   As detailed in the Plaintiff's filing captioned "**NOTICE RE SERVICE OF**

11 **PROCESS  ISSUES  AND  IRREGULARITIES  RE  DEFENDANTS  SPACEY,**

12 **BRUNETTI, AND TRIGGER STREET PRODS, INC,**" as well as detailed in the

13 Declaration of Dr. Morgan Marchbanks (docket #16), the Plaintiff served Defendant

14 **Trigger Street Productions, Inc** at the address stated on its Business Entity filing with the

15 California Secretary of State (the Business Entity filing is attached to that Notice), at **120 W**

16 **45th St., STE 3601, New York, NY 10036**. That address is also current according to a "No

17 Change" filing the Defendant, filed with the Secretary of State earlier this year. The

18 Defendant's address is out of state; thus, the Plaintiff served this Defendant in compliance

19 with California law, by sending summons, complaint, civil cover sheet and all other court

20 documents to this address, addressed to the Defendant, via USPS certified mail, with return

21 receipt requested.

21   Also as detailed in the Plaintiff's filing captioned "**NOTICE RE SERVICE OF**

22 **PROCESS  ISSUES  AND  IRREGULARITIES  RE  DEFENDANTS  SPACEY,**

23 **BRUNETTI, AND TRIGGER STREET PRODS, INC,**" as well as detailed in the

24 Declaration of Dr. Morgan Marchbanks (docket #16), is the fact that on September 17.

25 2018, the Plaintiff had Defendant **Dana Brunetti** served at the address stated on his

26 Business Entity filing with the California Secretary of State for his company Spartan 97,

27 LLC (the filing is attached to the previously cited Notice), at 200 Park Avenue South, 8th

28 Floor, New York, NY 10003. That address is also current and "active" according the

2
REQUEST FOR ENTRY OF DEFAULT

1  California Secretary of State's Office. This Business Entity filing was submitted on January

2  29, 2018. In this Business Entity filing, Defendant Brunetti provides this address as his

3  personal address—or his personal mailing address). All of this information is identical to the

4  information Defendant Brunetti provides for his personal address in his Business Entity

5  filing with the California Secretary of State's Office for his business 18TH AMENDMENT,

6  LLC, THE (also attached to the Plaintiff's previously cited Notice). The Defendant's

7  address is out of state; thus, the Plaintiff served this Defendant in compliance with

8  California law, by sending summons, complaint, civil cover sheet and all other court

9  documents to this address, addressed to the Defendant, via USPS certified mail, with return

10  receipt requested.

11          Also as detailed in the Plaintiff's filing captioned "**NOTICE RE SERVICE OF**

12  **PROCESS ISSUES AND IRREGULARITIES RE DEFENDANTS SPACEY,**

13  **BRUNETTI, AND TRIGGER STREET PRODS, INC,**" as well as detailed in the

14  Declaration of Dr. Morgan Marchbanks (docket #16),  is the fact that on September 17.

15  2018, the Plaintiff had Defendant **Kevin Spacey** served at the address stated on his Business

16  Entity filing with the California Secretary of State's office for his company Trigger Street

17  Productions, Inc (the filing is attached to that Notice), at 200 Park Avenue South, 8th Floor,

18  New York, NY 10003.  In that Business Entity registration with the California Secretary of

19  State's office, Defendant Kevin Spacey (born Kevin Fowler) signs the document as the

20  company's Corporate Officer.  In the Business Entity Statement of Information filed with

21  the California Secretary of State's office, Defendant Kevin Spacey (Kevin Fowler) declares

21  his address—or his personal mailing address—is 200 Park Avenue South, 8th Floor, New

22  York, NY 10003. This is also the address Trigger Street Productions. Inc declares as its

23  Principal Executive Office. Again, that address is also current, according to a "No Change"

24  filing the Defendants filed with the California Secretary of State's Office earlier this year.

25  The Defendant's address is out of state; thus, the Plaintiff served this Defendant in

26  compliance with California law, by sending summons, complaint, civil cover sheet and all

27  other court documents to this address, addressed to the Defendant, via USPS certified mail,

28  with return receipt requested.

REQUEST FOR ENTRY OF DEFAULT

1       California law (**CCP § 415.40**) deems service by mail, with return receipt is

2   appropriate and acceptable for out-of-state defendant, as in this case.

3       (**CCP § 415.40):** A summons may be served on a person outside this state in

4   any manner provided by this article or by sending a copy of the summons and

5   of the complaint to the person to be served by first-class mail, postage

    prepaid, requiring a return receipt.  Service of a summons by this form of mail

6   is deemed complete on the 10th day after such mailing.

7       California also has jurisdiction to serve parties who are out-of state under California's

8   "Long-Arm" Statute, CA CIV PRO § 410.10 (2003), which states:

9       **"A court of this state may exercise jurisdiction on any basis not**

10  **inconsistent with the Constitution of this state or of the United States."**

11      The <u>Federal Rules of Civil Procedure</u>, **Rule 4(e)(1)** defers to the rules of the

12  individual states courts for out-of-state parties, providing:

13      **"(e)** Serving an Individual Within a Judicial District of the United States.

    Unless federal law provides otherwise, an individual—other than a minor,

14  an incompetent person, or a person whose waiver has been filed—may be

15  served in a judicial district of the United States by:

    **(1)** following state law for serving a summons in an action brought in

16  courts of general jurisdiction in the state where the district court is located

17  or where service is made:"

18

19      **Since these three out-of-state Defendants were served via U.S.P.S. certified mail**

20  **they are allowed an additional ten (10) days before service is deemed complete**, before

21  initiating the 21 day time limit to submit a response to the Complaint. Thus, the process of

21  service of these three Defendants was officially completed ten (10) days after the server

22  mailed these three Defendants their separate Summons, Complaint, Civil Cover Sheet, etc.

23  Thus the date of service of these three Defendants became September 27, 2018.

24      According to Federal Rules of Civil Procedure, Rule 12, a Defendant has 21 days to

25  answer a Complaint. Thus, Spacey, Brunetti and Trigger Street Productions Inc had until

26  October 18, 2018 to submit a responsive pleading to this Court.

27      However, Defs Spacey, Brunetti and Trigger Street Productions, Inc failed to submit

28  a responsive pleading, as required, on or before October 18, 2018. Thus, Defs Spacey,

| | |
|---|---|
| 1 | Brunetti, and Trigger Street Productions, Inc have defaulted. Hence, the Plaintiff requests |
| 2 | the Clerk to enter default against Defs Spacey, Brunetti and Trigger Street Productions. |
| 3 | |
| 4 | Dated:_____10/22/2018_____      Signed:_____/s/ Steve Wilson Briggs_____ |
| 5 | Plaintiff, In Propria Persona |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

5
REQUEST FOR ENTRY OF DEFAULT

1    Steve Wilson Briggs
2    4322 Chico Ave.,
     Santa Rosa, CA 95407
3    510 200 3763
4    snc.steve@gmail.com
     PLAINTIFF In Propria Persona
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                                          Civ No: 18-cv-04952-VC

11   STEVE WILSON BRIGGS                    (SECOND) PROOF OF SERVICE
                                            OF SUMMONS AND COMPLAINT
12              Plaintiff,                  DECLARATION OF
                                            DR. MORGAN MARCHBANKS
13              vs

14   KEVIN SPACEY;  et al

15

16     SECOND PROOF OF SERVICE OF SUMMONS AND COMPLAINT

17         DECLARATION OF DR. MORGAN MARCHBANKS

18

19     My name is Dr. Morgan Marchbanks and I declare the following:

20     1.   I am over 18, and not a party of this action.

21     2.   I am a resident of Sonoma County, where the mailing took place.

21     4.   My address is 346 Major Dr., Santa Rosa, CA 95403.

22     5.   On **September 27th**, 2018, I mailed six (6) total envelopes (three separately

23   addressed envelopes that were mailed to three separate parties, and another three separately

24   addressed envelopes that were mailed "care of" the parties authorized process of service

25   agent) from the U.S. Post Office at 2585 Sebastopol Rd., Santa Rosa, California. Each of the

26   six envelopes contained the following documents:

27         a.   **Summons** In A Civil Action (2)

28         b.   **Complaint**

FILED

OCT -9 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1
PROOF OF SERVICE

| | | |
|---|---|---|
| 1 | c. | **Civil Cover Sheet** |
| 2 | d. | Notice Of Availability Of Magistrate Judge To Exercise Jurisdiction |
| 3 | e. | Consent Or Declination To Magistrate Judge Jurisdiction |
| 4 | f. | Welcome To The Oakland Divisional Office |
| 5 | g. | ECF Registration Handout |
| 6 | h. | Proposed Order Granting Motion For Permission For Electronic Case Filing |
| 7 | i. | Order Setting Initial Case Management And ADR Deadlines |
| 8 | j. | Standing Order General (SBA) |
| 9 | k. | Standing Order For All Judges OF The Northern District Of California |
| 10 | l. | Standing Order - General (SBA) Patent Case |
| 11 | m. | Order Relating Cases (Hon. Judge Vincent Chhabria) |
| 12 | n. | Reassigned Case - Notice of New Hearing Date -VC |
| 13 | o. | Related Case Order |

14   6.   The names of the three of the separately served parties were:

15         a.   Kevin Spacey

16         b.   Dana Brunetti

17         c.   Trigger Street Productions, Inc.

18   7.   The name of the parties' shared authorized service of process agent, whom I sent

19   three additional envelopes "care of", for each of the three parties listed in item 6 is **Frank**

20   **Selvaggi**.

21   8.   I served the documents to each of the separate parties, listed above, by enclosing the

21   documents in separate envelopes and giving the envelope to a U.S. Postal Service clerk at

22   the U.S. Post Office at 2585 Sebastopol Rd., Santa Rosa, California, and paying the clerk to

23   send each of the envelopes "Priority" mail, certified and with return receipt requested, to

24   addresses that are **outside of California**.

25   9.   These six (6) individual envelopes were addressed as follows:

26         a.   Kevin Spacey
27              120 W 45th St., Suite 3601
              New York, NY 10036
28

2
PROOF OF SERVICE

|    |                                                    |
|----|----------------------------------------------------|
| 1  |     b.  Dana Brunetti                              |
| 2  |         200 Park Avenue South,                     |
| 3  |         8th Floor New York, NY 10003               |
| 4  |     c.  Trigger Street Productions, Inc.           |
| 5  |         120 W 45th St., Suite 3601                 |
| 6  |         New York, NY 10036                         |
| 7  |     d.  Kevin Spacey                               |
| 8  |         % Frank Selvaggi                           |
| 9  |         200 Park Avenue South, 8th Floor           |
| 10 |         New York, NY 10003                         |
| 11 |     e.  Dana Brunetti                              |
| 12 |         % Frank Selvaggi                           |
| 13 |         200 Park Avenue South, 8th Floor           |
|    |         New York, NY 10003                         |
| 14 |     f.  Trigger Street Productions, Inc.           |
| 15 |         % Frank Selvaggi                           |
| 16 |         200 Park Avenue South, 8th Floor           |
|    |         New York, NY 10003                         |

10. I am not a professional process server.

11. I was not paid to serve these documents upon the parties.

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:    10/05/2018          Signed: _____
                                      Dr. Morgan Marchbanks

ER 1244

1 | Steve Wilson Briggs
2 | 4322 Chico Ave.,
Santa Rosa, CA 95407
3 | 510 200 3763
4 | snc.steve@gmail.com
PLAINTIFF In Propria Persona
5
6
7

**FILED**

OCT -9 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10 STEVE WILSON BRIGGS | Civ No: 18-cv-04952-VC |
| 11 Plaintiff, | **(FIRST) PROOF OF SERVICE** |
| 12 vs | **OF SUMMONS AND COMPLAINT** |
| | **DECLARATION OF** |
| 13 KEVIN SPACEY;  et al | **DR. MORGAN MARCHBANKS** |

14

15 | **FIRST PROOF OF SERVICE OF SUMMONS AND COMPLAINT**

16 | **DECLARATION OF DR. MORGAN MARCHBANKS**

17

18 | My name is Dr. Morgan Marchbanks and I declare the following:

19 | 1.   I am over 18, and not a party of this action.

20 | 2.   I am a resident of Sonoma County, where the mailing took place.

21 | 3.   My address is 346 Major Dr., Santa Rosa, CA 95403.

21 | 4.   On **September 17th**, 2018, I mailed four envelopes to four separate parties, from the

22 | U.S. Post Office at 2585 Sebastopol Rd., Santa Rosa, California. Each of the four envelopes

23 | contained the following documents:

24 | a.   **Summons** In A Civil Action (2)

25 | b.   **Complaint**

26 | c.   **Civil Cover Sheet**

27 | d.   Notice Of Availability Of Magistrate Judge To Exercise Jurisdiction

28 | e.   Consent Or Declination To Magistrate Judge Jurisdiction

1
PROOF OF SERVICE

1  f. Welcome To The Oakland Divisional Office

2  g. ECF Registration Handout

3  h. Proposed Order Granting Motion For Permission For Electronic Case Filing

4  i. Order Setting Initial Case Management And ADR Deadlines

5  j. Standing Order General (SBA)

6  k. Standing Order For All Judges OF The Northern District Of California

7  l. Standing Order - General (SBA) Patent Case

8 5. The names of the four separately served parties were:

9  a. Kevin Spacey

10  b. Dana Brunetti

11  c. Trigger Street Productions

12  d. Sound Point Capital Management

13 6. I served the documents to each of the separate parties, listed above, by enclosing the

14 documents in separate envelopes and giving the envelope to a U.S. Postal Service clerk at

15 the U.S. Post Office at 2585 Sebastopol Rd., Santa Rosa, California, and paying the clerk to

16 send each of the envelopes "Priority" mail, certified and with return receipt requested, to

17 addresses that are outside of California.

18 7. The four individual envelopes were addressed as follows:

19  1. Trigger Street Productions

20   200 Park Avenue South, 8th Floor

21   New York, NY 10003

21  2. Kevin Spacey

22   200 Park Avenue South, 8th Floor

23   New York, NY 10003

24  3. Sound Point Capital Management

25   375 Park Avenue, 33rd Floor

26   New York, NY 10152

27  4. Dana Brunetti

28   % Cavalry Media

2
PROOF OF SERVICE

1    200 Park Avenue South, 8th Floor

2    New York, NY 10003

3    8.  I am not a professional process server.

4    9.  I was not paid to serve these documents upon the parties.

5    10. I declare under penalty of perjury under the laws of the United States of America that

6    the foregoing is true and correct.

7

8    Dated:____10/05/2018_____    Signed: _____

9                                         Dr. Morgan Marchbanks

10

11

12

13

14

15

16

17

18

19

20

21

21

22

23

24

25

26

27

28

3
PROOF OF SERVICE

1   Steve Wilson Briggs
2   4322 Chico Ave.,
    Santa Rosa, CA 95407
3   510 200 3763
4   snc.steve@gmail.com
    PLAINTIFF In Propria Persona
5

**FILED**

OCT −4 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6

7

8                   **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10 | Civ No: 18-cv-04952-VC |
| 11  STEVE WILSON BRIGGS | **NOTICE RE SERVICE OF PROCESS** |
| 12         Plaintiff, | **ISSUES AND IRREGULARITIES** |
|  | **RE DEFENDANTS SPACEY,** |
| 13             vs | **BRUNETTI, AND TRIGGER STREET** |
| 14  KEVIN SPACEY;  et al | **PRODS, INC.** |

15

16      **SERVICE OF PROCESS NOTICE CONCERNING DEFENDANTS KEVIN**

17      **SPACEY, DANA BRUNETTI AND TRIGGER STREET PRODUCTIONS, INC.**

18   1.   The prior filing of this case (Briggs v Universal), after significant motion activity, was

19   dismissed after the Plaintiff failed to properly serve Defendants (**Defs**) Spacey and Brunetti.

20   Thus, in this current matter, the Plaintiff believes it wisest to apprise the Court of the

21   following facts regarding service of process of Defs Spacey, Brunetti and Trigger Street

21   Productions, Inc.

22   2.    The Plaintiff has found countless published addresses for each of these three

23   Defendants. For over two decades, many online and printed publications have published Def

24   Kevin Spacey's personal address as

25      a.   200 Park Avenue South, 8th Floor, New York, NY 10003; or

26      b.   120 W 45th St., <u>STE 3601</u>*, New York, NY 10036 (*sometimes marked 36 Floor).

27   3.    Both addresses are commonly associated with Kevin Spacey and Trigger Street

28   Productions Inc; while the former address (200 Park Avenue South...) is also often

1
NOTICE RE SERVICE OF PROCESS

1   associated with Defendant Brunetti, but seemingly most often associated with Frank

2   Selvaggi of *Altman, Greenfield & Selvaggi*; Selvaggi is Spacey's, Brunetti's, and Trigger

3   Street Productions' designated agent for service of process.

4       4.   To clear up uncertainty regarding the Defendants addresses, the Plaintiff turned to the

5   California Secretary of State website, and several other established state and national data

6   repositories. On the California Secretary of State website the Plaintiff was able to find

7   signed, official, current business documents confirming Spacey's, Brunetti's and Trigger

8   Street Productions, Inc's addresses (for purposes of service of process by certified mail, as

9   they all reside outside of California). From this research, the plaintiff discovered the

10  following facts.  The information suggests that the Defendants may have committed address

11  fraud on the state of California, as they use multiple addresses in New York and California.

12          **DEFENDANTS' ADDRESSES & DESIGNATED AGENT'S ADDRESSES**

13      5.   What follows are the facts concerning the Defendants' addresses:

14      1.  In the California Secretary of State's complete Statement of Information (Foreign

15          Corporation) for Defendant Kevin Spacey's corporation **First Take Productions,**

16          **Inc.,*** Spacey declares (four times) that his address is 200 Park Ave. South, 8th

17          Floor New York, NY 10003. (**See Exhibit A**)

18              *The Court should notice that Def Spacey dissolved this company 33 days
19              after Plaintiff filed this lawsuit (09/17/2018), and just 4 days after the
                Plaintiff sent the seven (7) California based Defendants a "Notice Of A
20              Lawsuit And Request To Waive Service Of A Summons." Plaintiff believes
                this was both an attempt to conceal Spacey's address from the Plaintiff, and
21              an effort to destroy the First Take Corporation—a company which may
21              factor into this lawsuit.

22      2.  **Trigger Street Production, Inc**'s California's Secretary of State's Statement and

23          Designation By Foreign Corporation registration form was filled out, by hand, by

24          Kevin Spacey (born Kevin Spacey Fowler), and signed "Kevin Spacey," 12/10/1997.

25          This document identifies Spacey as the corporation's president. (**See Exhibit B**)

26      3.  The California's Secretary of State's Designation By Foreign Corporation

27          registration form for **Trigger Street Production, Inc** states its address is **120 W**

28          **45th St., STE 3601, New York, NY 10036**. (Plaintiff believes Spacey used his true

1  personal address for his new corporation). (See Exhibit B, section #1)

2  4. California Secretary of State's complete Statement of Information (Foreign
3     Corporation) for **Trigger Street Productions, Inc** declares the corporation's address
4     is: 120 W 45th St., STE 3601, New York, NY 10036. (See Exhibit C, box #1)

5  5. Although the California Secretary of State's complete Statement of Information
6     (Foreign Corporation) filing for **Trigger Street Productions, Inc.** states the
7     corporations address is: 120 W 45th St., STE 3601, New York, NY 10036, it
8     identifies its Principal Executive Office (and its mailing address) as 200 Park Ave.
9     South, 8th Floor New York, NY 10003. (See Exhibit C, box 4 & 6)

10 6. California Secretary of State's complete Statement of Information (Foreign
11    Corporation) filing for **Trigger Street Productions, Inc**. states that Kevin (Spacey)
12    Fowler is the corporation's CEO, Secretary and CFO, and states that his address is
13    200 Park Ave. South, 8th Floor New York, NY 10003. (See Exhibit C, box 7, 8 & 9)

14 7. The California Secretary of State's complete Statement of Information (Foreign
15    Corporation) filing for **Trigger Street Productions, Inc**. identifies Frank Selvaggi
16    as the designated agent to accept service of process; completed, by hand, and signed
17    by Frank Selvaggi, himself. (See Exhibit C, box 13.)

18 8. **On February 14, 2018 (this year)** Trigger Street Productions Inc. filed a "No
19    **Change Statement" Statement of Information (Foreign Corporation), thereby**
20    **confirming that all of the preceding information under this heading (sections #2**
21    **through #7) is current and has not changed from 1997 to the present. (See**
21    **Exhibit D).**

22 9. **Trigger Street Productions, Inc**'s California Secretary of State's complete
23    Statement of Information (Foreign Corporation) filing (signed by Selvaggi) declares
24    Selvaggi's current business—and perhaps residential—address is 11766 Wilshire
25    Blvd. #1610, Los Angeles, CA 90025. (See Exhibit C).

26 10. **Trigger Street Production, Inc**'s Statement and Designation By Foreign
27     Corporation registration notes that mail is ℅ Altman Greenfield & Selvaggi
28     (**AG&S**), and identifies Frank Selvaggi (of AG&S) is a natural person residing in

3
NOTICE RE SERVICE OF PROCESS

1  the State of California, who can receive service for the corporation at 11766 Wilshire

2  Blvd, #1610, Los Angeles, CA 90025. (**See Exhibit B**, section 3)

3  11. Further contradicting the address information provided by Selvaggi, outlined in

4  section 9 and 10, under this heading, the California Secretary of State's complete

5  Statement of Information (Foreign Corporation) filing for Dana Brunetti's

6  corporation "**18th Amendment, LLC, The**" (filed this year, 01/29/18), declares

7  Frank Selvaggi as the agent to accept service of process at a **yet another address**:

8  10960 Wilshire Blvd, Suite 1900, Los Angeles, CA 90024. (**See Exhibit E**, box #6.)

9  12. Once again contradicting the address information provided by Selvaggi in section 9

10  and 10, under this heading, the California Secretary of State's complete Statement of

11  Information (Foreign Corporation) filing for Dana Brunetti's corporation "**Spartan**

12  **97, LLC**" (filed this year, 01/29/18), declares Frank Selvaggi as the agent to accept

13  service of process at 10960 Wilshire Blvd, Suite 1900, Los Angeles, CA 90024. (**See**

14  **Exhibit F**, box #6.) This address is identified as the LLC's "California Office"

15  address (**See Exhibit F**, box 4c).* However, on the very next page of this document,

16  the attachment identifies Frank Selvaggi as a "manager" or "member" of the

17  corporation who resides at **200 Park Ave. South, 8th Floor New York, NY 10003**.

18  Thus, the Defendants propose Selvaggi works in Los Angeles but lives in New York.

19  13. Similarly, on the California Secretary of State complete Statement of Information

20  (Foreign Corporation) statement for Spacey's corporation **Triggerstreet.com, Inc.,**

21  Spacey Declares Frank Selvaggio is the CFO of the corporation, and declares that

21  Selvaggio resides at 200 Park Ave. South, 8th Floor New York, NY 10003.** (**See**

22  **Exhibit G**, box 9)

23  *Thus, the Defendants have provided two conflicting addresses for service of
   process to Selvaggi in California (11766 Wilshire Blvd, #1610, Los Angeles,
24  CA 90025, and 10960 Wilshire Blvd, Suite 1900, Los Angeles, CA 90024.

25  **In addition to the conflicting service of process addresses, the Defendants
26  declare that yet another address, 200 Park Ave. South, 8th Floor New York,
   NY 10003 is Selvaggi's personal address in certain government filings (**See**
27  **Exhibits G**), then declare this is as his business address in other government
28  filings (**See Exhibit H**).

4
NOTICE RE SERVICE OF PROCESS

14. The <u>United States Patent and Trademark Office</u>'s registration for "**Presidential By Kevin Spacey**" identifies Altman Greenfield and Selvaggi as the contact for the trademark owner (Spacey's "Dovetail Ventures, LLC"), and identifies their address as 200 Park Ave. South, 8th Floor New York NEW YORK 10003. (**See Exhibit H**).

15. **The National Directory of Registered Tax Return Preparers & Professionals** lists Frank R. Selvaggi as a CPA at Altman Greenfield & Selvaggi LLP, at 200 Park Ave South, 8th Flr, NY, NY 10003. (**See Exhibit I**). This is also the address on file with the IRS for Selvaggi.

16. The National Directory of Registered Tax Return Preparers & Professionals <u>has no listing for a Frank Selvaggi or Altman, Greenfield & Selvaggi in California.</u>

17. The Plaintiff found no listing for ANY business entity (Inc., LP, or LLC) with the name "Selvaggi" in the California Secretary of State's business database.

18. By typing "Frank Selvaggi" into your Google web browser and clicking the first result ("Frank Selvaggi / Freedom to Marry"), the fourth paragraph down states: "Mr. Selvaggi is a resident of both **New York City** and North Salem, **New York**." No mention of California. (**See Exhibit J**)

19. The California Secretary of State's complete Statement of Information (Foreign Corporation) filing for Def's Brunetti's corporation "**18 Amendment, LLC, The**" declares Brunetti resides at 200 Park Ave. South, 8th Floor New York, NY 10003. (**See Exhibit E.**)

20. The California Secretary of State's complete Statement of Information (Foreign Corporation) filing for Dana Brunetti's corporation "**Spartan 97, LLC**" declares Dana Brunetti resides at 200 Park Ave. South, 8th Floor New York, NY 10003. (**See Exhibit F.**)

21. <u>The United States Patent and Trademark Office</u> identifies Dana Brunetti as the owner and registrant of Cavalry Media, and identifies Brunetti's address as **200 Park Ave. South, 8th Floor New York, NY 10003. (See Exhibit K)**.

6.    The preceding facts and exhibits comprise the only official state and federal documents declaring the Defendants' addresses that the Plaintiff was able to locate. **All of**

ER 1252

1  the preceding California State and federal records were <u>current</u> and <u>valid</u> at the time

2  of the filing of this lawsuit,* EXCEPT for the business registration for

3  **Trigerstreet.com, Inc. (Exhibit G)**, which was forfeited by the Franchise Tax Board for

4  failure to meet tax requirements (e.g., failure to file a return, pay taxes, penalties, interest),

5  some time after 2010.  (Again, *Defendant Spacey closed First Shot Productions, Inc, 33

6  days after this suit was filed.)

7     7.   Thus, the Plaintiff used the preceding information to serve Defendants Spacey,

8  Brunetti and Trigger Street Productions, Inc., as follows:

9              **PLAINTIFF'S CERTIFIED MAIL SERVICE OF PROCESS**

10                **TO KEVIN SPACEY, AT TWO ADDRESSES**

11    8.   Since the aforementioned official state and federal documents declare 200 Park Ave.

12  South, 8th Floor New York, NY 10003 is Defendant Kevin Spacey's address (**See Exhibit A**

13  **and C**), as permitted by federal and California state law for out of State Defendants, the

14  Plaintiff had his process server (Dr. Morgan Marchbanks) serve Spacey (certified mail,

15  09/17/2018) at 200 Park Ave. South, 8th Floor New York, NY 10003. (*Spacey also

16  declared this  as his personal address in his California State business registration for Trigger

17  Street Labs, Inc.)

18    9.   Since there are published reports that Defendant Spacey's personal address is actually

19  120 W 45th St., STE 3601, New York, NY 10036, and this address was used by Spacey as

20  the address for Trigger Street Productions, Inc (**See Exhibit B**), as required by federal and

21  California state law for out-of-state Defendants, the Plaintiff **also** had his process server

21  serve Spacey (certified mail, 09/27/2018) at 120 W 45th St., STE 3601, New York, NY

22  10036.

23              **PLAINTIFF'S CERTIFIED MAIL SERVICE OF PROCESS**

24                  **TO DANA BRUNETTI**

25    10.   Since the aforementioned official state and federal documents state that 200 Park

26  Ave. South, 8th Floor New York, NY 10003 is Defendant Brunetti's address (**See Exhibits**

27  **E, F G and K**), the Plaintiff had his process server serve Brunetti (by certified mail,

28  09/27/2018)  at 200 Park Ave. South, 8th Floor New York, NY 10003.*

6
NOTICE RE SERVICE OF PROCESS

**PLAINTIFF'S CERTIFIED MAIL SERVICE OF PROCESS
TO TRIGGER STREET PRODUCTIONS, INC.**

11.   Since the aforementioned official California State documents state that 200 Park Ave. South, 8th Floor New York, NY 10003 is Trigger Street Productions, Inc's Principal Executive Office (**See Exhibit C**), the Plaintiff also took care to have his process server serve Trigger Street Productions, Inc. at this address (200 Park Ave. South, 8th Floor New York, NY 10003), by certified mail, 09/**17**/2018.

12.   Since the aforementioned official California State documents state that 120 W 45th St., STE 3601, New York, NY 10036 is Trigger Street Productions, Inc. official address (**See Exhibits B and C**), as required by federal and California state law for out of State Defendants, the Plaintiff has had his process server serve Trigger Street Productions, Inc. (by certified mail, 09/27/2018) at 120 W 45th St., STE 3601, New York, NY 10036.

**PLAINTIFF'S CERTIFIED MAIL SERVICE OF PROCESS
TO DEFENDANTS' DESIGNATED AGENT, FRANK SELVAGGI**

13.   Defs Spacey, Brunetti and Trigger Street Productions, Inc. have each designated Frank Selvaggi, of Altman Greenfield & Selvaggi, LLP, as their agent to accept service of process.

14.   Due to the facts that **(A)** there are numerous California state documents that identify Selvaggi as an officer, manager or member of more than one of Spacey and/or Brunetti's New York State based corporations, and declaring his address to be 200 Park Ave. South, 8th Floor New York, NY 10003 (**See Exhibit F**, page 2; and **See Exhibit G**); and because **(B)** numerous state and federal documents declare that Frank Selvaggi's (of Altman, Greenfield & Selvaggi, LLP) address is 200 Park Ave. South, 8th Floor New York, NY 10003; and because **(C)** the National Directory of Registered Tax Return Preparers & Professionals declares that Frank R. Selvaggi's address is 200 Park Ave South, 8th Flr, NY, NY 10003;and because **(D)** Selvaggi has multiple conflicting addresses declared to accept service of process in California; therefore, the Plaintiff **also** had his process server serve the Summons and Complaint upon the Defendants' authorized service of process agent, Frank Selvaggi (by certified mail, as required by federal and California state law for out-of-state Defendants, on 09/27/2018), at 200 Park Ave. South, 8th Floor New York, NY 10003.

7
NOTICE RE SERVICE OF PROCESS

| | |
|---|---|
| 1 | **Plaintiff Served Agent Frank Selvaggi For Defendant Spacey** |
| 2 | 15.   Plaintiff also had his server serve the Complaint and other required court documents, |
| 3 | intended for Defendant Kevin Spacey, to Spacey's authorized agent for service of process, |
| 4 | Frank Selvaggi, at 200 Park Ave South, 8th Flr, NY, NY 10003; addressed as follows: |
| 5 | Kevin Spacey |
| 6 | ℅ Frank Selvaggi<br>200 Park Avenue South, 8th Floor |
| 7 | New York, NY 10003 |
| 8 | **Plaintiff Served Agent Frank Selvaggi For Defendant Brunetti** |
| 9 | 16.   Plaintiff had his server serve the Summons and Complaint to Defendant Brunetti's |
| 10 | authorized agent for service of process, Frank Selvaggi; addressed as follows: |
| 11 | Dana Brunetti |
| 12 | ℅ Frank Selvaggi<br>200 Park Avenue South, 8th Floor |
| 13 | New York, NY 10003 |
| 14 | **Plaintiff Served Agent Selvaggi For Defendant Trigger Street Productions** |
| 15 | 17.   Plaintiff also had his server serve the Summons and Complaint, for Trigger Street |
| 16 | Productions, Inc, to Trigger Street Productions, Inc's authorized service of process agent, |
| 17 | Frank Selvaggi, at 200 Park Ave South, 8th Flr, NY, NY 10003; addressed as follows: |
| 18 | Trigger Street Productions, Inc. |
| 19 | ℅ Frank Selvaggi<br>200 Park Avenue South, 8th Floor |
| 20 | New York, NY 10003 |
| 21 | **SUMMARY OF SERVICE OF PROCESS FOR** |
| 21 | **ALL OUT-OF-STATE DEFENDANTS** |
| 22 | 18.   In addition to serving the Defendants at the declared addresses, headquarters, and |
| 23 | serving their service of process agent, the Plaintiff also served the out-of-state defendant |
| 24 | *Sound Point Capital Management*, as required by law. |
| 25 | **The Remaining Defendants** |
| 26 | 19.   As for the remaining, still unserved Defendants... On September 13th, 2018, the |
| 27 | Plaintiff sent the attorneys of the remaining unserved Defendants "Notice Of A Lawsuit |
| 28 | And Request To Waive Service Of A Summons." The Plaintiff still awaits their response. |

ER 1255

**SUMMATION**

20.  California Code of Civil Procedure § 415.40 pertains to serving an out of state party. 415.40 explains:

> "A summons may be served on a **person** outside this state in any manner provided this article or by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt. Service of a summons by this form of mail is deemed complete on the 10th day after such mailing."

21.  Section 415.40 does not specify whether certified mailed service should be sent to the party's home or business address.

22.  The Plaintiff complied with the CCP § 415.40 guidelines for serving the natural person defendants, by serving the required documents via certified mail with return receipt requested, to Defendants Spacey and Brunetti (separately) at their separately claimed addresses. The Plaintiff exceeded this guideline by also separately serving Spacey's and Brunetti's authorized service of process agent, Frank Selvaggi.

23.  The Judicial Branch of California's *California Courts* (courts.ca.gov) website conveniently explains the process for serving an out of state party, stating:

> • "If the party being served is a **<u>person</u>**, the papers can be mailed to his or her home or **mailing address**.
> • "If it is a **business**, the papers **must** be mailed to the owner(s) at the business's main office.
> • "If the **business** has an agent for service, the papers should be mailed to the agent for service."

24.  The Plaintiff met and exceeded this requirement by serving (by certified mail, with return receipt requested) **both** Trigger Street Productions' principal executive office which it declared in its California Secretary of State's complete Statement of Information (Foreign Corporation) filing (at **200 Park Avenue South, 8th Floor New York, NY 10003**), and also serving (by certified mail, with return receipt requested) the principal executive office which Trigger Street Productions declared as its principal executive office in its initial California's Secretary of State's Designation By Foreign Corporation registration (at **120 W 45th St., STE 3601, New York, NY 10036**). (See Exhibits B and C.) Further in compliance with these guidelines, the Plaintiff also served Trigger Street Productions authorized agent, Frank

1  Selvaggi.

2      25.    Although the Plaintiff believes he has already satisfied the service of process

3  requirements for Defendants Spacey, Brunetti and Trigger Street Productions, to be safe, the

4  Plaintiff does intend to serve Selvaggi (agent for Spacey, Brunetti, and Trigger Street) at one

5  of Selvaggi's alleged California addresses. The Plaintiff is waiting to serve Selvaggi's L.A.

6  office until the Plaintiff learns if the other Defendants agree to waive service. Selvaggi's

7  L.A. office will then be served along with any of the remaining Los Angeles based

8  Defendants who decline to waive service of process.

9

10     Dated:    10/04/2018          Signed:

11                                          Steve Wilson Briggs
12                                          Plaintiff, In Propria Persona

13

14

15

16

17

18

19

20

21

21

22

23

24

25

26

27

28

10
NOTICE RE SERVICE OF PROCESS

# EXHIBIT

# A



**State of California**
**Secretary of State**

**S**

**E-H01193**

**FILED**

In the office of the Secretary of
State of the State of California

**Oct - 10 2011**

This Space For Filing Use Only

**Statement of Information**
(Domestic Stock and Agricultural Cooperative Corporations)

**FEES (Filing and Disclosure): $25.00.  If amendment, see instructions.**
**IMPORTANT - READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. **CORPORATE NAME**
C3408124
FIRST SHOT PRODUCTIONS, INC.

**Due Date:**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 2 and 3 cannot be P.O. Boxes.)

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 2. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | |
| 450 N. ROXBURY DRIVE  8TH FLOOR  BEVERLY HILLS  CA 90210 | | | |
| 3. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | | |
| 450 N. ROXBURY DRIVE  8TH FLOOR  BEVERLY HILLS  CA 90210 | | | |
| 4. MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 2 | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 5. CHIEF EXECUTIVE OFFICER/ | | | | |
| KEVIN   SPACEY  200 PARK AVENUE SOUTH  8TH FLOOR  NEW YORK, NY 10003 | | | | |
| 6. SECRETARY | | | | |
| KEVIN   SPACEY  200 PARK AVENUE SOUTH  8TH FLOOR  NEW YORK, NY 10003 | | | | |
| 7. CHIEF FINANCIAL OFFICER/ | | | | |
| KEVIN   SPACEY  200 PARK AVENUE SOUTH  8TH FLOOR  NEW YORK, NY 10003 | | | | |

**Names and Complete Addresses of All Directors, Including Directors Who Are Also Officers** (The corporation must have at least one director.  Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 8. NAME | | | | |
| KEVIN SPACEY    200 PARK AVENUE SOUTH 8TH FLOOR   NEW YORK, NY 10003 | | | | |
| 9. NAME | | | | |
| 10. NAME | | | | |

11. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:  0

**Agent for Service of Process** (If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California street address (a P.O. Box address is not acceptable).  If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 13 must be left blank.)

12. NAME OF AGENT FOR SERVICE OF PROCESS
CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC-LAWYERS INCORPORATING SERVICE

| 13. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

**Type of Business**

14. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION
ENTERTAINMENT

15. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 10/10/2011 | KEVIN  SPACEY | PRESIDENT | |
|---|---|---|---|
| DATE | TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | TITLE | SIGNATURE |

| SI-200 C (REV 10/2010) | APPROVED BY SECRETARY OF STATE |
|---|---|

# EXHIBIT

# B

**STATEMENT AND DESIGNATION
BY
FOREIGN CORPORATION**

FILED
In the office of the Secretary of State
of the State of California

DEC 1 6 1997

*Bill Jones*
BILL JONES, Secretary of State

Trigger Street Productions, Inc.
(Name of Corporation)

_____ , a corporation organized

and existing under the laws of _New York_ , makes the following
(State or Place of Incorporation)

statements and designation:

1. The address of its principal executive office is C/o Altman, Greenfield, & Selvaggi

120 W. 45th St., STE 3601, New York, NY 10036
(Insert complete address of principal executive office wherever located.)
**DO NOT USE POST OFFICE BOX**

2. The address of its principal office in the State of California is C/o Altman, Greenfield, & Selvaggi

11766 Wilshire BLVD, STE 1610, Los Angeles, CA 90025
(Insert complete address of principal office in California.)
**DO NOT USE POST OFFICE BOX**

**DESIGNATION OF AGENT FOR SERVICE OF PROCESS IN THE STATE OF CALIFORNIA**
(Complete Either Item 3 or Item 4)
3. (Use this paragraph if the process **agent is** a natural **person.**)

Frank Selvaggi

a natural person residing in the State of California, whose complete address is

11766 Wilshire Blud., STE 1610, Los Angeles, CA 90025

**DO NOT USE POST OFFICE BOX**

is designated as agent upon whom process directed to the undersigned corporation

may be served within the State of California, in the manner provided by law.

*Secretary of State Form
S&DC-GENERAL (2-96)*

*Page 1 of 2*

ER 1261

4. (Use this paragraph if the process **agent is a corporation.**)

_____ , a corporation

organized and existing under the laws of _____, is designated as

agent upon whom process directed to the undersigned corporation may be served

within the State of California, in the manner provided by law.

**NOTE:**   Before a corporation may be designated by any other corporation as an
agent for service of process, a corporate agent must have complied with
Section 1505, California Corporations Code.

5. The undersigned corporation hereby irrevocably consents to service of process

directed to it upon the agent designated above, and to service of process on the

Secretary of State of the State of California if the agent so designated or the agent's

successor is no longer authorized to act or cannot be found at the address given.


_Trigger Street Productions, Inc._
(Name of Corporation)

_____
(Signature of Corporate Officer)

Kevin Spacey (President)
(Typed Name and Title of Officer Signing)

_Secretary of State Form_
_S&DC-GENERAL (2-96)_

# State of New York
} ss:
# Department of State

*I hereby certify, that the certificate of incorporation of TRIGGER STREET PRODUCTIONS, INC. was filed on 06/22/1993, with perpetual duration, and that a diligent examination has been made of the index of corporation papers filed in this Department for a certificate, order, or record of a dissolution, and upon such examination, no such certificate, order or record has been found, and that so far as indicated by the records of this Department, such corporation is a subsisting corporation.*

\*\*\*

*Witness my hand and the official seal of the Department of State at the City of Albany, this 26th day of November one thousand nine hundred and ninety-seven.*

Special Deputy Secretary of State

*199711280116  59*

# EXHIBIT

# C

**03-401427**



# State of California
## Kevin Shelley
## Secretary of State
### STATEMENT OF INFORMATION
(Foreign Corporation)



**FILED**
In the office of the Secretary of State
of the State of California

**OCT 1 4 2003**

KEVIN SHELLEY, SECRETARY OF STATE

This Space For Filing Use Only

IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM.

1. CORPORATE NAME: (Please do not alter if name is preprinted.)

   C2063350   DUE DATE 12-31-03  OO776F
   TRIGGER STREET PRODUCTIONS, INC.
   120 WEST 45TH ST STE 3601
   NEW YORK NY  10036

**CALIFORNIA CORPORATE DISCLOSURE ACT** (Corporations Code Section 2117)

2. [ ] CHECK HERE IF THE CORPORATION IS PUBLICLY TRADED.  IF PUBLICLY TRADED, COMPLETE THIS STATEMENT OF INFORMATION AND THE CORPORATE DISCLOSURE STATEMENT (FORM SI-PTSUPP). **SEE ITEM 2 OF INSTRUCTIONS.**

**NO CHANGE STATEMENT**

3. [ ] IF THERE HAS BEEN NO CHANGE IN ANY OF THE INFORMATION CONTAINED IN THE LAST STATEMENT OF INFORMATION FILED WITH THE SECRETARY OF STATE, INCLUDING ANY INFORMATION CONTAINED IN FORM SI-PTSUPP, CHECK THE BOX AND PROCEED TO ITEM 13.
   IF THERE HAVE BEEN ANY CHANGES TO THE INFORMATION CONTAINED IN EITHER FORM, BOTH FORMS MUST BE COMPLETED IN THEIR ENTIRETY.

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city.  Items 4 and 5 cannot be PO Boxes.)

| | | | |
|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | CITY AND STATE | ZIP CODE |
| 200 PARK AVE SOUTH 8th FL. | | NEW YORK, NY | 10003 |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
| 11766 WILSHRE BLVD #1610 | LOS ANGELES | CA | 90025 |
| 6. MAILING ADDRESS | | CITY AND STATE | ZIP CODE |
| 200 PARK AVE SOUTH 8th FL | | NEW YORK, NY | 10003 |

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers.  A comparable title for the specific officer may be added; however, please do not alter the preprinted title on this statement.)

| | | | |
|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
| KEVIN FONZER | 200 PARK AVE SO | 8th FL. NEW YORK, NY | 10003 |
| 8. SECRETARY/ | ADDRESS | CITY AND STATE | ZIP CODE |
| KEVIN FONZER | 200 PARK AVE SO | 8th FL. NEW YORK, NY | 10003 |
| 9. CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
| KEVIN FONZER | 200 PARK AVE SO | 8th FL. NEW YORK, NY | 10003 |

**LIST THE AGENT FOR SERVICE OF PROCESS** (If an individual, the person named as agent must be a resident of California.)

10. . CHECK THE APPROPRIATE PROVISION BELOW AND NAME THE AGENT FOR SERVICE OF PROCESS
    [X] AN INDIVIDUAL RESIDING IN CALIFORNIA.
    [ ] A CORPORATION WHICH HAS FILED A CERTIFICATE PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTION 1505.

    AGENT'S NAME   FRANK SELVAGGI

| | | | |
|---|---|---|---|
| 11. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
| 11766 WILSHRE BLVD #1610 | LOS ANGELES | CA | 90025 |

12. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION
    PRODUCTION SERVICES

13. THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT   [X] YES

# EXHIBIT

# D



# State of California
## Secretary of State

### Statement of Information
(Foreign Corporation)
**FEES (Filing and Disclosure): $25.00.**
If this is an amendment, see instructions.
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

| F |
|---|

## FU59565
# FILED
In the office of the Secretary of State
of the State of California

## FEB-14 2018

| 1. **CORPORATE NAME** | |
|---|---|
| TRIGGER STREET PRODUCTIONS, INC. | |

| 2. **CALIFORNIA CORPORATE NUMBER** | C2063350 | This Space for Filing Use Only |
|---|---|---|

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. **If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.**

☑ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 13.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | CITY | STATE | ZIP CODE |
| 6. MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 4 | | CITY | STATE | ZIP CODE |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ | ADDRESS | | | | |
| 8. SECRETARY | ADDRESS | | CITY | STATE | ZIP CODE |
| 9. CHIEF FINANCIAL OFFICER/ | ADDRESS | | CITY | STATE | ZIP CODE |

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 11 must be left blank.

| 10. NAME OF AGENT FOR SERVICE OF PROCESS | | | | |
|---|---|---|---|---|
| 11. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** CITY | | STATE | ZIP CODE |

**Type of Business**

| 12. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION |
|---|

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| 02/14/2018 | MICHAEL COHEN | ACCOUNTANT | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-350 (REV 01/2013) | | APPROVED BY SECRETARY OF STATE |
|---|---|---|

# EXHIBIT

# E

**Secretary of State
Statement of Information**
(Limited Liability Company)

**LLC-12**

18-A36440

# FILED

In the office of the Secretary of State
of the State of California

JAN 29, 2018

This Space For Office Use Only

---

**IMPORTANT** — Read instructions **before completing this form.**

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

---

**1. Limited Liability Company Name** (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.)

18TH AMENDMENT, LLC, THE

| 2. 12-Digit Secretary of State File Number | 3. State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 201717110510 | DELAWARE |

**4. Business Addresses**

| | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| a. Street Address of Principal Office - Do not list a P.O. Box<br>200 Park Avenue South, 8th Floor | New York | NY | 10003 |
| b. Mailing Address of LLC, **if different than item 4a**<br>200 Park Avenue South, 8th Floor | New York | NY | 10003 |
| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box<br>10960 Wilshire Blvd, Suite 1900 | Los Angeles | CA | 90024 |

**5. Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Dana | | Brunetti | |

b. Entity Name - Do not complete Item 5a

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 200 Park Avenue South, 8th Floor | New York | NY | 10003 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Frank | | Selvaggi | |

| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 10960 Wilshire Blvd, Suite 1900 | Los Angeles | CA | 90024 |

**CORPORATION** – Complete Item 6c only. Only include the name of the registered agent Corporation.

c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b

**7. Type of Business**

a. Describe the type of business or services of the Limited Liability Company
Rental Property

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|
| | | | | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**9. The Information contained herein, including any attachments, is true and correct.**

| 01/29/2018 | Michael Cohen | Accountant | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip:

LLC-12 (REV 01/2017)    Page 1 of 1    2017 California Secretary of State
www.sos.ca.gov/business/be

ER 1269

# EXHIBIT

# F

| | | |
|---|---|---|
| **Secretary of State**<br>**Statement of Information**<br>(Limited Liability Company) | **LLC-12** | **18-A36422** |

**FILED**

In the office of the Secretary of State
of the State of California

**JAN 29, 2018**

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**This Space For Office Use Only**

**1. Limited Liability Company Name** (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.)

SPARTAN 97, LLC

| **2. 12-Digit Secretary of State File Number** | **3. State, Foreign Country or Place of Organization** (only if formed outside of California) |
|---|---|
| 201717110586 | DELAWARE |

**4. Business Addresses**

| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 200 Park Avenue South, 8th Floor | New York | NY | 10003 |
| b. Mailing Address of LLC, if different than item 4a | City (no abbreviations) | State | Zip Code |
| 200 Park Avenue South, 8th Floor | New York | NY | 10003 |
| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
| 10960 Wilshire Blvd, Suite 1900 | Los Angeles | CA | 90024 |

**5. Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Dana | | Brunetti | |

| b. Entity Name - Do not complete Item 5a | | | |
|---|---|---|---|
| | | | |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 200 Park Avenue South, 8th Floor | New York | NY | 10003 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Frank | | Selvaggi | |

| b. Street Address (if agent is **not** a corporation) - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 10960 Wilshire Blvd, Suite 1900 | LOS ANGELES | CA | 90024 |

**CORPORATION** – Complete Item 6c only. Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b |
|---|
| |

**7. Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| Rental Property |

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**9. The Information contained herein, including any attachments, is true and correct.**

| 01/29/2018 | Michael Cohen | Accountant | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip:

ER 1271

| | **Attachment to**<br>**Statement of Information**<br>(Limited Liability Company) | **LLC-12A**<br>**Attachment** | 18-A36422 |
|---|---|---|---|

**A.   Limited Liability Company Name**

SPARTAN 97, LLC

This Space For Office Use Only

| **B.   12-Digit Secretary of State File Number** | **C.   State or Place of Organization** (only if formed outside of California) |
|---|---|
| 201717110586 | DELAWARE |

**D.   List of Additional Manager(s) or Member(s) -** If the manager/member is an individual, enter the individual's name and address.   If the manager/member is an entity, enter the entity's name and address. Note:  The LLC cannot serve as its own manager or member.

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Frank | | Selvaggi | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 200 Park Avenue South, 8th Floor | New York | NY | 10003 |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Anthony | | Bonsignore | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 200 Park Avenue South, 8th Floor | New York | NY | 10003 |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

ER 1272

# EXHIBIT

# G

04-674817



# State of California
## Kevin Shelley
## Secretary of State
### STATEMENT OF INFORMATION
### (Foreign Corporation)

**FEES (Filing and Disclosure): $25.00.   If amendment, see instructions.**

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. CORPORATE NAME: (Please do not alter if name is preprinted )

TRIGGERSTREET.COM, INC. 

**FILED**
In the office of the Secretary of State
of the State of California

APR 1 6 2004

KEVIN SHELLEY, SECRETARY OF STATE

C2508123

EL added 10/25/2014

This Space For Filing Use Only

| CALIFORNIA CORPORATE DISCLOSURE ACT (Corporations Code Section 2117) |
|---|
| 2. ☐ CHECK HERE IF THE CORPORATION IS PUBLICLY TRADED.  IF PUBLICLY TRADED, COMPLETE THIS STATEMENT OF INFORMATION AND THE CORPORATE DISCLOSURE STATEMENT (FORM SI-PTSUPP). SEE ITEM 2 OF INSTRUCTIONS. |
| **NO CHANGE STATEMENT** |
| 3. ☐ IF THERE HAS BEEN NO CHANGE IN ANY OF THE INFORMATION CONTAINED IN THE LAST STATEMENT OF INFORMATION FILED WITH THE SECRETARY OF STATE, INCLUDING ANY INFORMATION CONTAINED IN FORM SI-PTSUPP, CHECK THE BOX AND PROCEED TO ITEM 13. IF THERE HAVE BEEN ANY CHANGES TO THE INFORMATION CONTAINED IN EITHER FORM, OR NO STATEMENT HAS BEEN PREVIOUSLY FILED, THIS FORM (AND THE FORM SI-PTSUPP, IF PUBLICLY TRADED) MUST BE COMPLETED IN THEIR ENTIRETY. |

| COMPLETE ADDRESSES FOR THE FOLLOWING (Do not abbreviate the name of the city. Items 4 and 5 cannot be PO Boxes.) | | | |
|---|---|---|---|
| 4.  STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | | ZIP CODE |
| 200 Park Avenue South, 8th Fl | New York, NY | | 10003 |
| 5.  STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
| 11766 Wilshire Blvd Ste 1610 | Los Angeles | CA | 90025 |
| 6.  MAILING ADDRESS | CITY AND STATE | | ZIP CODE |
| 11766 Wilshire Blvd Ste 1610 | Los Angeles, CA | | 90025 |

| NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS (The corporation must have these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this statement must not be altered.) | | | |
|---|---|---|---|
| 7.  CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
| Dana Brunetti | 200 Park Avenue South, 8th Fl | New York, NY | 10003 |
| 8.  SECRETARY/ | ADDRESS | CITY AND STATE | ZIP CODE |
| Ross Partridge | 200 Park Avenue South, 8th Fl | New York, NY | 10003 |
| 9.  CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
| Frank Selvaggi | 200 Park Avenue South, 8th Fl | New York NY | 10003 |

| AGENT FOR SERVICE OF PROCESS | | | |
|---|---|---|---|
| • If an individual, the agent must reside in California and Item 11 must be completed with a California address. | | | |
| • If another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 11 must be left blank. | | | |
| 10.  NAME OF AGENT FOR SERVICE OF PROCESS | | | |
| Barry Greenfield, c/o Altman, Greenfield & Selvaggi | | | |
| 11.  ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
| 11766 Wilshire Blvd Ste 1610 | Los Angeles | CA | 90025 |

| TYPE OF BUSINESS |
|---|
| 12.  DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION |
| Entertainment |

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| KEVIN SPACEY | Kevin Spacey | CEO | 3/11/04 |
|---|---|---|---|
| TYPE OR PRINT NAME OF OFFICER OR AGENT | SIGNATURE | TITLE | DATE |

SI-350 (REV 04/2003)   APPROVED BY SECRETARY OF STATE

# EXHIBIT

# H

 United States Patent and Trademark Office
Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Sep 26 05:22:26 EDT 2018*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout Please logout when you are done to release system resources allocated for you.

Start List At:    OR Jump to record:    **Record 17 out of 17**

TSDR | ASSIGN Status | TTAB Status *( Use the "Back" button of the Internet Browser to return to TESS)*

## PRESIDENTIAL BY KEVIN SPACEY

| | |
|---|---|
| **Word Mark** | **PRESIDENTIAL** BY KEVIN **SPACEY** |
| **Goods and Services** | IC 018. US 001 002 003 022 041. G & S: Tote bags; umbrellas; business-card cases; briefcases; handbags; wallets; luggage |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87015149 |
| **Filing Date** | April 26, 2016 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | April 25, 2017 |
| **International Registration Number** | 1316876 |
| **Owner** | (APPLICANT) Dovetail Ventures, LLC LIMITED LIABILITY COMPANY DELAWARE |

c/o Altman, Greenfield & Selvaggi, LLP 200 Park Ave. South, 8th Floor New York NEW YORK 10003

| | |
|---|---|
| **Attorney of Record** | Kenneth A. Feinswog |
| **Prior Registrations** | 2924016;4422191 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Other Data** | The name(s), portrait(s), and/or signature(s) shown in the mark identifies "KEVIN SPACEY", whose consent(s) to register is made of record. |
| **Live/Dead Indicator** | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP   PREV LIST   CURR LIST   NEXT LIST
FIRST DOC   PREV DOC   NEXT DOC   LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT

# I



**PTIN**directory
The National Directory of Registered Tax Return Preparers & Professionals (/)
(/)

# Frank R. Selvaggi, CPA - New York NY Tax Preparer

## Litigation Finance
Hundreds of clients and firms trust LexShares, finance provider to the legal industry. lexshares.com

OPEN

PTINdirectory (https://www.ptindirectory.com/) » Tax Preparers by State (/tax-preparers) » New York Tax Preparers (/tax-preparers/new-york)
» New York New York Tax Preparers (/tax-preparers/new-york/new-york-ny) » Frank R. Selvaggi, CPA - New York NY Tax Preparer



**Frank R. Selvaggi, CPA**
Altman Greenfield & Selvaggi LLP
200 Park Avenue South, 8th Floor
New York, NY 10003
United States
☎ 212-768-4500 (tel:+1-212-768-4500)

✎ Write Review (/write-client-review.cfm?cpa_dir_id=542137)



**Are you Frank R. Selvaggi, CPA, a tax preparer from New York NY?**

Add your picture and update your profile now. , .ature-tax-preparer-listing.cfm?cpa_dir_id=542137&rei.. .r=0)
View your tax professional website created exclusively for you. (http://ptinpro.com/?profile_id=542137)

## Request A Free Tax Consultation

(/find-tax-preparer.cfm?cpa_dir_id=542137&city=New%20York&mystate=NY&zip=10003&country=US)
For tax preparation in New York NY, you can count on Frank R. Selvaggi, CPA at Altman Greenfield & Selvaggi LLP. Frank R. Selvaggi, CPA assists taxpayers and small businesses with taxes in New York NY and the surrounding communities. Whether you are an individual or a local business in or around New York NY, Frank R. Selvaggi, CPA has years of valuable experience as an IRS registered tax preparer. Contact Frank R. Selvaggi, CPA, tax filing specialist in New York NY, for help with your taxes.

### Looking to find the best rated tax preparer in New York NY?
Frank R. Selvaggi, CPA is a local tax preparer at Altman Greenfield & Selvaggi LLP located in New York NY. Frank R. Selvaggi, CPA and other tax preparers located in New York NY will help you with tax preparation, tax planning, bookkeeping, estate and trust taxes, and so much more.

## Working Capital Available for Small Business
Instant online approval, no paperwork required, no application fees, no obligation.

(https://www.kabbage.com/landing-page/line-of-credit/?refid=725)

## Need Help Finding a Tax Preparer in New York NY?
Our free service can help you find a qualified tax professional.

(/find-tax-preparer.cfm?city=New%20York&mystate=NY&zip=10003&country=US)

## Litigation Finance

Hundreds of clients and firms trust LexShares, finance provider to the legal industry. lexshares.com

OPEN

Advertising Information (http://www.cpadirectmarketing.com/)
About PTIN Directory (/about-ptin-directory.cfm)
Contact PTIN Directory (/contact-ptin-directory.cfm)

Privacy Policy (/privacy-policy.cfm)
Press Releases (/press-releases.cfm)
Affiliate Program (/affiliate-program.cfm)

The National Directory of Registered Tax
Return Preparers & Professionals, Ltd.
©2012-2018 All rights reserved.
(/)

# EXHIBIT

# J



HOW IT HAPPENED (HTTP://WWW.FREEDOMTOMARRY.ORG/PAGES/HOW-IT-HAPPENED)


WHY IT MATTERS (HTTP://WWW.FREEDOMTOMARRY.ORG/PAGES/WHY-IT-MATTERS)


LESSONS LEARNED

# Frank Selvaggi

WINNING IN THE STATES (HTTP://WWW.FREEDOMTOMARRY.ORG/PAGES/WINNING-IN-THE-STATES)



Frank Selvaggi is a CPA and Founding Partner at Altman, Greenfield & Selvaggi, LLP, the New York City and Los Angeles accounting firm he co-founded in 1986, which specializes in business management for the entertainment industry. Selvaggi and his firm work with some of the top talent within the entertainment industry.

He served for six years on the Board of the Empire State Pride Agenda (ESPA), New York's leading statewide LGBT civil rights and advocacy organization. He held the position of Co-Chair of ESPA's Foundation Board for three years and that of Chair of the Agenda Inc. Board for two.

In addition, he serves on the Board of Directors of the Gay & Lesbian Victory Fund, the nation's largest LGBT political action committee and the only national organization dedicated to increasing the number of openly LGBT elected officials at

all levels of government. He also serves as Board President of the American Associates of the Old Vic Theatre, an iconic theater company in London with roots dating back to 1818 and currently under the artistic direction of actor Kevin Spacey.

Mr. Selvaggi is a resident of both New York City and North Salem, N.Y. He married his long time partner, Bill Shea in Northampton, MA in May 2004. He earned a Bachelor of Science degree in Accounting with highest honors from Rochester Institute of Technology in Rochester, NY in 1981.

---

**VIEW ALL STAFF (/THE-TEAM)**

---

**f** (https://www.facebook.com/freedomtomarry.org)
**y** (https://twitter.com/freedomtomarry)

Freedom to Marry was the campaign to win marriage nationwide. With the Supreme Court victory on June 26, 2015, the work of this strategic campaign – though not the larger movement – was achieved, and Freedom to Marry wound down its operations, closing in early 2016. For inquiries, please email legacy@freedomtomarry.org (mailto:legacy@freedomtomarry.org).

# EXHIBIT



# K



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Oct 2 05:21:01 EDT 2018*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |  *( Use the "Back" button of the Internet Browser to return to TESS)*

# CAVALRY MEDIA

| | |
|---|---|
| **Word Mark** | CAVALRY MEDIA |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Entertainment services, namely, arranging and conducting theatrical exhibitions, celebrity appearances, and producing television programs, motion picture films, and interactive audiovisual works for computer, all featuring musical, dramatic and comedy performances; entertainment services, namely, television and motion picture film production services, interactive multimedia production services; production and distribution of films and television shows; production of theatrical plays and theatrical exhibitions; providing web sites featuring information in the field of entertainment; fan clubs; music production services; sound recording studio services; post-production editing of films and television shows; entertainment services, namely, producing video games and multimedia entertainment; entertainment services, namely, production and distribution of virtual reality and augmented reality entertainment. FIRST USE: 20171103. FIRST USE IN COMMERCE: 20171103 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87314035 |
| **Filing Date** | January 25, 2017 |
| **Current** | 1A |

| | |
|---|---|
| **Basis** | |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | October 17, 2017 |
| **Registration Number** | 5551595 |
| **Registration Date** | August 28, 2018 |
| **Owner** | (REGISTRANT) Dana Brunetti INDIVIDUAL UNITED STATES 8th Floor 200 Park Avenue South New York NEW YORK 10003 |
| **Attorney of Record** | Victor K. Sapphire, Esq. |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MEDIA" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |